IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

Plaintiff-Appellant,

v.

NANCY L. MORITZ, et al.,

Defendants-Appellees.

No. 24-2056

## DEFENDANTS' RESPONSE IN OPPOSITION TO
## MOTION TO DISQUALIFY OR DISCLOSE

Plaintiff-appellant Caryn Strickland has moved to disqualify two

members of the panel assigned to preside in this matter. A precedential

decision of this Court rejected plaintiff's effort to disqualify the members of a

prior panel in this litigation based on similar allegations. *See Strickland v.*

*United States*, 32 F.4th 311, 343-46 (4th Cir. 2022). As that decision explained,

there has never been reason to think that the selection of judges to serve in this

matter has been based on "anything other than availability and willingness to

serve"; moreover, "upon receiving notification of and before agreeing to the

designation and assignment," each judge was required to independently

"consider[] whether there were any factors that required his or her

disqualification under [28 U.S.C.] § 455(b)." *Id.* at 346. The same is true of the additional judicial assignments that have occurred since this Court's prior decision, as explained below and in the attached declaration. Plaintiff's motion should be denied.

## STATEMENT

As this Court explained in a prior decision in this matter, "[t]he Chief Justice of the United States is vested by statute with the authority to designate and assign visiting judges." *Strickland v. United States*, 32 F.4th 311, 340 (4th Cir. 2022) (citing 28 U.S.C. §§ 291(a), 292(d)). He "discharges that responsibility with assistance from the Judicial Conference's Intercircuit Assignment Committee" and staff from the Administrative Office of the United States Courts (AO). *Id.* A judge who is asked to serve pursuant to an intercircuit assignment must, as in any other case, "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

In the course of this litigation, the Chief Justice has been called upon at multiple junctures to designate and assign visiting judges. Plaintiff has asserted official-capacity claims against, among others, the Chief Judge of the Fourth Circuit, the Circuit Executive of the Fourth Circuit, and the Director of the AO. All judges of the Western District of North Carolina and the Fourth

Circuit have recused themselves from serving as either the district judge or a member of an appellate panel. *Strickland*, 32 F.4th at 340-41. As this Court explained, for both the district court proceedings and plaintiff's first appeal, specific judges were identified and then proposed for the Chief Justice's approval based on a roster of judges who had indicated a willingness to serve in recusal cases outside their circuits. *Id.* at 341; *see* Declaration of Anne McKenna, Exhibit A to Defendants' Response in Opposition to Motion to Vacate or Disqualify, *Roe v. United States*, No. 21-1346 (4th Cir. Feb. 17, 2022), Dkt. No. 124 (First McKenna Decl.). A senior attorney in the AO's Judicial Services Office who serves as staff to the Committee on Intercircuit Assignments was responsible for identifying potential assignments for the Chief Justice's ultimate approval; in doing so, she "focused solely on the 'availability and willingness to serve' of the judges listed on the roster." *Strickland*, 32 F.4th at 341 (quoting First McKenna Decl. ¶ 5). "[T]he only people involved in identifying judges to recommend for the Chief Justice's ultimate designation and assignment were the Chair of the Committee on Intercircuit Assignments and [the senior attorney]." First McKenna Decl. ¶ 6. As in "all other recusal cases [the senior attorney] ha[d] handled, no one in the AO Director's Office, General Counsel's Office, Judicial Council Secretariat,

or any other AO office played any role whatsoever in identifying judges to preside over the proceedings." *Id.*

Once each of the judges had consented to serve, a package was prepared and transmitted to the Chief Justice that included, among other things: a proposed designation and assignment order for his signature; a Certificate of Necessity signed by the Chief Judge of the Fourth Circuit; and a standardized memorandum from the AO reflecting the Committee's recommended assignment. *See, e.g.*, Memorandum, Exhibit A to Defendants' Response to Motion to Disclose Public Records from the Intercircuit-Assignment Process, *Roe*, No. 21-1346 (Jan. 26, 2022), Dkt. No. 108 (one-page memorandum to the Chief Justice reflecting proposed assignments for the first appeal). Under the ordinary procedures, the AO's memorandum would be signed by the Director of the AO; as defendants noted, the memorandum concerning the assignments for plaintiff's first appeal was signed by the AO's Deputy Director because then-Director Mauskopf recused herself. *Strickland*, 32 F.4th at 342.

