No. 24-2056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

**PLAINTIFF-APPELLANT'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY OR, ALTERNATIVELY, DISCLOSE INFORMATION**

Appellees admit that former AO Director Duff—a *named* Defendant, who was involved in the facts of this case—failed to recuse himself from the process for selecting the district-court judge. That judge later ruled in favor of *all* Defendants on *all* claims, *both* at the dismissal stage and on final judgment. Moreover, *Appellees admit that they failed to disclose Director Duff's non-recusal to this Court*, having made a "discretionary" decision to withhold this information. Doc. 20, at 12.

Instead of disclosing material facts, Appellees misleadingly relied on AO Director Mauskopf's recusal during the prior appeal to create a false impression that the AO Director was recused at all stages of the intercircuit-assignment process. Appellees repeated this conduct when AO Director Conrad failed to recuse himself

1

from the process for selecting judges for this appeal, even though he was a judge from the Western District of North Carolina who *was already recused from this case*.

Appellees' conduct—both in failing to recuse and failing to disclose the non-recusals—creates an appearance that they engaged in judge-shopping and concealed it from the Court, the parties, and the public. Given these facts, a declaration from an AO staff attorney—the AO Director's employee—contending that she considered judges' "availability" and "willingness to serve" fails to dispel the appearance that judges were selected based on Appellees' assessment of how they might rule.

## ARGUMENT

**I.  Appellees misrepresented material facts to this Court that require disqualification of judges after disclosure.**

    **A.  Recusal of the AO Director—a *named* Defendant—was required under this Court's prior decision.**

It is axiomatic that the procedure used to assign a case will affect the public's perception of the fairness of its adjudication. As AO Director Conrad recently stated, the judiciary's policy favoring random assignment "deters judge-shopping and the assignment of cases based on the perceived merits or abilities of a particular judge," and "promotes the impartiality of proceedings and bolsters public confidence in the federal Judiciary." U.S. Courts, Conference Acts to Promote Random Case Assignment (Mar. 12, 2024), *available at* https://tinyurl.com/jd3wwhr3.

2

If this were an ordinary appeal, it would be assigned through "a computer program designed to achieve *total random selection*." Fourth Cir. I.O.P.-34.1 (emphasis added). But because all judges within the Fourth Circuit recused themselves, the intercircuit-assignment process was used. Notably, nothing about this process requires AO officials, including the Director, to select particular judges for a case. *See* 28 U.S.C. § 291(a). The controlling statute provides that the Chief Justice of the United States may "designate and assign" a circuit judge to act in another circuit, without specifying how the designation must occur. *Id.*

The Chief Justice has delegated this authority by adopting Guidelines that lower-level officials use to assign judges, but those Guidelines are not statutorily required. *See* Guidelines for the Intercircuit Assignment of Article III Judges (2012). Moreover, any process that would delegate *carte blanche* discretion to AO officials in selecting particular judges for an Article III proceeding would raise serious constitutional questions. *Cf. F.C.C. v. Consumers' Rsch.*, *cert. granted*, No. 24-354 (Nov. 22, 2024). In this regard, nothing in the Guidelines appears to prohibit designation by random assignment, such as transferring the case to an adjacent circuit. *See DeMasters v. Carilion Clinic*, 796 F.3d 409, 412 (4th Cir. 2015) ("[A] panel from the neighboring Third Circuit was appointed for this appeal."). But in this case alleging constitutional violations by judiciary officials, including the AO Director, officials of the AO recommended particular judges.

3

The legitimacy of this process barely passed muster when it was previously challenged, and this Court was not even aware of all the material facts. This Court agreed with Appellant that, "from a public perception standpoint, it would have been preferable had *no AO or Judicial Conference officials* participated in the designation and assignment process." *Strickland v. United States*, 32 F.4th 311, 346 (4th Cir. 2022) (emphasis added). The basis for the Court's holding was Appellees' representation that "[t]he Director of the AO—Judge Roslynn Mauskopf—recused herself from participating in the assignment process"; thus, the question presented was whether "the Constitution . . . require[s] that all *support staff and every member of the entire Judicial Conference* should have recused themselves." *Id.* at 342 (quoting Appellees' Br.) (emphasis added). This framing *presupposes* that named Defendants, including the AO Director, recused themselves.

Appellees dismiss these alleged facts as not "material," Doc. 20, at 12, but the AO Director's recusal was essential to the Court's holding. "[A]ll agree that a court's holding encompasses more than th[e] judgment; it includes the court's *ratio decidendi*—the chain of reasoning necessary to tie the facts of the case to the decision reached." *United States v. Buster*, 26 F.4th 627, 640 (4th Cir. 2022) (Richardson, J., dissenting).

Moreover, Appellees ignore that the Guidelines assign the AO Director a formal role in the intercircuit-assignment process, presumably because a lower-level

4

employee could not fill that role. Guidelines, at 4. Indeed, by even using the term "recusal," Appellees themselves have signified that the AO Director, when named as a Defendant, must "remove (oneself) from participation to avoid a conflict of interest." Merriam-Webster Dictionary, Recuse, *available at* https://tinyurl.com/2dyfrmvy.

