No. 24-2056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

———————————

## MOTION FOR PERMISSION TO EXTEND
## THE WORD LIMIT ON MOTION

Pursuant to Fourth Circuit Rule 27(a)(1), Plaintiff-Appellant Caryn Devins Strickland respectfully requests advanced permission from this Court to file the attached motion, which is 10,228 words in length. The importance of this case and the need to provide relevant context and analysis justify a word limit extension, as described below. Appellant has provided her motion as an attachment, and will file it if granted this Court's permission. Appellees take no position on this motion.

1.      This case involves novel and important claims regarding alleged equal protection and due process violations by judiciary officials. This Court previously held that Plaintiff's claims of deliberate indifference to sexual harassment and a fundamentally unfair process for resolving claims of workplace discrimination

1

survived dismissal. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022).

Thus, this case marks the first time that such claims have *ever* survived a motion to

dismiss, let alone proceeded to discovery, summary judgment, and trial. *See id.*

2.    In the district court, Plaintiff was represented by four *pro bono*

attorneys. *See* ECF Nos. 115, 128, 180, 197. Near the close of discovery, on April

29, 2023, all four attorneys moved to withdraw because of an unspecified "conflict"

and "irreconcilable differences." ECF No. 207.

3.    Defendants took "no position" on the motion to withdraw. ECF No.

214. Plaintiff requested that the motion be held "in abeyance" because of pending

"issues raised by Defendants" to give her an opportunity to resolve any potential

conflict or disagreement. ECF No. 215, at 1. Plaintiff explained that she would

suffer "severe prejudice" if the motion were granted. *Id.*

4.    On May 23, 2023, the district court granted the motion to withdraw in a

text-only entry order. Entry Order Dated May 23, 2023. The court did not inquire

about the basis for withdrawal or make a finding of "good cause." LCvR 83.1.

5.    While the above facts are enough to raise significant questions about the

propriety of the district court's order, the attached motion provides further context

regarding (1) obstacles for judiciary employees to obtain counsel, (2) irregularities

that undermined Plaintiff's counsel's ability to pursue her case in district court, (3)

context regarding the basis for the alleged conflict of interest, and how it dissipated

later in the litigation (but too late to prevent severe prejudice) and (4) actions by the district court that prevented Plaintiff from being meaningfully heard and/or reconciling with her counsel. This context is necessary to understand the errors in the district court's order and the prejudice Plaintiff suffered as a result.

6.    A motion generally must be limited to 5,200 words. Fed. R. App. P. 27(d)(2)(A). However, in this case, Appellant respectfully submits that this word limit is inadequate to present the issues to facilitate this Court's review. Indeed, whether it is appropriate for Appellant to be representing herself on appeal, with only her spouse to assist, is a significant question that requires careful resolution. The result could affect not only the outcome of this appeal, but also the rights of the judiciary's approximately 30,000 employees, which will be affected by this case.

7.    Moreover, much of the procedural history described in this motion, which is necessary to understanding the context surrounding the motion to withdraw, was due to unexplained orders by the district court that deviated from established procedures. These deviations effectively denied Appellant her due process right to be heard in district court and necessitate further explanation on appeal.

8.    For these reasons, Appellant respectfully a word limit extension to file a motion of 10,228 words.

Respectfully Submitted,

*/s/ Cooper Strickland*

3

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

<u>/s/ Cooper Strickland</u>
Cooper Strickland

No. 24-2056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

## MOTION FOR SUMMARY REVERSAL
## PURSUANT TO FOURTH CIRCUIT RULE 27(f)

When Anita Hill testified before Congress about allegations of sexual harassment by then-Supreme Court nominee Clarence Thomas, her attorney, Harvard Law professor Charles Ogletree, "immediately understood that she would need a defense attorney even though she was the accuser, not the accused." Tovia Smith, *Noted Defense Attorney Charles Ogletree Dies*, NPR (Aug. 4, 2023), *available at* https://tinyurl.com/4nxthsd4.

Here, near the close of discovery, after Defendants were forced to disclose four other complaints of harassment, discrimination, and retaliation against the Federal Defender Office, Defendants' counsel raised a sensational insinuation. Shortly thereafter, Plaintiff's team of four *pro bono* attorneys moved to withdraw *en masse*

1

based on an unspecified "conflict" and "irreconcilable differences."  ECF No. 207.
The district court granted the withdrawal in a *text-only entry order* without even
inquiring into the alleged "conflict," in violation of the district's rules and Fourth
Circuit precedent, and without allowing Plaintiff to be heard on Defendants'
allegation.  *See* Entry Order Dated May 23, 2023.

Ultimately, Defendants did not raise *any* affirmative defenses and abandoned
their allegation at trial.  ECF No. 399, at 108.  In fact, the district court found that
Plaintiff was "a young woman with significant professional qualifications" who
"made a good faith claim of sexual harassment" and lost her career.  ECF No. 429, at
278.  But the damage was done.  Unsupported innuendo causally pursued, and
readily abandoned, resulted in the loss of Plaintiff's *pro bono* legal team, which she
acquired against all odds considering the acute power disparities between
complainants and the Judicial Branch, and their counsel, the Department of Justice.
At trial, Plaintiff was forced to represent *herself*, with only *her spouse* to assist,
against the Department of Justice and the Judicial Branch.  Unsurprisingly, she lost.

This Court must summarily reverse the district court's order allowing the
withdrawal, without finding good cause, and remand for further proceedings.
Otherwise, in this exceptionally important case—the first of its kind—the public
cannot have confidence that the outcome at trial, or on appeal, was obtained based on
the merits rather than the fact that Plaintiff was forced to represent herself.

2

## BACKGROUND

**A.    Despite obstacles preventing judiciary employees from obtaining counsel, *pro bono* counsel offers to represent Plaintiff and achieves a landmark ruling reversing the district court's dismissal of her complaint.**

This case marks the first time that claims against judiciary officials of deliberate indifference to sexual harassment and fundamentally unfair procedures for redressing workplace discrimination have *ever* survived a motion to dismiss, let alone proceeded to discovery, summary judgment, and trial.  *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022).

Not surprisingly, when Plaintiff brought this lawsuit, she was afraid and proceeded under a pseudonym due to concerns about "retaliation and reprisal."  ECF No. 2-1; *see* ECF No. 104, at 6 (district court's statement that "I fully understand the reason why your client desires to proceed under a pseudonym").  At that time, she had only her spouse to represent her.  *See* ECF No. 1.

Plaintiff sought and would have preferred outside counsel, but "pursuing a claim on behalf of an employee of the judiciary can . . . be career suicide," as an attorney who represented a judiciary employee during the Employment Dispute Resolution process stated in written testimony before Congress.  Michelle Cohen Levy, Hearing on Workplace Protections for Federal Judiciary Employees (Mar. 17, 2022), *available at* https://tinyurl.com/yhmtzkpu.  Due to "acute 'power disparity'" within the judiciary, an attorney, no less than an employee, may be subjected to the

3

risk of "rancor" from judiciary officials that "may result in embarrassment among peers, tarnish the [attorney's] professional reputation, and curtail career opportunities."  Report of the Federal Judiciary Workplace Conduct Working Group 13 (Jun. 1, 2018), *available at* https://tinyurl.com/4mhujyyt.

Indeed, Olivia Warren, who briefly represented Plaintiff in this case, testified before Congress that she was "terrified of offending" her peers for reporting sexual harassment because of "the possibility [that] immediate retaliation by the judge [will be] supplemented by the possibility of long-term retaliation by those devoted to protecting his reputation and remaining in his good graces."  Olivia Warren, Protecting Federal Judiciary Employees from Sexual Harassment, Discrimination, and Other Workplace Misconduct (Feb. 13, 2020), *available at* https://tinyurl.com/32spm2hn.  Ms. Warren has since stated that "she would not recommend others follow her path and speak out about abuse by federal judges."  Carrie Johnson, *Victims of harassment by federal judges often find the judiciary is above the law*, NPR (Apr. 30, 2024), *available at* https://tinyurl.com/2hna7u6f.

Beyond the reputational risks, judiciary employees are not covered by Title VII and lack a statutory right to recover attorneys' fees.  This legal anomaly disincentivizes representation such that "[t]he judicial employee needs to essentially be independently wealthy or hope to obtain pro bono representation."  *Levy*, *supra.* A recent Federal Judicial Center study elaborated on these financial difficulties in

4

obtaining counsel for an EDR proceeding, let alone a *public proceeding* in federal

court, explaining that "employees who choose to hire representation have to pay for

these services out of their own pocket; in contrast, in federal discrimination lawsuits,

employees are often able to hire lawyers on contingency."  *See* Fed. Jud. Ctr.,

Enhancing Efforts to Coordinate Best Workplace Practices Across the Federal

Judiciary 53 (July 2024), *available at* https://tinyurl.com/b39f9b5k.

