FILED: December 17, 2024

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 24-2056
(1:20-cv-00066-WGY)

———————————

CARYN DEVINS STRICKLAND

　　　　　Plaintiff - Appellant

v.

NANCY L. MORITZ, The Hon., in her official capacity as Chair of the Judicial
Conference Committee on Judicial Resources; ROBERT J. CONRAD, JR., in his
official capacity as Director of the Administrative Office of the United States
Courts; ALBERT DIAZ, The Hon., in his official capacity as Chief Judge of the
Fourth Circuit and as Chair of the Judicial Council of the Fourth Circuit; JAMES
N. ISHIDA, in his official capacity as Circuit Executive of the Fourth Circuit and
as Secretary of the Judicial Council of the Fourth Circuit; JOHN G. BAKER, in
his official capacity as Federal Public Defender of the Federal Public Defender for
the Western District of North Carolina

　　　　　Defendants - Appellees

———————————

O R D E R

———————————

Caryn Devins Strickland moves to disqualify Judges Duane Benton and Susan Graber from hearing her pending appeal in this employment-discrimination case. For the reasons set forth below, her motion is DENIED.

## I.     BACKGROUND

Strickland is a lawyer who formerly worked at the Federal Public Defender's Office for the Western District of North Carolina. She alleges that her direct supervisor sexually harassed her and that various other employees and officials at the Fourth Circuit retaliated against her or were deliberately indifferent to the harassment by her supervisor. In 2020, Strickland filed suit against several parties, including the United States of America, the Chief Judge of the Fourth Circuit in his official capacity, and the then-Director of the Administrative Office of the United States Courts (AO) in his official capacity. She asserted claims for violation of her due-process and equal-protection rights under the Fifth Amendment, as well as claims under 42 U.S.C. §§ 1985(3) and 1986.

After lengthy pretrial proceedings and interim appeals in which a number of Strickland's claims were dismissed, her remaining claims proceeded to a bench trial in December 2023. In August 2024, the district court issued a 295-page opinion that ruled against Strickland on all of her remaining claims. Strickland has filed a timely notice of appeal, but a briefing schedule has been deferred at her request pending the outcome of her motion to recuse.

2

Strickland's present motion does not concern the merits of her case, but rather is a challenge to the impartiality of the panel of judges selected to decide the appeal. Because Strickland's case implicates the Fourth Circuit, all of the Fourth Circuit's district and circuit judges recused themselves. The Chief Justice of the United States was therefore required by 28 U.S.C. § 291(a) to designate a visiting district judge, as well as a panel of visiting circuit judges. As this court explained in a prior appeal in this case, "[i]t is undisputed that, in practice, the Chief Justice discharges that responsibility with assistance from the Judicial Conference's Intercircuit Assignment Committee and AO staff." *Strickland v. United States*, 32 F.4th 311, 340 (4th Cir. 2022).

AO Senior Staff Attorney Anna McKenna attested that she was responsible for recommending judges for the Chief Justice to designate and that "no one in the AO Director's Office, General Counsel's Office, Judicial Council Secretariat, or any other AO office played any role whatsoever in identifying judges to preside over the proceedings." McKenna recommended judges based solely on her "understanding of their availability and willingness to serve for the duration of the district court and appellate proceedings."

In 2021, when Strickland filed her appeal of the district court's dismissal of all of her claims, McKenna recommended Judges Mary Briscoe, Ronald Gilman, and Michael Melloy to serve on the appellate panel. The Chief Justice so designated

3

them.  Strickland thereafter moved to vacate the district court's judgment and to disqualify the appellate panel on the ground of bias.  She took issue with the selection process for both the district judge and the appellate panel.  In particular, Strickland complained that the AO's involvement in recommending judges was improper because the AO was itself a defendant in the action.  The panel declined to vacate the district court's decision or to disqualify any of the judges from deciding the appeal.  It held that McKenna's process for recommending judges and those judges' independent obligations to consider whether there were any factors that required their disqualification meant that the designations passed muster under both 28 U.S.C. § 455 (the statute governing the impartiality of judges) and the Due Process Clause of the Fifth Amendment.  *Strickland v. United States*, 32 F.4th 311 (4th Cir. 2022).

