No. 24-2056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

# REPLY IN SUPPORT OF MOTION FOR SUMMARY REVERSAL
# OF ORDER SUMMARILY GRANTING WITHDRAWAL OF COUNSEL

In their cursory response, Defendants argue for a legal standard that does not exist and would distort the standards for professional conduct solely to benefit their interests in this litigation. Their standard would allow attorneys to abandon their client on the doorstep of dispositive motions practice and trial based on the barest citation of an unspecified "conflict" or "disagreement," without regard to the prejudice inflicted on the client or the public's interest in a fair adjudication. *See* Resp. 2 (conceding that the parties' filings do not "describe the reasons for withdrawal"); Resp. 7 (contending that there is no remedy for an order wrongly allowing a motion to withdraw because requiring counsel to continue representation under the rules of professional conduct would require "involuntary services").

1

Accepting Defendants' argument would create an extraordinarily disruptive incentive for attorneys to abandon challenging litigation without courts playing any gatekeeping role to find good cause. The standards governing withdrawal—including Model Rule 1.16 and the requirement of Local Rule 83.1 for "good cause" without the client's "written consent"—prevent precisely the result they advocate.

## ARGUMENT

**I.** **Defendants' attempt to prioritize their own parochial interest in winning this case at all costs over the public's interest in a fair adjudication is meritless and further corrodes the integrity of this proceeding.**

Defendants ask this Court to dismiss the profoundly troubling issues raised in Plaintiff's motion by using sweeping language like "wholly without merit" and "plainly unwarranted," Resp. 1, 4, but their response reveals a lack of any real substantive argument or supporting authorities. Using "*pro se*" dog whistles to compensate for these deficiencies does not change the basic principles involved in this motion. Specifically, the outcome Defendants seek would benefit their parochial interest in maintaining the outcome at trial, having benefitted from judgment in their favor after Plaintiff's legal team was intimidated into withdrawing. This outcome contrasted with the victory Plaintiff obtained from this Court when represented by *pro bono* counsel, even though the facts found at trial are not meaningfully different from, and in many instances more egregious than, the facts alleged in the complaint.

ECF Nos. 1, 429; *see, e.g., id.* at 46, 183 (Davis's statements that Plaintiff needed to be "smacked a bunch" and "slapped").

Adopting Defendants' win-at-all-costs approach would undermine the rights of all litigants in this Circuit, as well the rule of law. It would require disregarding governing standards, including the requirement that a district court find "good cause" without the client's "written consent," which Defendants noticeably do not even cite. *See* LCvR 83.1(f). It would also foster a justified perception that Plaintiff lost because—in an unprecedented lawsuit involving claims of deliberate indifference to sexual harassment and fundamentally unfair procedures against judiciary officials, which will affect the rights of the judiciary's approximately 30,000 employees, who are not covered by Title VII—she was forced to represent herself, with only the assistance of her spouse, who also had never tried a case. *See* Hayley Fowler, *Married Attys to Face Off Against Judiciary in 1st Trial*, LAW360 (Dec. 5, 2023) (Ex. A) ("'This could be a groundbreaking piece of litigation,' [Attorney Scott Schneider] said. 'I think it would have had more potential for that if the counsel from Harvard would have stayed on, but stranger things have happened.'").

Without making any inquiry, the district court allowed Plaintiff's legal team to withdraw after Defendants' counsel, wielding their status and authority as officials of the federal government, raised unsupported innuendo that even they would not follow through on substantiating. Tellingly and conveniently, Defendants were not

even willing to raise their allegations in a pleading governed by Rule 11 standards or subject to adversarial testing, let alone publicly at trial.  *See* Mot. 22, 26.

Yet, Defendants continue to shamelessly insinuate that because Plaintiff was successfully intimidated into asserting her constitutionally protected Fifth Amendment privilege, she must have done something illegal, and so that is why her legal team withdrew *en masse*.  Resp. 2, 5.  That is contrary to the facts.  Professor Gersen wanted to represent Plaintiff after her deposition.  As discussed below, she even offered to represent Plaintiff in this appeal with her husband, Professor Jacob Gersen.  The professors' continued willingness to represent Plaintiff confirms that any alleged conflict does not reflect on her or the merits of her case.

Moreover, Defendants' argument is repugnant and contrary to Supreme Court precedent, which states: "[W]e must condemn the practice of imputing a sinister meaning to the exercise of a person's constitutional right under the Fifth Amendment."  *Slochower v. Bd. of Higher Educ.*, 350 U.S. 551, 557 (1956).  The Fifth Amendment was enacted because our founders recognized that "innocent" people need a "safeguard against heedless, unfounded or tyrannical prosecutions." *Quinn v. United States*, 349 U.S. 155, 161–62 (1955).  Thus, a witness "may have a reasonable fear of prosecution and yet be innocent of any wrongdoing," *Slochower*, 350 U.S. at 557–58, and the "innocent and guilty alike have access of recourse to the Fifth Amendment," *Ullmann v. United States*, 350 U.S. 422, 427 n.2 (1956).

