No. 24-2056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

## PLAINTIFF-APPELLANT'S MOTION TO UNSEAL

This case involves "MeToo" complaints alleging harassment, discrimination, and retaliation. The information publicly available about these complaints includes allegations that Federal Defender Anthony Martinez ***used "crude language regarding women and members of the LGBTQIA+ community,"*** including by ***referring to a female Assistant United States Attorney as a "fucking bitch,"*** and that First Assistant J.P. Davis ***used "sexual hand gestures."*** ECF No. 444, at 1.

Plaintiff made a public proffer of the MeToo evidence during trial. The district court, however, ordered the blanket sealing of the evidence without considering "less drastic alternatives." *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302

1

(4th Cir. 2000); ECF No. 452.  In effect, the district court imposed a gag order that prevents Plaintiff from publicly discussing evidence supporting her own case.

Plaintiff's opening brief discusses how the MeToo evidence supports her claims of sexual harassment, sex discrimination and retaliation, and deliberate indifference to sexual harassment, and explains why the district court erred in excluding it from trial and refusing even to allow her to file it in the docket.  The public needs to see the evidence so it can understand her arguments on appeal.  Therefore, Plaintiff respectfully requests that this Court allow her to file publicly the unredacted version of her opening brief and the attached version of the sealed volume of her joint appendix, which redacts the names of all MeToo complainants.  At a minimum, the Court must allow her to publicly file her opening brief so that the public can understand the issues on appeal.

Moreover, if this case is reviewed at the Supreme Court, the sealing issue will be revisited in any event.  *See* Sup. Ct. R. 34.7 (requiring proponent of sealing to "address why it remains necessary to continue to maintain the confidentiality of the information in this Court").  This Court should unseal the MeToo evidence now.[1]

---

[1] The public's right of access is contemporaneous, and "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Co. Doe v. Pub. Citizen*, 749 F.3d 246, 272–73 (4th Cir. 2014).  Therefore, Plaintiff requests that this Court act on this motion "as expeditiously as possible." *Id.*

# ARGUMENT

I. **Trials based on secret evidence, including MeToo evidence of misconduct by judiciary officials, are anathema to the First Amendment.**

The MeToo evidence was discussed in public filings, open court, and in the district court's opinion ruling in favor of Defendants—albeit cryptically and in highly generalized terms. ECF No. 429, at 221–22. The district court excluded the MeToo evidence as "not relevant" and "hearsay," even as it recognized that a pattern of complaints is "relevant [circumstantial evidence] to proving deliberate indifference." *Id.* at 221 n.116. In addition, MeToo evidence is relevant to the issue of "discriminatory intent." *Id.* at 222 n.118. On appeal, Plaintiff challenges the district court's wholesale exclusion of MeToo evidence, for any purpose under the rules of evidence, including for trial and summary judgment.

Trials based on secret evidence are anathema to a free and democratic government. "[O]pen trials are bulwarks of our free and democratic government: public access to court proceedings is one of the numerous 'checks and balances' of our system, because 'contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power.'" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) (Brennan, J., concurring in the judgment) (quoting *In re Oliver*, 333 U.S. 257, 270 (1948)). And "[w]ithout publicity, all other checks are insufficient." *In re Oliver*, 333 U.S. at 271 (citation omitted).

The Supreme Court has condemned the practice of withholding evidence from the public record and announcing decisions in a conclusory manner, which is precisely the way the district court treated the MeToo evidence here. ECF No. 429, at 221–22. "Public confidence cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." *Gannett Co. v. DePasquale*, 443 U.S. 368, 429 (1979) (Blackmun, J., concurring in part and dissenting in part) (citation omitted). "Public access is essential, therefore, if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice." *Richmond Newspapers, Inc.*, 448 U.S. at 595 (Brennan, J., concurring in the judgment) (citation omitted).

