No. 24-2056

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

## REPLY IN SUPPORT OF MOTION TO EXTEND
## WORD LIMIT ON OPENING BRIEF

When Plaintiff conferred with Defendants regarding her motion to file an overlength brief, Defendants took "no position" on her motion. Doc. 54. Defendants also did not indicate any intent to "file responses in opposition," as required by Fourth Circuit Rule 27(a). By taking no position, Defendants confirmed that they are not prejudiced in any way by Plaintiff's brief. Defendants are not prejudiced, in part, because Plaintiff does not oppose an extension of comparable length so that Defendants can adequately respond to her arguments, which she informed their counsel of at the time she conferred with them as required by Local Rule 27(a).

Now that this Court has ordered a response to Plaintiff's motion, and Defendants have had weeks to review Plaintiff's brief on the docket, Defendants

1

have effectively changed their position. They state that it is "hardly clear" that a word limit extension is warranted, and even if an overlength brief is warranted, a "modest expansion" will "suffice." Doc. 61, at 1–2. Having been given weeks of lead time to review Plaintiff's arguments—and previously taken no position on a word limit extension—it is abundantly clear that Defendants' changed position is not based on the considerations for word limit extensions set forth in Fourth Circuit Rule 32. Rather, Defendants are engaging in a cynical and brazen maneuver to severely restrict the scope of the arguments that Plaintiff is allowed to raise before this Court.

This procedure of providing Defendants with extra time to review Plaintiff's brief and effectively reverse their position has created fundamental unfairness in this proceeding. It creates both the appearance and fact that Defendants are seeking an unfair advantage. Indeed, if Plaintiff's brief is stricken as Defendants request, Defendants will have had weeks to preview Plaintiff's arguments without needing to request an extension of time. By contrast, Plaintiff was given no extensions of time to prepare her brief absent "extraordinary circumstances." Doc. 44.

Defendants should know that this Court did not need a two-paragraph response, which they took *twelve days* to file, on a motion on which they took "no position" to decide whether to grant a word limit extension. This is particularly true in light of this Court's indication that briefing in this appeal should be expeditious. *See* Doc. 44. Now that Plaintiff's brief has been on the docket for weeks, Defendants

opportunistically urge this Court to strike her brief and deny a word limit extension so that they do not have to respond to the substantive arguments she has made on appeal. After all, if Defendants believed no word limit extension, or only a "modest" extension, was necessary, they could have simply given that position when Plaintiff conferred with them about the motion, as Rule 27 requires. Plaintiff has attached a word limit extension motion where the government did just that. Specifically, the government opposed the motion, in part, and provided an alternative proposed word limit it believed was appropriate. Ex. A. In other words, the government did not hide the ball and circumvent the conferral requirements, like Defendants did here.

In contrast, Defendants took no position on Plaintiff's motion and articulated no opposition to her requested word limit extension. Their reversal of course— which, again, only occurred *after* reviewing her brief—strongly indicates that they are seeking to reduce her words not based on the principles in Rule 32, but rather because they seek to severely restrict the scope of her arguments before this Court. This is an abuse of the conferral procedures required by Local Rule 27, and it is fundamentally unfair. *Cf. Davis v. Wakelee,* 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). Further, Defendants' desired

3

approach of restricting Plaintiff's arguments raises due process concerns about her right to be heard in a "meaningful manner," which is guaranteed by the Fifth Amendment. *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citation omitted).

Significantly, Defendants omit discussion of the fact that the district court's opinion, which is only part of the rulings being challenged on appeal, is *285 pages* long. ECF No. 429. This Court's prior opinion was *118 pages* long in reviewing a ruling *on a motion to dismiss*, before the factual record was even developed for summary judgment and trial. *See Strickland v. United States*, 32 F.4th 311, 319 (4th Cir. 2022). These rulings self-evidently demonstrate that a substantially overlength brief is required to adequately address the legal issues and facts involved in this case.

