# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

Plaintiffs-Appellant,

v.

NANCY L. MORITZ, et al.,

Defendants-Appellees.

On Appeal from the United States District Court
for the Western District of North Carolina

## BRIEF FOR APPELLEES

YAAKOV M. ROTH
  *Acting Assistant Attorney
  General*
COURTNEY L. DIXON
KEVIN B. SOTER
  *Attorneys, Appellate Staff
  Civil Division, Room 7222
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 305-1754*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................1

STATEMENT OF JURISDICTION ............................................ 2

STATEMENT OF THE ISSUES..............................................3

STATEMENT OF THE CASE ................................................ 3

    A.    The Fourth Circuit's EDR Plan................................... 5

    B.    Factual Background and Prior Proceedings .............................. 9

        1.    Plaintiff's First Several Months in the Federal Defender's Office.................................... 9

        2.    The EDR Proceedings ...................................... 11

        3.    Plaintiff's Complaint and This Court's Prior Decision...............................................19

        4.    Proceedings on Remand ................................. 22

SUMMARY OF ARGUMENT ...................................... 26

STANDARD OF REVIEW .......................................... 29

ARGUMENT....................................................................30

I.    The district court's equal protection ruling should be affirmed. ....... 30

    A.    Plaintiff failed to show that defendants responded to her harassment claims with deliberate indifference or discriminatory intent................................................30

        1.    Plaintiff failed to prove two of the elements set forth in this Court's prior decision. ......................... 30

| | 2. | The district court's factual findings are not clearly erroneous. | 36 |
|---|---|---|---|
| | 3. | Plaintiff's arguments regarding legal error are unavailing. | 42 |
| B. | | Even if plaintiff had shown an equal protection violation, the record does not support any prospective equitable relief for this claim. | 48 |

II. The district court's procedural due process ruling should be affirmed. ........................................................................ 56

    A.    This Court's prior decision sets out the specific factual showing necessary for plaintiff's procedural due process claim. ........................................................................ 56

    B.    Plaintiff failed to show that she was led to reasonably believe that her EDR claims would have been adjudicated by an interested party. ............................................................. 61

    C.    Plaintiff's contrary arguments lack merit. .............................. 64

III. The district court did not abuse its discretion in excluding EDR allegations of non-parties or commit legal error in declining to rely on these allegations at summary judgment. ............................. 70

IV. Plaintiff's last-ditch effort to assert a constitutional challenge to Title VII's judiciary exclusion is meritless. ................................ 77

CONCLUSION ......................................................................... 83

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:**                                                      **Page(s)**

*Armour v. City of Indianapolis,*
566 U.S. 673 (2012) ................................................................ 81

*Avail Vapor, LLC v. U.S. Food & Drug Admin.,*
55 F.4th 409 (4th Cir. 2022) ........................................... 44, 74

*Baynard v. Malone,*
268 F.3d 228 (4th Cir. 2001) ............................................... 33

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971) ............................................................... 20

*Caudle v. Bristow Optical Co.,*
224 F.3d 1014 (9th Cir. 2000) .............................................. 49

*Caviness v. Nucor-Yamato Steel Co.,*
105 F.3d 1216 (8th Cir. 1997) .............................................. 49

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................ 55

*Davis v. Passman,*
442 U.S. 228 (1979) ............................................................. 30

*Doe v. Fairfax Cty. Sch. Bd.,*
1 F.4th 257 (4th Cir. 2021) ............................................ 42, 43

*Dotson v. Grisea,*
398 F.3d 156 (2d Cir. 2005) ...................................... 58, 64, 81

*Dupree v. Younger,*
598 U.S. 729 (2023) .............................................................. 77

*Dusanek v. Hannon,*
677 F.2d 538 (7th Cir. 1982) .......................................... 58, 60

*Evans v. International Paper Co.,*
936 F.3d 183 (4th Cir. 2019) ...................................... 50, 51, 52

*Feminist Majority Found. v. Hurley,*
911 F.3d 674 (4th Cir. 2018) ............................... 31, 33, 35, 44

*Fusaro v. Howard,*
  19 F.4th 357 (4th Cir. 2021) ..................................................... 44

*Heller v. Doe,*
  509 U.S. 312 (1993) ...................................................................81

*Hertzberg v. SRAM Corp.,*
  261 F.3d 651 (7th Cir. 2001) ..................................................... 49

*Hill v. Cundiff,*
  797 F.3d 948 (11th Cir. 2015) ............................................. 33, 46

*Hunter v. Town of Mocksville,*
  897 F.3d 538 (4th Cir. 2018) ..................................................... 49

*Johnson v. Shalala,*
  991 F.2d 126 (4th Cir. 1993) ..................................................... 49

*Landrau-Romero v. Banco Popular de P.R.,*
  212 F.3d 607 (1st Cir. 2000) ..................................................... 53

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) .................................................................. 55

*M.L.B. v. S.L.J.,*
  519 U.S. 102 (1996) .................................................................. 81

*Mallinson-Montague v. Pocrnick,*
  224 F.3d 1224 (10th Cir. 2000) ................................................. 49

*Montero v. AGCO Corp.,*
  192 F.3d 856 (9th Cir. 1999) ..................................................... 53

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) .................................................................. 44

*Pennsylvania State Police v. Suders,*
  542 U.S. 129 (2004) ..................................................... 50, 51, 53

*Pollard v. E.I. du Pont de Nemours & Co.,*
  532 U.S. 843 (2001) ......................................................... 49, 50

*Seed v. EPA,*
  100 F.4th 257 (D.C. Cir. 2024) ................................................. 49

iv

*Sony Music Entm't v. Cox Commc'ns, Inc.*,
    93 F.4th 222 (4th Cir. 2024) ................................................. 78

*Spencer v. Wal-Mart Stores, Inc.*,
    469 F.3d 311 (3d Cir. 2006) ................................................. 50

*Spreen v. Brey*,
    961 F.2d 109 (7th Cir. 1992) ....................................... 59, 60, 64

*Sprint/United Mgmt. Co. v. Mendelsohn*,
    552 U.S. 379 (2008) ................................................. 72

*Strickland v. United States*,
    32 F.4th 311 (4th Cir. 2022) ............. 4, 5, 8, 19, 20, 21, 22, 25, 30, 31, 32,
                                    33, 35, 44, 48, 55, 56, 57, 59, 60,
                                    61, 64, 65, 66, 67, 69, 71, 79, 81, 82

*Taylor v. Grubbs*,
    930 F.3d 611 (4th Cir. 2019) ................................................. 44

*United States v. Brothers Constr. Co.*,
    219 F.3d 300 (4th Cir. 2000) ................................................. 73

*United States v. Cunningham*,
    761 F. App'x 203 (4th Cir. 2019) ........................................... 74

*United States v. Grover*,
    85 F.3d 617, 1996 WL 226262 (4th Cir. 1996) ................................. 73-74

*United States v. Landersman*,
    886 F.3d 393 (4th Cir. 2018) ....................................... 30, 70, 74

*Variety Stores, Inc. v. Wal-Mart Stores, Inc.*,
    888 F.3d 651 (4th Cir. 2018) ................................................. 30

*Walsh v. Vinoskey*,
    19 F.4th 672 (4th Cir. 2021) ....................................... 29, 36

*Wilcox v. Lyons*,
    970 F.3d 452 (4th Cir. 2020) ................................................. 30

*Wilkins v. Gaddy*,
    734 F.3d 344 (4th Cir. 2013) ................................................. 81

## Statutes:

28 U.S.C. § 1291 ............................................................ 3

28 U.S.C. § 1331 ............................................................ 2

28 U.S.C. § 2201 ............................................................ 2

42 U.S.C. § 1985 ............................................................ 19

42 U.S.C. § 1986 ........................................................ 19-20

42 U.S.C. § 2000e-16(a) ................................................. 79

## Rules:

Fed. R. Civ. P. 52(a)(1) ................................................. 5

Fed. R. Civ. P. 65(a)(2) ............................................... 22

Fed. R. Evid. 801(d)(2)(D) ........................................... 73

W.D.N.C. Loc. Civ. R. 6.1(b) ....................................... 77

## Other Authorities:

*Federal Public Defender – Western District of NC Employment Dispute Resolution Plan*, https://perma.cc/AG4B-F4ZD ................... 6, 8

U.S. Office of Pers. Mgmt., *General Schedule*, https://perma.cc/X8BT-2C26 ............................................... 38

## INTRODUCTION

This case stems from plaintiff Caryn Strickland's allegations that she was subject to sexual harassment and improper retaliation while employed at a Federal Defender's Office, which is part of the Judicial Branch. The Judiciary is firmly committed to providing all employees with a workplace free from discrimination, harassment, and retaliation, and has adopted comprehensive procedures to address and remedy allegations of workplace misconduct, including the allegations at issue here. In this case, plaintiff commenced the process established by the Judicial Branch to address her allegations of harassment and mistreatment, set forth in the Fourth Circuit's Employment Dispute Resolution Plan (EDR Plan or Plan). But plaintiff terminated that process before filing a formal complaint seeking adjudication of the merits of her claim. She instead filed this lawsuit in federal court against judicial officials who have a role in the complaint process (though not against her alleged harasser). Plaintiff asserted, as relevant here, that her rights to equal protection and due process under the Constitution had been infringed.

On remand from this Court, the district court conducted a six-day bench trial on these claims and then issued comprehensive findings of fact and conclusions of law. Faithfully adhering to the law as set forth in this

Court's prior opinion, the district court found that the facts did not support either of plaintiff's claims. It reasoned that plaintiff had not proven the asserted equal protection violation because the officials whose actions she challenges did not respond with deliberate indifference or discriminatory intent. And it concluded that the evidence likewise does not support plaintiff's assertion that she was misled into believing that any formal complaint would be resolved by a biased decisionmaker, rendering it futile for her to continue through the EDR process.

The district court's conclusions follow directly from the extensive record the court had before it, including numerous documents and recordings in addition to live testimony. Plaintiff fails to identify anything approaching legal error or clear factual error in the district court's thorough decision. This Court should affirm.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331 and 2201. JA61. The district court entered final judgment on August 16, 2024, JA3813, and denied plaintiff's motion for reconsideration on September 9, 2024, JA3860. Plaintiff filed a notice of appeal on October 15, 2024. JA3862. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  Whether the district court's equal protection ruling is based on any clearly erroneous factual findings or legal errors.

2.  Whether the district court's procedural due process ruling is based on any clearly erroneous factual findings or legal errors.

3.  Whether the district court abused its discretion in excluding from trial EDR allegations of non-parties, or committed legal error in declining to rely on those allegations at summary judgment.

4.  Whether Title VII's exclusion of judiciary employees is unconstitutional, a claim plaintiff raises for the first time on appeal.

## STATEMENT OF THE CASE

Plaintiff is an attorney who was employed by the Federal Defender's Office from August 2017 until resigning in March 2019 to serve as a law clerk to a Fourth Circuit judge. *See* JA3539, JA3609. She filed this lawsuit a year after resigning, contending, among other things, that she experienced "unlawful sexual harassment, retaliation, and discrimination" and that the EDR Plan did not afford her "immediate and effective action on her complaints" or "meaningful review or remedies." JA58-59. In a prior appeal, this Court held that two of plaintiff's claims were "sufficient to survive" past the motion-to-dismiss stage: an as-applied Fifth Amendment

equal protection claim asserting deliberate indifference to sexual harassment and an as-applied Fifth Amendment due process claim, to the extent it alleges a deprivation of property rights under the EDR Plan. *Strickland v. United States*, 32 F.4th 311, 321, 377 (4th Cir. 2022). The Court held that both claims must be limited to defendants in their official capacities. *See id*. at 371-74. And because Congress did not waive the government's sovereign immunity from claims for back pay or retrospective relief, the Court further recognized that plaintiff's "potential recovery on those claims" would be "limited to prospective equitable relief." *Id*. at 377.

As a result of this Court's prior decision, plaintiff's remaining claims proceeded on remand against five official-capacity defendants: the Federal Public Defender for the Western District of North Carolina (currently John G. Baker, formerly Anthony Martinez); the Circuit Executive of the Fourth Circuit and Secretary of the Judicial Council of the Fourth Circuit (James N. Ishida at all relevant times); the Chief Judge of the Fourth Circuit and Chair of the Judicial Council of the Fourth Circuit (currently the Honorable Albert Diaz, formerly the Honorable Roger L. Gregory); the Chair of the Judicial Conference Committee on Judicial Resources (currently the Honorable Nancy L. Moritz); and the Director of the Administrative Office of the U.S. Courts (AO) (currently the Honorable Robert J. Conrad, Jr.).

After a six-day bench trial—at which the district court heard from eight live witnesses and received into evidence thousands of pages of documents plus voluminous audio recordings capturing many of the events at issue—the court issued comprehensive findings of fact and conclusions of law, *see* Fed. R. Civ. P. 52(a)(1), and entered judgment in favor of defendants on each of plaintiff's remaining claims, JA3518-3802.  The background and procedural history relevant to this appeal are set forth in more detail below.

### A.    The Fourth Circuit's EDR Plan

As this Court's prior opinion explains, "[a]t the heart of this case is the EDR Plan that was adopted by the Fourth Circuit for addressing employee complaints of sexual discrimination."  *Strickland*, 32 F.4th at 321. The background and pertinent details from that Plan are explained in detail in this Court's prior opinion, *id*. at 321-24, and in the district court's findings and conclusions, JA3529-3534, and briefly summarized here.