In an earlier appeal, this Court rejected plaintiff's attempt to challenge the results of the intercircuit-assignment process in this litigation. As the Court explained, there was "no evidence that the AO staff attorney" responsible for identifying judges "considered anything other than availability and willingness to serve in selecting which judges to designate and assign to serve in this

appeal," and each judge was then required to assess for himself or herself "whether there were any factors that required his or her disqualification under § 455(b)." *Strickland*, 32 F.4th at 346. The same panel that denied plaintiff's disqualification motion then handled plaintiff's subsequent attempt to appeal an interlocutory scheduling order. *See Strickland v. United States*, No. 22-1963, 2022 WL 10416526 (4th Cir. Oct. 18, 2022) (dismissing the appeal for lack of jurisdiction). Given the potential for additional future proceedings in this Court, the designation and assignment orders for that appeal also applied to "any appeals or mandamus actions arising from" the district court litigation. *See* Notice of Designation of Appellate Panel at 2-4, *Strickland v. United States*, No. 22-1963 (4th Cir. Oct. 22, 2022), Dkt. No. 38; Second Declaration of Anne McKenna ¶ 6, attached to this response as Exhibit A (Second McKenna Decl.). Pursuant to those orders, the same panel also handled a mandamus petition that plaintiff filed in October 2023. *See In re Strickland*, 87 F.4th 257, 260 (4th Cir. 2023) (denying the petition).

In April 2024, while the district court's decision following trial remained pending, Strickland again petitioned this Court for a writ of mandamus. *See* Petition for a Writ of Mandamus, *In re Strickland*, No. 24-1353 (4th Cir. Apr. 23, 2024), Dkt. No. 2; *see also* Order, *In re Strickland*, No. 24-1353 (Aug. 20, 2024), Dkt. No. 28 (dismissing the mandamus petition as moot in light of the

district court's issuance on August 9 of its final findings and conclusions). At that time, two members of the prior panel—Judges Briscoe and Melloy—were in the process of transitioning to inactive status. *See* Second McKenna Decl. ¶ 7. Because these judges were preparing to conclude their judicial service, they informed the Clerk of Court of the Fourth Circuit that they were no longer available for further proceedings in this litigation. *Id.* The Clerk of Court contacted the same senior staff attorney at the AO who had assisted with the prior assignments, requesting that two judges be identified to replace Judges Briscoe and Melloy for any further proceedings in this Court arising from the district court case. *Id.*

A similar designation and assignment process was again followed. The AO senior attorney, focusing solely on the "availability and willingness to serve" of the judges on the recusal roster, identified Judges Benton and Graber. Second McKenna Decl. ¶ 12. Two days after the mandamus petition had been filed, the Chief Judge of the Fourth Circuit signed a Certificate of Necessity concerning the assignment of Judge Benton. *See* Certificate of Necessity, Exhibit B to Defendants' Notice in Response to Plaintiff's Request for Disclosure of Records, *In re Strickland*, No. 24-1353 (July 22, 2024), Dkt. No. 24. A week after that, the Chief Judge signed a Certificate of Necessity concerning the assignment of Judge Graber. *Id.* Two weeks after that, a

package concerning the assignment was transmitted to the Chief Justice that included a one-page memorandum signed by AO Director Conrad. *See* Memorandum, Exhibit A to Defendants' Notice in Response to Plaintiff's Request for Disclosure of Records, *In re Strickland*, No. 24-1353 (July 22, 2024), Dkt. No. 24. Approximately six weeks after receiving these materials, the Chief Justice signed the assignment orders; 11 days later, they were filed on the docket in this Court. *See* Notice of Designation of Appellate Panel at 2, 4, *In re Strickland*, No. 24-1353 (July 9, 2024), Dkt. No. 18.

Plaintiff immediately requested the voluntary disclosure of additional documents and suggested she might initiate renewed "motions practice" concerning the intercircuit-assignment process. *See* Notice of Plaintiff's Request for Disclosure of Public Records from the Intercircuit-Assignment Process at 2, *In re Strickland*, No. 24-1353 (July 10, 2024), Dkt. No. 19. In response to plaintiff's request, the Judiciary made a discretionary disclosure of documents similar to materials previously disclosed but pertaining to the panel that had been assigned to that proceeding (as well as to any further appeals or mandamus actions arising out of the district court case) as well as the assignment of a district judge to this litigation. *See* Defendants' Notice in Response to Plaintiff's Request for Disclosure of Records, *In re Strickland*, No. 24-1353 (July 22, 2024), Dkt. No. 24; Defendants' Notice in Further Response

7

to Plaintiff's Request for Disclosure of Records, *In re Strickland*, No. 24-1353 (July 30, 2024), Dkt. No. 25.