> **B.    A "declaration" from the AO Director's employee *subjectively* disavowing a conflict of interest does not lessen the *objective* appearance of impropriety.**

Appellees' reliance on the untested declaration of an AO staff attorney regarding the selection of judges is non-responsive to the conflict. Appellees submitted a similar declaration during the prior appeal, and this Court still found it essential to its holding that the AO Director was recused. *See Strickland*, 32 F.4th at 342, 344. This precedent is binding, as Appellees themselves state. Doc. 20, at 1.

By inviting this Court to make factual findings regarding how judges were selected—but without discovery and with incomplete information—Appellees also misconstrue the legal standard. Appellees ask this Court to replace the "objective observer" standard for evaluating conflicts of interest with a subjective standard in which they may simply disavow a conflict via a self-serving declaration. *Liljeberg v. Health Servs. Acq. Corp.*, 486 U.S. 847, 865 (1988).

The Supreme Court has rejected the use of "subjective findings of impartiality and propriety" for this inquiry. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868,

5

882 (2009). Under the Due Process Clause, the inquiry does not depend on "a probing search into [the decisionmaker's] actual motives and inclinations" or "whether there was actual bias." *Id.* at 882. Likewise, under 28 U.S.C. § 455(a), the standard is whether there is an *appearance* of partiality: a judge must disqualify himself *even when he lacks actual knowledge of the facts indicating bias*, if a reasonable person *would expect* the judge to have such knowledge. *Liljeberg*, 486 U.S. at 861. Thus, the issue here is *not* whether Appellees actually selected particular judges based on how they might rule (something that would be difficult, if not impossible, to prove or disprove), but instead whether a reasonable person would expect that the procedure they adopted "offer[s] a possible temptation . . . not to hold the balance nice, clear and true." *Caperton*, 556 U.S. at 878 (citation omitted).

That temptation exists here, and creates the appearance that Appellees' finger was on the scale. To start with, judges are chosen based, in part, on their "willingness" to serve. Doc. 20, Decl. ¶ 8; *see* Guidelines, at 3. Judges volunteer to hear a particular case rather than having the case assigned to them, as would occur with random assignment. Further, in this case, the judges also self-selected to serve on so-called "recusal cases outside of their circuits." Decl. ¶ 8. Without notifying the public, *the AO has created a "roster" for "recusal cases" separate from the visiting judges' program. See id.* Appellees' counsel previously stated that the "pool of judges" willing to serve on "recusal panels" is "quite small." Oral Arg. 28:11-

6

28:50, Case No. 21-1346 (Jan. 31, 2022), *available at* https://tinyurl.com/yc4wdu55. Appellees have not explained why there is a roster for "recusal panels" or how the roster is composed. *See* Case No. 21-1346, Doc. 126, at 6–7.

Even without the conflict caused by the AO Director's non-recusal, this process seems susceptible to selection of judges who are more likely to be "deferential" to their colleagues, including Defendants. *See* Marin Levy, *Visiting Judges*, 107 CALIF. L. REV. 67, 110 (2019) (discussing "reluctance" of some courts to have visiting judges "stemm[ing] from concerns that the judges sitting by designation might be overly deferential"). The creation of a separate "roster" for "recusal cases" heightens the appearance that the AO has curated the process to select deferential judges for particularly sensitive cases. To illustrate this point, it would seem to defy probability that three out of the five appellate judges that Appellees have selected are from the two circuits where Jill Langley, Defendants' trial witness, serves as the Director of Workplace Relations. *See* U.S. Courts, 2023 Annual Report on the Judiciary 37, *available at* https://tinyurl.com/55zr2xd3 (DWRs "can provide guidance to judges . . . related to workplace protections and the administration of EDR plans"). A reasonable person—an *objective* person—could question whether the selection of these judges reflected an expectation that they would be predisposed to rule in favor of Defendants because Langley is their employee.

7

Appellees fault Appellant for "speculation" regarding whether Judges Melloy and Briscoe recused themselves because of Langley's role as defense witness, but that is entirely unwarranted. Doc. 20, at 14. Reasonable people *will* "indulge suspicions and doubts" about recusal issues, as the Supreme Court has stressed. *Liljeberg*, 486 U.S. at 864. A reasonable observer also would have no way of knowing that these judges were "transitioning to inactive status" in April 2024—both were still serving on cases in September 2024, after the petition was decided. This information asymmetry illustrates why *objective* standards exist to evaluate conflicts of interest, which Appellees improperly urge this Court to disregard.