Despite these substantial obstacles, after the district court dismissed Plaintiff's

complaint—and attacked her sole counsel, her spouse, without notice or an

opportunity to respond[1]—Harvard Law professor Jeannie Suk Gersen offered to

represent Plaintiff *pro bono* on appeal.  Professor Gersen obtained a landmark ruling

from this Court reversing the district court's dismissal and allowing Plaintiff's claims

of equal protection and due process violations to proceed in federal court.

*Strickland*, 32 F.4th at 321.  This Court did, however, curtail Plaintiff's remedies and

the financial incentives for counsel to represent clients in these types of matters.  It

held that Plaintiff may only pursue prospective equitable relief and that the Back Pay

Act does not apply in federal court for judiciary employees, thus eliminating a source

of attorneys' fees for Plaintiff and similarly situated litigants.  *Id.* at 371.

---

[1] In a footnote, the district court accused Plaintiff's spouse of "groundless
speculation, fantastical conspiracy theories, or faux facts."  ECF No. 102, at 33 n.8.
The court did not provide any prior indication it was troubled by his arguments, and
even praised him at the dismissal hearing for "ably argu[ing]" the case and for his
"comprehensive briefing."  ECF No. 105, at 29.

5

**B.** **Despite obtaining litigation funding and discovery, unexplained irregularities in the district-court proceeding undermine the ability of Plaintiff's legal team to pursue her case and strain the attorney-client relationship.**

By the time Plaintiff's legal team moved to withdraw on April 29, 2023, the district-court proceeding had been marred by irregularities. *See* ECF No. 207. These irregularities undermined Plaintiff's legal team's ability to pursue her case and strained the attorney-client relationship to the point of breaking.

**1.    Unexplained failure to rule on *pro hac vice* admission**

Following remand, Professor Gersen continued to represent Plaintiff. ECF No. 115. Plaintiff's legal team even grew to four *pro bono* attorneys. ECF Nos. 128, 180, 197. Securing legal representation in district court, however, was not without difficulty. Without explanation, the district court failed to rule on Professor Gersen's unopposed *pro hac vice* application for *nearly three months*—a routine motion ordinarily granted as a matter of course—despite her repeated efforts to bring the issue to the court's attention. *See* ECF Nos. 130, 136, 140. Although *pro hac vice* motions are within the court's discretion, the Fourth Circuit has recognized the right of litigants "freely to choose their counsel," *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992), and that *pro hac vice* admission is proper when an attorney has "complied with" local rules governing such admission, which Professor Gerson did, *Scott v. Health Net Fed. Servs. LLC*, 463 Fed. Appx. 206, 209 (4th Cir. 2012).

As a result of the district court's months-long failure to issue an order on *pro hac vice* admission, Professor Gersen and her co-counsel, Phil Andonian, could not create CM/ECF accounts to access the docket in this case.  ECF No. 130, at 1–2.  They also were not invited to participate as counsel in important remote hearings, including the first status conference after remand and the hearing on Plaintiff's motion for preliminary injunction, leaving only her spouse to represent her.  *See* ECF No. 140, at 2–6.  The district court sent the Zoom link for the hearings only to Plaintiff's spouse, her "counsel of record," but not to Professor Gersen or Mr. Andonian.  *See, e.g.*, Case No. 22-1963, Doc. 3, at 13.  During this time, the court did not rule on Plaintiff's unopposed motion to clarify whether she could be represented by her chosen counsel, ECF No. 130, but it did grant Defendants' motion for an extension of time to accommodate their counsels' vacation schedules, ECF No. 131.

Only after Professor Gersen raised this issue in an emergency appeal filed in this Court, *see* Case No. 22-1693, Doc. 3, did the district court, for the first time, issue a written order granting Professor Gersen and Mr. Andonian *pro hac vice* admission, *see* Entry Order Dated September 15, 2022.

### 2. Issuance of "unfair" and "inappropriate" "Hobson's choice" order while Plaintiff's chosen counsel was excluded

Due to the district court's failure to rule on *pro hac vice* admission, Plaintiff's chosen counsel was excluded from the preliminary-injunction hearing on September 8, 2022.  Plaintiff was represented only by her spouse.  *See* ECF No. 149.

7

During the hearing, the district court stated that it would refuse to rule on Plaintiff's preliminary-injunction motion until the trial scheduled a full year later. *But see* 28 U.S.C. § 1657(a) ("[T]he court *shall expedite* the consideration of . . . any action for temporary or preliminary injunctive relief." ((emphasis added)).  The court told Plaintiff's spouse that, alternatively, she could go to trial in a "short period of time," but "without discovery."  *In re Strickland*, 87 F.4th 257, 259 (4th Cir. 2023).

The district court judge has been admonished by his home circuit, the First Circuit, for engaging in this "unfair" and "inappropriate" use of consolidation, which the First Circuit described as a "Hobson's choice."  *See Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015).  Proceeding to an expedited trial without discovery would have been especially prejudicial because the district court still *had not even admitted Plaintiff's chosen counsel*.  Plaintiff's spouse told the district court that he was "extremely uncomfortable" representing her without her chosen counsel present, but the court forced him to proceed anyway.  *See* ECF No. 149, at 4–5, 6–7, 12.

### 3.    Unexplained failure to enter parties' joint protective order

Having consolidated this case and instructed the parties to go to trial "just as soon as they are ready," ECF No. 185, at 4, the district court, without explanation, failed to rule on the parties' joint motion for a protective order for more than two months, until January 2023.  ECF Nos. 162, 181.  This unexplained delay effectively halted all meaningful discovery.

8

Defendants refused to share confidential discovery without the protective order, even though they did not timely move for a protective order as required by the rules of civil procedure. Further, Plaintiff had offered to stipulate to keep *all* discovery confidential until the protective order was entered to prevent any delay. *See* Fed. R. Civ. P. 29 (allowing "stipulations about discovery procedure"). Defendants repeatedly communicated their position to the district court, both on and off the record. *See, e.g.*, ECF No. 176, at 6 n.4. Moreover, in September 2022, Plaintiff had requested that the court require disclosure of the investigation report and disciplinary records from her EDR proceeding, but the court denied her request without explanation. *See* ECF No. 151.

During the unexplained months-long delay, Plaintiff's legal team was unable to receive meaningful discovery, including basic documents like her EDR investigation report. *See, e.g.*, ECF No. 176, at 6 n.4 (Defendants' December 2022 filing stating that they would not produce "confidential" EDR records "until the Court enters the parties' proposed protective order"). By the time the court entered the protective order, on January 19, 2023, the parties had only about one month left to complete non-expert discovery. Thus, they were forced to jointly move to extend discovery from March 1, 2023 until May 1, 2023. *See* ECF No. 187. Even with the extension, the delays in production had downstream effects, including compressing the time for depositions into the last month of discovery.

9

### 4. Unexplained refusal to consider other EDR complaints and *sua sponte* suspension of district's sealing rule

Despite these daunting obstacles, and recognizing the acute risk of angering judiciary officials and incurring career damage, Plaintiff's legal team obtained unprecedented discovery. With the support of a *Time's Up* litigation grant obtained by Professor Gersen, the team obtained thousands of pages of document production, six depositions, and expert reports in the areas of workplace investigations and lost earnings. Over their objection, Defendants were forced to disclose *four other complaints* alleging harassment, discrimination, and retaliation against the FDO. ECF No. 330. The legal team also successfully challenged Defendants' motion to amend their answer, so they had no affirmative defenses. ECF No. 206.

On April 19, 2023, Plaintiff's legal team obtained an order allowing the deposition of the Fourth Circuit's Chief Judge and denying Defendants' motion for protective order. ECF No. 203. In allowing the deposition, however, the district court refused, without explanation, to consider information regarding other EDR complaints filed against the FDO, which Plaintiff's legal team had argued was relevant to proving deliberate indifference. *See* ECF No. 199, at 11–14.

Plaintiff's legal team submitted the EDR materials under seal because Defendants had marked them as confidential and opposed their unsealing. ECF No. 201. Under Local Rule 6.1, a "party seeking to file material under seal may submit an unredacted version of the material under seal for review by the Court along with

10

the motion to seal." LCvR 6.1(d).  In compliance with Rule 6.1, Plaintiff's legal

team filed their unredacted supporting memorandum and exhibits under seal.  ECF

No. 200.  Simultaneously, the team moved to unseal the materials, arguing that

"Defendants have not shown any compelling interest" in sealing, except for the

identifying information of EDR complainants.  *See* ECF No. 201, at 1–2.