Strickland now brings another disqualification motion ahead of her current appeal.  This time she challenges the designations of Judges Benton and Graber, who replaced Judges Briscoe and Melloy on the panel after the latter two recused themselves from any further proceedings as they transitioned to inactive senior status.  Strickland acknowledges that the previous panel rejected her arguments for recusal in her first disqualification motion.  But she argues that several new factors tainted the selection process that resulted in the designation of Judges Benton and Graber, creating the appearance of partiality.

4

## II.    DISCUSSION

As with her previous disqualification motion, Strickland seeks to disqualify Judges Benton and Graber pursuant to 28 U.S.C. § 455(a).  Section 455 "sets forth the legal criteria for disqualification of federal magistrates, judges, and Supreme Court Justices." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1301 (2000) (Rehnquist, Chief Justice, writing separately).  "Section 455(a) contains the . . . general declaration that a [judge] 'shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.'" *Id.* at 1302 (quoting 28 U.S.C. § 455(a)).  "[W]hat matters under § 455(a) 'is not the reality of bias or prejudice but its appearance.'" *Id.* (quoting *Liteky v. United States*, 510 U.S. 540, 548 (1994)).  "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Id.*

Strickland also invokes the Due Process Clause.  The Due Process Clause requires recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 872 (2009).

## A. Panel-selection process

Strickland's first argument for disqualification does not concern any actual conflict of interest specific to Judge Benton or Judge Graber.  Instead, she takes issue

with the process by which they were selected to serve on the panel, arguing that the process was "tainted by an appearance of impropriety."

Strickland's central complaint about the selection process is that current AO Director James Conrad failed to formally recuse himself. She argues that a named defendant's ability to "select[] judges for his own case" fundamentally taints the selection process. And she goes further, asserting that this court's opinion on her previous recusal motion concerning the prior panel categorically "requires recusal of judges who were selected through a process in which named Defendants failed to recuse themselves."

The main problem with Strickland's argument is that she mischaracterizes the previous panel's opinion. Strickland claims that the "basis" for the court's holding on the propriety of the selection process for the prior panel was that former AO Director Rosalyn Mauskopf recused herself from that process. But that fact was not identified as essential to the decision. The panel instead explained that the "key" to its denial of Strickland's motion was

> the fact that there is no evidence that the AO staff attorney considered anything other than availability and willingness to serve in selecting which judges to designate and assign to serve in this appeal, and the fact that each panel member in this case, upon receiving notification of and before agreeing to the designation and assignment, was obligated to and actually considered whether there were any factors that required his or her disqualification under § 455(b).

*Strickland*, 32 F.4th at 346. Strickland does not dispute that both of these "key"

6

circumstances remained in effect for the selection process that led to the designation of Judges Benton and Graber.

Moreover, for several reasons, we are not persuaded that a "reasonable observer who is informed of all the surrounding facts and circumstances," *Microsoft*, 530 U.S. at 1302, would question the impartiality of Judge Benton or Judge Graber based on Director Conrad's failure to recuse himself. First, the complaint names Director Conrad in his official capacity only, so he has no personal stake in this case. Second, Director Conrad did not work at the AO when the events underlying this action occurred, nor was he otherwise personally involved in those events. Finally, there is no evidence that Director Conrad had anything to do with the panel-selection process.

McKenna attests that she was the only AO employee responsible for recommending judges for the panel and that she did so based solely on their availability and willingness to serve. Strickland counters that McKenna's "self-serving" declaration is insufficient to dispel the appearance of impropriety. She argues that "subjective findings of impartiality and propriety" are immaterial to the analysis. But we do not rely on any "subjective findings." We instead focus on the uncontested facts that McKenna presented in her declaration. The previous panel considered those objective facts, along with the independent obligations of the panel judges to disqualify themselves if necessary, as the key to its previous recusal

decision.  We afford them similar weight here.