4

Contrary to Defendants' groundless insinuations, the Supreme Court has admonished that "[t]oo many, *even those who should be better advised*, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege." *Grunewald v. United States*, 353 U.S. 391, 421 (1957) (emphasis added). Tellingly, Defendants made no argument that the district court should draw an adverse inference from Plaintiff's invocation of the Fifth Amendment, which would require "independent evidence" of wrongdoing. *Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000) (citing *Baxter v Palmigiano*, 425 U.S. 308, 318 (1976)). The district court even described her Fifth Amendment assertion as "silliness." ECF No. 429, at 248 n. 148.

Indeed, the veracity of Defendants' insinuation was never tested because the district court refused to allow Plaintiff to file her response to Defendants' allegations under seal, as required by Federal Rule of Civil Procedure 26(b)(5)(B), and refused *even to review* her arguments before ruling against her. Mot. 20–22. Then, when Defendants' counsel had the opportunity to publicly raise the allegation at trial and vindicate their position, they declined to do so after being warned by the district court to proceed cautiously. That silence is telling.

Defendants had every incentive to raise their allegation if it had any merit. Moreover, the district court *required* that the trial be conducted publicly. ECF No. 399, at 10 ("This entire proceeding is going to be public."). Thus, Defendants'

5

complaint that they did not have sufficient opportunity to air their allegation publicly is patently unfounded. *See* Resp. 2 n.1. It was the choice of Defendants and their counsel, alone, not to raise an allegation in open court, which reflects their own judgment that the allegation lacked merit and could not be ethically raised at trial.

Defendants also do not address the district court's conduct in refusing *even to review* Plaintiff's response to their unfounded insinuations. *See* ECF No. 226. The district court's conduct prevented the issues leading to the withdrawal from being litigated and any potential conflict resolved before prejudicing Plaintiff. Mot. 34–35.

So the Court and public can visualize what the district court had before it in reviewing Plaintiff's response to Defendants' allegations, Plaintiff has attached ECF No. 226 and provided the first paragraph, which is representative, below:

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "MOTION TO STRIKE PRIVILEGE ASSERTION AND TO COMPEL DEPOSITION TESTIMONY"**

Defendants' motion ███████████████████████████████████
█████████████████████████████████████████████████
█████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████

ECF No. 226, at 7 (Ex. B).

The district court's due process violations continue to prejudice Plaintiff, and even prevented her from obtaining *pro bono* counsel for this appeal. Long after the events at Plaintiff's deposition, Professor Jeannie Suk Gersen offered to represent her in this appeal. Plaintiff believed that Professor Gersen would be representing her for two months, until October 9, 2024. Professor Gersen told Plaintiff that she and Professor Jacob Gersen would represent her. Professor Gersen also provided Plaintiff with legal advice and began assembling a team of research assistants. On October 1, 2024, Professor Gersen even sent Plaintiff a text message stating, "Very excited to represent you again":



However, on October 7, 2024, the district court's courtroom deputy unexpectedly informed the parties that the district court had *sua sponte* decided to destroy the trial record, including exhibits, even though the period to file an appeal had not expired. Even Defendants' counsel cited concern about the possibility of an appeal as a reason to preserve the trial record. *See* Ex. C. Two days later, Professor

Gersen informed Plaintiff that she would no longer represent her on appeal. She stressed, however, that "I wanted to represent you on the appeal." These circumstances confirm that the district court's due process violation in refusing to allow Plaintiff to be heard, among other irregularities, has continued to prejudice her by preventing representation by independent counsel.

## II. Adopting Defendants' approach would do violence to basic ethical principles regarding withdrawal of counsel.

Defendants suggest, without providing supporting citation, that issues involving withdrawal of counsel are rarely litigated. Resp. 6 n.2. That is not true.

These issues are frequently litigated, but rarely require appellate review because district courts scrutinize these motions and deny them when required to protect the interests of clients and the public. *See, e.g.*, *Champboat Series, LLC v. In2focus Films, Inc.*, No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009); *Spann v. N.C. Dep't of Pub. Safety*, No. 1:17 cv 104, 2017 U.S. Dist. LEXIS 200732, at *5 (W.D.N.C. Dec. 6, 2017); *accord Patterson v. Henderson*, No. 1:19cv204, 2023 U.S. Dist. LEXIS 6338, at *9 (M.D.N.C. Jan. 13, 2023) (denying motion based on "disruptive impact"); *Wallace v. City of Hampton*, No. 2:15-cv-126, 2017 U.S. Dist. LEXIS 228032, at *14 (E.D. Va. July 20, 2017) (it is "incumbent" on the court to ensure that motion is justified); *Miller v. Dunn & Phillips, P.C.*, 839 F. Supp. 2d 383, 386–88 (D. Mass. 2011) (denying motion to which client *consented* to protect the court's interests); *Clayton v.*