Moreover, in a case of first impression involving constitutional claims of deliberate indifference to sexual harassment and due process violations against judiciary officials, it is especially important to prevent even the appearance of abuse of sealing for parochial interests. Indeed, public access "serves an important function of monitoring prosecutorial or judicial misconduct." *Washington Post v. Robinson*, 935 F.2d 282, 287 (D.C. Cir. 1991) (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8 (1986)). "The public has an interest in ensuring basic fairness and deterring official misconduct not only in the outcome of certain proceedings, but also in the very proceedings themselves." *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th

161, 172–73 (4th Cir. 2024). Moreover, public access to court proceedings "promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014). Such "public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Id.* (citation omitted). It is particularly important because "[t]he political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." *Id.* (citation omitted).

An open hearing is also necessary under the Due Process Clause. The principle that "an 'open or public hearing' [is] a fundamental principle of fair play inherent in our judicial process cannot be seriously challenged." *Fitzgerald v. Hampton*, 467 F.2d 755, 764 (D.C. Cir. 1972). Plaintiff's right to publicly present evidence in favor of her own case is one of basic due process.

**II.    In ordering blanket sealing of the MeToo evidence, the district court failed to comply with mandatory procedures in this Circuit.**

**A.    The First Amendment right of access applies.**

There is no question that the First Amendment right of public access applies to judicial opinions and exhibits presented at a civil trial. *See Doe*, 749 F.3d at 267 (First Amendment applies to "not only the evidence and records filed in connection"

5

with judicial proceedings "but also the district court's decision . . . and the grounds supporting its decision"). "Indeed, many of the advantages of public criminal trials are equally applicable in the civil trial context. . . . [I]n some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co.*, 443 U.S. at 387 n.15.

Moreover, even before trial, the MeToo evidence was relied on in Plaintiff's summary judgment filings. ECF Nos. 248, 248-16.[2] This Court has repeatedly recognized that "the First Amendment protects the right to access summary judgment motions and documents 'filed in connection with' those motions." *Nelnet*, 105 F.4th at 171 (citation omitted). More specifically, "[o]nce [discovery] documents are made part of a dispositive motion, such as a summary judgment motion, they 'lose their status of being raw fruits of discovery.'" *Id.* at 172. "Unlike discovery, 'summary judgment adjudicates substantive rights and serves as a substitute for a trial.'" *Id.* Therefore, "because the public has a First Amendment right to attend criminal trials, we have found that the public has an equivalent right to access documents filed in connection with civil summary judgment motions. Before a court can limit the public's access to such documents, therefore, it must find that such a limitation is justified under the First Amendment." *Id.* (citations omitted).

---

[2] Without explanation, the district court refused even to allow Plaintiff to file her unredacted summary judgment filings referring to the MeToo evidence. *See id.* Regardless, this does not diminish the public's First Amendment right of access.

6

When the First Amendment guarantees access, sealing is justified only if it is "necessitated by a compelling government interest" and the denial of access is "narrowly tailored to serve that interest." *Id.* Under "mandatory" procedures, before sealing trial records, "[t]he court *must consider* less drastic alternatives to sealing and, if it decides to seal documents, must 'state the reasons for its decision to seal supported by specific findings, and *the reasons for rejecting alternatives to sealing in order to provide an adequate record for review.*'" *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (emphasis added and citation omitted). The burden "rest[s] with [the proponent of sealing] to articulate a compelling interest that outweighs the strong presumption of public access." *Doe*, 749 F.3d at 272.

In this case, the district court's sealing order, in its entirety, consists of one sentence handwritten on a page of Defendants' response brief:

> IN THE UNITED STATES DISTRICT COURT
> FOR THE WESTERN DISTRICT OF NORTH CAROLINA
> ASHEVILLE DIVISION
> CASE NUMBER 1:20CV66
>
> CARYN DEVINS STRICKLAND,
>   Plaintiff,
> v.
> UNITED STATES OF AMERICA, et al.,
>   Defendants.
>
> *January 22, 2025 — Treated as a motion for reconsideration, motion denied. The data in question — carefully marked for identification — is fully available to the Court of Appeals as it reviews the propriety of this Court's determinations. William G. Young, District Judge*
>
> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO UNSEAL PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**
>
> Throughout this litigation, Plaintiff has unsuccessfully attempted to rely upon confidential,

7

ECF No. 452.