In comparison, Plaintiff's opening brief of 160 pages is modest and extremely concise. Indeed, given the length of the district court's opinion, it would be impossible to meaningfully develop her arguments on appeal without substantially exceeding the word limit. Defendants must know this, having reviewed Plaintiff's brief, which makes their changed position on a word limit extension and their attempts to restrict her substantive arguments even more opportunistic and contrary to principles of fair play. Moreover, as noted above, Plaintiff was required to prepare the opening brief and joint appendix on a compressed timeline, after being informed on January 23, 2025 (three-and-a-half weeks before she filed her opening brief on February 18, 2025) that she would be given no extensions of time absent

extraordinary cause. Plaintiff also did not have any outside counsel or other support in preparing her brief. This Court deferred decision on Plaintiff's motion for summary reversal, which challenged the district court's decision to allow her legal team to withdraw in a text-only entry order with no supporting findings, until it decides the merits. Doc. 37. Under these circumstances, it would be particularly unfair to strike Plaintiff's brief, as she did everything possible, in good faith, to concisely present her arguments.

Defendants contend that it is "routine" to adhere to the word limit even in "complex" cases, but this is misleading at best. Doc. 61, at 1–2. In fact, this Court does allow substantial, if not extraordinary, word limit extensions that far exceed the length Plaintiff is requesting, when the situation warrants. For example, in *United States v. Roof*, a recent appeal in this Court in which two of the members serving on the panel for Plaintiff's appeal also served, the appellant was permitted to file an opening brief of *278 pages*, which amounted to 50,000 words. *United States v. Roof*, Case No. 17-3, Doc. 85 (4th Cir.). Similarly, the attached motion provides other examples where federal Courts of Appeal have permitted opening briefs of 50,000, 60,000, or even 70,000 words in important cases. *See* Ex. A.

While *Roof* involved important and complex issues in a death penalty case, this case also involves extremely important and complex constitutional issues that are of substantial public interest. Indeed, extensive and groundbreaking reporting this

week on National Public Radio highlights the "problems with system for policing bad behavior by federal judges" and the "lack of accountability around harassment and bullying" in the federal judiciary. *See* Carrie Johnson, NPR probe shows lack of accountability around harassment and bullying by federal judges, All Things Considered (NPR), *available at* https://tinyurl.com/4tfd6b25; Carrie Johnson, Investigation finds problems with system for policing bad behavior by federal judges, Morning Edition (NPR), *available at* https://tinyurl.com/5n8mxf87; Carrie Johnson, In the federal court system, law clerks find little recourse for bullying and abuse, NPR, *available at* https://tinyurl.com/5d9kh5z7.

This case similarly exposes what the district court described as "problems" with the judiciary's system for handling workplace misconduct complaints in need of "structural reforms." ECF No. 429, at 279. And it does so with more detail than has ever before been provided in a public forum. Moreover, the district court even acknowledged that despite Plaintiff's good faith claim of sexual harassment, she lacks any "redress under the present legal framework," which "cannot be a cause for congratulation on the part of federal judges or administrators." *Id.* at 278. The district court's opinion implicates the exclusion of judiciary employees from Title VII of the Civil Rights Act of 1964, which is a major public issue of concern to the public, media, and Members of Congress. *See* Doc. 54, at 2–3.

Denying Plaintiff's requested word limit extension would effectively prevent her from meaningfully developing her arguments on appeal, which are of substantial public interest. It would be impossible to meaningfully discuss these issues in a substantially shorter brief. This contention is not hypothetical, as it is proven by the opening brief Plaintiff has filed. Plaintiff has thus provided an adequate "statement of reasons" with "exceptional reasons" for her requested word limit extension, as Fourth Circuit Rule 32 requires.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's appellate CM/ECF system, which accomplished service on counsel of record through CM/ECF.