The Judiciary does not tolerate discrimination, harassment, or retaliation in the workplace.  Decades ago, the branch created a Model Equal Employment Opportunity Plan, which laid out meaningful and effective procedures to ensure that any workplace misconduct is quickly reported, investigated, and corrected.  Over the years, the Judiciary has made changes to this Model Plan to address the needs of its workforce, and

every Circuit—including this one—has adopted a Plan based on this model. This case focuses on the Fourth Circuit's 2013 Consolidated Equal Employment Opportunity and Employment Dispute Resolution Plan.[1] The 2013 EDR Plan, like the predecessor and successor plans, prohibits "wrongful conduct," including discrimination against employees based on race, color, religion, sex (including sexual harassment), national origin, and disability. SA88 (EDR Plan, Ch. II, § 1).[2] It prohibits harassment "based upon any of these protected categories or retaliation for engaging in any protected activity." SA88 (EDR Plan, Ch. II, § 1).

This case implicates two of the EDR Plan's chapters that differ in important ways: Chapter IX addresses "reports of wrongful conduct," and Chapter X provides the dispute resolution procedures to address a "claim" of denial of rights granted under the Plan. *See* JA3531-3534; SA93-104 (EDR Plan, Chs. IX-X). Under Chapter IX, all "employees are encouraged

---

[1] A superseding EDR Plan took effect in November 2018, during the pendency of plaintiff's claims under the 2013 Plan, but the revisions did not change the relevant provisions. *See* Dkt. No. 44-1. The current EDR Plan for the Federal Defender's Office took effect in 2022. *See Federal Public Defender – Western District of NC Employment Dispute Resolution Plan*, https://perma.cc/AG4B-F4ZD.

[2] Several relevant record items, including the EDR Plan, were omitted from the Joint Appendix but are included in the Supplemental Appendix filed with this brief. References to "SA" in this brief are to this Supplemental Appendix.

to report wrongful conduct . . . before it becomes . . . severe or pervasive."
SA93 (EDR Plan, Ch. IX). Employees may make this report "to the Court's
EDR Coordinator, the Chief Judge, unit executive, human resources
manager, or their supervisor as soon as possible." SA93 (EDR Plan, Ch.
IX). The purpose of a report of wrongful conduct is to trigger an
investigation into the alleged conduct, which may culminate in disciplinary
action against the alleged wrongdoer. *See* JA3531. Once wrongful conduct
is reported as contemplated by Chapter IX, "[t]he Chief Judge and/or unit
executive shall ensure that the allegations in the report are appropriately
investigated, either by the human resources manager or other person."
SA93 (EDR Plan, Ch. IX). Because Chapter IX "was intended to encourage
employees to report instances of misconduct," JA3531, an employee need
not be a victim of wrongful conduct to report it. As the district court
recognized, "Chapter IX does not provide any employee with any rights or
remedies." JA3531; *see* SA93 (EDR Plan, Ch. IX).

An employee who is seeking formal redress for wrongful conduct
must file a claim for remedies under Chapter X of the Plan, which sets forth
a dispute resolution process. The 2013 EDR Plan included three stages for
a Chapter X proceeding: counseling, mediation, and a formal complaint
filed with the EDR Coordinator and resolved by a judicial officer. SA93,

SA96-101 (EDR Plan, Ch. X §§ 1, 8-10); JA3532; *Strickland*, 32 F.4th at

322-24.[3]  A principal purpose of counseling is "to assist the employee in

achieving an early resolution of the matter, if possible."  SA97 (EDR Plan,

Ch. X, § 8(C)(2)).  At the conclusion of the counseling period, an employee

may "choose to pursue his or her claim" by "fil[ing] with the EDR

Coordinator a request for mediation."  SA98 (EDR Plan, Ch. X, § 8(E)).

Mediation allows the "employee and his or her representative, if any, and

the employing office to discuss alternatives for resolving a dispute,

including any and all possibilities of reaching a voluntary, mutually

satisfactory resolution."  SA98-99 (EDR Plan, Ch. X, § 9(B)(3)).

Following mediation, an employee may file a formal written

complaint.  SA99-100 (EDR Plan, Ch. X, § 10(A)).  The Chief Judge is

charged with determining if the complaint complies with the Plan's

requirements and, if so, directing a hearing on the merits.   SA100 (EDR

Plan, Ch. X, § 10(B)(1)).  Either the Chief Judge or a designated judicial

officer would preside over the hearing, and the employee may request

---

[3] Beginning in 2020 with the Fourth Circuit's adoption of a revised
Model EDR Plan, and under the current EDR Plan for the Federal
Defender's Office, which took effect in 2022, counseling and mediation are
no longer required. *See Federal Public Defender – Western District of NC
Employment Dispute Resolution Plan* ch. V, https://perma.cc/AG4B-
F4ZD. Mediation is available as part of the informal Assisted Resolution
process, which is optional for most types of claims.

discovery and further investigation; the employee also has the right to present evidence and cross-examine witnesses and to appeal an adverse final decision to the circuit's judicial council. SA100-103 (EDR Plan, Ch. X, §§ 10(B)(2), 11). A presiding judicial officer handling a Chapter X complaint is authorized to award "a necessary and appropriate remedy," including, but not limited to: "placement of an employee in a position previously denied," "placement in a comparable alternative position," and "reinstatement to a position from which previously removed." SA103-104 (EDR Plan, Ch. X, § 12(A)-(B)). At any time during the Chapter X process, a party may "seek disqualification of a judicial officer, employee or other person involved in a dispute by written request to the Chief Judge." SA96 (EDR Plan, Ch. X, § 7).

### B. Factual Background and Prior Proceedings

#### 1. Plaintiff's First Several Months in the Federal Defender's Office

Plaintiff began her employment at the Federal Defender's Office for the Western District of North Carolina in August 2017 as a Research and Writing Specialist in Charlotte. JA3537-3539. She lacked "practice experience as a licensed attorney trying cases, arguing in court, or examining witnesses," but was "eager to gain experience." JA3538, JA3697. In particular, plaintiff was interested in gaining the experience

necessary to be promoted to Assistant Federal Public Defender (AFPD)—attorneys who, unlike Research and Writing Specialists, are permitted to appear in cases, take primary responsibility for those cases, sign motions, and present arguments in court without supervision. *See* JA3538-39. Plaintiff's offer letter for the Research and Writing Specialist position, signed by Martinez's predecessor, had stated that the offer was made "'with the expectation'" that she would ultimately "'transition to an Assistant Federal Defender position,'" but it contained no assurances regarding the timeline for that anticipated promotion. JA3537 (quoting SA26).

To help plaintiff "learn the ropes of practicing in federal court as a public defender," the then-Federal Defender, Anthony Martinez, asked the First Assistant Defender to serve as plaintiff's mentor. JA3541 (quotation marks omitted). As Martinez's "principal deputy," the First Assistant's responsibilities included "supervis[ing] all employees besides Martinez," though the First Assistant did not himself have authority to promote, demote, fire, or terminate anyone. JA3540-3541 (quotation marks omitted). As part of his mentoring of plaintiff, the First Assistant and plaintiff went to lunch together four times between December 2017 and May 2018, and before May, they had a "friendly professional relationship." JA3542; *see* JA2493 (plaintiff's testimony at trial).

That "friendly professional relationship" did not last.  Within a few months of the final mentoring lunch, plaintiff would report to Martinez that the First Assistant had "engag[ed] in sexually harassing and threatening behaviors, such as cornering [her] in the lobby after hours when he knew [she] was alone."  JA3597 (quotation marks omitted).  Plaintiff continues to assert that she experienced sexual harassment, *see* Pl. Br. 10-19, 71-77, which the First Assistant has steadfastly disputed.

### 2.    The EDR Proceedings

Although plaintiff communicated vague grievances about the First Assistant to Martinez on two occasions in July 2018, she first reported allegations of sexual harassment during a meeting with Martinez on August 9, 2018.  JA3719-3724; *see also* JA3591-3597.

**a.**  Following that August 9 meeting, in accordance with Chapter IX of the EDR Plan, Martinez promptly informed James Ishida, the EDR Coordinator for the Fourth Circuit, of plaintiff's harassment allegations.  By August 14, Martinez had called Ishida and had also forwarded him an August 10 email from plaintiff summarizing her allegations.  JA3599.  Ishida immediately secured the agreement of a Human Resources (HR) Specialist to serve as the investigator.  JA3599-3601.

From the outset, Martinez took several steps to separate plaintiff from the First Assistant. Before plaintiff had even made clear that she was claiming sexual harassment, Martinez had removed the First Assistant as plaintiff's mentor, instructed him not to contact her until further notice, and temporarily made another attorney a "gatekeeper" for research and writing assignments to ensure that plaintiff would not be assigned any work from the First Assistant. JA3727 (quotation marks omitted). A few days after he had informed Ishida about plaintiff's allegations, Martinez authorized plaintiff to telework during the pendency of the investigation. JA3608-3609. Plaintiff did not see the First Assistant or Martinez again in person during the remainder of her time with the office and continued to telework until leaving the office in March 2019. JA3609. Martinez also altered the organizational chart so that plaintiff would report to the Appellate Chief, who would in turn report to Martinez, with the First Assistant having no role in plaintiff's supervisory chain. JA3607-3608. Moreover, as part of a broader change the management team was undertaking to convert its Research and Writing Specialists to AFPDs, Martinez directed that plaintiff be reclassified to an AFPD; that change took effect on August 20, the start of the next pay period. JA3576-3579,

JA3609-3611.  Plaintiff continued to earn the same salary she had earned as a Research and Writing Specialist after this reclassification.  JA3617-3618.

On September 5, plaintiff spoke with Ishida by phone to discuss the wrongful conduct investigation that had been opened in response to her August allegations.  JA3621-3624.  During that call, plaintiff informed Ishida that she also intended to allege that Martinez had violated the EDR Plan by retaliating against her.  JA3622.

**b.**  On September 10, plaintiff filed a formal request for counseling pursuant to Chapter X of the EDR Plan, which included allegations of wrongful conduct by both the First Assistant and Martinez that she believed should also be investigated pursuant to Chapter IX.  JA3624 (district court decision summarizing this request); SA1-8 (plaintiff's request).  The same day, plaintiff emailed then-Chief Judge Gregory a formal request to disqualify Martinez from participating in the EDR process, which Martinez would otherwise be participating in as the unit executive representing the Federal Defender's Office's interests as the respondent party.  JA3624; *see* SA10 (plaintiff's disqualification request).  Judge Gregory ultimately denied plaintiff's disqualification request, concluding that none of the facts for which plaintiff sought an investigation and redress warranted preventing

the head of the accused office from representing that office during the process.  *See* JA3662-3663 (discussing Judge Gregory's reasoning).

In late September, plaintiff consented to "one, unified investigation" to be conducted by the HR Specialist—that is, a single investigation, pursuant to both Chapters IX and X, into the harassment allegations plaintiff brought to Martinez on August 9 as well as the related harassment and retaliation allegations and remedial requests raised in her September 10 submission.  JA3627; *see* JA3634 (Ishida's explanation that a "joint investigation" under Chapters IX and X was appropriate because "both proceedings share essentially the same set of facts" (quotation marks omitted)).

Although the counseling period under Chapter X is generally 30 days, *see* SA97-98 (EDR Plan, Ch. X, § 8(D)), plaintiff requested and obtained a series of extensions, and her counseling period ultimately ended on January 14, 2019.  *See* JA3643, JA3682.  By that time, the HR Specialist had completed her final investigative report, which concluded, among other things, that the evidence in support of plaintiff's harassment claim was "very flimsy" and that the investigator did "not see a case for retaliation." JA3654, JA3690 (quotation marks omitted); *see* JA3651-3659 (district court's detailed discussion of report); SA12-25 (investigative report).  The

report recommended that the First Assistant and Martinez both receive counseling and training—the First Assistant on "'workplace conduct issues and professional communications via email,'" and Martinez on "'how to handle workplace conduct complaints'" and on refraining from making important judgments "'at the end of a day'" when he "'was tired.'" JA3653 (quoting SA25). The report recommended against terminating either Martinez's or the First Assistant's employment. JA3653. This report was an "internal document" that would not become available to plaintiff unless she were to proceed to the third stage under Chapter X—a hearing presided over by a judicial officer—and request the report through discovery. JA3664 & n.82 (quotation marks omitted).[4] In order to address a concern raised by plaintiff about the report being unfairly disclosed to Martinez through the ongoing investigation resulting from her Chapter IX report of wrongful conduct, consideration of whether there was any basis for disciplinary action against Martinez or the First Assistant was deferred while the Chapter X process went forward. *See* JA3664-3665, JA3789 n.140.

---

[4] As Ishida explained to plaintiff at the time, providing the report to the parties to the Chapter X proceeding would make informal resolution at the counseling or mediation stage more difficult; the parties might be inclined to "fight about the report instead of" seeking a voluntary resolution of the underlying issues. JA3664 (quotation marks omitted).

**c.** In late January 2019, plaintiff proceeded to the second stage of the Chapter X process by requesting mediation.  JA3667.  The Chief Circuit Mediator for the Fourth Circuit was designated to handle the mediation.  JA3667.  Throughout February and into early March, the mediator had several conversations with the parties.  *See* JA3668-3670, 3676-3678.  As part of that mediation process, Martinez offered to allow plaintiff to transfer to the Asheville office; he had previously declined to permit the transfer based on a lack of office space but decided to offer plaintiff his own office there with the intention of using the library or conference room when he traveled to Asheville.  JA3669.  Plaintiff declined that offer, JA3669-3670, and later "expressed concern and frustration that she would never be able to return to work normally at the [Federal Defender's Office]," regardless of which location her office would be in.  JA3678.  She instead "asked [the mediator] to help her secure a Fourth Circuit clerkship."  JA3678.