When plaintiff later filed this appeal from the district court's final decision ruling in favor of defendants on all remaining claims, the same assignment orders were again promptly filed on this Court's docket. *See* Notice of Designation of Appellate Panel (Oct. 28, 2024). Plaintiff has now moved to disqualify Judges Benton and Graber or, alternatively, to disclose information concerning a defense witness.

## DISCUSSION

Plaintiff's latest attempt to cast doubt on the fairness of these proceedings is without merit and her motion should be denied. Nothing about the present circumstances materially differs from the circumstances this Court considered in its earlier precedential decision rejecting plaintiff's request for disqualification of the appellate panel or vacatur of the district court judgment. *See Strickland v. United States*, 32 F.4th 311, 343-46 (4th Cir. 2022). Plaintiff has not identified any basis for members of this Court to disqualify themselves, and her alternative request for additional information is premised on unfounded speculation about the decision-making processes of two judges who are no longer available to participate in these proceedings.

8

**A.** Plaintiff has again failed to identify any basis for members of this Court to disqualify themselves. Her motion invokes 28 U.S.C. § 455(a), which states that federal judges "shall disqualify [themselves] in any proceedings in which [their] impartiality might reasonably be questioned." That statute calls for an "'objective'" inquiry into whether "'a reasonable observer who is informed of all the surrounding facts and circumstances'" would reasonably question a judge's impartiality. *Strickland*, 32 F.4th at 345 (quoting *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (Rehnquist, C.J., writing separately)). Plaintiff's motion also invokes the Due Process Clause, which calls for an inquiry into whether "the circumstances at issue here are so 'extreme' or 'extraordinary' as to give rise to an objective probability of actual bias." *Id.* at 344 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887 (2009)).

As before, neither Section 455(a) nor the Due Process Clause calls for disqualification of any members of this Court. The same considerations that were "[k]ey" to this Court's prior analysis apply equally here: "there is no evidence that the AO staff attorney considered anything other than availability and willingness to serve," and "each panel member in this case, upon receiving notification of and before agreeing to the designation and assignment," was required to "consider[] whether there were any factors that required his or her

disqualification under § 455(b)." *Strickland*, 32 F.4th at 346; *see also id.* at 344-45 (relying on similar considerations in addressing due process challenge). As this staff attorney has explained in the attached declaration, she identified Judges Benton and Graber as potential replacements for the unavailable panel members based solely on "availability and willingness to serve" of the judges on the recusal roster. Second McKenna Decl. ¶ 12. The process was thus consistent with what occurs in "every case in which one or more judges have recused themselves," including "the earlier appeal in this case." *Id.* ¶ 8. Thus, here, as before, "the only people involved in identifying judges to recommend for the Chief Justice's ultimate designation and assignment were the Chair of the Committee on Intercircuit Assignments and [the senior attorney]." *Id.* ¶ 13.

Plaintiff asserts that "[t]he premise" of this Court's prior ruling "was that named Defendants with a direct stake in the outcome of the case had recused themselves from selecting the judges." Mot. 17. The AO Director is an official-capacity defendant, and plaintiff thus surmises that the Court's analysis hinged on the fact that the then-Director of the AO, Judge Mauskopf, recused herself from participating in the assignment process. *See id.* Plaintiff apparently believes that there is a problem with the participation of Judges Benton and Graber (for whom AO Director Conrad transmitted the

memorandum from the AO to the Chief Justice) as well as the district court judge (for whom AO Director Duff transmitted the equivalent memorandum). But as explained, this Court's decision focused on the role played by an AO staffer responsible for identifying available judges for the Chief Justice's approval, as well as each designated judge's independent obligation to decide whether to recuse. *See Strickland*, 32 F.4th at 344-46. As the AO staffer has explained—now for the second time—"no one in the AO Director's Office, General Counsel's Office, Judicial Council Secretariat, or any other AO office played any role whatsoever in identifying judges to preside over the proceedings." Second McKenna Decl. ¶ 13; *see also* First McKenna Decl. ¶ 6. Although this Court's prior decision recited the fact of Judge Mauskopf's decision to recuse from the Director's ordinary role in transmitting a proposed assignment to the Chief Justice, *Strickland*, 32 F.4th at 342, nowhere did the Court (or defendants) suggest that the analysis under Section 455(a) and the Due Process Clause would have differed had Judge Mauskopf not recused.