Appellees' conduct invites further reasonable questions about the fairness of this process. Appellees failed even to disclose to Appellant or the public that Judges Melloy and Briscoe were no longer serving, let alone the reasons, which was in stark contrast to prior appeals in this case, where the intercircuit assignment was contemporaneously disclosed. *See, e.g.*, Case No. 21-1346, Doc. 8. Meanwhile, as Appellees now admit, this information *was* disclosed to named Defendants, including the AO Director and Chief Judge, *months* before it was disclosed to the public. Doc. 20, at 6. Further, contrary to the Federal Rules of Appellate Procedure, Appellees delayed for *two-and-half months* in processing the assignments, which prevented Appellant's mandamus petition from even being decided and severely prejudiced her rights. In allowing the assignments to be delayed, Appellees violated procedures in

8

the Guidelines that apply "[i]f time is pressing." Guidelines, at 3. Beyond the fact that Appellees have been delegated responsibility to timely process assignments, Appellees' apparent speculation that the Chief Justice is to blame for the delay is unsupported by the record, which contains no information about when the recommendations were actually transmitted to him. These improprieties, which *directly* benefitted Appellees, bolster the appearance that the process lacks safeguards to prevent manipulation for their benefit, including in selecting judges.

### C. Appellees' misrepresentation to this Court regarding the AO Director's recusal heightens the appearance of impropriety.

Given the risks of unfairness unique to the intercircuit-assignment process, Appellees' minimal assurances of fairness, including the AO Director's recusal, were essential to this Court's prior ruling. *See Strickland*, 32 F.4th at 344. As it turns out, those assurances were based on Appellees' misrepresentation of the facts. Appellees' misrepresentation heightens the appearance of impropriety. If the AO Director's non-recusal were immaterial, as Appellees portray, one would expect them to have candidly disclosed that fact during the prior appeal, since the outcome would have been the same. Instead, Appellees did not disclose this information until *years* after they secured a favorable ruling based on their misrepresentation.

Appellees continue to downplay the significance of their misrepresentation to this Court, even attempting to avoid filing a response. Doc. 12, at 22 n.4. Appellees contend that their prior briefing merely "*noted* that Judge Mauskopf had recused" but

9

"made no representations about the role former Director Duff had played in the process in this litigation." Doc. 20, at 12 (emphasis added). This characterization shockingly disregards the ethical principle that "partially true but misleading statements or omissions" are misrepresentations. Model R. Prof. Cond. 4.1, Cmt. 1. Indeed, "[f]actual statements by counsel that are so carefully worded as to be both technically accurate and misleading by omission are of particular concern, as they reflect an intent to lead the Court down the garden path." *La Michoacana Nat., LLC v. Maestre*, 611 F. Supp. 3d 87, 94 (W.D.N.C. 2020) (citation omitted)).

Moreover, Appellees also misrepresented facts during oral argument. Their counsel *repeatedly* told this Court that they were not aware of any other *relevant* documents that had not been disclosed, even after Appellant's counsel *specifically* raised questions about whether Director Duff had recused. Oral Arg. 29:40–30:25; 34:50–36:47; 44:25–45:15; 47:10–47:50. Following remand, Defendants continued to oppose disclosure and accused Plaintiff and her counsel of "imagined conflicts of interest" and "perception of conspiracies." ECF No. 174, at 2–4.

Contrary to their representation that no other relevant documents existed, Appellees now contend that withholding the documents was a "discretionary" decision made based on their subjective assessment that Appellant's request for district-court records was "untimely." Doc. 20, at 12. But Appellees, as litigants, are not the adjudicators. Any assessment that Appellant's request was "untimely" was

10

not theirs to make and is no excuse for failing to comply with the duty of candor. That is especially true because this Court did not reject Appellant's arguments as untimely and instead adjudicated them on the merits, but Appellees *still* did not correct their misleading representation and even actively opposed disclosure. *Strickland*, 32 F.4th at 343–45; *cf.* Model. R. Prof. Cond. 3.3(a)(1) (lawyer must "correct a false statement of material fact or law previously made to the tribunal").

Appellees' conduct leads to the conclusion that they misled this Court and the parties to procure an advantage in this litigation. This Court should grant disqualification. It should also determine whether Appellees violated their "continuing duty to inform the Court of any development which may conceivably affect the outcome of litigation." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993).

## II. Alternatively, the Court should disclose information about Jill Langley's role as Director of Workplace Relations for the Eighth Circuit.

Appellees offer *no* response to the concern that the employment of Jill Langley, Defendants' trial witness, as DWR for the Eighth Circuit, where Judge Benton serves, is a potential conflict of interest. *See* Doc. 20, at 13–14. On November 20, 2024, the judiciary released a report explaining that DWRs "provide guidance to judges," "assist in coordinating the implementation of EDR Plans," and "provide education and training." Annual Report on the Judiciary 37.

11

Based on this information, a reasonable person could question whether a judge from the Court where Langley is employed could be tempted to rule in Defendants' favor to protect a "colleague's reputation" and the reputation of the Court that employs her. *United States v. Gordon*, 354 F. Supp. 2d 524, 528 (D. Del. 2005); *United States v. O'Brien*, 18 F. Supp. 3d 25, 33–34 (D. Mass. 2014) ("recusal is appropriate" when "testimony concern[s] the reputation of the judicial colleague"). This apparent conflict of interest may only be dispelled by disclosing further information about Langley's role as the Eighth Circuit's DWR.

## CONCLUSION

Appellant's motion should be granted.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 2,597 words, excluding the parts exempted by Fed. R. App. P. 27(d)(2). This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

/s/ Cooper Strickland
Cooper Strickland