The district court responded to Plaintiff's legal team's submissions by *sua*

*sponte* suspending Local Rule 6.1 and refusing to consider materials submitted under

seal in compliance with Rule 6.1.  ECF No. 203.  The court stated that it had

"consulted only the redacted filings before it in arriving at its conclusion," and that

any documents "purportedly under seal . . . are to be returned to the sender."  *Id.* at 2.

The court further stated: "**Nothing** is to be filed in court under seal unless and until

this Court upon motion expressly so orders."  *Id.* (emphasis in original).  The court

thus *sua sponte* suspended Rule 6.1, which expressly allows a party to submit

materials under seal for the court's review pending a sealing determination, and

barred the parties from submitting any sealed materials without prior court approval.

The court did not provide any explanation for deviating from the district's sealing

procedure.  *Cf. Jackson v. Beard*, 828 F.2d 1077, 1078 (4th Cir. 1987) (local rules

"have the force and effect of law, and are binding upon the parties and the court").

Without explanation, the district court allowed the Chief Judge to be deposed

regarding his "reasoning for refusing to disqualify the Federal Public Defender," but

11

not his knowledge of other EDR complaints.  ECF No. 203, at 2.  Subsequently, having foreclosed questioning about, or even review of, other complaints, the court granted summary judgment in the Chief Judge's favor on the equal protection claim. *See* ECF No. 248-16; ECF No. 258, at 9–11.

### 5.      Professor Gersen's rebuke by another federal judge

During this period, Professor Gersen became involved in a high-profile case before another district judge in the same district where the presiding judge in this case serves.  In a bench trial involving challenges to Harvard's affirmative action policy, Professor Gersen alleged that the judge had improperly sealed evidence of "racial stereotyping" to "prevent embarrassment to Harvard witnesses."  Jeannie Suk Gersen, *The Secret Joke at the Heart of the Harvard Affirmative-Action Case*, THE NEW YORKER (Mar. 23, 2023), *available at* https://tinyurl.com/2scwvf24.  This alleged conduct bears similarities to the district court's unexplained refusal to review other EDR complaints, and may have provoked similar fears of rancor.

In an article published about this incident, Professor Gersen recounted that when she challenged the sealing, "a federal judge, in open court, *told me that I was greedy for seeking public access to court proceedings*."  *Id*. (emphasis added). Professor Gersen asserted that "I won't easily forget" the judge's conduct.  *Id.*  She published her article in March 2023, approximately one month before moving to withdraw in this case.

12

**C.    Six days before the close of discovery, Defendants' counsel insinuate wrongdoing.**

On April 25, 2023, the week after the court ordered the Chief Judge's deposition, and six days before the close of discovery on May 1, 2023, Defendants' counsel deposed Plaintiff.

During the deposition, Defendants' counsel raised a line of questioning that, without directly stating its purpose, implicated an accusation of wrongdoing. ECF No. 219-1. Plaintiff's counsel did not contemporaneously object to these questions, but later asserted an unspecified "privilege until the privilege determination, including the scope of the privilege, could be made." ECF No. 208, at 2.

As discussed below, Defendants filed this deposition testimony under seal. *See infra*, Section E. Defendants later moved to unseal this testimony, but the district court ordered it to remain sealed after Plaintiff argued that she has a right not to be "public[ly] brand[ed]" with unfounded allegations by federal officials. *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021); *see* ECF Nos. 299, 320, 327; Tr. 11/16/23, ECF No. 405, at 15. Defendants did not raise any affirmative defenses and later abandoned their allegation at trial.

**D.    Four days after Defendants' counsel insinuate wrongdoing, Plaintiff's legal team moves to withdraw *en masse* based on an unspecified "conflict" and "irreconcilable differences."**

On April 28, 2023, three days after insinuating wrongdoing during Plaintiff's deposition, Defendants' counsel informed Plaintiff's legal team that they intended to

13

move to extend discovery to challenge any assertions of privilege made by Plaintiff and to re-open her deposition on this topic. *See* ECF No. 208. The next day, on the Saturday evening of April 29, 2023, Plaintiff's entire legal team, except for her spouse, moved to withdraw *en masse*. ECF No. 207.

As the basis for the withdrawal, the legal team's motion provides one sentence, which states, in its entirety: "As cause, undersigned counsel represents that a conflict has arisen such that counsel cannot continue to represent Ms. Strickland, and there are irreconcilable differences in the attorney-client relationship." ECF No. 207, at 1. One of Plaintiff's attorneys, Harvard Law professor Jacob Gersen, had been admitted *pro hac vice* only *four days* prior to moving to withdraw, which underscores that there was no preexisting "conflict." *See* Entry Order Dated April 25, 2023.

The motion does not state whether Plaintiff's legal team provided her with "reasonable notice" of the proposed withdrawal or obtained her "written consent." *Spann v. N.C. Dep't of Pub. Safety*, No. 1:17 cv 104, 2017 U.S. Dist. LEXIS 200732, at *5 (W.D.N.C. Dec. 6, 2017). Indeed, the motion states that "Plaintiff is still considering counsel's motion and requests that the Court not act on the motion until she has had an opportunity to respond." ECF No. 207, at 1. The motion does not explain the basis for any conflict or irreconcilable differences, as required under the district's rule that a motion to withdraw show "good cause" absent the client's "written consent." LCvR 83.1(f); *Champboat Series, LLC v. In2focus Films, Inc.*,

14

No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009) ("an unspecified 'conflict'" did not show "good cause"); *Spann*, 2017 U.S. Dist. LEXIS 200732, at *5 ("Plaintiff's Counsel's Motion to Withdraw is five sentences.  It contains no showing of good cause as to why she should be allowed to withdraw.").  The motion does not even indicate whether Plaintiff's counsel "attempted to contact Defendants' counsel prior to filing [the] motion to withdraw," as required by Local Rule 7.1(b).  *Spann*, 2017 U.S. Dist. LEXIS 200732, at *2.

After the purported conflict arose during Plaintiff's deposition on April 25, 2023, Plaintiff's legal team took the Judicial Integrity Officer's deposition on April 27, 2023, and the Federal Defender's deposition on April 28, 2023.  *See* ECF No. 255-4, 12.  However, Plaintiff's legal team did not take the Chief Judge's deposition scheduled for May 16, 2023, even though the motion to withdraw had not been fully briefed, let alone granted, at that time.  *See* ECF No. 255-2; *see* LCvR 83.1(f) (motion to withdraw "shall become effective only upon Court approval").

### E.    After Plaintiff's legal team moves to withdraw, Defendants continue to insinuate wrongdoing.

After Plaintiff's legal team moved to withdraw, her remaining counsel—her spouse—asserted privilege objections to Defendants' deposition questions on Plaintiff's behalf, which her legal team had failed to assert during her deposition. *See* ECF No. 208.  On May 15, 2023, Defendants filed a motion to "strike privilege assertion and to compel deposition testimony."  ECF No. 212.

15

The stated purpose of Defendants' motion was to challenge Plaintiff's assertions of privilege. *See id.* Accordingly, Defendants were required to file their motion "under seal" pursuant to Federal Rule of Civil Procedure 26(b)(5)(B). This rule protects the rights of parties who have asserted claims of privileged information in civil proceedings. *See id.* Defendants, therefore, filed a redacted version of their motion on the public docket. ECF No. 212. They moved, unopposed, to file the unredacted version under seal. ECF No. 213. The district court promptly granted Defendants' motion to seal. *See* Entry Order Dated May 19, 2023.

Defendants' sealed motion continued to insinuate, and outright asserted, allegations of wrongdoing. ECF No. 219. In a public filing, Defendants suggested that Plaintiff may be "ineligible for reinstatement and front pay" because of the allegations in their sealed motion. *See* ECF No. 245, at 13 n.4. Because Plaintiff's legal team's motion to withdraw was still pending when Defendants filed their sealed motion, the team received service of this sealed filing alleging wrongdoing.

**F.    Defendants take no position on the motion to withdraw, even though withdrawal would be highly disruptive to the litigation; Plaintiff requests that a decision be deferred to allow her an opportunity to resolve any conflict or disagreement.**

On May 15, 2023, the same day that Defendants filed their sealed motion alleging wrongdoing, Defendants also filed a response to Plaintiff's legal team's motion to withdraw. ECF No. 214. Defendants, notably, took "no position" on the motion, even though allowing a team of four *pro bono* attorneys to withdraw at such

a late date undoubtedly would have disrupted the litigation and reasonably should

have concerned a party in their position.  *Id.* at 1.