Strickland raises several other concerns about the selection process that merit little discussion.  For instance, she argues that the failure of another former AO Director—James Duff—to recuse himself from the *district-judge* selection process somehow "bolsters" the appearance of impropriety in the appellate-panel selection process.  She also accuses the AO of "selectively disclosing" records to conceal former Director Duff's lack of formal recusal.  But none of the additional circumstances that Strickland mentions would lead a "reasonable observer who is informed of all the surrounding facts and circumstances," *Microsoft*, 530 U.S. at 1302, to question the impartiality of Judges Benton and Graber.

**B. Jill Langley**

Strickland next argues that defense witness Jill Langley's role as the Director of Workplace Relations in the Eighth and Tenth Circuits creates a conflict of interest because Judge Benton sits in the Eighth Circuit.  She asserts that "a reasonable person could question whether a judge from the Court where Langley is employed could be tempted to rule in Defendants' favor to protect a colleague's reputation and the reputation of the Court that employs her."  We find this argument unpersuasive due to the very limited nature of Judge Benton's relationship with Langley and Langley's narrow involvement in Strickland's case.

First, Strickland does not argue that Judge Benton has anything more than a

8

limited professional relationship with Langley that arises from Langley's employment as an administrator in his circuit. Nor is there any evidence that Langley and Judge Benton are either personal friends or close colleagues. Second, Langley played a circumscribed, impersonal role in the bench trial. She testified about the Employment Dispute Resolution (EDR) Plan and about conversations that she had with Strickland regarding the EDR process. And even if Judge Benton had a closer relationship with Langley, these proceedings would not present a risk to Langley's reputation such that Judge Benton might be "tempted to rule in Defendants' favor to protect" her.

The caselaw that Strickland cites in support of her argument, by contrast, concerns judges who had close relationships with witnesses, themselves judges, who stood to be embarrassed or professionally damaged during the proceedings. *See United States v. Gordon*, 354 F. Supp. 2d 524, 528–29 (D. Del. 2005) (holding that a judge's recusal was proper when the witness was another judge—in a district of only four judges—who would likely be "cast" during the proceedings as "a sort of legal Svengali, manipulating the impressionable [defendant] into taking steps that, because of the Judge's persuasive force, she could not have understood were wrongful"); *United States v. O'Brien*, 18 F. Supp. 3d 25, 36 (D. Mass. 2014) (holding that a judge's recusal was proper when the witness was another judge whom he considered a personal friend, and the witness was at risk of being portrayed during

9

the proceedings as "biased, hypocritical, incompetent, [and] untruthful"). That is far from the case here. For the same reason, we reject Strickland's request for further disclosure on this topic.

Strickland also asserts that the recusals of Judge Briscoe (Eighth Circuit) and Judge Melloy (Tenth Circuit) following the bench trial in which Langley testified raise a suspicion of impropriety. But as previously mentioned, Judges Briscoe and Melloy recused themselves ahead of their transitions to inactive senior status. The notion that Langley's involvement in the bench trial somehow influenced their recusals is pure speculation and totally unwarranted. Strickland, however, argues that "[a] reasonable observer . . . would have no way of knowing that these judges were transitioning to inactive status," urging the court to find that this information is irrelevant under the objective standard of 28 U.S.C. § 455(a). But § 455(a) mandates an inquiry regarding whether a "reasonable observer who is informed of all the surrounding facts and circumstances" would question the panel's impartiality—not whether a reasonable observer who is only partially informed would do so. *Microsoft*, 530 U.S. at 1302.

## C. Due Process Clause

Finally, because Strickland has not shown that either the panel-selection process or the involvement of Langley creates the "appearance" of bias under § 455(a), she also has not shown a "probability of actual bias" requiring recusal

10

under the Due Process Clause.  Her due-process argument is therefore without merit.  *See Caperton*, 556 U.S. at 876 ("[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level.") (quoting *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)).

### III.   CONCLUSION

No member of this panel had any knowledge of either Strickland or the circumstances of her claim before being assigned to the panel by the Chief Justice.  Nor has any member of the panel had contact with any of the parties regarding this action.  We are thus prepared to decide the merits of this appeal based solely on the facts in the record and the applicable law, without bias or prejudice to either side.  Strickland's motion to recuse Judges Benton and Graber is therefore **DENIED**.

For the Court

/s/ Nwamaka Anowi, Clerk

11