*Dickens*, No. 7:08-CV-00592, 2009 U.S. Dist. LEXIS 118259, at *3 (W.D. Va. Dec. 18, 2009) (denying motion based on "disruptive impact"); *Byrd v. District of Columbia*, 271 F. Supp. 2d 174, 177 (D.D.C. 2003) (denying motion to withdraw filed "one month" before discovery deadline); *Streetman v. Lynaugh*, 674 F. Supp. 229, 234 (E.D. Tex. 1987) (denying motion because "[u]nsubstantiated claims of a conflict are insufficient, especially when the client has . . . not asked counsel to withdraw"). Moreover, two Circuits which have directly addressed these issues—in published decisions cited as persuasive authority by this Court—conducted a "plenary" review of an alleged "ethical" dilemma and rejected withdrawal over an unsubstantiated conflict. *Ohntrup v. Firearms Ctr., Inc.*, 802 F.2d 676, 679 (3d Cir. 1986) (per curiam); *Mekdeci v. Merrell Nat'l Labs., Div. of Richardson-Merrell, Inc.*, 711 F.2d 1510, 1521 (11th Cir. 1983); *see Towns v. Morris*, No. 93-1295, 1995 U.S. App. LEXIS 5798, at *6 (4th Cir. Mar. 22, 1995) (unpub.). These decisions confirm that alleged conflicts of interest are not reviewed for "abuse of discretion," as Defendants misleadingly suggest. Resp. 5–6. Further, a court must make findings of good cause to receive abuse-of-discretion review, which the court did not do here.

Defendants concede that on remand, the district court may conduct a hearing to determine whether good cause existed for the withdrawal.[1] Resp. 7. Any such

---

[1] In light of Defendants' subsequent failure to raise the allegation, showing it is irrelevant, such a hearing should be unnecessary. Nonetheless, Defendants' concession is significant.

hearing should have occurred *before* withdrawal was granted. Nevertheless, Defendants' response implicitly concedes that error occurred and vacatur and remand is warranted. Even as Defendants acknowledge this possibility, they contend that remanding for further proceedings is not appropriate because there are "substantial" issues for appeal. *See* Resp. 7–8. Plaintiff agrees that her arguments on the merits are substantial, but the merits cannot be litigated without determining whether the court erred in granting the legal team's withdrawal without making any findings. Remand *before* reaching the merits, in accordance with Fourth Circuit precedent, is required. *See Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 146 (4th Cir. 1992).

Furthermore, requiring attorneys to continue representation that they agreed to provide is not "involuntary service," as Defendants absurdly contend. *See Laster v. District of Columbia*, 460 F. Supp. 2d 111, 113 (D.D.C. 2006) ("As a fundamental premise, counsel is under an obligation to see the work through to completion when he agrees to undertake the representation of his client."). Rather, it is a basic principle of professional conduct. Defendants do not refute that there is "constitutional right" to be represented by one's chosen counsel in a civil case. *Cavallo v. Star Enter.*, No. 97-1707, 1998 U.S. App. LEXIS 15114, at *9 (4th Cir. July 7, 1998) (unpub.). Defendants also do not explain how standards governing withdrawal apply any less in a civil than criminal case. *See* LCvR 83.1; Rule 1.16.

Defendants cite only one unpublished Fourth Circuit decision, in which the attorney withdrew because of a "conflict of interest with a firm he was joining," a recognized conflict under Rules 1.9 and 1.10. *Marks v. Cook*, 347 F. App'x 915 (4th Cir. 2009). The clients "did not respond" to the motion, which was granted. *Id.* Later, the clients moved to vacate the withdrawal based on the attorney's alleged intent in moving to withdraw, but they did not cite any specific statements by the attorney. *Id.* Defendants fail to explain how *Marks* has any relevance to this case.

Similarly, Defendants cite out-of-circuit precedent involving nonpayment for $100,000 in legal services, alleging that continuing representation would be "involuntary services." *A Sealed Case*, 890 F.2d 15, 17 (7th Cir. 1989). In *A Sealed Case*, the court found good cause for withdrawal and that "the firm's presence was not essential to the administration of justice." *Id.* at 17. However, the court ordered the firm to waive $100,000 in legal fees or else continue representation. The Seventh Circuit explained that the resolution of outstanding legal fees is a matter for contract law, not a motion to withdraw. *Id.* at 17–18. Again, the facts of this case have no relevance. Regardless, there is no "involuntary service" here because Professor Gersen was willing to represent Plaintiff *pro bono* after trial.

Defendants also, strikingly, do not address the severe prejudice Plaintiff has suffered due to the withdrawal of her *pro bono* legal team. *See* Fowler, *supra* ("'In the best set of circumstances, it would be tough to enroll counsel quickly, and this is

nowhere near the best set of circumstances,' [Attorney] Schneider said."). Their contention that being represented by herself and her spouse is somehow being represented by "other counsel" defies precedent and common sense. Resp. 6. The Supreme Court has held that attorneys who represent themselves, like Plaintiff, are not "objective" or "independent." *Kay v. Ehrler*, 499 U.S. 432, 437 (1991). "Even a skilled lawyer who represents himself is at a disadvantage" because "[h]e is deprived of the judgment of an independent third party." *Id.* at 438. The Fourth Circuit has extended this reasoning to attorneys who are close family members of a party, recognizing the danger that "irrationally emotional" representation "will be bungled without the assistance of an independent attorney." *Doe v. Bd. of Educ.*, 165 F.3d 260, 263 (4th Cir. 1998). These considerations confirm that the district court prejudicially erred by granting withdrawal without conducting any inquiry.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 2,559 words, excluding the parts exempted by Fed. R. App. P. 27(d)(2). This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1) because it has been prepared in a 14-point, proportionally spaced typeface.