The district court's order summarily affirms its prior cursory, one-paragraph order sealing the MeToo evidence on the basis that "[t]he privacy interests of all parties and non-parties remain the same." ECF No. 414, at 1.

To justify its ruling, the district court stated that the information is "fully available to the Court of Appeals." ECF No. 452. However, in a public trial involving constitutional claims against judiciary officials, the issue at stake is *not* whether this Court has access to the MeToo evidence. Rather, it is the *public's* interest in this information. The district court's rulings contain no consideration of this constitutionally vital interest.

### B. The district court failed to consider whether blanket sealing of judicial records outweighed the First Amendment right of access and failed to consider less restrictive alternatives.

The district court's perfunctory ruling falls far short of the standard that is required before ordering the blanket sealing of records that were submitted as an exhibit at summary judgment and trial, and also discussed in a judicial opinion.

First, the district court failed to consider that public disclosure of the information already has been made. Once "disclosure was made in the courtroom," the information is no longer "secret" and "the cat is out of the bag." *In re Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990); *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (court must consider "whether the public has already had access").

8

With court permission, Plaintiff made a public offer of proof regarding the MeToo evidence, and publicly displayed the evidence with only names of complainants redacted. ECF No. 401, at 156–59.

Thus, the cat is out of the bag. The information cannot be sealed *post hoc*. Moreover, Defendants themselves publicly quoted and summarized the EDR complaints as including, *inter alia*, "***the Defender's alleged use of crude language regarding women and members of the LGBTQIA+ community and the First Assistant's alleged use of sexual hand gestures.***" ECF No. 249, at 21–22 (emphasis added); *see also* ECF No. 330, at 1. Defendants cannot claim that materials must be sealed that already have been discussed publicly. *Charlotte Observer*, 921 F.2d at 50. Yet, the district court's order does not indicate that it considered the fact that the MeToo evidence has already been disclosed in the public record.

Second, the district court failed to consider any alternatives to blanket sealing of the MeToo evidence. Under this Court's "mandatory" procedures, the district court was required to "consider less drastic alternatives to sealing" and state "the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *Stone*, 855 F.2d at 181. Any such consideration is entirely absent from the record. The district court failed to explain why blanket sealing of judicial records—a "drastic" measure—was the only possible means to protect a compelling interest, and no less restrictive alternatives would suffice. *Id.*

9

For example, while vaguely citing "privacy" interests, ECF No. 414, at 1, the district court failed to consider why redacting the identifying information of EDR complainants would not suffice to protect the "privacy" interests of non-parties.[3] In *Stone*, this Court held that even a statutory protection requiring "confidentiality" of proceedings does not mandate sealing. Rather, the district court must "determine[] whether the right of access nevertheless outweighed the public policy" in favor of confidentiality. *Stone*, 855 F.2d at 181. Moreover, the district court is required "to consider alternatives before sealing." *Id.* An order requiring wholesale sealing of judicial records is "particularly troubling, because it would be an unusual case in which alternatives could not be used to preserve public access to at least a portion of the record." *Id.*; *see also Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004) (holding that "it is not enough simply to assert th[e] general principle" that there is a compelling interest in protecting ongoing law enforcement investigations because "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation").

In this vein, district courts within this Circuit have rejected the blanket sealing of employee personnel materials—even when protected as confidential by statute— that are related to the merits of the case, when redactions would suffice to protect

---

[3] It is unclear what privacy interests of "parties" the court determined are implicated by the MeToo evidence, as the court did not specify.