/s/ Cooper Strickland
Cooper Strickland

# EXHIBIT A

06-20885

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

### UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*


*v.*

### JEFFREY K. SKILLING,
*Defendant-Appellant.*

---

## APPELLANT JEFFREY SKILLING'S MOTION FOR PERMISSION
## TO FILE A BRIEF EXCEEDING THE WORD LIMIT
## SET FORTH IN FRAP 32(a)(7)(B)

---

### On Appeal From The United States District Court
### For The Southern District Of Texas, Houston Division
### Crim. No. H-04-25 (Lake, J.)

---

O'MELVENY & MYERS LLP
WALTER DELLINGER
JONATHAN D. HACKER
MEAGHAN MCLAINE
1625 Eye Street, N.W.
Washington, D.C. 20006

RONALD G. WOODS
5300 Memorial, Suite 1000
Houston, Texas 77007

O'MELVENY & MYERS LLP
DANIEL M. PETROCELLI
M. RANDALL OPPENHEIMER
MATTHEW T. KLINE
DAVID J. MARROSO
BRIAN C. DEVINE
1999 Avenue of the Stars, 7th Floor
Los Angeles, California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

ATTORNEYS FOR DEFENDANT-APPELLANT JEFFREY K. SKILLING

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5TH CIR. R. 28.2.1, the undersigned counsel for Defendant-Appellant Jeffrey Skilling ("Skilling") certifies that the following persons and entities have an interest in the outcome of this appeal, No. 06-20885:

1. United States of America, Plaintiff-Appellee;

2. Department of Justice, Counsel for Plaintiff-Appellee (Steven Tyrrell, Joseph Douglas Wilson, Sean Berkowitz, Kathryn Ruemmler, John Hueston, Cliff Stricklin, Leo Wise, Robb Adkins);

3. Jeffrey Skilling, Defendant-Appellant;

4. O'Melveny & Myers LLP, Counsel for Defendant-Appellant Jeffrey Skilling (Daniel Petrocelli, Walter Dellinger, Randall Oppenheimer, Jonathan Hacker, Matthew Kline, David Marroso, Brian Devine, and Meaghan McLaine);

5. Ronald Woods, Counsel for Defendant-Appellant Jeffrey Skilling.

Respectfully submitted,

_____
Daniel M. Petrocelli
*Counsel of Record for Defendant-Appellant Jeffrey Skilling*

**APPELLANT JEFFREY SKILLING'S MOTION FOR PERMISSION
TO FILE A BRIEF EXCEEDING THE WORD LIMIT
SET FORTH IN FRAP 32(a)(7)(B)**

Pursuant to Federal Rules of Appellate Procedure ("FRAP") 27 and 32 and this Court's Rules 27.1 and 32.4, appellant Jeffrey Skilling ("Skilling") moves for permission to file a principal brief not to exceed 60,000 words. This request substantially exceeds the 14,000-word limitation set forth in FRAP 32(a)(7)(B), but this case and Skilling's appeal are sufficiently "extraordinary and compelling" (5th Cir. Loc. R. 32.4) to justify the additional length. A draft of the proposed brief accompanies this motion, as required under this Court's Rule 32.4. Skilling acknowledges that an appellant's brief of 60,000 words is very unusual, but as shown below and in the proposed brief itself, this case is very unusual—and indeed unprecedented—in many ways. As also shown below, the additional length requested is nevertheless comparable to the length the Government itself has sought and received in other criminal appeals involving *much* smaller trial records and *much* less complexity.[1]

1. It is no exaggeration to say that this case is one of the most significant white-collar prosecutions in the history of American law. The trial court itself

---

[1] Counsel for Skilling contacted counsel for the government on August 18, 2007 about this motion. Counsel stated that the government would object to any request exceeding 28,000 words, but did not explain why that amount would suffice to allow Skilling to fully and fairly present his arguments on appeal given the record in this case and the nature of his arguments.