The mediator connected plaintiff with a Fourth Circuit judge who had a term clerkship vacancy and was interested in interviewing plaintiff for the role.  JA3678.  In early March, plaintiff interviewed for the clerkship, received an offer on the spot, and promptly accepted the position.  JA3679, JA3681.  On March 11, 2019, plaintiff informed Ishida that she "no longer

wish[ed] to pursue the Chapter X portion of [her] EDR claim." SA120. In withdrawing her claim, plaintiff stated that she "very much appreciate[d] the Fourth Circuit's assistance in helping [her] reach the best possible outcome under the circumstances," stating that the clerkship would "allow [her] a fresh start while saving [her] reputation and the hard work [she] ha[s] put into building [her] career." SA120. Thus, plaintiff chose to conclude pursuit of her claims under the EDR Plan before the matter reached the complaint and hearing stage. Nothing precluded plaintiff from pursuing her Chapter X claim after leaving the Federal Defender's Office. *See* SA88 (EDR Plan, Ch. I, § 3(B)) (defining "employee" as used throughout the EDR Plan to include "former employees").

Plaintiff "formally resigned" from the Federal Defender's Office effective March 15, 2019, JA133, and began her Fourth Circuit clerkship a few days later, Dkt. No. 78-1, at 9. Her salary as a law clerk was comparable to what she had been earning in the Federal Defender's Office. *See* SA122-SA123, SA137 (indicating final Federal Defender's Office salary of $109,365, salary at start of Fourth Circuit clerkship of $108,316, and salary approximately two months into clerkship of $111,810). At the time of trial (several years after these events), plaintiff was working as a private

appointed counsel for the State of North Carolina representing indigent criminal defendants on appeal.  JA3694.

**d.**  After plaintiff withdrew her Chapter X claims, the investigation report regarding the Chapter IX report of wrongful conduct was forwarded for consideration of any disciplinary action against Martinez or the First Assistant or any other appropriate action.  Ishida sent Judge Gregory the investigation report, noting that Judge Gregory was "tasked with deciding if disciplinary action is appropriate for Mr. Martinez," while Martinez was in turn responsible for taking "any disciplinary action against [the First Assistant]."  JA3683 (quotation marks omitted).

Even though the investigation report contained no finding of retaliation or other "wrongful conduct" by Martinez as defined in the EDR Plan, Ishida issued a "Letter of Counseling" to Martinez.  JA3686.  The letter was neither a "reprimand" nor a "disciplinary action," but rather was intended to "inform [Martinez] about a few well-intended mistakes he made when communicating with [plaintiff] during her EDR process."  JA3686-3687 (quotation marks omitted).  After summarizing the findings of the report, that letter stated that Judge Gregory had "decided to adopt the recommendations contained in the report" and "hopes that [Martinez] will avail [himself] of continual workplace conduct, decision-making, and

leadership training opportunities." SA83; *see also* JA3687-3691 (discussing the letter).

To address the report's findings regarding the First Assistant, which likewise did not contain any finding of "wrongful conduct" by him as defined in the EDR Plan, Martinez counseled the First Assistant "about his professional word choice with respect to four emails [he] sent to [plaintiff]" and about "using profanity in emails," noting, as the investigator's report had, that the profanity at issue "was not directed at anyone in particular." JA3684-3685. Martinez concluded that the First Assistant's conduct did not call for any disciplinary action. JA3685.

### 3. Plaintiff's Complaint and This Court's Prior Decision

Plaintiff filed this lawsuit in March 2020 against a total of 12 defendants, suing entities, some persons in their individual capacities, some in their official capacities, and some in both. *See* JA57-58; *Strickland*, 32 F.4th at 320. Plaintiff elected not to sue the First Assistant, and her claims instead focused on defendants' response to her allegations of harassment and the process she received under the EDR Plan. Her complaint alleged violations of equal protection and due process under the Fifth Amendment, conspiracy to violate her civil rights under 42 U.S.C. § 1985, and neglect to prevent conspiracy to violate her civil rights under 42

U.S.C. § 1986. She sought compensatory and punitive damages, back pay, declaratory and injunctive relief, and "appropriate front pay as equitable relief in lieu of reinstatement." JA140-141. Plaintiff has not sought or obtained leave to amend her complaint, so the original complaint remains operative. *See generally* JA9-56.

The district court granted defendants' motion to dismiss, and in a prior appeal, this Court affirmed in part, reversed in part, and remanded the matter to district court for further proceedings. *Strickland*, 32 F.4th at 377. The Court affirmed the dismissal of plaintiff's individual-capacity claims as well as her claims under Sections 1985 and 1986, holding that her individual-capacity claims were not cognizable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and that she had failed to plausibly allege violations of Sections 1985 and 1986. *Strickland*, 32 F.4th at 360-62, 371-74. The Court also affirmed the dismissal of plaintiff's facial due process challenge to the EDR Plan and held that her as-applied due process challenge could proceed only to the extent it alleges a deprivation of property rights. *Id.* at 352-55. This Court reversed and remanded, however, as to plaintiff's official-capacity claims alleging as-applied violations of equal protection and due process under the Fifth Amendment. *Id.* at 348-60, 363-66.

As to plaintiff's as-applied equal protection claim, the Court held that plaintiff had plausibly alleged a claim of deliberate indifference to sexual harassment cognizable under the Fifth Amendment. *Strickland*, 32 F.4th at 356-60. It determined that, to succeed on that claim, plaintiff would need to prove, among other things, that "the supervisory officials and/or officials responsible for overseeing the court's EDR plan responded to the allegations with deliberate indifference" and that "the deliberate indifference was motivated by a discriminatory intent." *Id.* at 359.

As to plaintiff's as-applied due process claim, the Court held that plaintiff had identified a cognizable property interest because the EDR Plan provides substantive rights to be free from discrimination, harassment, and retaliation, noting that the plan also sets forth "a detailed set of procedures," *i.e.*, those set forth in Chapter X, that "are to be followed in the event that an employee claims that his or her substantive rights afforded under the EDR Plan have been violated." *Strickland*, 32 F.4th at 349-50. The Court held that plaintiff had plausibly alleged she was "deprived, without due process, of her property right to a remedy" under the EDR Plan. *Id.* at 356. To succeed on that claim, plaintiff would need to establish that she was led "to believe that [Martinez] would be the final decisionmaker in the case," in which case "a reasonable factfinder could

conclude that continuing with the EDR process would be futile" because the final decision would be made by someone with an inherent "conflict of interest" in its outcome. *Id.* at 355-56.

As to remedy, this Court held that plaintiff's "potential recovery" on her remaining claims would be "limited to prospective equitable relief," which plaintiff's complaint sought by asking for declaratory relief and an award of "front pay in lieu of reinstatement." *Strickland*, 32 F.4th at 320, 366. The Court held that these remedies could be sought pursuant to "the *Larson-Dugan* exception to sovereign immunity," *id.* at 363-66; it recognized that sovereign immunity shields defendants from the additional relief requested in plaintiff's complaint, such as back pay and compensatory and punitive damages. *See id.* at 366-71.

### 4. Proceedings on Remand

Shortly after this Court's mandate issued, plaintiff moved for a preliminary injunction, which the district court consolidated with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). *See* JA3525. Following extensive discovery, the parties filed cross-motions for summary judgment, which the court largely denied—though it held that plaintiff failed to meet her summary-judgment burden to establish an equal

protection violation by any defendant other than Martinez and that certain undisputed facts were established for trial. JA469-478, JA3526-3527.

The district court then held a six-day bench trial. JA3527. Immediately after the parties delivered opening statements, plaintiff informed the court that she would decline to call any witnesses to testify in support of her claims or to provide foundation for the documents on which she asserted the case should be resolved; she instead chose to rest her case on the exhibits and deposition transcripts she submitted before trial. JA2475-2479, JA3527. The district court then heard from defendants' eight live witnesses—including plaintiff, who was called as an adverse witness— and, in rendering its decision, considered that testimony as well as thousands of pages of documents and numerous audio recordings.[5]

---

[5] "Throughout this ordeal, [plaintiff] surreptitiously recorded her interactions with those tasked with dealing with her case, including her supervisors, the investigator, the mediator, and the Fourth Circuit Executive, among others." JA3529 n.9. These recordings "are in evidence," JA3529 n.9, and the district court relied upon them throughout its findings and conclusions.

In addition to plaintiff, the district court heard live testimony from two of the defendants named in plaintiff's complaint—Martinez and Ishida—plus the First Assistant, the Appellate Chief of the Federal Defender's Office, the Administrative Officer for the Federal Defender's Office, the former national Judicial Integrity Officer, and defendants' expert witness regarding damages. *See* JA2444-3117. The record also includes transcripts of the deposition of an additional defendant named in plaintiff's complaint—Judge Gregory—plus the Fourth Circuit's Chief Mediator, the HR Specialist who investigated plaintiff's allegations, a

*Continued on next page.*

Addressing the Fifth Amendment equal protection claim, the district court held that the evidence failed to establish this claim for two independent reasons. *First*, Martinez did not respond to plaintiff's complaint with deliberate indifference. JA3724-3764. To the contrary, the district court found that Martinez "took several steps to separate" plaintiff from the First Assistant and "acted consistently with the EDR Plan by promptly notifying Ishida of [plaintiff's] claims and promptly initiating the investigatory process (over which, the record shows, he exerted no control)." JA3727-3728. And far from retaliating against plaintiff for alleging harassment, Martinez promoted plaintiff to the position of AFPD and did not take any tangible employment action against her due to the allegations. *See* JA3743-3764 (concluding that each of plaintiff's theories of retaliation is unsupported by the evidence). *Second*, Martinez's response was not motivated by discriminatory intent. JA3764-3769. The district court found that, though "Martinez himself did not believe [plaintiff's] sexual harassment claim," at no point did he "intentionally discriminate[] against [plaintiff] on the basis of sex." JA3766 & n.127. Thus, because plaintiff had failed to establish two of the elements necessary to support her

---

former Fair Employment Practices Officer at the AO, and plaintiff's expert witnesses regarding workplace investigations and damages. *See* JA636-1785.

claim under this Court's prior decision—let alone establish both—the court rejected her equal protection claim. *See Strickland*, 32 F.4th at 359.

Addressing the asserted due process violation, the district court similarly concluded that the evidence failed to establish plaintiff's claim. In accordance with this Court's prior decision, the district court evaluated whether plaintiff had established that the reason why she withdrew her EDR claim before proceeding to the formal complaint stage was that she was reasonably "led to believe that [Martinez]," an interested party, "would be the final decisionmaker in her case." JA3775 (alteration in original) (quotation marks omitted). The court concluded that any such belief would have been unreasonable; to reach that conclusion, it would be necessary to "disregard the plain language of the EDR Plan itself" (which provides for a decision by a judicial officer) and instead rely exclusively on "out-of-context and inconclusive statements" by the mediator and the national Judicial Integrity Officer. JA3788.

Finally, the district court held that plaintiff failed to establish that she was constructively discharged (a showing that, as explained below, would have been required for plaintiff to obtain front pay). JA3791-3793. The court explained that "[t]he law . . . only recognizes constructive discharge claims where an employee would have had *no choice* but to resign."

JA3792 (quotation marks omitted).  It found that nothing in plaintiff's experience "rise[s] to the level of intolerableness necessary for this Court to accept her claim of constructive discharge."  JA3793.

"Summing up" its decision, the district court found that, although plaintiff claimed sexual harassment "in complete good faith," this case is focused on what happened after plaintiff made her claim of harassment. JA3698, JA3793 (formatting altered).  And as to that issue, the evidence established that defendants did not "in any way" discriminate against her based on her gender or retaliate against her for making a good faith complaint, and that plaintiff "received the process to which she was due." *See* JA3793-3794.  The district court emphasized that, although plaintiff "passionately" believes in her claims—so much so that "she has come to believe that anyone who questions her position is, ipso facto, discriminating against her and denying her due process"—the evidence simply did not support plaintiff's constitutional claims.  *See* JA3698.

Plaintiff sought reconsideration, which the district court denied. JA3857-3860.

## SUMMARY OF ARGUMENT

**I.**  The district court's equal protection ruling should be affirmed. Under this Court's prior decision, to prove that defendants had violated her

constitutional right to equal protection, plaintiff needed to show that supervisory officials responsible for overseeing the Fourth Circuit's EDR Plan had responded to her allegations of sexual harassment with deliberate indifference and that this deliberate indifference was motivated by discriminatory intent. As the district court found, however, the evidence does not satisfy either of these requirements, let alone both. To the contrary, defendants took a number of steps in an effort to ensure that plaintiff would be separated from her alleged harasser and to ensure an appropriate investigation of her allegations. Nor is there any evidence that defendants responded with discriminatory intent. Plaintiff's effort to challenge the district court's factual findings falls far short of the bar necessary to reverse those findings, and her claims of legal error are likewise unavailing. At bottom, the facts just do not line up with the constitutional violation plaintiff alleged. Moreover, even if plaintiff had shown an equal protection violation, the record does not support any prospective equitable relief for this claim because plaintiff failed to show she was constructively discharged, as would be necessary for her to obtain the only remedy she has requested: "front pay" in lieu of reinstatement.

**II.** The district court's procedural due process ruling should also be affirmed. Ordinarily, people who, like plaintiff, fail to avail themselves of

available processes cannot assert that they were improperly deprived of such processes. This Court held in its prior decision that plaintiff's allegations, if established, would fall outside that ordinary rule because plaintiff had alleged that she was led to reasonably believe that any formal complaint she might file would be resolved by a biased decisionmaker such that the process would be futile. But as the district court recognized, plaintiff wholly failed to establish this necessary factual predicate for this due process claim. The evidence instead reflects that plaintiff chose not to pursue the EDR Plan's comprehensive formal complaint process even though there was no sound reason for her to conclude that she would receive anything short of a fair hearing from an impartial judicial officer, as the EDR Plan provides for.