Plaintiff asserts that, in response to her earlier requests, defendants "selectively disclos[ed] records" in a manner that "created a misleading impression that Director Duff had recused himself" from the process of assigning the district court judge. Mot. 6. As an initial matter, that contention has no apparent bearing on plaintiff's request to disqualify two members of this

11

appellate panel. The contention is also ill-founded. The Judiciary initially exercised its discretion to release documents pertaining to the selection of the panel for the first appeal. Defendants did not at that time disclose documents pertaining to the assignment of a district court judge, noting that any such request would be "untimely." Defendants' Response to Motion to Disclose Public Records from the Intercircuit-Assignment Process at 8 n.2, *Roe*, No. 21-1346 (Jan. 26, 2022), Dkt. No. 108. Plaintiff then continued to assert that records regarding the assignment of a district court judge should be disclosed, and the Judiciary ultimately made the discretionary decision to release these documents despite the still-untimely request. *See* Defendants' Notice in Further Response to Plaintiff's Request for Disclosure of Records, *In re Strickland*, No. 24-1353 (July 30, 2024), Dkt. No. 25. Defendants' earlier filings had explained that the AO Director would ordinarily transmit intercircuit-assignment materials to the Chief Justice and noted that Judge Mauskopf had recused; these filings made no representations about the role former Director Duff had played in the process in this litigation, and any such representation would not have been material given the AO staffer's explanation that the Director had no part in identifying judges to preside over this litigation. *See supra* pp. 8-10.

12

Plaintiff also asserts that defendants "delayed processing the intercircuit assignments" for her post-trial mandamus petition. Mot. 19. It is again unclear what bearing this assertion has on plaintiff's effort to disqualify two members of this panel. And more generally, plaintiff fails to note that the intercircuit-assignment process involves many steps and requires the participation of several Judiciary officials, including the Chief Justice, who have an array of additional responsibilities. *See supra* p. 6 (setting forth the steps and timeline).

For these reasons, the Court should deny plaintiff's request for disqualification.

**B.** The Court should likewise deny plaintiff's request in the alternative for further information regarding "another potential conflict of interest." Mot. 16. As plaintiff notes, one of the witnesses whom defendants called at trial is Jill Langley, who serves as Director of Workplace Relations for the Eighth and Tenth Circuits. Plaintiff requests that the Court compel the disclosure of additional "information" such as "whether Judges Briscoe and Melloy recused themselves because of Langley's role as a witness for Defendants, or whether Langley has an employment relationship with the judges of the Eighth Circuit" (where Judge Benton serves), on the view that such information "potentially requires disqualification." Mot. 21-22.

Plaintiff believes that "a reasonable observer would presume" that "Judges Briscoe and Melloy simultaneously recused themselves because they were disqualified following trial" due to the participation of this witness. Mot. 21. This is wholly unwarranted speculation: there may be any number of reasons why a judge who was previously available and willing to serve by designation is no longer able to do so, and a reasonable observer would not jump to the conclusion that this witness's participation in trial was the reason why these two judges had become unavailable. Indeed, the actual reason Judges Briscoe and Melloy are no longer available is that each of them is transitioning to inactive status. *See* Second McKenna Decl. ¶ 7.

## CONCLUSION

The motion to disqualify or disclose information should be denied.

Respectfully submitted,

SARAH CARROLL

*/s/ Kevin B. Soter*

KEVIN B. SOTER
(202) 305-1754
   Attorneys, Appellate Staff
   Civil Division
   U.S. Department of Justice
   950 Pennsylvania Ave. NW
   Room 7222
   Washington, D.C. 20530
   kevin.b.soter@usdoj.gov

NOVEMBER 2024

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify this response complies with the requirements of Rule 27(d)(1)(E) because it has been prepared in 14-point Calisto MT, a proportionally spaced font, and that it complies with the type-volume limitation of Rule 27(d)(2)(A) because it contains 2,911 words, according to the count of Microsoft Word.

/s/ *Kevin B. Soter*

KEVIN B. SOTER

# EXHIBIT A

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

Plaintiff-Appellant,

v.

NANCY L. MORITZ, *et al.*,

Defendants-Appellees.

No. 24-2056

## <u>SECOND DECLARATION OF ANNE MCKENNA</u>

1.     I am a senior attorney in the Judicial Services Office at the Administrative Office of the U.S. Courts.  I have worked for the AO since 2010 and have served as primary staff to the Committee on Intercircuit Assignments since 2015.

2.     Among other duties, I assist the Committee in maintaining a roster of judges who have indicated a willingness to serve in recusal cases outside of their circuits.

3.     As explained in my declaration of February 17, 2022 (Exhibit A to Def's Response in Opp. to Mot. to Vacate or Disqualify, Case No. 21-1346, Doc. 124), when this case was originally filed in district court and, subsequently, in the court of appeals (No. 21-1346), I was responsible for identifying judges who could be designated by the Chief Justice.  As in all other recusal cases I have handled, I identified the judges based on my understanding of their availability and willingness to serve for the duration of the district court and appellate proceedings. For appeal number 21-1346, I identified Judges Mary Beck Briscoe of the Tenth Circuit, Ronald Lee Gilman of the Sixth Circuit, and Michael J. Melloy of the Eighth Circuit.