That same day, Plaintiff also responded to the motion to withdraw:

> Because of pending issues in this litigation raised by
> Defendants that have not yet been resolved, Plaintiff
> currently lacks information that is needed to provide an
> informed response to Counsels' motion.  Given the severe
> prejudice to Plaintiff that would result from Counsels'
> withdrawal, Plaintiff respectfully requests that Counsels'
> motion be held in abeyance to allow Plaintiff to evaluate
> the ongoing developments that may affect their motion
> and to provide a more informed position to the Court.  In
> the interim, Counsels' participation is limited to portions
> of the litigation that are not associated with any
> disagreement or potential conflict of interest in order to
> protect    Plaintiff's    interests,    including    obtaining
> reimbursements for previously incurred discovery and
> expert costs covered by a litigation grant and receiving
> Plaintiff's    workplace    investigations    expert    report.
> Plaintiff's remaining counsel will continue to represent her
> before this Court.  Plaintiff requests the opportunity to
> provide a further update to the Court as soon as reasonably
> possible.

ECF No. 215, at 1–2.  Plaintiff's response reflected her position that any "potential

conflict of interest" or disagreement was speculative and hypothetical, at best, and

should not result in withdrawal until underlying determinative legal questions were

resolved.  *Id.*; *see, e.g.*, N.C. R. Prof. Cond. 1.7, cmt. 8 ("The mere possibility of

subsequent harm does not itself preclude the representation . . . .").

17

On May 22, 2023, Plaintiff's legal team filed a one-sentence reply in support of the motion to withdraw. The reply stated, without explanation, that the motion is "ripe for consideration" and requested a ruling "without delay." ECF No. 221, at 1.

> **G.** **In a text-only entry order, the district court allows Plaintiff's legal team to withdraw without inquiring into the alleged conflict, making findings of good cause, or considering the severe prejudice that would result from the withdrawal.**

The next day, on May 23, 2023, in stark contrast to its prior three-month delay in granting *pro hac vice* admission, the district court issued an order granting Plaintiff's legal team's motion to withdraw.

The district court's "text-only order" states, *in its entirety*: "Sufficient time having elapsed for the plaintiff to object to the motion to withdraw and only a request for delay having been received by the Court, the motion to withdraw is ALLOWED." Entry Order Dated May 23, 2023.

Before granting withdrawal, the district court did not inquire into the unspecified "conflict" and "irreconcilable differences," as required under the district's rules and Fourth Circuit precedent. LCvR 83.1(f); *United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014) ("When the attorney . . . seeks to withdraw, the court must thoroughly inquire into the factual basis of any conflicts asserted by counsel."). In citing Plaintiff's "request for delay" as justification to grant the motion, the court did not acknowledge that the district's rules require a finding of "good cause" absent the client's "written consent." LCvR 83.1(f).

18

Similarly, the district court did not address Plaintiff's stated concern that she would suffer "severe prejudice" due to the withdrawal, including the loss of a "litigation grant" for "discovery and expert costs." ECF No. 215. The court did not consider whether allowing a team of four *pro bono* attorneys to withdraw after the close of discovery, nine days before the summary judgment deadline, and approximately three months before trial, would be disruptive. *Cf. Wallace v. City of Hampton*, No. 2:15-cv-126, 2017 U.S. Dist. LEXIS 228032, at *14 (E.D. Va. July 20, 2017) ("[I]t is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel . . . .'" (citation omitted)). The court did not explain why deferring a decision and, in the interim, limiting the team's involvement to areas without any potential conflict or disagreement—like obtaining reimbursements for prior litigation costs and receiving Plaintiff's workplace expert investigations report—was not possible. *See* ECF No. 215, at 2; *see, e.g.*, *Towns v. Morris*, No. 93-1295, 1995 U.S. App. LEXIS 5798, at *3 (4th Cir. Mar. 22, 1995) (unpub.) (district court held motion to withdraw "in abeyance" to allow resolution of discovery dispute); *Nixon v. Majors*, No. 3:07cv413, 2008 U.S. Dist. LEXIS 73402, at *22 (W.D.N.C. Sep. 2, 2008) (court granted the plaintiff's request that "a ruling be deferred" on motion to withdraw until outstanding motions were resolved).

As a result of Plaintiff's legal team's withdrawal, just nine days before the summary judgment deadline of June 1, 2023, Plaintiff was forced to prepare for

19

summary judgment with only her spouse to assist.  *See* ECF Nos. 243, 248.  Plaintiff

and her spouse also took the Chief Judge's deposition *by themselves,* on little notice,

even though neither Plaintiff nor her spouse had ever taken a deposition as lead

counsel, and the deposition was scheduled for May 16, 2023, before Plaintiff's legal

team was granted court permission to withdraw.  ECF No. 255-2.

### H.    Without explanation, the district court reviews only Defendants' allegations but refuses to review Plaintiff's response, thereby denying her due process right to be heard.

On May 30, 2023, Plaintiff responded to Defendants' sealed filing alleging

wrongdoing, *i.e.*, their motion "to strike privilege assertion and compel deposition

testimony."  ECF No. 226.  She also moved for a protective order.  ECF No. 227.

Plaintiff objected on privilege and relevancy grounds, but also extensively

refuted Defendants' allegation of wrongdoing.  *See id.*  Because her response, like

Defendant's motion, concerned a "claim of privilege," Fed. R. Civ. P. 26(b)(5)(B),

she filed a redacted version and moved, unopposed, to file the unredacted version

under seal.  ECF No. 228.  Because the district court had *sua sponte* suspended Local

Rule 6.1, she was not allowed to "submit an unredacted version of the material under

seal for review by the Court along with the motion to seal." LCvR 6.1(d).

Even though the district court had granted Defendants' leave to file their

motion alleging wrongdoing under seal, Entry Order Dated May 19, 2023, the court,

without explanation, denied Plaintiff leave to file her response under seal, in a text-

only entry order.  *See* ECF No. 238 ("ORDER denying Motion to Seal Document").

The court thus inexplicably reviewed *only* Defendants' allegations of wrongdoing,

*without even reviewing* Plaintiff's response.  This conduct violated Plaintiff's due

process right to be heard, and afforded Defendants favorable treatment unfounded in

the law.  *See Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental

requisite of due process of law is the opportunity to be heard." (citation omitted));

ABA Model Code of Judicial Conduct 2.6 ("A judge shall accord to every person

who has a legal interest in a proceeding, or that person's lawyer, the right to be heard

according to law.").  Moreover, the court disregarded Rule 26(b)(5)(B), contrary to

the Fourth Circuit's admonition that such rules set forth "fundamental procedures to

which all civil litigants are . . . entitled."  *Greater Balt. Ctr. for Pregnancy Concerns,*

*Inc. v. Mayor & City Council Balt.*, 721 F.3d 264, 290 (4th Cir. 2013).

   Having not reviewed any of Plaintiff's arguments, the district court ruled that

"it is possible certain of the deposition questions touched on the attorney client

privilege."  ECF No. 233, at 2.  The court concluded, however, that the privilege was

"waived . . . when the *plaintiff (an attorney)* continued to testify as to that subject

matter."  ECF No. 233, at 2 (emphasis added).  The court thereby faulted *Plaintiff* for

not objecting even though she *was testifying as a witness* and represented by counsel.

   The district court ruled that "[t]he Fifth Amendment privilege has not been

waived and may be asserted during any further discovery or trial proceedings."  *Id.*

21

It thus affirmed that Plaintiff had a reasonable fear of prosecution, but without even allowing her to be heard. *Id.* The court granted Defendants leave to re-open Plaintiff's deposition. *Id.* Without explanation, the court granted Defendants twice the deposition time they asked for and leave to serve requests for production, which they did not even request. *Id.*

I. **Defendants do not raise any affirmative defenses, and later concede that the conduct they alleged does not even violate the rules of professional responsibility.**

Defendants did not raise an affirmative defense of after-acquired evidence, which would be required to allege that Plaintiff was ineligible for reinstatement or front pay due to alleged misconduct. *Compare* ECF No. 359, at 1 (Defendants' statement one week before trial that "[t]here is no dispute that Defendants' Amended Answer does not contain any affirmative defenses"), *with Rinaldi v. CCX, Inc.*, No. 3:05-cv-108-RJC, 2009 U.S. Dist. LEXIS 16101, at *22 (W.D.N.C. Feb. 18, 2009) ("To prevail on the after-acquired evidence defense, [the employer] must establish not only that [the plaintiff] engaged in the alleged misconduct, but that 'the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge.'" (citation omitted)); *see* Fed. R. Civ. P. 8(c). Defendants did not offer any other valid evidentiary purpose for raising these allegations.