<u>/s/ Cooper Strickland</u>
Cooper Strickland

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of December, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

/s/ Cooper Strickland
Cooper Strickland

# EXHIBIT A



**Portfolio Media. Inc.** | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Married Attys To Face Off Against Judiciary In Their 1st Trial

By **Hayley Fowler**

Law360 (December 5, 2023, 12:39 PM EST) -- A former North Carolina federal public defender is preparing to try her own case accusing the judiciary of bungling an investigation into her sexual harassment claim, capping off a thorny litigation path that left her with only her husband as co-counsel after the abrupt departure of her legal team.

Caryn Devins Strickland and her husband, Cooper Strickland, are set to take on the federal judiciary next week — the exact day and time are still uncertain — in a nearly 4-year-old case that has been rife with conflict since the Fourth Circuit chose to revive portions of it in a landmark opinion last year, teeing up what experts predict could be an uphill battle.

In addition to losing her dream team of Harvard Law School professors and litigators this spring, a judge has torpedoed Strickland's bids to block key witnesses from taking the stand and disqualify Justice Department attorneys from representing the defendants.

Despite no trial experience, the couple now faces a courtroom showdown with a powerful opponent in a case that could call into question the judiciary's insulation from federal civil rights law, paving the way for what one attorney described as potentially "groundbreaking" change.

But according to Scott Schneider of Schneider Education & Employment Law PLLC, trying a case under any set of circumstances — let alone a lawyer's first case — is a challenge.

"In the best set of circumstances, it would be tough to enroll counsel quickly, and this is nowhere near the best set of circumstances," Scheider said.

**Landmark Victory, Then Major Setback**

Strickland was a former assistant federal public defender in the Federal Public Defender's Office for the Western District of North Carolina before she quit in 2019 following what she alleges was a botched investigation of her sexual harassment complaint against a supervisor.

She **sued** the Judicial Conference of the United States, the Administrative Office of the U.S. Courts, the Fourth Circuit and several individuals in 2020 as a result, calling into question the judiciary's employment dispute resolution, or EDR, process.

U.S. District Judge William G. Young, a Massachusetts judge designated to hear the North Carolina case, initially dismissed her suit. But the Fourth Circuit **partially revived** Strickland's due process and equal protection claims last year, finding the judiciary's refusal to disqualify Anthony Martinez, the former federal public defender named in the complaint, "infected the entire" internal investigation.

Just over a year later, the bulk of Strickland's legal team **walked off the case**, citing "irreconcilable differences."

Strickland has not explicitly stated what caused the rift, but subsequent court filings indicate it may be related to a **batch of secret recordings** she allegedly made of her former colleagues at the Federal Defender's Office in the lead-up to her complaint.

**First-Timers, High-Stakes? Not Unheard Of**

The last-minute exodus has left Strickland's fate largely in her own hands, despite her and her husband's self-proclaimed lack of trial experience. But according to Schneider, there's always going to be a lawyer somewhere trying a case for the first time, meaning the Stricklands aren't alone in their inexperience.

In fact, Schneider pointed out, one of the biggest sex discrimination cases in the last 50 years was argued before the U.S. Supreme Court by someone who Schneider described as "barely a litigator."

That case was the 1979 ruling in Cannon v. University of Chicago ⬤ , in which plaintiff Geraldine Cannon was represented by her husband, attorney John M. Cannon, who successfully persuaded the justices that a private right of action exists under Title IX.

According to Cassandra Burke Robertson, a law professor and director of the Center for Professional Ethics at Case Western University, the Stricklands also lucked out with it being a bench trial, which are typically more straightforward than jury trials, she said.

Robertson called it a "huge undertaking," but not one that's impossible.

"It's very unusual," she said of Strickland's representation. "Having said that, she is clearly a very capable attorney, so she might be better positioned than most."

Schneider added that the Stricklands also have the benefit of being intimately familiar with the voluminous case record.

"As a trial lawyer, one of the most important things is knowing your file backward and forward," he said. "Here, they have that advantage. It's not their client's file; it's literally their lives."

**Pretrial Requests Didn't Pass Muster**

Strickland's case deals with a spate of star players within the federal judiciary, including Fourth Circuit **Judge Roger Gregory**; Martinez, the former public defender; and several staff within his office.

Strickland herself is also expected to take the stand, despite her objections to live testimony.

Strickland had argued the record was sufficient to decide the case without it, but Judge Young said during a pretrial conference in July that he would "like to hear you testify in this case and give your testimony while I'm looking at you carefully and candidly, and be subjected to cross- examination."

She followed that unsuccessful request **with an attempt** in late September to disqualify the judiciary's counsel, saying they lobbed false accusations against her pertaining to the alleged secret recordings.

But Judge Young quickly denied the disqualification bid during a hearing in November, saying it was "without merit."

**Potential For 'Groundbreaking' Change**

If she wins, Strickland is seeking at least $3.4 million in front pay. But according to Robertson, "the underlying principles might be bigger here to her."