privacy interests. *See, e.g.*, *Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, No. 1:12CV260, 2014 U.S. Dist. LEXIS 196577, at *14 (M.D.N.C. Sep. 30, 2014), (ordering redactions on a case-by-case basis and explaining that "this court is prohibited from infringing on [the] right of access by sealing a document in its entirety when redaction would suffice"); *Johnson v. Balt. City Police Dep't*, Civ. A. No. ELH–12-2519, 2013 U.S. Dist. LEXIS 17763, at *9–13 (D. Md. Feb. 7, 2013) (assuming without deciding that state's interest in confidentiality of personnel records, as evidenced by state statute, was compelling, but denying motion to seal because it was not narrowly tailored and redaction of "individually identifying information" would provide "sufficient protection of confidentiality interests"); *Alexander v. City of Greensboro*, No. 1:09-CV-00293, 2013 U.S. Dist. LEXIS 177335, at *17–18 (M.D.N.C. Dec. 18, 2013) (allowing "limited redactions . . . narrowly tailored to protect compelling privacy interests without depriving the public access to information essential in deciding the pending motions"); *Ennis v. Town of Kill Devil Hills*, No. 2:12-CV-9-F, 2012 U.S. Dist. LEXIS 59033, at *11 n.2 (E.D.N.C. Apr. 27, 2012) (temporarily sealing materials while suggesting, without deciding, that government's confidentiality interest in personnel files would not overcome the public's right of access because "Plaintiffs have made the substance of the protected personnel files central to the merits").

Unlike statutes mandating confidentiality, the EDR Plan is not a statute. *See* Report of the Proceedings of the Judicial Conference of the United States 25 (Sept. 2010), *available at* https://tinyurl.com/yzpe6xeh (EDR proceedings are "strictly administrative"). But Defendants have invoked the EDR Plan in a blanket manner, as if merely citing the Plan outweighs constitutionally protected interests in access to a judicial proceeding. That is plainly insufficient. If accepted, it would create a carve-out to the First Amendment that would not exist for any other employer. As noted above, even statutory confidentiality protections are not sufficient where narrowly tailored alternatives to sealing will suffice.

Moreover, as this proceeding progresses on appeal, the First Amendment and due process rights at stake are subject to fresh scrutiny at each stage. On appeal, "[b]ecause the First Amendment guarantees the right of access to these documents, [this Court's] review of the district court's sealing decision is de novo." *Doe*, 749 F.3d at 269. Likewise, in the event of Supreme Court review, the *proponent* of sealing, here the government, is required to "address why it remains necessary to continue to maintain the confidentiality of the information in this Court." Sup. Ct. R. 34.7. These rules demonstrate that a cursory order which fails to satisfy the district court's obligations under binding precedent does not bar a new inquiry into the justification for sealing on appellate review. To the contrary, the First Amendment requires this *de novo* inquiry. *Doe*, 749 F.3d at 269; Sup. Ct. R. 34.7.

12

**III. Defendants, as the proponents of sealing, have failed to articulate a compelling government interest that requires wholesale sealing of MeToo evidence when redactions to protect privacy interests would suffice.**

Defendants have not articulated any compelling reason to order the wholesale sealing of MeToo evidence when redactions of identifying information would suffice to protect the EDR complainants' privacy interests. Defendants merely invoked, in a rote manner, a general confidentiality policy under the EDR Plan, without any explanation of why wholesale sealing was necessary to protect a compelling interest and no less restrictive alternatives would suffice. ECF No. 450, at 6–8. Under this Court's precedents, a general reliance on confidentiality provisions, even when protected by policy or statute, is insufficient to defeat the First Amendment right of access. *Stone*, 855 F.2d at 181; *Va. Dep't of State Police*, 386 F.3d at 579.

The First Amendment interest in disclosure of this information—relating to workplace misconduct by judiciary officials—is especially compelling because officials of the federal government (indeed, the federal judiciary), are parties. "The interest of the public and press in access to civil proceedings is at its apex when the government is a party to the litigation." *Doe*, 749 F.3d at 271. Moreover, "the heightened public interest in disclosure is underscored by the fact that this legal action marked the first challenge" to the facial and as-applied validity of the judiciary's EDR procedures. *Id.*