informed prospective jurors: "I can assure you, those of you who are selected, that this will be one of the most interesting and important cases ever tried." Trial Transcript at 3:10-12 (Jan. 31, 2006). Skilling was the President and CEO of Enron Corporation, the seventh largest corporation in America, until just before its sudden collapse in late 2001. Congress convened a major public inquiry into Enron's collapse—including several days of hearings—and the President appointed a special Task Force of dozens of agents and prosecutors to investigate, identify, and prosecute the crimes and those assumed to be involved in Enron's demise. Regular stories about Enron's remarkable success in the financial pages and papers were quickly replaced by daily front-page stories about the Enron investigation, and by demands in the editorial pages for the criminal punishment of those at Enron's helm. No corporate bankruptcy in history garnered such sustained attention—and virulent commentary—from public officials and the media. The trial of Skilling and Lay, which was held from January through May of 2006, was the capstone of the entire extraordinary affair.

2. The Task Force's investigation produced numerous indictments and guilty pleas and several criminal trials. *But virtually all of the post-trial convictions obtained by the Task Force challenged after trial have been vacated or reversed.* The remarkable failure rate of the Task Force on post-trial review reflects the breadth and depth of the flaws in the legal theories and prosecutorial

tactics the Task Force was compelled to invoke to satisfy the public's demand for criminal punishments in the wake of Enron's demise. Those flaws were amply evident in Skilling's trial. As explained below, the additional length for Skilling's appellate brief is requested in part so that the many errors can be fully exposed and adequately explained, and so that Skilling's right to fair treatment in the criminal justice system can be secured.

3. But the first reason the additional length is requested is the sheer length and complexity of this criminal prosecution. The trial took place over a four-month period, including 61 days of trial time. Fifty-eight witnesses testified, and 2,115 exhibits were introduced. The record on appeal is 46,987 pages long, comprising fully 250 boxes of material.

Skilling was charged with 28 different fraud- and conspiracy-related counts, involving alleged wire fraud, accounting fraud, and securities fraud. The prosecution's case implicated every major aspect of Enron's business (Retail, Wholesale, Broadband, Structured Finance, Accounting) and challenges to the actions and integrity of each department. The case implicated a several year course of conduct involving the actions of hundreds of people inside and outside of Enron. The charges encompassed hundreds of statements made in public filings, on stock analyst conference calls, at public meetings, and in other fora. The government targeted all sorts of business conduct ranging from accounting reserve

decisions, to how Enron described its Wholesale business, to statements concerning the business prospects of its Broadband and Retail units, to how it chose to make business segmenting financial reporting decisions, to the reporting of structured finance transactions (which themselves have been the subject of other lengthy criminal trials, *e.g.*, *U.S. v. Brown*, 459 F.3d 509 (5th Cir. 2006)), to statements Enron made to its auditors, Arthur Andersen.  This was not a narrow case, but an accumulation of the prior Enron cases, plus much more.

Further complicating matters, the legal, instructional, procedural, evidentiary, and sentencing errors raised in Skilling's appeal implicate all of the 19 counts on which Skilling was convicted.  These counts in turn implicate all the businesses, underlying public statements, SEC disclosures, and transactions described above, requiring substantial additional length in the brief simply to set forth the record underlying the appellate issues.  We submit that a detailed recitation of the record is necessary not only to permit a full and fair presentation of Skilling's appellate arguments (several of which, by definition, require a careful parsing of the evidentiary record to show that the alleged errors require reversal or other relief), but also to facilitate this Court's understanding of the lengthy and complicated record in this case.

3.  The additional length is also required because Skilling's appeal presents a large number of very serious legal issues.  These legal issues go to the heart of the

underlying theory of the prosecution as well as to Skilling's fundamental right to trial before an unbiased jury adequately instructed on the complicated legal rules governing the case, with full and fair access to the evidence against him.