**III.** The district court also did not err with regard to EDR allegations of non-parties—what plaintiff refers to as her proposed "MeToo Evidence." The district court acted well within its discretion in excluding this evidence at trial as irrelevant hearsay—it has no bearing on any of the issues plaintiff needed to prove under this Court's prior decision, and plaintiff is seeking to establish the veracity of unproven allegations of non-parties. The district court likewise did not err in how it handled this evidence in connection with its conclusion, at summary judgment, that neither the Chief Judge of

the Fourth Circuit nor its Circuit Executive had exhibited discriminatory intent in responding to plaintiff's EDR claims. In any event, any evidentiary error on this score was harmless because plaintiff would have been unable to establish necessary aspects of her case even if she could have relied on this evidence.

**IV.** Plaintiff's Title VII arguments, which she raises for the first time on appeal, likewise fail. Plaintiff has forfeited any argument that the statutory exclusion of certain judiciary employees is an unconstitutional classification, and in any event that argument fails on its merits because there are sound reasons for Congress's decision to trust in the Judiciary's own processes for resolving workplace issues.

## STANDARD OF REVIEW

Following a bench trial, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *Walsh v. Vinoskey*, 19 F.4th 672, 676 (4th Cir. 2021). The "clear error" standard is "very deferential": if the district court provides a plausible account of the evidence in light of the entire record, this Court "may not reverse the district court's conclusion—even if [it] may have weighed the evidence differently." *Id.* at 677 (quotation marks omitted).

This Court reviews the district court's evidentiary rulings for abuse of discretion and its legal conclusions concerning the Rules of Evidence de novo. *United States v. Landersman*, 886 F.3d 393, 413 (4th Cir. 2018). Any evidentiary errors are further reviewed for harmlessness. *Id.*

The Court reviews de novo the district court's grant of partial summary judgment. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

## ARGUMENT

### I. The district court's equal protection ruling should be affirmed.

#### A. Plaintiff failed to show that defendants responded to her harassment claims with deliberate indifference or discriminatory intent.

##### 1. Plaintiff failed to prove two of the elements set forth in this Court's prior decision.

As the Court's prior decision in this case explains, the Supreme Court has held that the Fifth Amendment Due Process Clause contains an equal protection component conferring "'a federal right to be free from gender discrimination.'" *Strickland v. United States*, 32 F.4th 311, 356 (4th Cir. 2022) (quoting *Davis v. Passman*, 442 U.S. 228, 235 (1979)). A "pure retaliation claim" is not a cognizable equal protection claim. *See id.* at 357-58 (discussing *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020)). If, however, a plaintiff alleges that, after complaining of discrimination she is subject to

continued sexual harassment and continued differential treatment on the basis of sex, the allegations are cognizable under the Fifth Amendment's equal protection component because such allegations concern the right "to be free from sex discrimination." *Id.* at 358.

This Court "conclude[d] that the principles outlined by the Fourth Circuit in *Feminist Majority Foundation* [*v. Hurley*, 911 F.3d 674 (4th Cir. 2018),] apply equally to the circumstances alleged by [plaintiff] in this case." *Strickland*, 32 F.4th at 359. Thus, "federal judiciary employees who occupy supervisory roles and/or who are charged with enforcing an EDR plan can, under *Feminist Majority Foundation*, be held liable under the Fifth Amendment for their deliberate indifference to sexual harassment committed by a federal judiciary employee or supervisor against another federal judiciary employee." *Id.* This Court concluded that "[t]he elements of such a claim . . . are essentially identical to those outlined by the Fourth Circuit in *Feminist Majority Foundation*: (1) the plaintiff was subjected to sexual harassment by another employee or supervisor; (2) the plaintiff alerted supervisory officials and/or officials responsible for overseeing the court's EDR plan about the sexual harassment; (3) the supervisory officials and/or officials responsible for overseeing the court's EDR plan responded

to the allegations with deliberate indifference; and (4) the deliberate indifference was motivated by a discriminatory intent." *Id.*

On remand, the district court carefully hewed to the law as set forth in this Court's prior opinion and applied that law to its detailed findings of fact. JA3714. As to the first element, the district court concluded that it need not resolve whether plaintiff was in fact subject to any sexual harassment by the First Assistant because plaintiff failed to establish other elements of her claim. *See* JA3697-3698, JA3714-3715.[6] As to the second element, the district court found that plaintiff reported the alleged harassment on August 9, 2018 during a meeting with Martinez. JA3719-3724, JA3591-3597. As to the final two elements, the district court engaged in an exhaustive analysis explaining why the facts, as it found them, showed

---

[6] Although it is unnecessary for this Court to reach a conclusion as to whether plaintiff was sexually harassed by the First Assistant, the government reiterates its view that the evidence fails to establish that any such harassment occurred. As the government explained in its district-court filings, the evidence indicates that none of the conduct that plaintiff relies upon for her claim was unwelcome at the time, the conduct at issue was not based on her sex, and the conduct was not severe or pervasive. JA1865-1868. Nor does the evidence show any quid-pro-quo sexual harassment. Plaintiff's quid-pro-quo allegation focuses on a single email from the First Assistant, but ample context indicates that this email was not a sexual quid-pro-quo offer; moreover, there is no causal connection between the email and any tangible employment action—indeed, the First Assistant never took any tangible employment action against plaintiff and in fact lacked the authority to do so. JA1868-1871.

that Martinez had not responded to her allegations with deliberate indifference or discriminatory intent.  *See* JA3724-3775.

As the district court explained, the record simply does not support the numerous retaliatory and discriminatory inferences plaintiff sought to draw regarding the actions taken by any defendant.  *Cf. Strickland*, 32 F.4th at 358 (discussing plaintiff's allegations and arguments as set forth in her appellate brief in the prior appeal).  Deliberate indifference is "'a very high standard'" that "'is rigorous and hard to meet.'"  JA3725 (first quoting *Baynard v. Malone*, 268 F.3d 228, 236 (4th Cir. 2001); and then quoting *Hill v. Cundiff*, 797 F.3d 948, 975 (11th Cir. 2015)).  To succeed, plaintiff would have needed to prove that the response to her allegations was "'clearly unreasonable in light of known circumstances'"—that is, that a supervisory official "'knew about harassment of the plaintiff and acquiesced in that conduct by refusing to reasonably respond to it.'"  *Strickland*, 32 F.4th at 359 (quoting *Feminist Majority Found.*, 911 F.3d at 702-03).

Defendants, however, did no such thing.  As to plaintiff's allegations regarding actions taken by Martinez, before plaintiff had even made clear that she was claiming sexual harassment, Martinez took several steps in response to plaintiff's vague references to a desire to "set[] boundaries," *see* JA3719, with the First Assistant: he removed the First Assistant as

plaintiff's mentor, instructed him not to contact her until further notice, and temporarily made another attorney a "gatekeeper" for research and writing assignments to ensure that plaintiff would not be assigned any work from the First Assistant. JA3727 (quotation marks omitted). Once Martinez was on notice that plaintiff's allegations did concern sexual harassment, Martinez also altered the organizational chart so that the First Assistant would have no role in plaintiff's supervisory chain and authorized plaintiff to telework during the pendency of the investigation. JA3607-3609, JA3727-3728. As the district court found, "[t]hese actions were effective in ensuring that [plaintiff] and [the First Assistant] had no further meaningful contact." JA3728.

In addition to this series of steps to separate plaintiff from her alleged harasser, Martinez ensured that the allegations were investigated pursuant to the EDR Plan. Within a few days of receiving notice of the alleged harassment, Martinez had reported plaintiff's harassment allegations to James Ishida, the EDR Coordinator for the Fourth Circuit. JA3599-3601, JA3728. An investigator was promptly appointed and, contrary to plaintiff's argument otherwise (*e.g.*, Pl. Br. 123-24), "the record shows" that Martinez "exerted no control" over the investigatory process. JA3728; *see* JA3601-3602, JA3601 n.46 (detailing evidence on this issue and explaining

the court's factual "finding that Martinez did not have control over the investigation and that Martinez only participated as a witness"). Nor does the record indicate that Martinez took any adverse action against plaintiff in retaliation for making her allegations—let alone that he did so on the basis of her sex. *See* JA3743-3764.

Moreover, and independent of plaintiff's failure to prove deliberate indifference by Martinez, the district court found that no defendant was "motivated by a discriminatory intent." *Strickland*, 32 F.4th at 359. Plaintiff argued, as she does again on appeal, that Martinez "'made no effort to stop'" the alleged harassment, instead "'downplay[ing]'" and "'ratif[ying]'" it. Pl. Br. 115 (quoting *Feminist Majority Found.*, 911 F.3d at 703).[7] But as the district court explained, "the record demonstrates" that

---

[7] Plaintiff repeatedly suggests (Pl. Br. 28, 66, 77, 116) that a statement Martinez made to her during one of her conversations with him about the First Assistant was equivalent to "at least you were not touched." She claims that the investigation and the Chief Judge's Letter of Counseling "found" that he said "words to [this] effect." Pl. Br. 28. As the district court explained, however, plaintiff's own audio recording of this conversation reflects that, while plaintiff and Martinez were discussing the nature of her allegations, "Martinez interrupted [plaintiff] and asked, in a somewhat inquisitive tone, '[b]ut there was no physical contact or anything like that?'" JA3593 (alteration in original) (quoting plaintiff's recording). "Based on the Court's actual review of the recording, it appears Martinez was simply confirming that there was no physical contact better to understand [plaintiff's] allegations." JA3735. The investigator's understanding of this comment, by contrast, appears to have been based on the characterization plaintiff provided rather than plaintiff's audio recording. *See* SA22 (stating

*Continued on next page.*

"this simply is not true" for the reasons just discussed. JA3765. Nor does the record support plaintiff's arguments regarding any other defendant's discriminatory intent—indeed, the district court determined at the summary judgment stage that no reasonable factfinder could conclude otherwise with respect to the additional defendants she had accused of discriminatory intent. *See* JA475-478 (discussing lack of evidence of discriminatory intent by either Ishida or Judge Gregory).

### 2. The district court's factual findings are not clearly erroneous.

In seeking to overturn the district court's careful analysis, plaintiff relies on what she describes as "undisputed facts." Pl. Br. 112. But plaintiff's view of the facts bears little resemblance to the record, and her disagreements with the district court's well-founded conclusions fall far short of establishing clear error. *See Walsh v. Vinsokey*, 19 F.4th 672, 676 (4th Cir. 2021).[8]

---

that Martinez "made [these] comments ba[sed] on [plaintiff]'s report" and, in the preceding sentence, relying on what plaintiff "states" regarding Martinez's response to her initial complaint); SA18 (summarizing documents received by the investigator, which do not include audio recordings).

[8] This brief responds to factual assertions in plaintiff's brief for which a response is material to the issues on appeal. As a result, this brief does not exhaustively address each of the numerous factual representations contained in plaintiff's brief that appear to be either inaccurate or, at best, misleading. We note that many of plaintiff's factual representations omit

*Continued on next page.*

To begin, plaintiff repeatedly says that Martinez "did nothing to stop" her alleged harassment. Pl. Br. 77, 80, 129. But the district court provided exhaustive detail, well-supported by the record, regarding the steps Martinez took to prevent the possibility of further harassment once he was made aware of her allegations. *See supra* pp. 33-35. Plaintiff further asserts that defendants "failed to investigate appropriately" and failed "to take appropriate corrective action," Pl. Br. 113, but again, the district court thoroughly explained based on the record why the investigation that occurred was not so clearly unreasonable as to support a deliberate indifference claim. *See* JA3769-3775. Underscoring the thorough nature of the district court's analysis, the district court took care to note what it perceived to be "imperfections" in the investigation—even though "the law does not require a perfect investigation," and even though the district court recognized those issues did not rise to the level of a constitutional violation. JA3769, 3771, 3774; *see also* JA3733-3738 (explaining why the district court viewed certain comments by Martinez as "errors in judgment rather [than] deliberate indifference to [plaintiff's] allegations"). For similar reasons, plaintiff's arguments do not establish that the district court erred

---

relevant context and/or rely for support on plaintiff's own district court filings rather than appropriate material from the underlying record.

in concluding that no other defendant acted with discriminatory intent, an issue on which the district court correctly recognized plaintiff's evidence was insufficient even to survive summary judgment. *Compare* Pl. Br. 117-118 (assertions regarding Ishida and Judge Gregory), *with* JA475-478 (addressing lack of evidence of discriminatory intent by either Ishida or Judge Gregory).

Plaintiff's allegations regarding retaliation likewise provide no basis for overturning the district court's understanding of the facts. To take one example, plaintiff asserts (Pl. Br. 77-79) that various officials in the Federal Defender's Office retaliated against her by failing to consider her for a grade-level promotion from Grade 14 to Grade 15 in August 2018.[9] There is no evidence suggesting that plaintiff was affirmatively considered for such a promotion and rejected, let alone rejected for a discriminatory reason. Plaintiff's assertion is that her constitutional rights were violated when the office overlooked a technical possibility that could have resulted in a higher

---

[9] The General Schedule classification and pay system, which covers approximately 1.5 million civilian federal employees and is analogous to the "FD" pay plan that covered plaintiff, has 15 grades from Grade 1 (lowest) to Grade 15 (highest). Each grade has 10 step rates that employees can progress through based on an acceptable level of performance and longevity. After certain intervals, GS employees may also advance to higher grades by promotion. *See* U.S. Office of Pers. Mgmt., *General Schedule*, https://perma.cc/X8BT-2C26.

salary for her upon conversion to an AFPD position. Specifically, when determining that it would make a revenue-neutral conversion of its two Research and Writing Specialists to AFPDs—a more desirable position subject to a different pay scale—the office's management apparently did not consider, or even take note of, plaintiff's impending anniversary date, on which she would have been technically eligible for a promotion to Grade 15. Had the office first processed a promotion for plaintiff on that pay plan, she would have retained that higher salary in the subsequent revenue-neutral conversion to AFPD. *See* JA3609-3613, JA3749.