4.     On May 7, 2021, the Chief Justice of the United States designated Judges Briscoe, Gilman, and Melloy "to perform judicial duties in the United States Court of Appeals for the Fourth Circuit in 21-1346, Roe v. U.S."

5.     When the case *Strickland v. U.S.*, 22-1963, was filed in the Fourth Circuit Court of Appeals, the Clerk of Court again contacted me for assistance with designating a panel to hear the appeal. I confirmed that Judges Briscoe, Gilman, and Melloy were still available and consented to serve.

6.     On October 4, 2022, the Chief Justice designated Judges Briscoe, Gilman, and Melloy "to perform judicial duties in the Unites States Court of Appeals for the Fourth Circuit in any appeals or mandamus actions arising from Caryn Strickland v. United States, 1:20-cv-00066-WGY (W.D.N.C.)." I had worked with the Clerk of Court to develop this language to capture any subsequent actions so that they could be heard by the same panel without the administrative hurdles and requiring approval of the Chief Justice each time.

7.     After the case *In re Strickland*, 24-1353, was filed in the Fourth Circuit Court of Appeals, the Clerk of Court contacted me and explained that two of the judges then designated to hear any appeals or mandamus actions arising from the district court case Caryn Strickland v. United States, 1:20-cv-00066-WGY (W.D.N.C.), Judge Mary Beck Briscoe and Judge Michael J. Melloy, had informed the Clerk that they were transitioning to inactive status and would be unavailable to continue to serve on the panel. The Clerk of Court therefore asked that I find two judges to replace Judges Briscoe and Melloy on the panel.

8.     In finding judges for that matter and any further appeals or mandamus actions arising from the district court case, I consulted the roster of judges who indicated a willingness to serve in recusal cases outside of their circuits, as I have previously done in every case in which one or more judges have recused themselves, and as I did for the earlier appeal in this case. For this case, I identified Judges Duane Benton of the Eighth Circuit and Susan Graber of the Ninth Circuit.

9.     Once the judges indicated their consent to serve, I notified the Committee Chair and the Fourth Circuit Clerk of Court of those judges' names so that the Clerk's assistant could complete the certificates of necessity and obtain the circuit chief judge's signature for the certificates. The certificates of

necessity for Judges Duane Benton and Susan Graber were signed by Chief Judge Albert Diaz on April 25, 2024 and May 2, 2024, respectively.

10.     Once I received the signed certificates, I prepared a package for the AO Director that included, among other things, draft designation and assignment orders identifying Judges Benton and Graber for the Chief Justice's signature and a draft memorandum indicating the Committee's recommendation of approval of the assignments for the AO Director's signature.

11.     On June 28, 2024, the Chief Justice designated Judges Benton and Graber "to perform judicial duties in the United States Court of Appeals for the Fourth Circuit for any appeals or mandamus actions arising from civil action 1:20-cv-00066-WGY, Caryn Strickland v. United States."

12.     My identification of judges who could be designated by the Chief Justice was in no way affected by the nature of the claims, the factual allegations, the legal issues likely to be presented in the case, or the impact the case may have on Judiciary policies. Instead, I identified the judges based on my understanding of their availability and willingness to serve for the duration of the appellate proceedings.

13.     In these cases, as in all other recusal cases I have handled, the only people involved in identifying judges to recommend for the Chief Justice's ultimate designation and assignment were the Chair of the Committee on Intercircuit Assignments and me. In these cases, as in all other recusal cases I have handled, no one in the AO Director's Office, General Counsel's Office, Judicial Council Secretariat, or any other AO office played any role whatsoever in identifying judges to preside over the proceedings.

14.     I have day-to-day contact with the Chair to support the intercircuit assignment process. I have no contact with any Judicial Conference members as it relates to recusal judges.

15.     Until plaintiff made the intercircuit assignment process an issue in this litigation, I had no discussions with any of the named defendants about this case. Since then, my only communication with any named defendant about this case has been that described in this declaration and for the purpose of responding to plaintiff's challenges to the process.

16.     My office is in the Judicial Services Office (JSO), which is under the Department of Program Services.  The chief of the Department of Program Services reports to the AO Deputy Director.  The Director's office is not involved in the day-to-day operations of JSO.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*s/ Anne McKenna*
Anne McKenna
Senior Attorney
Judicial Services Office
Administrative Office of the
U.S. Courts

Executed on:     November 19, 2024