22

Nonetheless, Defendants pursued Plaintiff's re-opened deposition, including using it as a bargaining chip to obtain a delay in the trial date to pursue mediation. *See* ECF No. 260, at 2 (noting that the parties agreed to stay the deadline for the re-opened deposition).  Because Plaintiff was severely intimidated by Defendants' allegations and the district court's endorsement of the Fifth Amendment assertion without even allowing her to be heard, she retained criminal defense counsel to represent her in the re-opened deposition.  *See* ECF No. 276, at 2.

On September 27, 2023, after mediation failed, Plaintiff moved for a renewed protective order and sanctions.  ECF Nos. 270, 272.  She asserted that the district court had denied her due process right to be heard, ECF No. 272, at 18–21, and that Defendants' counsel "misrepresented the law," "failed to disclose controlling adverse authority," and "failed to correct their misrepresentations."  ECF No. 270-1, at 1.

Defendants *conceded* that the conduct they alleged "falls short of violating [Plaintiff's] particular bar's rules of professional responsibility," but continued to insinuate an unexplained "potential violation of law or unethical conduct."  ECF No. 276, at 4.  Defendants also stated that they were not "making any allegation," but rather seeking "additional inquiry."  ECF No. 294, at 1–2.

The district court summarily denied Plaintiff's motion for protective order, stating that "[t]he grounds raised are obscure at best."  ECF No. 286, at 1.  The court orally denied the motion for sanctions as "without merit."  ECF No. 405, at 12.  The

court, again, denied Plaintiff's motion to seal and did not review the arguments in her
unredacted filings before ruling against her. *Id.* Indeed, the court did not even rule
on another motion to seal that Plaintiff had filed to cure any possible deficiencies in
her original motion. *See* ECF No. 303. In stark contrast, the district court instructed
Defendants to file the transcript of her re-opened deposition "should it come up
during trial," and "under seal." ECF No. 405, at 13, 15.

**J.** **Defendants abandon their allegation at trial, but it is too late to avoid severe prejudice to Plaintiff.**

Plaintiff and her spouse, neither of whom had ever tried a case (which they
informed the district court), were forced to try this case by themselves against four
trial attorneys from the Department of Justice. *See* ECF No. 429, at 284 n. 148
("Before trial Ms. Strickland and her husband told the Court that neither one had ever
tried a case. Now you have. *Quite an experience, isn't it?*" (emphasis added)).

Plaintiff did not present live witnesses, lacking the resources or experience to
do so, and, quite frankly, being severely intimidated. Plaintiff presented 450 pages
of proposed findings and conclusions of law, supported by nine witness depositions
(including Defendants' depositions of her experts) and documents that Defendants
disclosed in discovery. ECF No. 364, at 4; ECF Nos. 370, 415.

After the loss of her litigation grant, Plaintiff could not afford to depose her
experts or have them testify at trial. Plaintiff was, therefore, forced to rely on
Defendants' depositions of her experts in support of her claims, which Plaintiff and

24

her spouse had defended by themselves, despite lacking any prior experience in defending expert civil depositions. *See, e.g.*, ECF No. 362. Before trial, the district court stated that "it doesn't seem to me" that Vida Thomas, Plaintiff's workplace investigations expert, "qualifies under [Fed. R. Evid.] 702," even though it acknowledged that Plaintiff had not even had the opportunity to be heard on the issue. ECF No. 405, at 8. The district court stated that, "before we get any opinions from her, we'll let the defense cross-examine as to the question of her qualifications to actually testify," even though Defendants had cross-examined Ms. Thomas for more than five hours in her deposition. *Id.* In its opinion, the district court stated that "the Court does not rely on Thomas's opinion." ECF No. 429, at 253 n.130.

Terrified and alone, Plaintiff did not testify. Before trial, Defendants' counsel informed Plaintiff's spouse that they may use at trial "confidential" portions of her deposition transcripts, presumably including their insinuations of wrongdoing, as no other significant portions were marked confidential. *See* ECF No. 374-1. Defendants also subpoenaed Plaintiff as an adverse witness. ECF No. 399, at 38–40. The district court denied Plaintiff's motion to seal the courtroom to protect her due process right not to be publicly branded with unfounded allegations, presumably based on its review of the sealed deposition transcripts. ECF No. 374.

Having not testified in her case-in-chief, Plaintiff asserted her Fifth Amendment right not to testify as an adverse witness for Defendants. ECF No. 399,

25

at 38–40.  The district court overruled her Fifth Amendment assertion and forced her
to testify.  *Id.*  The court denied her request to file attorney-client communications
from her former counsel supporting her assertion of privilege *in camera*.  *See id.*  The
court also did not allow Plaintiff to assert objections on her own behalf, even though
she had entered a notice of appearance, and the court previously had faulted her for
not raising objections at her own deposition despite being represented.  *Id.* at 37.

Later, however, the court sustained an objection made by Plaintiff's spouse on
the ground that testimony was not "relevant" unless Defendants' counsel "represent
that this is violative of the law."  ECF No. 399, at 108.  Again, having reviewed the
sealed depositions and denied Plaintiff's motion to seal the courtroom, the court
presumably was warning Defendants' counsel to proceed cautiously before making
allegations in open court.  *See, e.g.*, N.C. R. Prof. Cond. 3.4(e) ("[A] lawyer shall not
. . . allude to any matter that the lawyer does not reasonably believe is relevant [or]
ask an irrelevant question that is intended to degrade a witness . . . .").  Defendants
did not raise their allegation at trial.  *See* ECF Nos. 399–404.

The district court denied Defendants' motion for judgment pursuant to Federal
Rule of Civil Procedure 52(c).  ECF No. 406.  Without the assistance of a legal team,
Plaintiff proceeded to cross-examine all seven of Defendants' witnesses *by herself*.
Defendants' witnesses included not only high-level judiciary officials, such as the
Circuit Executive and the former Judicial Integrity Officer, but also the First

Assistant who harassed her (who is still employed by the FDO, although no longer in a supervisory position) and the former Defender who retaliated and discriminated against her (who was not reappointed). Plaintiff was forced to personally confront these individuals as both trial counsel and the victim of their misconduct. During closing arguments, the district court even observed (via a *remote trial* on Zoom), that the former Defender "seems quite hostile" to Plaintiff. ECF No. 398, at 11.

In its opinion, the district court described Plaintiff's Fifth Amendment assertion as "silliness." ECF No. 429, at 248 n. 148. In ruling for Defendants, it found that Plaintiff "made a good faith claim of sexual harassment," and "[a]s a result, she saw her desired career in public service stunted and ultimately withered such that her services have been lost to federal public service." *Id.* at 278. "That she is without redress under the present legal framework," the court concluded, "cannot be a cause for congratulation on the part of federal judges or administrators." *Id.* It stated that, if its ruling is reversed, "another district judge" will be assigned. *Id.*

## ARGUMENT

The procedural irregularities giving rise to this motion may be complex, but the relevant legal principles are not. A party has a due process right to be represented by their counsel. *See Cavallo v. Star Enter.*, No. 97-1707, 1998 U.S. App. LEXIS 15114, at *9 (4th Cir. July 7, 1998) (unpub.). Absent a client's "written consent," a motion to withdraw must show "good cause." LCvR 83.1(f).

27

The district court erred by granting the withdrawal without inquiring into the alleged conflict, making findings of good cause, or considering the severe, irreparable prejudice to Plaintiff that would result from withdrawal. Without explanation, the district court did not even consider Plaintiff's request to defer a decision on the motion until underlying legal questions were resolved. This commonsense solution would have protected Plaintiff's interests and allowed her an opportunity to resolve any potential conflict, while also not requiring her legal team to participate in any portions of litigation affected by an alleged conflict.

As a result of the district court's erroneous order, Plaintiff has suffered severe and irreparable prejudice, which continues during this appeal. Indeed, the merits of this appeal cannot be fairly adjudicated without first determining whether it is appropriate for Plaintiff to be representing herself, with only her spouse to assist her.[2] *See* Doc. 15 (notice of appearance). Because the district court's grant of withdrawal "was not warranted[,] . . . in consequence the district court's further rulings," including entry of judgment in favor of Defendants, "cannot stand." *Shaffer*, 966 F.2d at 144. Consistent with Fourth Circuit precedent, this Court must "reverse . . . and remand for further proceedings." *Id.*

---

[2] Plaintiff's motion to disqualify or, alternatively, disclose information also remains pending. *See* Doc. 12.