"It's a tough case," she told Law360. "I get the feeling that a big part of what she wanted is for her issues to be fully heard and fully aired."

The judicial branch has long been exempt from major employment laws like Title VII of the Civil Rights Act out of concern for judicial independence, according to Robertson, who said Congress has been reluctant to regulate the judiciary.

That's where the EDR process comes in, which is the only avenue through which judiciary employees

can seek redress for workplace harassment or discrimination. But Robertson said it's often hit or miss how complaints are investigated, and it can be harder to protect against retaliation during that internal process.

"I think regardless of what happens in [Strickland's] case, the ball is really rolling toward a more nuanced look at harassment issues in the judiciary, as elsewhere," the professor said.

Robertson said she thinks Congress may eventually cover judicial employees under Title VII. Alternatively, she said, the EDR process may become more formalized to look like the procedures followed by the Equal Employment Opportunity Commission.

According to Schneider, even if Strickland loses, there's a chance the judiciary will take another look at the EDR process and make changes just to avoid future lawsuits.

"This could be a groundbreaking piece of litigation," he said. "I think it would have had more potential for that if the counsel from Harvard would have stayed on, but stranger things have happened."

Strickland is represented by herself and by Cooper J. Strickland.

The government is represented by Carlotta P. Wells, Madeline McMahon, Joshua Kolsky and Rachael L. Westmoreland of the U.S. Department of Justice's Civil Division.

The case is Strickland v. U.S. et al., case number 1:20-cv-00066, in the U.S. District Court for the Western District of North Carolina.

--Additional reporting by Ryan Boysen, Jack Karp, Andrew Strickler and Travis Bland. Editing by Lakshna Mehta.

---

All Content © 2003-2024, Portfolio Media, Inc.

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "MOTION TO STRIKE PRIVILEGE
ASSERTION AND TO COMPEL DEPOSITION TESTIMONY"**

Defendants' motion ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████ Moreover, Plaintiff's testimony on

this topic is privileged on several grounds.  But this Court does not need to reach the merits of

1

this issue, because Defendants' failure to exercise due diligence in raising it justifies denying

their motion.  For these reasons and others discussed below, this Court should deny Defendants'

motion, ██████████████████████████████████████████████████████████

████████████████████████████████████████  The Court should

also grant Plaintiff a protective order ███████████████████████████████

**ARGUMENT**

I.     **Defendants' motion should be denied for failure to exercise due diligence during discovery.**

This Court should deny Defendants' motion because they failed to exercise due diligence

regarding this subject matter during the preceding eight months of discovery.  Courts have

"substantial discretion in managing discovery," including the timing of motions to compel.  *Reed*

*v. Beverly Hills Porsche*, No. 6:17-CV-59, 2018 WL 10396251, at *1 (W.D. Va. Jan. 12, 2018),

*objections overruled*, No. 6:17-CV-00059, 2018 WL 10396252 (W.D. Va. Jan. 26, 2018).  This

discretion includes denying a motion filed at the "final hour" due to the party's "lack of due

diligence . . . before the discovery deadline."  *See Blankenship v. Fox News Network, LLC*, No.

2:19-CV-00236, 2021 WL 2065411, at *4 (S.D.W. Va. May 18, 2021), *aff'd*, No. 2:19-CV-

00236, 2021 WL 3264273 (S.D.W. Va. July 30, 2021).  When ongoing discovery may affect

summary judgment motions, there is "even less reason to permit the parties to continue discovery

efforts past the deadline beyond what is absolutely necessary."  *Blankenship*, 2021 WL 3264273,

at *7 n.6.  That is especially true when the parties had an "adequate opportunity to perform all

the discovery [they] needed" during the discovery period.  *Reed*, 2018 WL 10396251, at *1.

Defendants' motion must be considered in the context of amendments to the discovery

deadlines in this case relative to the deadlines for dispositive motions and trial.  Originally, the

parties agreed that all non-expert discovery would conclude by March 1, 2023 to prepare for the

2

June 1, 2023 summary judgment deadline.  *See* ECF No. 132.  The parties later proposed to extend non-expert discovery to May 1, 2023, and the Court allowed the extension on the condition that expert discovery would not interfere with the September 2023 trial date.  *See* ECF No. 187.  The Court has repeatedly stated that it will not delay the September 2023 trial date. *See* ECF No. 185, at 1 (September 2023 is "the date [the parties] all agree the case will be trial ready"); ECF No. 104, at 13 (it is the Court's practice not to move trial dates).  The Court has also stated that given the trial date of September 2023, the "latest date for filing dispositive motions" is June 1, 2023 because of the Court's practice of considering those motions seriously before trial.  *See* Status Conf. Tr. July 14, 2022, at 10, ECF No. 129; *see also* ECF No. 104 at 13.

When Defendants raised an issue in discovery for the first time during a deposition on April 25, 2023, just six days before discovery closed on May 1, 2023, they acted with a "lack of due diligence . . . before the discovery deadline."  *Blankenship*, 2021 WL 2065411, at *4.  ███

███████████████████████████████████████████████████████

███████████████████████████████ which resulted in the parties' joint motion, Plaintiff did not waive any objection based on Defendants' failure to exercise due diligence in pursuing this subject matter during the prior eight months of discovery.  *See* ECF 208, at 1 (requesting brief extension of discovery deadline for the "*sole purpose* of resolving an outstanding privilege issue that arose during Plaintiff's deposition" (emphasis added)).