The judiciary itself has recognized that "[t]ransparency in efforts to ensure accountability for misconduct . . . helps foster public trust and confidence." United States Courts, Strategic Plan for the Judiciary, Issue 2: Preserving Public Trust, Confidence, and Understanding, *available at* https://tinyurl.com/js2aczzy. To this end, the Strategic Plan for the Judiciary affirms that "[t]ransparency, to the extent permissible and possible, demonstrates the judiciary's fidelity to accountability for misconduct," and so "[t]he judiciary strives to make public information about misconduct procedures and related actions." *Id.*

As a useful analogy, decisions regarding complaints of judicial misconduct are required to be made public, including, for example, the recent Judicial Council decision involving Judge Kindred's sexual misconduct. To protect privacy interests, "the name of the complainant must not be disclosed in materials made public." JC&D Rule 24(a)(5). In the Judicial Council's decision, identities of complainants and witnesses were kept confidential, while information regarding Judge Kindred's misconduct was publicly disclosed. *See* Judicial Conduct and Disability Complaint No. 22-90121 (Jul. 8, 2024), *available at* https://tinyurl.com/mv39nyb3.

For example, the Kindred Report states that the Committee interviewed 21 witnesses. All "expressed significant reluctance or discomfort about being involved in the investigation, and several law clerks requested anonymity." *Id.* at 4. This did not prevent the Committee from publicly discussing the hostile working environment

14

Judge Kindred created, while protecting the witness's anonymity. The Committee discussed the allegations, including that Judge Kindred made disparaging remarks like "I was a huge hit at dinner Partly due to how much shit I talked about Sarah palin"; "I told a republican [state] senator to eat a dick"; and "[a senator] is worried that I can kick [] his ass." *Id*. Judge Kindred also encouraged rating staff based on "fuckability," stated he was not "hoe-ignorant," and told stories about "giving blow jobs in a hot tub." *Id*. Law clerks were belittled and ostracized when they attempted to speak to him about his inappropriate behavior. *Id*.

Plaintiff's opening brief describes the MeToo evidence in a similar manner, providing necessary context for her arguments on appeal without disclosing private information of non-parties. Indeed, even if the Court was concerned about disclosing the underlying records from the complainants' EDR proceedings, which are contained in the sealed joint appendix volume, that is no reason not to order the unsealing of Plaintiff's opening brief. That procedure, too, has parallels in the JC&D context, where final decisions are made public even when the underlying investigative materials are not. *See* JC&D Rule 24.

As Judge Kindred's case shows, privacy interests of complainants can be protected while also vindicating the public's First Amendment right of access and fulfilling the judiciary's obligation to ensure public accountability. Consistent with

15

the First Amendment, privacy interests of third parties may be protected by not disclosing their identifying information in judicial records.

## CONCLUSION

For these reasons, Plaintiff requests that the Court allow her to file publicly her opening brief and the attached sealed joint appendix volume, in which the names of MeToo complainants are redacted. At a minimum, this Court should unseal the opening brief. If the Court maintains the blanket sealing of MeToo evidence, Plaintiff respectfully preserves her objection for further review. *See* Sup. Ct. R. 34.7.

Defendants provided the following position on this motion:

> Under this Court's rules, "[r]ecord material held under seal by another court or agency remains subject to that seal on appeal unless modified or amended by the Court of Appeals." Local Rule 25(c)(1)(A). Plaintiff has requested defendants' position on a request to publicly file materials that remain subject to sealing orders entered by the district court. Plaintiff's primary request therefore appears to be that this Court issue an order unsealing a lengthy exhibit she proffered, which the district court ordered to be filed under seal and then excluded as irrelevant, documenting non-parties' allegations made under the Employment Dispute Resolution plan, while leaving the names of the complainants subject to a sealing order. Defendants oppose this request in light of the confidentiality assured to participants in that program. As to plaintiff's fallback request to permit her to file her opening brief without redactions, defendants are unable to take a final position without seeing the specific material that plaintiff proposes to include on the public docket.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

I certify that this Motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains 3,774 words, excluding the parts exempted by Fed. R. App. P. 27(d)(2). This Motion complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

/s/ Cooper Strickland
Cooper Strickland