Skilling's appeal raises the following significant issues, all of which independently merit reversal of all of his convictions:

- a challenge to the basic "honest service" wire fraud theory underlying all of the convictions

- four distinct challenges to the jury instructions (or lack thereof) on

    (i)    mens rea

    (ii)   materiality

    (iii)  the government's central "side deal" theory; and

    (iv)   good-faith reliance on professional advice

- a challenge to the court's refusal to change venue from Houston and its use of truncated voir dire that could not possibly weed out the pervasive community bias

- four challenges to the prosecution's concealment of evidence, including:

    (i)    its intimidation of potential defense witnesses;

    (ii)   its misrepresentation of the facts concerning a key witness's incentive to testify favorably;

    (iii)  its production of a uniquely scripted report of interviews with its key witness and refusal to produce the underlying notes of those interviews; and

    (iv)   its refusal to produce known exculpatory documents.

In addition to these basic challenges to the convictions, Skilling's appeal raises

four serious challenges to his extraordinary 24.3 year prison sentence, including:

- the sentence is unlawfully disproportionate to sentences received by similarly situated defendants, including a co-defendant of Skilling's who was *identically* situated to him;

- the sentence is explicitly based on the unsupported and false assumption that Skilling caused Enron's bankruptcy;

- the court misconstrued and misapplied the Sentencing Guidelines' "financial institution" enhancement; and

- the court erred in applying the Guidelines' "obstruction of justice" enhancement.

All of these liability and sentencing issues are strongly supported by substantial

precedent and are well grounded in the record of this case, as a review of the

proposed brief will confirm.

4.  Not only does Skilling's appeal raise a number of serious legal issues, but

each issue requires substantial analysis largely unique to the unusual circumstances

of this case.  Indeed, several of them could easily justify a full-length brief on their

own.

The issue requiring the most substantial individual treatment is venue.  This

Court has held that, in an appellate challenge to a venue determination, "it is the

duty of the appellate court to independently review the record," *Hale v. U.S.*, 435

F.2d 737, 746 (5th Cir. 1970), and "to undertake an independent evaluation of the

facts," *U.S. v. Williams*, 523 F.2d 1203, 1208 (5th Cir. 1975); *U.S. v. McVeigh*, 153

F.3d 1166, 1179 (10th Cir. 1998) (presumed prejudice reviewed de novo). Because few if any criminal trials have ever taken place in a metropolitan community so broadly and deeply wounded by what was generally (if erroneously) perceived to be the acts of the defendants, the appeal in this case will require review of a lengthy, detailed, and extraordinary record of documented animus in the jury pool, in the venire itself, and even among the actual jurors. The sheer breadth and scope of this record is, frankly, astounding. We have endeavored to streamline its presentation as much as possible, but without depriving the Court of the opportunity to conduct its required review.

The other issues presented on appeal also require substantial elaboration in their own right. The first issue presented in the brief is whether Skilling's convictions can survive this Court's decision in *U.S. v. Brown*, 459 F.3d 509 (5th Cir. 2006). While that issue is, in general, a straightforward legal question, the Task Force's contention that *Brown* does not apply on the facts of this case, or that it applies only to some of the 19 counts of conviction, requires substantial elaboration of both the Task Force's basic theory of the case at trial and the factual and legal relationship among the various counts.

Skilling's challenges to the jury instructions also require substantial development because they largely address errors created by the unique complexities of the law and facts involved in this complicated business case.

Skilling contends that several crucial instructions were inaccurate or misleading (often by omission) because they did not give jurors the guidance needed to traverse the complicated legal, factual, and accounting terrain of this case. To demonstrate the prejudicial impact of those errors, the brief must explain the complexities of the facts and applicable law in some detail.

The issue of prosecutorial intimidation and coercion documented in the proposed brief also requires uniquely extensive treatment. These issues, which infected the fairness of the trial, were a mini-trial in their own right, and facts that have emerged since Skilling was convicted only complicate matters further. These issues, none of which were tried before the jury, have their own complicated record, present their own unique legal questions, and this is the first complete presentation of this "second history" behind the public record of the case. Accordingly, substantial space is required to establish the full record.