As the district court explained, the lack of contemporaneous consideration of the issue "appears to be an administrative oversight," not retaliation against plaintiff for reporting her harassment allegations. JA3749. Plaintiff was treated similarly to her fellow Research and Writing Specialist, a male colleague who likewise "did not receive a raise at the time of conversion" to AFPD (though his pay was adjusted months later to bring it in line with other attorneys with similar levels of experience). JA3749; *see also* JA3693-3694. Moreover, the district court was persuaded by testimony indicating that a promotion of an entire grade on the pay scale rather than a step increase "would have been unlikely" even if it had been considered. JA3749. And the district court was further persuaded by

testimony indicating that Martinez did not consider the issue because he relied upon a different employee, the Administrative Officer, to notify him when attorneys became eligible for promotion consideration, and he did not receive such a notice regarding plaintiff at or around the time of conversion. JA3748. Plaintiff's speculation that the Administrative Officer thereby discriminated against her by failing to flag this issue for Martinez (Pl. Br. 78) is just one of many instances in which plaintiff seeks to draw different, and far less plausible, inferences from the record than the ones the district court reasonably drew.

Plaintiff's additional theories of gender-based retaliation likewise contradict the facts as found by the district court and the inferences the court reasonably drew from them. To briefly address each:

- **Consideration for new AFPD position:** Plaintiff asserts (Pl. Br. 32) that "Martinez refused to transfer [plaintiff] to the appeals unit," even though a position in that unit was available. As the district court explained, plaintiff was not considered for this position because it "was identical to the position that she already had," JA3750, which was likewise being transitioned as part of the office's reorganization to report to the Appellate Chief—taking plaintiff out of the First Assistant's supervisory chain. *See* JA3585, JA3598, JA3608.

- **Job responsibilities:** Plaintiff asserts (Pl. Br. 84) that she was "relegat[ed]" to "research and writing status beneath a male 'gatekeeper' attorney." As the district court explained, plaintiff's responsibilities were not materially diminished following her report of harassment, JA3752-3755, and the assignment of a

gatekeeping attorney "was done to protect [plaintiff] from further contact with [the First Assistant]." JA3755.

- **Locality pay:** Plaintiff asserts (Pl. Br. 109) that the Federal Defender's Office "intentional[ly]" and "likely punitive[ly]" attempted to cut her pay by nearly 15% by taking out her locality pay adjustment when converting her to AFPD. As the district court explained, plaintiff's "salary stayed the same," her "locality pay was not actually denied," and her entire argument is premised on the fact that one version of a form associated with her conversion included a mistake regarding locality pay. JA3758-3759. The district court did not err, let alone clearly, in concluding that the "more reasonable" view of the evidence is that the form plaintiff relies on was a simple administrative "mistake" that was never intended to—and never did—adversely affect her salary. JA3758.

- **Backdating conversion to AFPD:** Plaintiff states (Pl. Br. 108-109) that the Federal Defender's Office's "obvious motive" for making her conversion to AFPD effective August 20, 2018, was to have an "excuse for not promoting her" from Grade 14 to Grade 15 on August 21, when she would first become eligible for that (extraordinary) promotion. As the district court reasonably explained, however, "the record" shows that the close proximity between these dates "is simply a coincidence." JA3759-3760, JA3609-3610, JA3615-3616. The operative form reflecting plaintiff's conversion to AFPD effective August 20 was dated August 28. SA139. It is "common" for this sort of form to be approved after its effective date, JA3616-17, and plaintiff does not appear to attribute anything nefarious to the numerous additional personnel forms in the record that were similarly "backdated" to ensure that changes (including pay increases) would take effect on the correct date regardless of when the form was approved. *See* SA121-122, SA126, SA128-130, SA132-133, SA135, SA137-138.

- **Work location:** Plaintiff asserts (Pl. Br. 39, 79-80, 84) that she was "ostracized" from her colleagues by being authorized to telework during the pendency of the investigation, in response to her concerns about working in the same location as the First Assistant. As the district court explained, "[a]t no point did

[plaintiff] indicate to Martinez that she was unhappy with teleworking," she "later indicated during mediation that she preferred teleworking," and Martinez "could not have retaliated, or acted with deliberate indifference, by granting [plaintiff's] teleworking requests" in an effort to "alleviate her discomfort with being physically present in the same office as [the First Assistant]." JA3762. Nor did plaintiff experience gender-based retaliation when she was not immediately authorized to work in person in Asheville; that decision was based on "a genuine lack of office space in Asheville"—and when Martinez ultimately offered plaintiff his own Asheville office during mediation, "she declined." JA3763-3764.

In sum, the district court made detailed findings that readily support its conclusion that no defendant responded to plaintiff's claims with the requisite deliberate indifference and discriminatory intent. Plaintiff urges this Court to accept a different view of the facts, but plaintiff's arguments misunderstand both the underlying record and the deferential nature of this Court's clear-error review.

### 3. Plaintiff's arguments regarding legal error are unavailing.

Plaintiff is likewise mistaken that the district court's conclusions were "based on several critical threshold legal errors." Pl. Br. 119.

Relying on this Court's decision in *Doe v. Fairfax County School Board*, 1 F.4th 257, 266 (4th Cir. 2021), plaintiff argues (Pl. Br. 119-22) that the district court should have concluded that Martinez was on notice of her harassment allegations in early July 2018, rather than August, because by

that time she believes Martinez was "'alerted to the possibility of sexual harassment occurring,'" Pl. Br. 119 (quoting *Fairfax County School Board*, 1 F.4th at 266).  But this Court held in *Fairfax County School Board* that in determining "actual notice or knowledge," the relevant issue is whether there is "a report that can objectively be taken to allege sexual harassment." 1 F.4th at 263.  The district court explained, in both its original decision and its decision denying reconsideration, why plaintiff's statements to Martinez in July 2018 could not objectively be taken to allege sexual harassment. JA3719-3723, JA3857-3859. Indeed, when plaintiff spoke with Martinez in July 2018, she "was purposely being vague . . . because she did not want to trigger any formal reporting." JA3719.  The court's conclusion that Martinez instead had "actual notice" in August is consistent with *Fairfax County School Board* and supported by the record.

In any event, even assuming plaintiff could establish that the district court made any legal or clear factual error in finding Martinez had actual notice on August 9, 2018 (rather than sometime the prior month), no reasonable factfinder could conclude that defendants' response was so clearly unreasonable as to satisfy the deliberate indifference standard.  As discussed above, Martinez took steps beginning in July to separate plaintiff from the First Assistant, and he continued to take further steps in August.

*See supra* pp. 33-35.  Any error on this issue was therefore harmless.  *See Avail Vapor, LLC v. U.S. Food & Drug Admin.,* 55 F.4th 409, 425-26 (4th Cir. 2022) (explaining harmless-error rule for civil cases, under which an appellant must carry the burden of showing that any error is harmful).

To the extent plaintiff urges that the district court erred in requiring her to "prove an added element of 'discriminatory intent,' beyond deliberate indifference," Pl. Br. 115, that argument, too, runs headfirst into precedent.  This Court's prior decision in this case clearly identified "deliberate indifference" and "discriminatory intent" as distinct elements, *see Strickland*, 32 F.4th at 359, consistent with prior Circuit precedent, *see Feminist Majority Found.*, 911 F.3d at 702-03.  Indeed, that was the legal rule plaintiff advocated for in her brief in the first appeal.  Brief of Plaintiff-Appellant Jane Roe at 44-49, *Strickland* (No. 21-1346).  The district court faithfully applied this Court's precedential decisions, and plaintiff's new request for a different rule is unavailing.  *See Taylor v. Grubbs*, 930 F.3d 611, 619 (4th Cir. 2019) (requirement to apply prior circuit precedent); *Fusaro v. Howard*, 19 F.4th 357, 367 (4th Cir. 2021) (law-of-the-case doctrine); *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001) (discussing judicial estoppel).  Nor could plaintiff's new request succeed in any event, given that she has failed to prove deliberate indifference from

which she asks this Court to infer discriminatory intent. *See supra* pp. 33-35.

Plaintiff is likewise far afield in suggesting that the district court "violate[d] precedent" by "conclud[ing] that so long as Defendants did not do *nothing* in response to [plaintiff's] sexual harassment claim, their response was constitutionally adequate." Pl. Br. 70; *see also* Pl. Br. 87. That account of the district court's decision bears no resemblance to the court's actual discussion, which addressed the relevant legal standards and carefully explained why the actions at issue—although "flawed in various respects" in the district court's view—were constitutionally adequate. JA3794. Nothing in the court's nearly-300 page decision suggests that it would have reached the same conclusion had the defendants instead failed entirely to respond.

Plaintiff's remaining arguments closely track contentions she raised in district court, but the court correctly rejected these arguments as "wholly without merit." JA3859; *see* JA3851-3854 (plaintiff's motion for reconsideration). The district court did not "myopically focus[] only on the acts and omissions of Martinez personally" and thereby "discount instances of deliberate indifference and sex discrimination" by the official-capacity defendants more generally. Pl. Br. 122-23. Rather, the court held that

there was insufficient evidence to survive summary judgment as to the responses of some officials, JA475-478, and then addressed in detail plaintiff's remaining allegations, which focused on Martinez's actions. Plaintiff's assertion that Martinez's "discriminatory intent" was "facially self-evident" from certain comments in the record (Pl. Br. 125) is likewise unavailing. Plaintiff contends that Martinez relied on "virulent stereotypes" about women (*id.* (quotation marks omitted)), but the district court reasonably concluded that Martinez's statement that plaintiff was not a "team player" was not a "gender-based euphemism" and did not establish any discriminatory animus, particularly when considered in the "context" of the record as a whole. *See* JA3768 n.129 (quotation marks omitted).

Similarly, the district court did not commit any legal error in concluding that plaintiff had failed to show that she experienced harassment specifically tied to insufficient training or policies. Pl. Br. 126. The district court correctly explained that "a lack of policy or training on sexual harassment can only be evidence of a clearly unreasonable response" sufficient to establish deliberate indifference "if this failure causes, or makes the plaintiff vulnerable to, more harassment," which the record simply does not support. *See* JA3741-3742 (citing *Hill*, 797 F.3d at 977). Nor did the district court err in declining to rely on an expert opinion

addressing "well-accepted HR practices," which the district court reasonably concluded was based on a description of plaintiff's experiences that bore "only a peripheral relationship to the actual facts" in the record. *See* JA3769 n.130 (quotation marks omitted).

Finally, the district court did not err in concluding that the sparse evidence of continued harassment once plaintiff reported it to Martinez weighed against a finding of deliberate indifference. *Contra* Pl. Br. 129. As the district court explained, "[c]ourts typically decline to find deliberate indifference when the allegedly harassing conduct stops after the sexual harassment is reported." JA3730. Here, the First Assistant's conduct that plaintiff challenges as sexual harassment occurred almost entirely in May and June 2018, pre-dating when she notified Martinez of her allegations even under her own view as to when she provided that notice. *See* Pl. Br. 13 (email sent by the First Assistant in May 2018); Pl. Br. 17-19 (invitations by the First Assistant to get drinks in June 2018); Pl. Br. 18 (First Assistant's offer of a ride home on June 21, 2018). The district court found that there is only one "alleged instance of sexual harassment" post-dating plaintiff's report of harassment to Martinez—an email from the First Assistant to a client, copying plaintiff, that included what plaintiff saw as an "obscure[] reference[]" to "her law review article written in 2015." JA3732. Setting

aside whether that email constituted harassment (an issue the district court declined to resolve), the record includes "no evidence" that plaintiff "ever told Martinez or anyone else about this August 31 email until" a filing months later as part of the EDR mediation program, so that email provides no support for a conclusion of deliberate indifference. JA3733. Nor can plaintiff establish deliberate indifference to continued sexual harassment by citing the *lack* of contact she had with the First Assistant as a result of defendants' efforts to separate the two of them following her report of harassment. *See* Pl. Br. 131.

## B. Even if plaintiff had shown an equal protection violation, the record does not support any prospective equitable relief for this claim.

The record also does not support any prospective equitable relief for plaintiff's equal protection claim, even if that claim were meritorious. The district court's judgment on this claim can therefore be affirmed on this additional, independent basis.

**1.** This Court's prior decision recognized that plaintiff would be "limited to prospective equitable relief" because Congress did not waive the government's sovereign immunity from suit for any of the retrospective relief plaintiff originally sought. *Strickland*, 32 F.4th at 321. Since this Court's prior decision limiting plaintiff to prospective equitable relief,

plaintiff has made clear that her "preferred remedy" is "front pay" in lieu of reinstatement.  Pl. Br. 158.  Front pay "is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001).

Front pay is unavailable to redress an employment discrimination claim, however, if the plaintiff is neither actually nor constructively discharged.  As several circuits have recognized, "[a] victim of discrimination that leaves his or her employment as a result of . . . discrimination must show either an actual or constructive discharge in order to receive the equitable remedy of reinstatement, or back and front pay in lieu of reinstatement." *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001).[10]  This Court's precedent likewise recognizes that the remedies of reinstatement and front pay come into consideration only "*[a]fter* a finding of wrongful discharge." *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (emphasis added); *see also, e.g.*, *Johnson v. Shalala*, 991 F.2d 126, 130 n.* (4th Cir. 1993) (recognizing that the

---

[10] *See also, e.g.*, *Seed v. EPA*, 100 F.4th 257, 265 (D.C. Cir. 2024); *Mallinson-Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir. 2000); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1021 (9th Cir. 2000); *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216, 1219 (8th Cir. 1997).

remedy of reinstatement is "dependent upon the proof of some adverse action taken by the employer," provided in that case "by the constructive discharge"). This requirement derives directly from the basis for considering these specific equitable remedies in the first place: front pay, for example, is "money awarded for lost compensation," *Pollard*, 532 U.S. at 846, and if a person is not "forced to abandon the job, loss of pay is not an issue." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 (3d Cir. 2006).