28

**I.      The District Court's Order Is Not Entitled to Deferential Review.**

In ruling on a motion to withdraw, this Court generally determines whether the district court "has abused its discretion." *Blackledge*, 751 F.3d at 194. In this inquiry, the Court "review[s] the court's factual findings for clear error and its legal conclusions de novo." *Id.* However, when the district court "failed to engage in an adequate inquiry," its factual determinations are "not entitled to clear error review." *Id.* at 195. Moreover, "[a]n error of law is, by definition, an abuse of discretion." *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009).

Applying these principles, the proper standard of review is *de novo*.

First, the question of whether ethical principles require withdrawal of counsel, including "for a conflict of interest," is a legal question reviewed *de novo*. *Cf. Shaffer*, 966 F.2d at 145. Although *Shaffer* involved a motion to disqualify filed by opposing counsel, the Fourth Circuit's instruction that district courts must thoroughly examine the reasons for denying "a litigant's chosen counsel" applies equally here. *Id.* This Court, in turn, must determine whether the district court's order "was predicated upon a proper application of applicable ethical principles." *Id.*

Second, the district court did not make any factual findings warranting clear error review. *Cf. Blackledge*, 751 F.3d at 194 ("An inquiry into the reasons for a defendant's dissatisfaction with his or her lawyer is necessary for the trial court to determine whether good cause for substitution of counsel exists."). It bears repeating

29

that the order states, in its entirety: "Sufficient time having elapsed for the plaintiff to
object to the motion to withdraw and only a request for delay having been received
by the Court, the motion to withdraw is ALLOWED."  Entry Order Dated May 23,
2023.  Because the court did not make any inquiry, let alone "adequate inquiry," its
order "is not entitled to clear error review."  *Blackledge*, 751 F.3d at 195.

## II.     The District Court Erred By Granting Withdrawal Without Making a Finding of Good Cause or Considering the Prejudice to Plaintiff.

The district court's order is subject to summary reversal because the court
failed to make *any* finding of good cause.  The district court also failed to consider
the severe prejudice to Plaintiff—and to the administration of justice—that would
result from withdrawal, which is an independent basis for reversal.

### A.     An unspecified "conflict" and "irreconcilable differences" were insufficient to show good cause.

The "good cause" requirement in Local Rule 83.1 reflects the professional
ethics rules of this district, which are "binding upon the parties and the court."
*Jackson*, 828 F.2d at 1078; *see* LCvR 83.1(a).  Under these rules, "[i]t is fundamental
that an attorney is not at liberty to abandon a case without (1) justifiable cause, (2)
reasonable notice to his client, and (3) the permission of the court."  *Champboat
Series*, 2009 U.S. Dist. LEXIS 143071, at *2 (quoting *Williams and Michael, P.A. v.
Kennamer*, 71 N.C. App. 215, 216 (1984)).  The purpose of these rules is "to protect
the interest" of the client.  *Spann*, 2017 U.S. Dist. LEXIS 200732, at *5.

30

Here, Plaintiff's legal team moved to withdraw based on two, unspecified grounds: a "conflict" and "irreconcilable differences." ECF No. 207. Without providing any further explanation, particularly under the circumstances of this case, neither of these unspecified grounds was sufficient to justify withdrawal.

A lawyer "shall withdraw from representation" of a client only in limited circumstances, which are specified in North Carolina Rule of Professional Conduct 1.16. Under this rule, a mandatory ground for withdrawal is a conflict of interest, within the meaning of Rule 1.7 of the North Carolina Rules of Professional Conduct. *See* N.C. Prof. Cond. 1.16 (a)(1). Counsels' cursory motion did not allege any actual conflict of interest mandating withdrawal, let alone a conflict that applied to all four attorneys. *Cf. Shaffer*, 966 F.2d at 145 (court must determine whether conflict is "predicated upon a proper application of applicable ethical principles").

By contrast, unspecified "irreconcilable differences" are not a mandatory ground for withdrawal. *See* N.C. R. Prof. Cond. 1.16(a). At most, this basis is a *permissive* ground for withdrawal and requires a finding of "good cause," which was noticeably absent here. N.C. R. Prof. Cond. 1.16(b)(9).

As courts in this district have explained, a motion that "generally indicated that an unspecified 'conflict' had arisen" is insufficient to show "good cause." *Champboat Series*, 2009 U.S. Dist. LEXIS 143071, at *3; *see Spann*, 2017 U.S. Dist. LEXIS 200732, at * 3, 5 (denying motion that "has not referenced the specific

provision of the rule under which [the] motion to withdraw is being made" and

"contains no showing of good cause"). Likewise, the Fourth Circuit has instructed

that "when the attorney . . . seeks to withdraw, the court must thoroughly inquire into

the factual basis of any conflicts asserted by counsel." *Blackledge*, 751 F.3d at 194.

Although *Blackledge* involved review of an order denying withdrawal, the Court has

similarly examined the adequacy of the district court's findings when granting

withdrawal. *Cf. Cavallo*, 1998 U.S. App. LEXIS 15114, at *4 (district court did not

err in granting withdrawal based on findings that the clients "had rejected [the

attorney's] legal advice" and "threatened [him] with malpractice suits," and the

attorney "offered to provide additional testimony in camera if the district court

deemed it necessary"). Without inquiring into the alleged basis for withdrawal or

making any factual findings, the district court could not, as a matter of law, have

determined that ethical principles required withdrawal. *See Shaffer*, 966 F.2d at 145.

Moreover, even if the district court believed it would be inappropriate to

inquire into the alleged basis for withdrawal (which, of course, was not stated as the

basis for its order), Plaintiff had requested a procedure for determining whether any

conflict or disagreement could be resolved that would have protected her interests

without requiring disclosure of any further information regarding the attorney-client

relationship. *See* ECF No. 215. Specifically, Plaintiff requested that a decision on

the motion be deferred until determinative legal questions could be resolved. *Id.* at

1–2.  In the interim, her legal team would not be required to participate in any portions of litigation affected by any potential conflict or disagreement.  *See id.*

District courts within this Circuit have allowed such motions to be deferred upon request by the client, or *sua sponte* by the court.  *Towns*, 1995 U.S. App. LEXIS 5798, at *3 (holding motion to withdraw "in abeyance"); *Nixon*, 2008 U.S. Dist. LEXIS 73402, at *22 (granting request that "a ruling be deferred").  This course would have been especially appropriate because the motion to withdraw asserted an unspecified "disagreement," *Towns*, 1995 U.S. App. LEXIS 5798, at *3, was "quite vague," *Nixon*, 2008 U.S. Dist. LEXIS 73402, at *22, and, in any event, did not allege that immediate withdrawal of all four attorneys was necessary.  Given the drastic and immediate consequences that would result from withdrawal, including loss of litigation funding, *see* ECF No. 215, at 1, the district court's failure even to consider this option was an error of law and a clear abuse of discretion.

Plaintiff's request that the motion be held in abeyance reflected her position that any potential conflict was only hypothetical and did not meet the requirements for mandatory withdrawal.  *See* N.C. R. Prof. Cond. 1.16(a)(1).  The Fourth Circuit has admonished that disqualification for a conflict of interest "may not be rested on mere speculation that a chain of events whose occurrence theoretically could lead counsel to act counter to his client's interests might in fact occur."  *Shaffer*, 966 F.2d at 145.  Rather, "some stronger objective indicator—even of 'likelihood'—than

33

simple judicial intuition is needed to warrant the drastic step of disqualification of counsel." *Id.* at 145–46. This conclusion is bolstered by the commentary to North Carolina Rule of Professional Conduct 1.7, which states that "[t]he *mere possibility of subsequent harm* does not itself preclude the representation . . . . The critical questions are *the likelihood that a difference in interests will eventuate* and, if it does, whether it will materially interfere with the lawyer's independent professional judgment." N.C. R. Prof. Cond. 1.7 cmt. 8 (emphasis added).

Here, litigation of the issues Defendants had raised would have allowed Plaintiff and her legal team to determine whether an actual—as opposed to speculative or hypothetical—conflict of interest existed and, if even a conflict did exist, whether it was waivable. *See* N.C. R. Prof. Cond. 1.7(b); *see also id.* cmt. 22 (describing circumstances under which "a lawyer may properly request a client to waive conflicts that might arise in the future"). For example, a ruling that Defendants' insinuations were not relevant (*i.e.*, the conclusion the court reached at trial), pertained to privileged information, were untimely or not properly raised, or otherwise lacked merit, would have dissipated the basis for any potential conflict of interest or disagreement. Whether there was any basis for withdrawal, grounded in applicable ethical principles, required resolution of the issues Defendants had raised.