Significantly, the topic of the testimony at the April 25, 2023 deposition had never previously been raised in any request for production, interrogatory, or other discovery request since discovery opened on August 10, 2022.  *See* ECF No. 132; *see Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, No. C/A 608CV-03980-GRA, 2010 WL 547179, at *4 (D.S.C. Feb. 9, 2010) (party must serve discovery request at least 30 days before completion of discovery

deadline).  Moreover, Defendants waited to schedule Plaintiff's deposition until April 25, 2023,

just six days before the extended discovery period expired on May 1, 2023.  After having ample

time for discovery and waiting to schedule Plaintiff's deposition until mere days before

discovery expired, and by failing to raise the issue at all during the previous eight months of

discovery, Defendants failed to act with due diligence.  *Cf. Mellanson v. Variety Wholesalers,*

*Inc.*, No. 2:07CV272, 2008 WL 11512376, at *2 (E.D. Va. Jan. 31, 2008) (denying continuance

for further discovery because "Defendants had ample time for discovery had they been more

aggressive in seeking Plaintiff's compliance with discovery requests").  That is especially so

because there is no reasonable means to resolve Defendants' motion to compel, and reopen

discovery if necessary, before the summary judgment motions deadline of June 1, 2023, which is

two days from now.  *See* ECF No. 208, at 2 (representing that joint motion "will not affect any

other existing deadlines"); *but see id.* at 3 (referencing purpose "of including information from

that deposition" in dispositive motions).

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████





Thus, this Court should deny their motion based on their failure to act with due diligence during discovery.

## II. The information sought is not relevant to any claim or defense in this case.

A motion to compel should be denied where the information sought is "irrelevant."

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 245 (E.D.N.C. 2010). ███

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██   ████████████████████████████████████

      ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████▌████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

_____

  ▌█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████



8







11



[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

Accordingly, this Court should deny Defendants' motion to compel because it seeks information that is irrelevant to any claim or defense, [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] Plaintiff requests that the Court also grant Plaintiff a protective order [REDACTED]

## III.    Plaintiff's testimony is privileged on several grounds.

Defendants' attempts to rebut Plaintiff's assertions of privilege are unpersuasive. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

13



14











[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## IV.    Plaintiff did not waive the privilege.

Plaintiff did not waive her assertion of privilege [REDACTED]
[REDACTED].  Defendants do not address the various protections that apply

in this situation, including Fed. R. Civ. P. 26(b)(5), Fed. R. Evid. 502(a)–(b), (d), and the Parties'

Stipulated Clawback Agreement (ECF No. 184).  Specifically, when information produced in

discovery is subject to a claim of privilege, Fed. R. Civ. P. 26 provides a procedure for the

producing party to assert a claim of privilege after production:

> [T]he party making the claim [of privilege] may notify any party
> that received the information of the claim and the basis for it. After
> being notified, a party must promptly return, sequester, or destroy
> the specified information and any copies it has; must not use or
> disclose the information until the claim is resolved; must take
> reasonable steps to retrieve the information if the party disclosed it
> before being notified; and may promptly present the information to
> the court under seal for a determination of the claim.

Fed. R. Civ. P. 26(b)(5)(B).  Moreover, under Fed. R. Evid. 502(b), "inadvertent disclosure of

protected communications or information in connection with a federal proceeding or to a federal

office or agency does not constitute a waiver if the holder took reasonable steps to prevent

disclosure and also promptly took reasonable steps to rectify the error."  Committee Note, Fed.

R. Evid. 502(b).  In this inquiry, courts consider factors such as the "reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness."  *Id.*

For example, in *Datel Holdings Ltd. v. Microsoft Corp.*, the district court held that privilege was not waived over documents and related testimony at a deposition where the party initially "did not appreciate the true nature" of the documents during the testimony, but then "interrupted the deposition to put its privilege assertion on the record" after closer review of the documents.  No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872, at *14 (N.D. Cal. Mar. 11, 2011).  Within a few days, the party identified other documents affected by the privilege error and promptly asserted the protections of Fed. R. Civ. P. 26(b)(5)(B).  The district court held that "[t]hese steps constitute a prompt and immediate response to the inadvertent production" and that the inadvertent disclosure did not waive privilege.  *Id.*  Moreover, the court rejected the notion that the deposition testimony regarding the documents constituted waiver.  *Id.*  The court explained that cases so holding predated the modern rules, which protect against inadvertent disclosure when a party takes "reasonable steps to rectify the error in disclosure."  *Id.* at *15.