Finally, the sheer number of demonstrable errors in sentencing require substantial space in the brief to fully and fairly address.

4. Although this appeal requires unusually extensive briefing for the reasons discussed above, it is not unique in every respect. Skilling is requesting 60,000 words to explain the record in the case and develop his legal arguments, which is very comparable to the number of words the government itself has sought and received in less voluminous and less complex criminal appeals. In the Enron-

related *Brown* appeal before this Court, *supra*, the Government's filed brief was 69,370 words. And *Brown* involved only *one* of the many structured finance transactions at issue in this case, a trial less than half as long, and that involved one-tenth as many exhibits. Although the Government's brief was responding to multiple appellants' briefs, those briefs raised many overlapping issues, and all of them necessarily focused on the single disputed transaction. If each side in the *Brown* appeal required almost 70,000 words to fairly address the issues in a case that was literally about a small fraction of what Skilling's trial was about, it is reasonable for Skilling to seek 60,000 words to address the legal and factual issues in this vastly more complicated case.

Likewise, the Government's appellate brief in *U.S. v. Martha Stewart*, No. 03-6261 (2d Cir.), was 56,078 words. And yet the trial in that case was, again, less than half as long as the trial here, and the documentary record a small fraction what it is here. And, again, that case involved only a single, relatively uncomplicated stock trade, with just a few percipient witnesses. The Government in that case was also responding to two appellants' briefs, but, again, those briefs presented overlapping issues focused only on the one transaction. That mere fact did little to justify nearly 60,000 words for the Government—many more than the combined total of the appellants' briefs in that appeal. Rather, the Government sought and obtained permission to file a 60,000-word brief in that appeal for the simple reason

that the Government believed that much space was needed to fully and fairly present its appellate defense of the defendants' convictions.

No less consideration should be given Skilling's effort to challenge his convictions in this case, which is exceedingly more complicated than either *Brown* or *Stewart*, and presents a longer record, more appellate issues, and a much more severe sentence for the defendant—effectively a life sentence. Especially given the legal, procedural, and evidentiary rulings that so severely constricted Skilling's efforts to defend himself at trial, Skilling should at least be given a full and fair opportunity on appeal to demonstrate the many errors that infected his trial and rendered his convictions improper and unjust.

5. Undersigned counsel have made every effort, consistent with their duties both to their clients and to this Court, to present the important issues raised in this appeal as succinctly as possible. But the unusual length and complexity of the record, as well as the number of serious errors involved, unavoidably requires briefing well in excess of the limit applicable in the usual appeal. Given that the Court is already faced with reviewing a voluminous record with a great deal at stake, counsel submits that the proposed brief will not unduly burden the Court, but instead will affirmatively facilitate its review by providing a clear roadmap through the many factual and legal issues involved. Nor will the proposed brief prejudice the Government in any way, as Skilling will not object to a brief of comparable

length or adequate time to respond to Skilling's opening brief, ensuring the Government its own full and fair opportunity to present its side of the case.

## CONCLUSION

For the foregoing reasons, the motion for leave to file an overlength brief, not exceeding 60,000 words, should be granted.


DATED:      September 6, 2007


                              Respectfully submitted,


                              _____
                              Daniel M. Petrocelli
                              *Counsel of Record for Defendant-*
                              *Appellant Jeffrey Skilling*

# CERTIFICATE OF SERVICE

This is to verify that true and correct copies of the attached document (Defendant-Appellant Jeffrey Skilling's Motion for Permission to File a Brief Exceeding the Word Limit Set Forth in FRAP 32(a)(7)(b)) have been filed in person and served by both Federal Express and electronic mail on this 7th day of September, 2007 on counsel listed below.

_____
Matthew T. Kline

J. Douglas Wilson
Enron Task Force
U.S. Attorney's Office
450 Golden Gate Avenue, 11th Floor
San Francisco, CA  94102
Facsimile:  (415) 435-7234