Plaintiff, however, was neither actually nor constructively discharged. In rejecting plaintiff's claim of constructive discharge, the district court did not make any clearly erroneous factual findings or legal errors. JA3791-3793.

Plaintiff effectively asserted "a combined hostile work environment constructive discharge claim." *Evans v. International Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019). That claim turns on an "objective" inquiry: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). As the district court recognized, this is a high bar. JA3792 ("The law . . . only recognizes constructive discharge claims where an employee would have had no choice

but to resign." (emphasis and quotation marks omitted)).  In addition to establishing each of the elements of a hostile work environment claim—unwelcome harassment based on gender that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere for which there is some basis for imposing liability on the employer, *but see supra* note 6—plaintiff would need to "show 'something more.'" *Evans*, 936 F.3d at 192-93 (quoting *Suders*, 542 U.S. at 147).  That "something more" means not just "that the employee subjectively felt compelled to resign" or that "a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision." *Id.* at 193 (quotation marks omitted).  "Unless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." *Suders*, 542 U.S. at 147 (alteration and quotation marks omitted).

Plaintiff's working conditions were not so objectively intolerable that resignation was her only reasonable option.  After reporting her claim of harassment in the summer of 2018, plaintiff was taken out of the First Assistant's supervisory chain, transitioned to an AFPD position without any reduction in salary, experienced no material change in job responsibilities, and more generally was not subject to any tangible adverse employment

action, let alone one motivated by retaliatory or discriminatory intent. *See* JA3727-3728, JA3743-3764. During the mediation stage of the EDR process, plaintiff was given the option, which she rejected, of transferring her duty station to Asheville, closer to her husband and away from the Charlotte office where both the First Assistant and Martinez primarily worked. JA3669-3670. By the time plaintiff resigned to accept a Fourth Circuit clerkship in March 2019, she had been teleworking for several months, a period during which she did not see either her alleged harasser or Martinez. JA3609.

Neither "the frequency of the conditions at issue" nor their "continuous[ness]" indicates that plaintiff's continued employment while pursuing redress would be intolerable. *Evans*, 936 F.3d at 193. Rather, the specific examples of alleged harassment by the First Assistant that plaintiff relied upon had ended more than six months before she resigned. *See* JA3732. While plaintiff believed that her allegations had generally received an insufficient response and she did not feel comfortable returning to the workplace in person, she did not establish objectively intolerable working conditions or take actions consistent with such conditions—indeed, plaintiff chose not to "resign within a reasonable time period after the alleged harassment," which indicates "[s]he was not constructively discharged."

*Landrau-Romero v. Banco Popular de P.R.*, 212 F.3d 607, 613 (1st Cir. 2000); *see also, e.g.*, *Montero v. AGCO Corp.*, 192 F.3d 856, 861 (9th Cir. 1999) (no constructive discharge where alleged "sexually harassing behavior had ceased three to four months before" the plaintiff resigned).

The district court found that, by the time plaintiff resigned, she subjectively found herself in a position that "was not only disappointing and frustrating, but in fact likely excruciating" given her damaged relationships with her colleagues and Martinez, then head of the office. JA3792. But the court correctly recognized that plaintiff was not, objectively, left with no choice but to resign. Instead of accepting a different position within the Fourth Circuit, a reasonable person in plaintiff's position could have chosen to "remain on the job" at the Federal Defender's Office "while seeking redress." *Suders*, 542 U.S. at 147 (quotation marks omitted). Indeed, plaintiff herself did just that for several months. *See* SA113-114 (plaintiff asserting in a November 2018 email, several months before ultimately resigning in March 2019, that she "no longer fe[lt] welcome" in the Federal Defender's Office and viewed herself as already "constructively discharged").

Plaintiff is thus mistaken in her assertion that the district court's constructive discharge analysis "grossly misstates the evidence and

misapplies the legal standard." Pl. Br. 132. The court stated the correct legal standard and explained why the facts as it found them do not meet that standard. JA3791-3793. Plaintiff disagrees with that conclusion (Pl. Br. 132), but her arguments provide no basis to second-guess the district court's reasoned analysis that the evidence simply does not show the type of intolerable work environment necessary to treat plaintiff as if she were formally discharged. JA3791-3793.

For these same reasons, plaintiff cannot pursue "reinstatement" through this litigation (Pl. Br. 158), even assuming she had not abandoned any claim to reinstatement by repeatedly opting to seek front pay instead. *See* JA2371-2379 (plaintiff's proposed findings and conclusions discussing only one remedy—front pay—and asking the district court to "grant judgment in Plaintiff's favor and order an equitable award of front pay"); JA140 (complaint requesting "front pay as equitable relief in lieu of reinstatement").

**2.** Plaintiff also cannot obtain other prospective equitable relief in connection with her equal protection claim. Here again, plaintiff forfeited her ability to seek other forms of relief when she asked the district court to consider only front pay at final judgment. *See* JA2371-2379. In any event, to have standing to seek declaratory and injunctive relief, plaintiff must

establish that she is "likely to suffer future injury" from the allegedly unconstitutional practices. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "Absent a sufficient likelihood that [s]he will again be wronged in a similar way," a federal court "may not entertain" an award of declaratory or injunctive relief. *Id.* at 111. And plaintiff faces no "actual or imminent" threat that the equal protection rights she asserted in this litigation would be violated in the future by any defendant. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted). Plaintiff could not again be subject to the claimed equal protection violation by defendants unless she were to be employed in the future by the Federal Defender's Office. And plaintiff cannot show that any such future employment is likely: she has not sought an order of reinstatement in this litigation or shown that such an order would be available, nor has she provided any evidence indicating a likelihood that she would again work there absent a judicial order of reinstatement. Indeed, this Court recognized in its prior decision that it was "unclear" how any constitutional "violations" plaintiff might seek to prove could properly be subject to any prospective injunction, "barring [plaintiff's] reinstatement." *Strickland*, 32 F.4th at 366 n.16 (quotation marks omitted). Because plaintiff cannot show a likelihood that she will again be subject to the workplace environment that she believes

previously violated her equal protection rights, she has failed to establish a basis for general injunctive or declaratory relief on that claim.

## II. The district court's procedural due process ruling should be affirmed.

This Court should likewise affirm the district court's ruling in favor of defendants on plaintiff's procedural due process claim under the Fifth Amendment.

### A. This Court's prior decision sets out the specific factual showing necessary for plaintiff's procedural due process claim.

As this Court explained in its prior opinion and as set forth in greater detail above, Chapter X of the EDR Plan sets forth detailed dispute resolution procedures. *See Strickland*, 32 F.4th at 322-24; *supra* pp. 5-9. After attempting to reach a voluntary resolution through counseling and mediation, an employee whose matter has not been resolved may file a formal complaint that will ultimately be resolved by a judicial officer. SA96-101 (EDR Plan, Ch. X, §§ 8-10). Once a formal complaint is filed, the presiding judicial officer "may provide for such discovery and investigation as is necessary." SA100 (EDR Plan, Ch. X, § 10(B)(2)). At the hearing, the complainant has rights to representation, to present evidence, and to cross-examine any adverse witnesses. SA100 (EDR Plan, Ch. X, § 10(B)(2)). A presiding judicial officer handling a Chapter X complaint is authorized to

award "a necessary and appropriate remedy," including, but not limited to: "placement of an employee in a position previously denied," "placement in a comparable alternative position," and "reinstatement to a position from which previously removed." SA103-104 (EDR Plan, Ch. X, § 12). The presiding judicial officer's final decision must be issued within 60 days of the hearing, and if the judicial officer reaches a decision adverse to the complainant, she may appeal that decision to the circuit's judicial council. SA100-103 (EDR Plan, Ch. X, §§ 10(B)(2), 11). This Court has already rejected plaintiff's argument that the procedures set forth in this EDR Plan fail to comport with due process on their face. *Strickland*, 32 F.4th at 354-55.

Plaintiff did not avail herself of this robust formal process that would have been triggered had she ever filed a formal complaint pursuant to Section 10(A) of Chapter X. Instead, after obtaining assistance from the mediator in securing an offer for a Fourth Circuit clerkship, she did two things. *First*, plaintiff decided to move from the Federal Defender's Office to the law clerk position. JA133; Dkt. No. 78-1 at 9. *Second*, plaintiff withdrew her Chapter X claim. Tr. Ex. 162 at US3300. Specifically, she informed Ishida that she "no longer wish[ed] to pursue the Chapter X portion of [her] EDR claim" and that she "very much appreciate[d] the

Fourth Circuit's assistance in helping [her] reach the best possible outcome under the circumstances." SA120.

Nothing precluded plaintiff from continuing to pursue her Chapter X claim after leaving the Federal Defender's Office. To the contrary, the EDR Plan expressly extends coverage to former employees, *see* SA88 (EDR Plan, Ch. I, § 3), and provides for remedies such as reinstatement that necessarily extend to former employees, *see* SA103 (EDR Plan, Ch. X, § 12). And nothing in the record suggests that plaintiff was somehow required to drop her Chapter X claim as a condition of accepting the Fourth Circuit clerkship.[11]

In many circumstances, a court would not entertain the argument that a plaintiff received constitutionally inadequate process if that plaintiff "failed to avail himself of the very administrative procedures he attacks as inadequate." *Dotson v. Grisea*, 398 F.3d 156, 161 n.2 (2d Cir. 2005); *see also, e.g.*, *Dusanek v. Hannon*, 677 F.2d 538, 542-43 (7th Cir. 1982) ("The availability of recourse to a constitutionally sufficient administrative

---

[11] Of course, even if any such highly unusual condition had been placed on plaintiff's clerkship offer, that would only indicate that plaintiff had a choice similar to that faced by any party evaluating a settlement offer. An ordinary settlement of a civil lawsuit involves a plaintiff agreeing to drop the claims at issue in exchange for accepting the defendant's offer. If a plaintiff believes this is not a fair exchange, the plaintiff simply rejects the offer and moves forward with proceedings before a neutral decisionmaker.

procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure."). This Court allowed plaintiff's as-applied due process claim here to survive past the motion-to-dismiss stage, however, because it concluded that plaintiff had plausibly alleged the type of due process claim described by the Seventh Circuit in *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992). *See Strickland*, 32 F.4th at 355-56.

In *Spreen*, the plaintiff was unable to avail herself of her employer's post-termination procedures because she tendered a resignation letter instead of waiting for the employer to follow through on its threat to involuntarily terminate her employment. *See Spreen*, 961 F.2d at 110. The Seventh Circuit held that this employee's right to post-termination process would be violated if she could show that the employer made a misrepresentation to the plaintiff "as to the consequences of termination" and that the plaintiff "was entitled to reasonably rely upon" these statements in determining whether to submit a resignation letter and thereby forgo the post-termination procedures. *Id.* at 113. Such facts would establish that the plaintiff had forgone procedural protections safeguarded by the Constitution only "involuntar[ily]" because she was "induced by misrepresentations on the part of Defendants" and thereby

wrongly "deprived" of post-termination process. *Id.* The Seventh Circuit found support for that rule in the court's earlier decision in *Dusanek v. Hannon*, which held that "it is not a deprivation of due process of law to be put to the option" of voluntarily accepting a change in job status in exchange for giving up post-termination procedural rights, but that it *would* be a violation if the plaintiff was deprived of such procedures "involuntarily" through "coercion." *See Dusanek*, 677 F.2d at 543 (quotation marks omitted).

In light of those principles, this Court held in its prior opinion that plaintiff would have a viable due process claim "if she can prove" the following proposition: "that [Martinez], an accused party, was not disqualified from the EDR process, and if [plaintiff] was led to believe that [Martinez] would be the final decisionmaker in her case." *Strickland*, 32 F.4th at 356. This Court reasoned that, "[u]nder these circumstances, a reasonable factfinder could conclude that continuing with the EDR process would be futile and that [plaintiff] had reason to believe that the more suitable alternative was to drop her complaint and accept the Fourth Circuit clerkship." *Id.* Such findings would, this Court held, support the conclusion that plaintiff was deprived of the EDR Plan's available remedies without constitutionally adequate process—for example, without the sort of

procedural safeguards that are available to those employees who proceed

through the formal complaint stage of the EDR Plan. *See id.*

**B.    Plaintiff failed to show that she was led to reasonably believe that her EDR claims would have been adjudicated by an interested party.**

The district court did not err, let alone clearly err, in concluding that

plaintiff failed to establish the facts necessary to establish a procedural due

process violation under this Court's prior decision.

In accordance with this Court's prior decision, the district court

evaluated whether plaintiff had established that the reason why she

withdrew her EDR claim before proceeding through the formal complaint

stage was that she was reasonably "led to believe that [Martinez]," an

interested party, "would be the final decisionmaker in her case."  JA3775

(alteration in original) (quotation marks omitted).[12]  The court correctly

---

[12] It is undisputed that Martinez was not disqualified from the EDR process, which he participated in as the unit executive representing the Federal Defender's Office's interests.  JA3777-3778; *see* JA3662-3663 (discussing Judge Gregory's reasoning).  As the national Judicial Integrity Officer's notes explained, "almost all EDR complaints allege that the [unit executive] violated [the complainant's] employment rights"; "it was still entirely contemplated that the [unit executive] would act as the head of the Responding Office, just as any defendant to a civil action is the party responsible for acting as the defendant."  JA3671 (quotation marks omitted).  "[D]isqualification motions were designed to ensure that the EDR Coordinator, Mediator, and Hearing Officer were impartial, not that the defending party was impartial."  JA3671 (quotation marks omitted); *see also* JA3662 (quoting Judge Gregory's explanation that a party's

*Continued on next page.*

concluded that the record does not establish this. To reach that conclusion, plaintiff would have had to "disregard[] the plain language of the EDR Plan itself." JA3788. As the Plan states, an employee's formal complaint is heard by a "judicial officer"—either the Chief Judge or his designee. SA100 (EDR Plan, Ch. X, § 10(B)(1)) (quotation marks omitted). It further states that "judicial officers" are the ones who "may order a necessary and appropriate remedy" upon determining that any substantive right protected by the Plan has been violated. SA103 (EDR Plan, Ch. X, § 12(A)).