That opportunity to resolve any potential conflict or disagreement before the litigation was entirely disrupted was, however, unjustifiably cut short. First, as

already discussed, the district court granted the motion to withdraw without making any finding of good cause, and without explanation, rejected Plaintiff's request that the motion be held in abeyance. Entry Order Dated May 23, 2023. Second, without explanation, and in blatant violation of due process, the district court denied Plaintiff leave to file under seal her response to Defendants' "motion to strike privilege and compel deposition testimony"—*i.e.*, their sealed filing insinuating wrongdoing—and refused even to review her arguments before ruling against her. *Supra*, Section H. The district court repeated this pattern of denying Plaintiff an opportunity to be heard when it denied her renewed motion for a protective order and sanctions. *See id.*

Allowing Plaintiff to be heard on Defendants' allegations was not only required under principles of due process (and a *binding* rule of civil procedure), but it also would have given her an opportunity to resolve any potential conflict or disagreement with her counsel. In ruling against Plaintiff without "having read or considered the briefs which [she] submitted," and based only on information "derived from" Defendants, the district court's rulings were fundamentally unfair and biased in favor of Defendants. *Morgan v. United States*, 298 U.S. 468, 478 (1936). Indeed, the Supreme Court has stressed that the opportunity to be heard pertains to "fundamental requirements of fairness which are of the essence of due process." *Morgan v. United States*, 304 U.S. 1, 19 (1938).

Plaintiff's position that there was no actual conflict was validated when Defendants abandoned their allegation, but it was too late to prevent severe prejudice.  Defendants failed to assert any affirmative defenses.  Defendants also conceded that the conduct they had alleged was not a violation of the rules of professional responsibility and even stated that they did not make an allegation, but merely sought additional inquiry.  *Supra*, Section I.  Ultimately, Defendants' counsel did not raise this allegation at trial, confirming it was not relevant.  *Supra*, Section J. The district court's opinion, likewise, does not mention this allegation and, tellingly, even describes Plaintiff's attempt to assert the Fifth Amendment—which it had previously upheld, *see* ECF No. 233, at 2—as "silliness."  ECF No. 429, at 248 n. 148.  These are the very issues she had sought to address earlier in the litigation to resolve any potential conflict, which the district court unfairly would not allow.

The district court lost sight of its duty on a motion to withdraw to "protect the interest" of the client.  *Spann*, 2017 U.S. Dist. LEXIS 200732, at *5.  Before granting withdrawal, the court had alternative options, including conducting further inquiry. Importantly, the burden was *not* on Plaintiff to show that withdrawal was not justified, but rather on her legal team to show "good cause" and the district court to so find, which it failed to do.  LCvR 83.1.  The district court effectively treated Plaintiff's request for abeyance as justification to abdicate its duty to find good cause.  This was wrong and resulted in a miscarriage of justice.

36

**B.** **The district court's failure to consider whether Plaintiff would be prejudiced by withdrawal of four *pro bono* attorneys, leaving only her spouse to represent her, is an independent basis for reversal.**

Even if good cause exists for withdrawal, "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation." N.C. R. Prof. Cond. 1.16(c). Here, the district court failed to "consider the disruptive impact the withdrawal would have." *Patterson v. Gemini Org., Ltd.*, No. 99-1537, 2000 U.S. App. LEXIS 29505, at *7 (4th Cir. Nov. 17, 2000) (unpub.). This failure is a separate basis for reversal.

"[I]t is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel." *Wallace*, 2017 U.S. Dist. LEXIS 228032, at *14 (citation omitted). Specifically, a district court should consider "the disruptive impact that granting the motion to withdraw would have on the client, her prosecution of the case, and the effective administration of justice." *Clayton v. Dickens*, No. 7:08-CV-00592, 2009 U.S. Dist. LEXIS 118259, at *3 (W.D. Va. Dec. 18, 2009).

Here, granting withdrawal was severely disruptive. It resulted in Plaintiff having to represent *herself*, *see* ECF No. 257 (notice of appearance), *with only her spouse* to assist, against four trial attorneys from the Department of Justice and officials of the federal judiciary. *Supra*, Section J. It resulted in the loss of her litigation funding for discovery and experts. ECF No. 215, at 1. It required Plaintiff, and her spouse, to litigate this case—involving novel constitutional claims against

37

judiciary officials—through summary judgment, pretrial motions, and trial, even though neither of them had *ever* previously tried a case. ECF No. 429, at 284 n. 148.

Yet, the district court failed even to consider the "disruptive impact" that granting withdrawal would have "on the client [and] her prosecution of the case." *Clayton*, 2009 U.S. Dist. LEXIS 118259, at *3. The district court also failed to consider the impact of the withdrawal on the "effective administration of justice." *Id.* Disturbingly, the court's order contains *no* indication that it considered the public's substantial interest in seeing a fair resolution of exceptionally important constitutional claims against judiciary officials. Entry Order Dated May 23, 2023.

The outcome of this case will affect the rights of the judiciary's approximately 30,000 employees, who are not covered by the civil rights laws that protect other private and public sector employees. *See Strickland*, 32 F.4th at 349 n.9 ("[F]ederal judiciary employees have no remedies under the Civil Service Reform Act and are not covered by Title VII of the Civil Rights Act."). The district court's failure to even consider this public interest fosters the perception that rules were disregarded to allow judiciary officials to win at all costs. Likewise, Defendants' counsels' conspicuous failure to raise any concerns about the obvious disruption implicates the "duty of all government lawyers to seek just results rather than the result desired by a client." ABA Committee on Professional Ethics, Formal Op. 342, 62 A.B.A. J. 57 (1975). These derelictions of duty, if allowed to stand, will enable justified public

38

cynicism and corrode the judiciary's integrity. It is crucially important that, in a case of first impression involving challenges to the judiciary's handling of workplace harassment, the public be confident that the ruling was obtained fairly and in the interests of justice rather than for Defendants' benefit.

## III.   The District Court's Error Was Not Harmless.

A district court's error on a motion to withdraw is reviewed for harmlessness. *Cf. Blackledge*, 751 F.3d at 197. Here, the district court's error was not harmless. To the contrary, it was, self-evidently, severely prejudicial.

Attorneys, no less than other litigants, are discouraged from representing themselves for good reasons. Self-represented litigants face heightened pressures due to the lack of objectivity, the burden of managing their emotions, and the need to navigate complex legal procedures while simultaneously being personally invested in the outcome. Moreover, attorneys, who practice regularly before courts, are acutely aware of the potential for a negative perception from judges and opposing counsel towards "pro se" litigants. This stigma applies equally to a self-represented attorney's spouse, who is also personally invested. Thus, it is no solution to say that Plaintiff was "represented" by her spouse. Adding to the stigma, this is a high-profile case, and the sudden withdrawal caused Plaintiff and her spouse to face extra public scrutiny, adding to the immense pressure they faced. These commonsense considerations, alone, are enough to show that the error was not harmless.

By contrast, Plaintiff's team of four *pro bono* attorneys, including two Harvard Law professors, brought resources and legitimacy that Plaintiff and her spouse could not have acquired on their own. Indeed, the intractable difficulty in obtaining counsel who are willing to take on the reputational and financial risk to represent judiciary employees has been discussed in a Federal Judicial Center report and a congressional hearing. *Supra*, Section A. Given these obstacles, obtaining the counsel that Plaintiff had was nothing short of a miracle.

Given the well-known hurdles to obtaining counsel in this context, a reasonable person could question whether knowledge of this difficulty informed the unexplained and seemingly arbitrary hurdles to litigating this case imposed by the district court, like failing to rule on a routine *pro hac vice* motion for nearly *three months*. Unsurprisingly, these hurdles had strained the attorney-client relationship to the point of breaking by the time of the motion to withdraw. *Supra*, Section B.

Besides the stigma of proceeding effectively "pro se," Plaintiff suffered concrete prejudice. Left to fend on her own, with only her spouse helping her against the Department of Justice and officials of the judiciary, this was not a fair fight.