Similarly, here, ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████  Plaintiff and her counsel have been careful to avoid disclosing privileged information in this litigation, and there has never been any indication that they have not followed diligent practices to screen for privileged information.  *See United States EEOC v. George Wash. Univ.*, 502 F. Supp. 3d 62, 82 (D.D.C. 2020) (explaining that party's use of "reasonable precautions against disclosure of privileged documents" weighs against finding of waiver).  Moreover, Plaintiff took immediate steps to rectify the disclosure,

including by asserting privilege during the deposition and following up promptly with written notifications pursuant to Fed. R. Civ. P. 26(b)(5)(B).  *See* Ex. C (emails dated April 30 and May 1, 2023); ECF No. 219-2 (May 8, 2023 clawback notice).  By contrast, in the cases Defendants cite, there is no indication that the party who waived privilege ever claimed inadvertent disclosure or pursued the procedures available under the rules.  *See* ECF No. 219, at 6–7 (citing *Donaggio v. Arlington Cty.*, 880 F. Supp. 446, 451 n.5 (E.D. Va. 1995), and *Liang v. AWG Remarketing, Inc.*, 2015 U.S. Dist. LEXIS 168139, at *17 (S.D. Ohio Dec. 16, 2015)).  Indeed, Defendants' own conduct in this case provides relevant context regarding the diligence inquiry, as Defendants invoked the parties' clawback agreement to assert attorney client privilege over a document *more than three months* after they first produced it in discovery.  *See* Ex. D.

Alternatively, even if this Court were to find waiver over the answers provided at the deposition, *see* ECF No. 219-1, at 5, that would not waive privilege regarding other unanswered questions on the same subject, *see id.* at 6–9.  "[A] voluntary disclosure . . . generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Committee Note, Fed. R. Evid. 502(a); *cf. JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 329 (N.D.W. Va. 2013) (subject matter waiver will be found when "the party uses the attorney-client privilege as both a sword and a shield").  Here, there is no indication that Plaintiff has provided a "selective and misleading presentation of evidence" to Defendants' disadvantage. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  Applying privilege will not prejudice Defendants in any way.

22

**V.** **This Court should grant a protective order** ██████████████████████
██████████████████████ █.

Fed. R. Civ. P. 26(c) permits "for good cause" shown the making of any order which

justice requires to protect against "annoyance, embarrassment, oppression, or undue burden or

expense." The district court has "broad discretion" to decide "when a protective order is

appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S.

20, 36 (1984). ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Such good cause is present here, where the line of questioning is irrelevant to any claim

or defense in this litigation ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

23





Accordingly, Plaintiff has shown good cause for a protective order under Fed. R. Civ. P. 26(c).

## CONCLUSION

The Court should deny Defendants' motion, ███████████████████████

████████████████████████████████████████████████████████████████

█████████████████████ and grant Plaintiff a protective order.

This the 30th day of May, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2023, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

<div align="right">

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

</div>

# EXHIBIT C



## RE: Strickland v. US, 20-cv-66 (WDNC)

**Kolsky, Joshua (CIV)** &lt;Joshua.kolsky@usdoj.gov&gt;                Mon, Oct 7, 2024 at 3:58 PM
To: Jennifer Gaudet &lt;Jennifer_Gaudet@mad.uscourts.gov&gt;, "McMahon, Madeline M (CIV)"
&lt;Madeline.M.McMahon@usdoj.gov&gt;
Cc: "Canevari, Dorothy M. (CIV)" &lt;Dorothy.M.Canevari@usdoj.gov&gt;, Cooper Strickland
&lt;cooper.strickland@gmail.com&gt;

Ms. Gaudet,

The government has no objection to destroying any courtesy copies. As for the other documents, our
only concern would be if there are any documents that might have to be forwarded to the Circuit Court in
the event of an appeal, but we do not know what documents the Court might possess or what
procedures the Court would follow if there were an appeal.

Best regards,

Josh Kolsky

---

**From:** Jennifer Gaudet &lt;Jennifer_Gaudet@mad.uscourts.gov&gt;
**Sent:** Monday, October 7, 2024 2:30 PM
**To:** McMahon, Madeline M (CIV) &lt;Madeline.M.McMahon@usdoj.gov&gt;
**Cc:** Kolsky, Joshua (CIV) &lt;Joshua.kolsky@usdoj.gov&gt;; Canevari, Dorothy M. (CIV)
&lt;Dorothy.M.Canevari@usdoj.gov&gt;; Cooper Strickland &lt;cooper.strickland@gmail.com&gt;
**Subject:** [EXTERNAL] RE: Strickland v. US, 20-cv-66 (WDNC)

Good afternoon. I am reaching out to confirm that we may toss all the documents/courtesy copies we
have here in Boston.

---

**From:** McMahon, Madeline M (CIV) &lt;Madeline.M.McMahon@usdoj.gov&gt;
**Sent:** Thursday, March 7, 2024 10:40 AM
**To:** Jennifer Gaudet &lt;Jennifer_Gaudet@mad.uscourts.gov&gt;
**Cc:** Kolsky, Joshua (CIV) &lt;Joshua.kolsky@usdoj.gov&gt;; Canevari, Dorothy M. (CIV)
&lt;Dorothy.M.Canevari@usdoj.gov&gt;; Cooper Strickland &lt;cooper.strickland@gmail.com&gt;
**Subject:** RE: Strickland v. US, 20-cv-66 (WDNC)

**CAUTION - EXTERNAL:**

Good morning Ms. Gaudet,


We are happy to overnight a flash drive to Chambers containing the exhibits reflected in the exhibit list sent by Defendants on March 4. The files on the flash drive will be labeled accordingly.


Thank you,


**Maddie McMahon**

(202) 451-7722

---

**From:** Jennifer Gaudet <Jennifer_Gaudet@mad.uscourts.gov>
**Sent:** Thursday, March 7, 2024 8:49 AM
**To:** McMahon, Madeline M (CIV) <Madeline.M.McMahon@usdoj.gov>
**Cc:** Wolfson Young, Danielle (CIV) <Danielle.Young2@usdoj.gov>; Kolsky, Joshua (CIV) <Joshua.kolsky@usdoj.gov>; Canevari, Dorothy M. (CIV) <Dorothy.M.Canevari@usdoj.gov>; Cooper Strickland <cooper.strickland@gmail.com>
**Subject:** RE: Strickland v. US, 20-cv-66 (WDNC)

Good morning.  I know there are disputes over some exhibits but if you could send us a thumb drive of the exhibits that would be very helpful.


Thank you

---

**From:** McMahon, Madeline M (CIV) <Madeline.M.McMahon@usdoj.gov>
**Sent:** Monday, March 4, 2024 6:23 PM
**To:** Jennifer Gaudet <Jennifer_Gaudet@mad.uscourts.gov>
**Cc:** Wolfson Young, Danielle (CIV) <Danielle.Young2@usdoj.gov>; Kolsky, Joshua (CIV) <Joshua.kolsky@usdoj.gov>; Canevari, Dorothy M. (CIV) <Dorothy.M.Canevari@usdoj.gov>; Cooper Strickland <cooper.strickland@gmail.com>
**Subject:** RE: Strickland v. US, 20-cv-66 (WDNC)

**CAUTION - EXTERNAL:**


Good evening Ms. Gaudet,

Please see the attached for a final exhibit list from trial. We're happy to provide you with electronic versions of each of these exhibits. Some of the exhibits are too large to send via email, so we can either send them to you through the Box file sharing system or we can burn them on a thumb drive and overnight the thumb drive to Chambers. Which option would you prefer?


Thank you,


**Maddie McMahon**

(202) 451-7722

---

**From:** Jennifer Gaudet <Jennifer_Gaudet@mad.uscourts.gov>
**Sent:** Monday, March 4, 2024 3:34 PM
**To:** McMahon, Madeline M (CIV) <Madeline.M.McMahon@usdoj.gov>
**Cc:** Wolfson Young, Danielle (CIV) <Danielle.Young2@usdoj.gov>; Kolsky, Joshua (CIV) <Joshua.kolsky@usdoj.gov>; Canevari, Dorothy M. (CIV) <Dorothy.M.Canevari@usdoj.gov>; Cooper Strickland <cooper.strickland@gmail.com>
**Subject:** RE: Strickland v. US, 20-cv-66 (WDNC)


Good afternoon. I am reaching out to see if there is a final exhibit list from the trial (if already sent/filed, I apologize). Also, any chance of getting an electronic version of all exhibits?


Thank you in advance – Jennifer Gaudet

---

**From:** McMahon, Madeline M (CIV) <Madeline.M.McMahon@usdoj.gov>
**Sent:** Monday, December 4, 2023 11:41 AM
**To:** Jennifer Gaudet <Jennifer_Gaudet@mad.uscourts.gov>
**Cc:** Wolfson Young, Danielle (CIV) <Danielle.Young2@usdoj.gov>; Kolsky, Joshua (CIV) <Joshua.kolsky@usdoj.gov>; Canevari, Dorothy M. (CIV) <Dorothy.M.Canevari@usdoj.gov>; Cooper Strickland <cooper.strickland@gmail.com>
**Subject:** Strickland v. US, 20-cv-66 (WDNC)


**CAUTION - EXTERNAL:**


Ms. Gaudet,


I am reaching out regarding two logistical questions about the upcoming Strickland trial.

First, Defendants understand that, because Judge Young will be presiding over the trial remotely, his court reporter will not be able to provide daily transcripts. Defendants would like to retain a private court reporter to attend the trial and make transcripts of the proceedings. Per Judge Young's requirements, this court reporter would not be making audio recordings of any of the proceedings. Please let us know if the Court has any concerns with this, given the limitations for the Judge's court reporter.

Second, if possible, Defendant's counsel would like to do a test of their exhibit presentation technology along with the Court's technology ahead of the December 11 trial date to ensure that everything is running smoothly. Defendants are happy to have Plaintiff's counsel participate as well, if Plaintiff desires. If the Court's schedule permits, we would ideally want to do this test on Friday, December 8, so any issues are worked out before trial begins on Monday morning. The courtroom deputy in Asheville has informed us that the courtroom is available either from 8am-9am or around lunchtime on December 8. Please let us know if either of those times work for you.

Thank you very much, we really appreciate the help.

**Maddie McMahon**

Trial Attorney | United States Department of Justice

Civil Division | Federal Programs Branch

1100 L Street NW

Washington, D.C., 20005

(202) 451-7722

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.