Plaintiff urges that she relied instead (Pl. Br. 152-56) on statements by the Chief Fourth Circuit Mediator and the national Judicial Integrity Officer. But as the district court explained, neither of those officials said anything that could have led plaintiff to reasonably believe that, contrary to the plain text of the plan, she would be deprived of a neutral final decisionmaker if she were to proceed through the formal complaint process. First, the mediator's statements, in context, "convey[ed] to [plaintiff]" that resolving "the case through mediation was in her best interest" because, among other reasons, even if a presiding judicial officer were to agree with her claims on the merits, that officer might be

representative "is never neutral" but "that's not enough" to order them disqualified from participating in EDR on that party's behalf).

disinclined to "order remedies as tailored and specific as [plaintiff] could achieve through mediation." JA3781-3782. Second, the Judicial Integrity Officer's statements, in context, reflect that this officer was "unsure" about certain questions and, in communicating with plaintiff, was seeking "to improve the EDR Plan and her training of judiciary employees." JA3787. So when, for example, plaintiff asked her "what would happen if the defender refused to comply with the orders" issued by a presiding judicial officer, the Judicial Integrity Officer responded with "uncertainty" and sought clarity on the issue rather than dismissing plaintiff's unexpected concern about this hypothetical scenario. JA3784-3787 (quotation marks omitted); *see also* JA3797 n.143 ("Martinez testified that he would, of course, have done whatever Chief Judge Gregory had recommended.").

As the district court noted, it would be "surpris[ing]" for "an attorney" like plaintiff to "choose to ignore the plain text of the Plan" and to instead rely on "out-of-context and inconclusive statements" to reasonably conclude that the Chief Judge of the Fourth Circuit or his designee would allow an interested party to make a final decision in their stead. JA3788; *see also* JA3528. Thus, the district court correctly recognized that this case bears no resemblance to the circumstances that this Court held in its prior opinion could show a due process violation. In *Spreen*, the defendants

affirmatively misled the plaintiff, and the plaintiff "was entitled to reasonably rely" upon those misrepresentations because it was not "a matter of common knowledge" that they were false and the plaintiff had no basis to understand otherwise. *See Spreen*, 961 F.2d at 113; *Strickland*, 32 F.4th at 355-56 (looking to *Spreen* for relevant principles). Here, by contrast, plaintiff identifies no affirmative misrepresentation but rather plucks inconclusive statements out of context. And for plaintiff to conclude from those ambiguous statements that Martinez would be the final decisionmaker in her case would require her not only to ignore the text of the EDR Plan, but also to decline to seek "clarification on the issue from Ishida or any other EDR coordinator, people who may have further assisted in clearing up any confusion." JA3787-3788. Far from the circumstance at issue in *Spreen*, these facts squarely fit within the principle that a plaintiff's due process rights are not violated when she has "failed to avail [her]self of the very administrative procedures [s]he attacks as inadequate." *Dotson*, 398 F.3d at 161 n.2.

## C. Plaintiff's contrary arguments lack merit.

Plaintiff continues to assert on appeal that she reasonably believed Martinez would have been the final decisionmaker if she had proceeded through the formal complaint stage of the EDR process. Pl. Br. 151-58. The

district court's reasoning on this issue is faithful to the factual record and the reasonable inferences the court was entitled to draw from them in its role as factfinder, and nothing in plaintiff's brief shows that the district court's findings are clearly erroneous or premised on legal error.

Plaintiff attempts, as she did in district court, to "broaden" the holding of this Court's prior decision to "establish more paths for a due process claim." JA3789 (formatting altered). But this Court, like the district court, is "constrained by the law as construed" in the prior opinion, JA3791, and the district court correctly recognized that this Court's prior opinion held that plaintiff would need to prove that she reasonably "was led to believe that [Martinez] would be the final decisionmaker in her case," *Strickland*, 32 F.4th at 356; *see supra* pp. 60-61.

In any event, each of plaintiff's alternative theories fails. Plaintiff seeks to challenge various aspects of the HR Specialist's investigation and the decisions that were made regarding disciplinary action following that investigation. *See* Pl. Br. 136-51. But each of these arguments shares a fundamental flaw: nothing prevented plaintiff from filing a formal complaint under Chapter X and then urging the presiding judicial officer to reach an independent conclusion as to the facts and the appropriate remedy, if any. Had she done so, the presiding judicial officer could have

ordered "such discovery and investigation as is necessary" to ensure any remedial decisions were based on an accurate and unbiased understanding of the facts. SA100 (EDR Plan, Ch. X, § 10(B)(1)). If any party had asked the presiding judicial officer to review the HR Specialist's report in reaching these determinations—a report that plaintiff could have requested through EDR discovery, JA3664 & n.82—plaintiff could have asked the presiding judicial officer to disregard that report as "tainted by an accumulation of errors" (Pl. Br. 134) and asked the presiding judicial officer to direct further, independent investigation in light of plaintiff's concerns. And more generally, plaintiff would have had "the right to representation, to present evidence on . . . her behalf, and to cross-examine adverse witnesses," SA100 (EDR Plan, Ch. X, § 10(B)(2)).

When plaintiff withdrew her Chapter X claim, she gave up the opportunity to access these constitutionally adequate procedures. That is why, as this Court held, plaintiff could only show a deprivation of her procedural rights if she could persuade a factfinder that she reasonably believed there was no point in availing herself of these processes because the final decision would be made by an interested party. *See Strickland*, 32 F.4th at 356.

Plaintiff states that "[t]he district court found many errors and failures to comply with the EDR Plan." Pl. Br. 135. But the district court could not have been clearer that its modest criticisms and "suggestions for reform," JA3793-3801 (formatting altered), did not address any matter that violated plaintiff's constitutional rights.

Plaintiff's further assertion that "Defendants 'coerc[ed]' her" to withdraw her Chapter X claims "[b]y explicitly conditioning any disciplinary action on [plaintiff] concluding her EDR process," is likewise meritless. Pl. Br. 151 (first alteration in original) (quoting *Strickland*, 32 F.4th at 355). Plaintiff appears to base this argument on the fact that, once the HR Specialist's investigation report was complete, any disciplinary action as contemplated by Chapter IX was held "in abeyance." *See* Pl. Br. 47-48, 149-51. But as the district court explained, Ishida took this step "to address [plaintiff's] concerns about Ishida unfairly disclosing the contents of the investigative report to Martinez, but not [plaintiff]." JA3790 n.140. Specifically, when plaintiff expressed concerns about Martinez receiving the report pursuant to Chapter IX without getting an opportunity to review it herself at the same time, Ishida proposed waiting to decide on any action deemed necessary based on the findings of the investigation (though the report recommended only counseling for the First Assistant and Martinez)

until plaintiff could complete the separate process of seeking remedies herself under Chapter X. *See* JA3664-3666, JA3790 n.140. This approach appropriately addressed the concern plaintiff raised regarding disclosure of the report to Martinez and accounted for the important distinction between potentially taking disciplinary action against alleged wrongdoers (contemplated in this EDR Plan under Chapter IX) and deciding remedies for alleged victims (addressed in this EDR Plan under Chapter X).

Plaintiff's complaints about fundamental fairness reflect a significant misunderstanding of Chapter IX and Chapter X. *E.g.*, Pl. Br. 144-45, 149. As the district court correctly recognized, "Chapter IX does not provide any employee with any rights or remedies," JA3531, but rather encourages early reporting and investigation of allegations of wrongful conduct. *See* EDR Plan, Ch. IX ("A report of wrongful conduct is not the same as initiating or filing a claim under this Plan; thus, employees who wish to file an EDR claim relating to any alleged wrongful conduct . . . must follow the procedures set forth in Chapter X of this Plan."). Plaintiff was a witness and the purported victim in connection with the allegations reported pursuant to Chapter IX, but that did not entitle her to any type of procedural right in either the investigation or potential disciplinary action contemplated by that Chapter. Rather, plaintiff's substantive rights are

safeguarded by the "clear and specific set of procedures" set forth in Chapter X. *Strickland*, 32 F.4th at 349. Those procedures can culminate in a variety of remedies, but discipline of a fellow employee is not among them. *See* SA103-104 (EDR Plan, Ch. 10, § 12); *see also* SA93 (EDR Plan, Ch. IX) (requiring confidentiality in connection with allegations of wrongful conduct, with information only "shared on a need-to-know basis").

Of course, when an employee comes forward with allegations of wrongdoing, assessing discipline for the wrongdoer and remedies for the victim may turn on related facts, and the outcomes may go hand in hand—if the wrongdoer's discipline is to be fired, for example, that may assure the victim a harassment-free workplace going forward. But just because that is one possible way for such allegations to be resolved does not mean the victim has been afforded any "substantive rights" associated with the distinct process of determining discipline for her colleagues and supervisors, as plaintiff erroneously suggests. *Strickland*, 32 F.4th at 349; *see* Pl. Br. 144. To the extent plaintiff decided to withdraw her own request for a remedy under Chapter X because she believed that an assessment of discipline for Martinez and the First Assistant under Chapter IX simply could not wait, that reflected a choice on her part to prioritize a process in which she had no rights or remedies over one in which she did. That is not

coercion, let alone a violation of the Constitution's guarantee of due process.[13]

## III. The district court did not abuse its discretion in excluding EDR allegations of non-parties or commit legal error in declining to rely on these allegations at summary judgment.

**A.** The district court did not abuse its discretion in excluding EDR allegations of non-parties at trial—what plaintiff refers to as the proposed "MeToo Evidence." Pl. Br. 93; *see United States v. Landersman*, 886 F.3d 393, 413 (4th Cir. 2018) (abuse-of-discretion review for evidentiary rulings). And regardless, this Court can affirm on the independent, alternative ground that any evidentiary error regarding this tangential evidence was harmless.

**1.** Plaintiff's proposed trial exhibit contained confidential complaints, settlement agreements, and other personnel-related information regarding four non-parties who made allegations under the EDR Plan. *See* JA2882-2885 (plaintiff's description of her proposed exhibit, filed on the public

---

[13] Because plaintiff's due process claim fails on the merits, this Court need not consider plaintiff's request for a "remand" for the district court "to consider equitable remedies for the violation of due process," or plaintiff's arguments about what remedy would have been available had she succeeded on her claim. *See* Pl. Br. 158-60.

docket); JA4372-4448 (plaintiff's proposed trial exhibit, filed under seal).[14] Plaintiff elected not to call any of these complainants at trial, and the exhibit she proffered was properly excluded on two independent grounds: relevance and hearsay. *See* JA3739 n.117 (district court explaining that it had excluded the evidence on these bases); *see also* JA3111.

As to relevance, plaintiff sought to use these unproven allegations in support of her equal protection claim alleging deliberate indifference on the basis of her sex. As explained above, *see supra* Part I, to prove that claim, plaintiff needed to show, among other things, that supervisory officials and/or officials responsible for overseeing the Fourth Circuit's EDR Plan "responded to [plaintiff's] allegations with deliberate indifference" and that any such "deliberate indifference was motivated by a discriminatory intent." *Strickland*, 32 F.4th at 359. The material at issue plainly does not bear directly on either issue, so plaintiff was attempting to offer what the

---

[14] As explained in the government's response to plaintiff's motion to unseal, the proffered exhibit is under seal to protect against the public disclosure of information of non-parties who were assured that their allegations under the EDR Plan would be kept confidential. This Court has deferred consideration of plaintiff's motion to unseal pending review of the appeal on the merits. The discussion in this brief, like that in the government's opposition to the motion to unseal, is confined to details that are already available in the public record.

district court correctly recognized "would only be circumstantial evidence." JA3738 n.116.

Circumstantial evidence of this kind is evaluated in a "fact based" manner that "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). And plaintiff falls far short of establishing that the district court abused its discretion in concluding that this case-specific multifaceted analysis weighed against admitting the evidence at issue here. While some of the complainants' allegations related to discrimination or retaliation generally, none of them involved allegations of deliberate indifference to complaints regarding sexual advances. *See* JA4378-4379, JA4385-4406, JA4423, JA4426-4437 (material related to each of these four complainants' allegations); JA2882-2885 (plaintiff's description of her proposed exhibit, filed on the public docket). And none of the allegations resulted in any finding of discrimination, harassment, or retaliation. *See* JA4374-4375 (describing the final resolution of each of these complaints). These documents did not advance plaintiff's arguments as to either deliberate indifference or discriminatory intent by any supervisory official and admitting them would have created the risk of a series of mini-trials

regarding the different circumstances of other complainants whom plaintiff elected not to call at trial. The proffered exhibit was properly excluded as irrelevant.

The district court also properly (and independently) excluded the evidence as hearsay. Although plaintiff states (Pl. Br. 100-01) that the documents may be introduced simply to show that the Federal Defender's Office was on "notice" of prior complaints, plaintiffs' own arguments confirm that she seeks to rely on this material to support arguments that depend on the truth of the allegations. *See, e.g.*, Pl. Br. 6-10, 106-11.

Plaintiff invokes several hearsay exceptions, but none apply. The exhibit at issue does not consist of party admissions covered by Federal Rule of Evidence 801(d)(2)(D), Pl. Br. 101-03: two of the complainants were not even defendants' employees or agents for any purposes at the time they made these statements, and the two who were employees at the time of their complaints were making statements that do not relate to their "area of authority" as employees. *United States v. Brothers Constr. Co.*, 219 F.3d 300, 311 (4th Cir. 2000). Nor could plaintiff's proffered exhibit be admitted for impeachment (Pl. Br. 103-04) because plaintiff was seeking to bring in the evidence as to matters that are "collateral or irrelevant to the material issues in the case." *United States v. Grover*, 85 F.3d 617, 1996 WL

226262, at *5 (4th Cir. 1996) (per curiam) (unpublished table decision).

And the evidence does not fit within the residual hearsay exception in Rule

807, Pl. Br. 104-06, as the unproven allegations are not sufficiently

trustworthy or corroborated by anything properly in the record, and

plaintiff has failed to show that there is no other available evidence to prove

the elements she must show—rather, she has come short of making the

necessary showing.  *See United States v. Cunningham*, 761 F. App'x 203,

206 (4th Cir. 2019) (listing elements to admit material under residual

hearsay clause).

**2.**  In any event, even if the district court somehow abused its

discretion by excluding this evidence at trial, any such error was harmless.

*See Landersman*, 886 F.3d at 413 (evidentiary errors reviewed for

harmlessness); *Avail Vapor*, 55 F.4th at 425-26 (appellant's burden to

show that any error is harmful).  For the reasons discussed above, plaintiff

fell far short of establishing each of the elements required for her equal

protection and due process claims under this Court's prior decision.  As the

district court explained, it already had before it some information about

other complaints under the EDR Plan, but there was "no indication that

these complaints were meritorious (they were allegations) or sufficiently

similar to [plaintiff's] claims to show a pattern of Martinez acting with

deliberate indifference towards claims of sexual harassment." JA3739.

Plaintiff cannot show that the district court, exercising its prerogative as

factfinder, would have reached a different conclusion as to whether she

experienced deliberate indifference had it admitted the exhibit that simply

contained additional details about the nature of these unproven allegations.

**B.** Plaintiff is likewise mistaken (Pl. Br. 94-98) that the district court

erred with regard to this issue at summary judgment—the district court

"violated" neither Rule 56 nor plaintiff's "due process rights." Plaintiff

appears to challenge the district court's determination at summary

judgment that, although almost every remaining issue could proceed to

trial, partial summary judgment was warranted on the sole issue of whether

any officials other than Martinez had shown the requisite discriminatory

intent in responding to plaintiff's harassment allegations. JA475-478. But

plaintiff's proffered evidence does not undercut any of the district court's

analysis as to why plaintiff had failed to establish a genuine dispute as to

discriminatory intent by either Ishida or Judge Gregory—rather, plaintiff

seeks to inject a factual dispute into the separate element of "deliberate

indifference," Pl. Br. 96, even though she would need to show both

elements to prevail and even though this evidence does not meaningfully

advance her deliberate indifference argument, either.[15]  Moreover, and

independent of that defect, plaintiff did not rely on the evidence for that

purpose in opposing defendants' summary judgment motion, and so it

cannot have been error for the district court to conclude that this evidence

failed to establish a genuine dispute of material fact on the issue of Ishida

or Judge Gregory's intent.  *See* ECF No. 250.

To the extent plaintiff seeks to challenge the district court's decision

declining to grant her own cross-motion for summary judgment, *see* JA350

(reflecting that this evidence was referenced in plaintiff's motion for

summary judgment), that issue became "unreviewable after final judgment"

because it was "overcome by later developments in the litigation"—that is,

---

[15] Because the district court held that no reasonable factfinder could
conclude that either Ishida or Judge Gregory had responded to plaintiff's
allegations with discriminatory intent, it was unnecessary for the court to
address plaintiff's argument, which goes to the deliberate indifference
element, that Judge Gregory was contemporaneously "aware" of the
substance of each of these non-parties' unproven allegations.  Pl. Br. 96.  As
to that issue, the only evidence plaintiff points to in the record for that
inference appears to be Ishida's deposition testimony in which he testified
that, as EDR Coordinator, his general practice was to inform Judge Gregory
when a Chapter IX or X claim was received and "let him know every time
[he] received one what would happen" under the EDR Plan.  JA1610.  *See*
Pl. Br. 96 (raising this argument without citation to the record); Pl. Br. 6
(citing plaintiff's own proposed findings of fact and conclusions of law,
which in turn quoted a short excerpt from Ishida's deposition, *see* JA1927).

the development of a trial record on which the case was decided. *Dupree v. Younger*, 598 U.S. 729, 734 (2023).[16]

## IV. Plaintiff's last-ditch effort to assert a constitutional challenge to Title VII's judiciary exclusion is meritless.

Finally, plaintiff cannot salvage her case by arguing that, "[i]f the district court's holding is affirmed on [plaintiff's] equal protection and due

---

[16] Plaintiff also argues that she "was not allowed to file the evidence" at issue because "the district court had suspended the local rules regarding sealing" but did not rule on her motion to seal this evidence before ruling on summary judgment. Pl. Br. 94. In fact, the district court had reiterated, not suspended, the local rules regarding sealing. *Compare* JA252 ("Nothing is to be filed in court under seal unless and until this Court upon motion expressly so orders." (emphasis omitted)), *with* W.D.N.C. Loc. Civ. R. 6.1(b) ("No materials may be filed under seal except by Court order . . . ."). The district court then appropriately determined that plaintiff's motion to file the material under seal for purposes of summary judgment was moot in light of its conclusion that plaintiff had failed to establish that she was entitled to summary judgment in her favor and that it did not need to consult these "matters that are not publicly available" in reaching that conclusion. JA3133 (district court explaining its denial of plaintiff's motion for reconsideration of its summary judgment ruling, which had likewise argued the court had erred in declining to rely on this evidence); JA51 (March 20, 2024 text-only order terminating motion to seal as moot).

To be clear, in determining whether to admit plaintiff's proffered exhibit at trial, the district court considered the proposed exhibit and allowed it to serve as plaintiff's "written offer of proof for purposes of appeal." JA3116; *see* JA2914 (district court stating: "I'm going to review those documents [proposed Exhibit BB] as sealed" and "will consider" whether they are admissible); JA3111 (district court stating the following day: "I have reviewed the matter and I accept [defendants'] argument. [Proposed Exhibit] BB is not admitted."). The court also allowed plaintiff to summarize the exhibit's contents on the public record before ruling on the exhibit's admissibility. *See* JA2881-2885. The proffered exhibit is part of the record and is available to this Court, as discussed. *See* JA4372-4448.

process claims, then this Court must hold that Title VII's exclusion of judiciary employees is unconstitutional as applied to her." Pl. Br. 88. Plaintiff forfeited this argument by not raising it in district court, *see, e.g.*, JA1905-2379 (plaintiff's proposed findings and conclusions); JA138-140 (claims in plaintiff's complaint), and this Court should follow the ordinary rule and not address it for the first time on appeal, *see Sony Music Entm't v. Cox Commc'ns, Inc.*, 93 F.4th 222, 235 (4th Cir. 2024). Plaintiff's arguments are meritless, regardless.

Plaintiff urges this Court to opine on a hypothetical Title VII claim that she indisputably did not bring (Pl. Br. 71-84) and then conclude that—because she was unsuccessful in proving her claims under the Fifth Amendment—Title VII's exclusion of Judiciary employees from its scope is unconstitutional as applied to her. Pl. Br. 87-93. Plaintiff did not raise any of those arguments in district court, and she says nothing in her opening brief about why her forfeiture should be overlooked. Nor is there any sound reason to do so. Plaintiff has had ample opportunity to litigate this case in district court and in a prior appeal to this Court. Plaintiff appears to suggest that this issue is contingent on her having lost on the claims she did bring, but fallback arguments need to be properly raised in district court just like any other. Plaintiff's attempt to belatedly inject these arguments

into this case is particularly inappropriate given that, in the prior appeal, plaintiff persuaded this Court to accept her contention that the district court had "mischaracterized [plaintiff's] claim as depending upon a theory of discrimination that is recognized under Title VII but not under equal protection doctrine." Brief of Plaintiff-Appellant Jane Roe at 25, *Strickland* (No. 21-1346); *see Strickland*, 32 F.4th at 357 (agreeing that the district court had, at the motion-to-dismiss stage, misunderstood the nature of plaintiff's equal protection claim). In plaintiff's apparent view, this Court's prior opinion explaining the proper standard for plaintiff's equal protection claim left unsaid that, if plaintiff failed to succeed on remand, that itself would produce an unconstitutional result. This Court should not indulge plaintiff's heads-I-win, tails-you-lose approach to this litigation.

In any event, plaintiff's Title VII arguments also fail on their own terms. As plaintiff does not dispute, because her position was in the "judicial branch" and not part of the "competitive service," Title VII does not by its own terms apply to her. 42 U.S.C. § 2000e-16(a). Plaintiff was instead covered by the Fourth Circuit's EDR Plan, which provides Judiciary employees rights and remedies that parallel in many respects what Title VII provides. *See Strickland*, 32 F.4th at 311, 351, 354. Plaintiff appears to contend that Title VII's exclusion of judicial employees is "unconstitutional

as applied to her" because she was "denied" the protections of the EDR Plan in this case.  Pl. Br. 87-88.  But as discussed above, plaintiff opted out of the EDR process by withdrawing her Chapter X complaint and the record does not establish that she did so because she was led to believe that Martinez would be the final decisionmaker in her case.  *See supra* pp. 61-64.  Contrary to plaintiff's assertion, there is nothing "circular" about recognizing that because plaintiff withdrew from the EDR process, she is therefore unable to invoke rights and remedies for employment discrimination that go beyond what the Constitution requires.  Pl. Br. 87.

Plaintiff's broader challenge to Congress's decision to exclude Judiciary employees from Title VII is likewise meritless.  Plaintiff claims that neither judicial independence nor the Judiciary's own robust processes provide rational bases for excluding judicial employees, including public defenders, from Title VII's reach.  Pl. Br. 91-92.  Both arguments, however, flout Congress's considered and well-supported judgment, which plainly satisfies constitutional scrutiny.  As this Court has recognized in this case, the Judicial Conference decades ago reported to Congress that "it was unnecessary for federal employment statutes to be applied to the federal judiciary because the federal judiciary already provided its employees with protections similar to those enumerated in the various federal employment

statutes." *Strickland*, 32 F.4th at 321-22.  And Congress has consistently declined to extend Title VII's coverage to the judicial branch, "mindful of the importance of judicial autonomy." *Dotson*, 398 F.3d at 173.  These considerations readily withstand rational-basis review, a "quite deferential" standard that requires only that Congress have "a reasonable basis for adopting the classification." *Wilkins v. Gaddy*, 734 F.3d 344, 347-48 (4th Cir. 2013).

Plaintiff is mistaken (Pl. Br. 89-90) that Congress's determination not to extend Title VII to federal defenders who fall outside the "competitive service" is subject to strict scrutiny.  The Supreme Court "has long held that 'a classification neither involving fundamental rights nor proceeding along suspect lines . . . cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Armour v. City of Indianapolis*, 566 U.S. 673, 680 (2012) (alteration in original) (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).  As plaintiff appears to acknowledge, distinguishing certain employees of the judicial branch from other federal employees does not implicate a suspect classification.  Nor does it involve any "fundamental right" similar to those at issue in the cases upon which she relies. *See, e.g.*, *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996) (concluding,

in light of precedents concerning court access and fundamental rights in connection with the upbringing of one's children, that states may not condition appeals from trial court decrees terminating parental rights on the affected parent's ability to pay fees). Plaintiff's right "to be free from sex discrimination" and to procedures that accord with due process are protected by the Fifth Amendment, and as discussed above, plaintiff has not shown any infringement of those rights. *Strickland*, 32 F.4th at 358; *see supra* Parts I-II. Plaintiff has no fundamental constitutional right to the statutory provisions codified in Title VII for certain private sector and federal employees, particularly where, as here, the Judiciary's EDR plan provides similar rights and remedies. *See supra* pp. 5-9.

Plaintiff's brief includes a number of additional statements regarding Title VII that are neither relevant to the issues presented on appeal nor well-founded. For instance, plaintiff argues at length (Pl. Br. 71-85) that defendants' conduct violated Title VII, but the district court had no occasion to evaluate the evidence against those standards without regard to what the Constitution requires and nor does this Court. Plaintiff goes on to claim that the district court's decision "hinged on perceived differences between Title VII and equal protection claims," Pl. Br. 85, but that is both irrelevant and incorrect. Nothing in the district court's decision suggests

that it believed plaintiff had a meritorious Title VII claim or that

distinctions between Title VII and the Constitution were key to why

plaintiff's claims were unsuccessful. Indeed, plaintiff accuses the district

court of making legal rulings that it plainly did not make. *See, e.g.*, Pl. Br.

87 ("[T]he district court construed the deliberate indifference standard to

construct such a high bar that it would be effectively impossible to prove

deliberate indifference unless a defendant did *nothing* in response to a

sexual harassment complaint."); *see also supra* pp. 37, 45.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should

be affirmed.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney*
    *General*
COURTNEY L. DIXON

 *s/ Kevin B. Soter*
KEVIN B. SOTER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7222*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*
  *kevin.b.soter@usdoj.gov*

May 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit specified by the Court in its March 11, 2025, Order because it contains 18,459 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Georgia 14-point font, a proportionally spaced typeface.

*s/ Kevin B. Soter*

Kevin B. Soter