Plaintiff and her spouse were forced to undertake unprecedented, time-consuming, and at times, extremely intimidating, tasks with *no* outside resources or support. These tasks included deposing the Fourth Circuit's Chief Judge; defending Defendants' depositions of Plaintiff's experts; completing summary judgment filings

40

and motions *in limine*; preparing proposed findings of fact; preparing to cross-examine seven judiciary official witnesses; and being deposed for a second time with representation by criminal defense counsel due to Defendants' insinuations. *See supra*, Section C, D, E, H, I, J. Because Plaintiff and her spouse do not have civil litigation backgrounds, they had no prior experience in most of these tasks. They also had to manage the acute fear and intimidation caused by Defendants' insinuations and the district court's unexplained denial of an opportunity to be heard, which caused overwhelming anxiety and stress.

Plaintiff also lost her litigation funding due to the withdrawal. Accordingly, she lacked the means to depose her expert witnesses or call them to testify live at trial. Relying on Defendants' deposition of Plaintiff's workplace investigations expert, the district court rejected her expert's opinion. *Supra*, Section J.

Despite the enormous obstacles Plaintiff faced, she presented a comprehensive case-in-chief in compliance with the rules of evidence and civil procedure. *See, e.g.*, ECF No. 404 (admitting Plaintiff's exhibits). The district court's opinion includes over 200 pages of troubling findings about Defendants' handling of her sexual harassment claim, which largely track Plaintiff's proposed findings. *Compare* ECF No. 370, at 1–372 (Plaintiff's proposed findings totaling over 350 pages), *with* ECF No. 385, at 1–29 (Defendants' proposed findings totaling less than 30 pages). The district court's opinion indicates that this was a close case, which Plaintiff lost

because "she is without redress under the present legal framework."  ECF No. 429, at 278.  This conclusion begs the question of whether the outcome would have been different had Plaintiff not been forced to represent herself.

Plaintiff continues to be prejudiced to this day, including by being forced to represent herself, with only the help of her spouse, in this appeal.  Indeed, components of the appeal, like oral argument, risk creating a humiliating spectacle where Plaintiff will be required to argue for her own cause, like she was forced to do in the district-court proceeding.  *See, e.g.*, ECF No. 398, at 20–40.  To prevent further prejudice, this Court should reverse now, before reaching the merits.

## CONCLUSION

This Court should summarily reverse the district court's order erroneously granting the motion to withdraw and remand for further proceedings.

Appellees oppose this motion.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

42

# APPENDIX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | |
|---|---|
| **CARYN DEVINS STRICKLAND,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | )    **Civil No. 1:20-cv-00066-WGY** |
| | ) |
| **UNITED STATES,** *et al.,* | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

### <u>MOTION TO WITHDRAW</u>

NOW COMES undersigned counsel and respectfully moves to withdraw from further representation of Plaintiff, Caryn Devins Strickland.

As cause, undersigned counsel represents that a conflict has arisen such that counsel cannot continue to represent Ms. Strickland, and there are irreconcilable differences in the attorney-client relationship.

Plaintiff is still considering counsel's motion and requests that the Court not act on the motion until she has had an opportunity to respond. In the interim, Plaintiff's remaining counsel will represent her interests in this litigation.

Because Ms. Strickland has other counsel in this matter, undersigned counsel does not feel it is necessary to provide her last known address in a public filing pursuant to LCvR 83.1(f).

1

This the 29th day of April, 2023.

Respectfully Submitted,

*/s/ Jeannie Suk Gersen*

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

Olivia Warren
N.C. Bar 54525
Thomas, Ferguson & Beskind, LLP
119 East Main Street
Durham, North Carolina 27701
919-682-5648
warren@tbflawyers.com

Philip Andonian
D.C. Bar No. 490792
CALEB ANDONIAN PLLC
1100 H Street, N.W., Ste. 315
Washington, D.C. 20005
202-953-9850
phil@calebandonian.com

Jacob Ezra Gersen
1563 Massachusetts Ave.
Cambridge, MA 02138
857-288-9151
Jacob.Gersen@Gersen.com

*Counsel for Plaintiff*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

| | |
|---|---|
| CARYN DEVINS STRICKLAND, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
|      Defendants. | ) |

**<u>RESPONSE TO MOTION TO WITHDRAW</u>**

On April 29, 2023, certain Plaintiff's counsel moved to withdraw from further representation of Plaintiff in this matter.  *See* ECF No. 207.  Defendants take no position on that Motion.


Dated: May 15, 2023

Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CARLOTTA P. WELLS
Assistant Branch Director

*/s/ Joshua Kolsky*
JOSHUA KOLSKY
Senior Trial Counsel
MADELINE MCMAHON
RACHAEL WESTMORELAND
DANIELLE YOUNG
Trial Attorneys, Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW, Room 11526
Washington, DC 20001
Tel.: (202) 305-7664

1

Email: joshua.kolsky@usdoj.gov

*Counsel for Defendants*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | |
|---|---|
| **CARYN DEVINS STRICKLAND,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| **v.** | )     **Civil No. 1:20-cv-00066-WGY** |
| | ) |
| **UNITED STATES,** *et al.,* | ) |
| | ) |
| *Defendants.* | ) |

### PLAINTIFF'S RESPONSE TO MOTION TO WITHDRAW

In response to Counsels' Motion to Withdraw, ECF No. 207, Plaintiff Caryn

Devins Strickland hereby states the following:

Because of pending issues in this litigation raised by Defendants that have

not yet been resolved, Plaintiff currently lacks information that is needed to

provide an informed response to Counsels' motion.  Given the severe prejudice to

Plaintiff that would result from Counsels' withdrawal, Plaintiff respectfully

requests that Counsels' motion be held in abeyance to allow Plaintiff to evaluate

the ongoing developments that may affect their motion and to provide a more

informed position to the Court.  In the interim, Counsels' participation is limited to

portions of the litigation that are not associated with any disagreement or potential

conflict in order to protect Plaintiff's interests, including obtaining reimbursements

for previously incurred discovery and expert costs covered by a litigation grant and

1

receiving Plaintiff's workplace investigations expert report.  Plaintiff's remaining

counsel will continue to represent her before this Court.  Plaintiff requests the

opportunity to provide a further update to the Court as soon as reasonably possible.

This the 15th day of May, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

### REPLY IN SUPPORT OF MOTION TO WITHDRAW

Undersigned counsel represent that their Motion to Withdraw filed on April 29, 2023, at ECF No. 207, is presently ripe for consideration, and therefore respectfully request that the Court consider and rule on their motion without delay.

This the 22nd day of May, 2023.

Respectfully Submitted,

*/s/ Jeannie Suk Gersen*

Jeannie Suk Gersen
Hauser Hall 510
1563 Massachusetts Ave.
Cambridge, MA 02138
617-496-5487
jsuk73@gmail.com

1

Olivia Warren
N.C. Bar 54525
Thomas, Ferguson & Beskind, LLP
119 East Main Street
Durham, North Carolina 27701
919-682-5648
warren@tbflawyers.com

Philip Andonian
D.C. Bar No. 490792
CALEB ANDONIAN PLLC
1100 H Street, N.W., Ste. 315
Washington, D.C. 20005
202-953-9850
phil@calebandonian.com

Jacob Ezra Gersen
1563 Massachusetts Ave.
Cambridge, MA 02138
857-288-9151
Jacob.Gersen@Gersen.com

*Counsel for Plaintiff*

2

APPEAL,CLOSED,IAC

# U.S. District Court
## Western District of North Carolina (Asheville)
## CIVIL DOCKET FOR CASE #: 1:20-cv-00066-WGY

Strickland v. United States of America et al
Assigned to: District Judge William G. Young
Case in other court:  4th Circuit, 21-01346 (T)
                    4th Circuit - Petition for Writ of Mandamus,
                    23-02132 (T)
                    4th Circuit - Petition for Writ of Mandamus,
                    24-01353
                    4th Circuit, 24-02056
Cause: 28:1331 Fed. Question: Civil Rights Violation

Date Filed: 03/03/2020
Date Terminated: 08/16/2024
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

| Date Filed | # | Docket Text |
|---|---|---|
| 05/23/2023 | | **TEXT-ONLY ORDER granting <u>207</u> Motion to Withdraw as Attorney. Attorney Jeannie Suk Gersen; Olivia Warren; Phil Andonian and Jacob Ezra Gersen terminated.** *Text of Order: Sufficient time having elapsed for the plaintiff to object to the motion to withdraw and only a request for delay having been received by the Court, the motion to withdraw is ALLOWED. So Ordered.* **Entered by District Judge William G. Young on 5/23/2023.** (Gaudet, Jennifer) (Entered: 05/23/2023) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/09/2024 10:38:22 | | |
| **PACER Login:** | carynstrickland26 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-00066-WGY Start date: 5/23/2023 End date: 5/23/2023 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |