No. 24-2056

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## CARYN DEVINS STRICKLAND

Caryn Strickland
Law Office of Caryn Strickland
PO Box 92
Lynn, NC
828-388-7337

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

I.     Defendants Violated Strickland's Due Process Rights When They Failed to Follow the EDR Plan ........................................................... 2

     A.     Defendants did not enforce the EDR Plan's obligation to prevent and redress sexual harassment, which forced Strickland to resign ............................................................................. 2

             1.     Defendants disregarded the investigator's recommendation that Martinez be disqualified .......................... 4

             2.     Defendants did not take corrective action after the investigator recommended it ......................................... 7

             3.     Martinez disregarded the investigator's recommendations with respect to Davis, the harasser ............................. 9

             4.     Strickland was forced to resign ................................. 11

     B.     Martinez's conflict of interest also "infected the entire investigation" because he was the *de facto* decisionmaker ............... 13

             1.     Martinez was the final decisionmaker regarding whether Davis would be disciplined even though he was "counseled" on the same complaint ......................... 14

             2.     Strickland reasonably believed that a hearing officer would not, or could not, enforce remedies against a defender ....................................................................... 15

i

C.     Other errors infected the EDR process ...............................................18

D.     Defendants' "exhaustion" argument fails ............................................19

II.    Defendants Violated Strickland's Equal Protection Rights When They Failed to Take Reasonable Steps to Prevent and Redress *Quid Pro Quo* and Hostile Working Environment Sexual Harassment........................20

A.     Defendants do not meaningfully dispute that Strickland was subjected to sexual harassment ............................................................21

B.     The district court failed to acknowledge that courts rely on well-accepted standards from analogous civil rights statutes in the deliberate indifference context ......................................................23

C.     The MeToo evidence is relevant and admissible ................................24

D.     Defendants misconstrue facts..............................................................25

E.     Despite Defendants' effort to bury the constitutionality of Title VII's exclusion of judiciary employees, their waiver argument is unconvincing......................................................................................25

III.   Strickland Did Not "Abandon" A Request For Reinstatement ....................27

CONCLUSION ...........................................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beardsley v. Webb*,
  30 F.3d 524 (4th Cir. 1994) ................................................. 15, 22, 23

*Calobrisi v. Booz Allen Hamilton, Inc.*,
  660 F. App'x 207 (4th Cir. 2016) ....................................... 25

*Camreta v. Greene*,
  563 U.S. 692 (2011) ........................................................... 21

*Doe v. Alger*,
  228 F. Supp. 3d 713 (W.D. Va. 2016) ......................... 2, 20

*Doe v. Columbia Univ.*,
  831 F.3d 46 (2d Cir. 2016) ........................................ 6, 7, 18

*Doe v. Rector & Visitors of George Mason Univ.*,
  149 F. Supp. 3d 602 (E.D. Va. 2016) .................... 13, 14, 15

*Doe v. Rector & Visitors of George Mason Univ.*,
  179 F. Supp. 3d 583 (E.D. Va. 2016) ............................. 28

*Dotson v. Griesa*,
  398 F.3d 156 (2d Cir. 2005) ............................................. 19

*Faragher v. City of Boca Raton*,
  524 U.S. 775 (1998) ......................................................... 11

*Ford Motor Co. v. EEOC*,
  458 U.S. 219 (1982) ................................................... 23, 27

*Furey v. Temple Univ.*,
  884 F. Supp. 2d 223 (E.D. Pa. 2012) .............................. 14

*Hunter v. Town of Mocksville*,
  897 F.3d 538 (4th Cir. 2018) ........................................... 28

*Ibrahim v. N.Y. Dep't of Health*,
  904 F.2d 161 (2d Cir. 1990) ............................................ 20

*Koger v. Ball*,
  497 F.2d 702 (4th Cir. 1974) ............................................................... 15

*Mallette v. Arlington Cnty. Employees' Supplemental Ret. Sys. II*,
  91 F.3d 630 (4th Cir. 1996) .......................................................... 2, 14

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) ........................................................................ 19

*Munive v. Fairfax Cty. Sch. Bd.*,
  700 F. App'x 288 (4th Cir. 2017) (unpub. per curiam) ................................. 10

*Nat'l Ass'n of Immigr. Judges v. Owen*,
  No. 23-2235, 2025 U.S. App. LEXIS 13487 (4th Cir. June 3, 2025) .............. 19

*Nelson v. Cowles Ford, Inc.*,
  77 F. App'x 637 (4th Cir. 2003) (unpub. per curiam) .................................. 20

*Pa. State Police v. Suders*,
  542 U.S. 129 (2004) ........................................................................ 23

*Schiano v. Quality Payroll Sys., Inc.*,
  445 F.3d 597 (2d Cir. 2006) ...................................................... 9, 11, 22

*Semper v. Gomez*,
  747 F.3d 229 (3d Cir. 2014) ............................................................... 19

*Strickland v. United States*,
  32 F.4th 311 (4th Cir. 2022) ...................................................... *passim*

*United States v. Bernard*,
  708 F.3d 583 (4th Cir. 2013) ............................................................... 5

*United States EEOC v. Consol Energy, Inc.*
  860 F.3d 131 (4th Cir. 2017) .............................................................. 27

**Rules**

Fed. R. Civ. P. 46 ............................................................................. 26

**Other**

Carrie Johnson, *Federal judges are powerful*, NPR (Jun. 9, 2025) ............. 1, 22, 23

iv

EDR Handbook and Interpretive Guide (Jan. 1, 2020) ................................... *passim*

Legal Effect of Federal Judge's Order as Hearing Officer Under Court's
    Employment Dispute Resolution Plan, 34 Op. O.L.C. 25 (2010) ................... 16

Report of the Federal Judiciary Workplace Conduct Working Group
    (Mar. 2025) ..................................................................................... 1

Report of the Proceedings of the Judicial Conference of the United States
    (Sept. 2010) .................................................................................... 17

Report of the Proceedings of the Judicial Conference of the United States
    (Sept. 2024) .................................................................................... 17

# INTRODUCTION

If this Court affirms the decision below despite uncontested evidence that Defendants did not follow the EDR Plan, it will be abandoning its prior recognition that the Plan's protections are "vitally important considering the lack of alternative means of seeking relief for employees of the federal judiciary." *Strickland v. United States*, 32 F.4th 311, 351 (4th Cir. 2022). Such a ruling would validate the "reluctance of employees to seek help or report wrongful conduct," as the judiciary's Workplace Conduct Working Group has found that many employees already don't "think anything will be done," don't "trust the process will be fair," and "fear retaliation." *See* Report of the Federal Judiciary Workplace Conduct Working Group 12–13 (Mar. 2025), *available at* https://tinyurl.com/5t339e3f.

Indeed, recent investigative reporting describes an "insidious culture" fueled by a "power imbalance," where employees fear that there will be "little or no punishment" for misconduct and they will be "retaliat[ed] against." Carrie Johnson, *Federal judges are powerful*, NPR (Jun. 9, 2025), *available at* https://tinyurl.com/3ahy85hs. This Court should use this case to fortify the EDR Plan's protections and communicate unequivocally that the judiciary's 30,000 employees *will* be protected from workplace sexual harassment, discrimination, and retaliation, as the Plan requires.

# ARGUMENT

## I. Defendants Violated Strickland's Due Process Rights When They Failed to Follow the EDR Plan.

### A. Defendants did not enforce the EDR Plan's obligation to prevent and redress sexual harassment, which forced Strickland to resign.

Defendants do not meaningfully contest the evidence that Strickland was subjected to *quid pro quo* and hostile working environment sexual harassment. This evidence was acknowledged by the district court, which found that Davis took "actions that reasonably made Strickland uncomfortable" and the judiciary made admissions that Davis "was way out of line." JA3699, JA2408. Defendants address the harassment only in a single footnote, urging this Court that it is "unnecessary" to address Davis's behavior. Doc. 89, at 32 n.6.

Strickland does not need to prove her sexual harassment claim to prove that a due process violation occurred. *See Mallette v. Arlington Cnty. Employees' Supplemental Ret. Sys. II*, 91 F.3d 630, 637 (4th Cir. 1996). Nonetheless, it is revealing that Defendants do not meaningfully refute that she raised a "good faith" claim of harassment. JA3698. Instead, seeking to sidestep the issue, Defendants fallaciously imply that she should have sued Davis. *See, e.g.*, Doc. 89, at 1. But Davis is not a proper defendant, as he is not responsible for "enforcing" the EDR Plan or "effectuat[ing] injunctive relief." *Doe v. Alger*, 228 F. Supp. 3d 713, 732 (W.D. Va. 2016).

Strickland had a "substantive right to work under conditions free from discrimination and harassment." *Strickland*, 32 F.4th at 349. She also had "a right to redress injuries caused by workplace discrimination." *Id.* at 351. Defendants, the employees "who occupy supervisory roles and/or who are charged with enforcing an EDR plan," *id.* at 359, denied Strickland her property interest in being free from harassment without sufficient process, because they did not follow the "detailed set of procedures" set forth in the Plan to address Davis's harassment, *id.* at 349. Strickland had "no remedies" to vindicate her rights, except under the Plan. *Id.* at 349 n.9. Thus, Defendants' failure to follow the Plan resulted in her resignation, as she reasonably could not work in an environment where she was not protected from sexual harassment and sex discrimination.

Underscoring that Defendants did not follow the Plan, even though the investigation was biased and grossly inadequate, Defendants did not even implement the paltry measures the investigation did recommend. If Defendants can arbitrarily disregard measures recommended by their own investigation, then this raises the question of what the purpose of the EDR process—the "clear and specific set of procedures that are to be followed in the event that an employee claims that his or her substantive rights afforded under the EDR Plan have been violated"—even is. *Id.* at 349–50.

### 1. Defendants disregarded the investigator's recommendation that Martinez be disqualified.

Defendants disregarded the investigator's recommendation that Martinez be disqualified from the EDR process because he was "biased" against Strickland and "could cause more damage if he were involved." JA3660. The district court found that Martinez was "quite hostile" towards Strickland, which shows that this recommendation was well-supported. JA2413. As the investigation makes clear, Martinez's bias was not based on his legitimate institutional interests as unit executive, but rather such a deep-rooted personal hostility towards Strickland that he could cause further "damage." His hostility resulted from his prejudging of the matter and siding with Davis, the harasser, who he "always believed," with Davis's toxic "narrative in his ear," as the district court found. JA3685, JA3703.

As former Judicial Integrity Officer Jill Langley testified, it is "appropriate to disqualify a unit executive when that executive's personal interests conflict with the best interest of the office." JA3777. This principle is confirmed by the EDR Plan and Handbook. *See* EDR Handbook and Interpretive Guide 67 (Jan. 1, 2020) (stating that when "the personal interests of the Unit Executive likely conflict with the Employing Office's interests, . . . someone other than the Unit Executive should likely act on behalf of the Respondent Employing Office").

Defendants point to Chief Judge Gregory's "reasoning" in denying the disqualification request, but the Chief Judge testified that he was not "familiar" with the investigator's email recommending disqualification and "no one ever communicated [its] substance" that he knew of. JA1394–1396. His decision was not based on full knowledge of the circumstances, because the investigator's recommendation was never even disclosed to him. *See, e.g.*, *United States v. Bernard*, 708 F.3d 583, 597 (4th Cir. 2013) (Diaz, J., dissenting). Indeed, the Chief Judge's "attention was likely spread thin with multiple matters," and Ishida "acted as the middleman," as the district court found. JA3710. This is not the first time that Defendants have dissembled and presented a *post hoc* rationale regarding this issue, as Defendants previously represented to this Court—inaccurately—that Strickland "withdrew her Chapter X claim before Chief Judge Gregory ruled on her disqualification request." Case No. 21-1346, Doc. 80, at 25.

The Chief Judge testified that, in hindsight, he would not have considered the investigator's recommendation, but it is unclear how else he could have determined whether Martinez's disqualification was warranted. JA3661. As Ishida testified, he asked Beam for "her views" on disqualification because "she had conducted the investigation." JA2611. Indeed, a reasonable inference from Ishida's testimony is that the refusal to disqualify Martinez was influenced by incorrect "views and guidance" from the AO's Office of General Counsel.

5

JA2655–2658.  Ishida testified that after receiving the investigator's recommendation, he "raised that issue" with OGC to get their "view," following which disqualification was denied without explanation.  JA2611.  Tellingly, during this litigation, the General Counsel asserted in a declaration that disqualifying a unit executive would be "unfair" because the unit executive is the "opposing party" in an EDR matter.  ECF No. 94-7, at 3; *compare* JA3777 ("[T]he refusal to disqualify [Martinez] created a conflict of interest that infected the entire investigation.'" (quoting *Strickland*, 32 F.4th at 355)).

Martinez's bias against Strickland "infected the entire investigation" because he was allowed to make decisions on behalf of the office in *mandatory* counseling and mediation, his "views would be sought" in a final hearing—giving him significant influence over the final decision—and he decided whether Davis would be disciplined, even though he was "counseled" himself.  *Strickland*, 32 F.4th at 355; JA3795.  The district court found that Martinez's conduct "obvious[ly]" was "inappropriate, including his reaction to Strickland's contact with the AO and his use of a marriage metaphor, and his sharing of Strickland's mediation supplement with Davis, among others."  JA3777.  Martinez's bias tainted the entire process because allowing a "biased" party to exercise "significant influence"—including discipline and remedies—is not consistent with the EDR Plan's guarantee of impartiality.  *Cf. Doe v. Columbia Univ.*, 831 F.3d 46, 59 (2d Cir. 2016).

6

As *Doe* explains, allowing a "biased" party to serve a formal role "with the expectation" that he will "inform the [institution's] decisions" will give rise to liability, even if the biased party is not the "decision-maker." *Id.* Although *Doe* involved a claim of sex discrimination, this principle is, if anything, even more relevant in the due process context, which is based on principles of fundamental fairness and does not require a separate showing of discriminatory intent.

## 2. Defendants did not take corrective action after the investigator recommended it.

Ensuring that Strickland could not complete the EDR process because she would be afforded no meaningful review or remedies, Defendants did not take corrective action after the investigation (which had already taken "far too long") recommended that such action be taken. JA3704. Instead, they held discipline "in abeyance" until after a final hearing was over. JA3665.

Langley, the former JIO, testified that "the concept of saying something had been abated" in this way "is not something that I have ever heard of or understood as part of the EDR process." JA1296; *see* JA3530. In fact, the EDR Handbook recommends the *opposite* of what took place here, which is to hold the *formal complaint* process in "abeyance" so the office can "promptly correct" harassing behavior. EDR Handbook 72. That is because "preventing and addressing" the harassment may be the "only" effective relief available. *Id.*

7

Defendants *now* assert that they were addressing *Strickland's concerns* by delaying discipline.  Doc. 89, at 67–68.  But Strickland, as would be expected, told Ishida that she "did not understand the delay in disciplinary action."  JA3665.

Defendants, once again, are dissembling.  Shockingly, Defendants previously informed this Court that when Strickland withdrew her EDR claim, the investigation report was in a "preliminary" phase before "a Chapter X complaint [was] filed" and "there was never an opportunity to finalize" the report.  Case No. 21-1346, Doc. 80, at 24–25.  Following trial, it is undisputed that the "final investigative report" was submitted to Ishida on January 11, 2019, *months* before Strickland withdrew her complaint and resigned in March 2019.  JA3651.

During the prior appeal, Judge Briscoe stated that the Plan "might look fine on paper, but don't we have to look at the reality of how it was applied here? And don't you have to admit that things went off the rails early, in this?  I mean, *timelines were not observed, at all*, for instance?"  Case No. 21-1346, Oral Arg. 27:17–27:33 (emphasis added).  Defendants did not take any corrective action until nearly a full year after Strickland first raised her complaints, and several months after she involuntarily resigned.  *See* JA3686.  Proceeding to a final hearing would have been futile because it would have exacerbated these delays.

### 3. Martinez disregarded the investigator's recommendations with respect to Davis, the harasser.

Even if Strickland had not involuntarily resigned, she would not have been adequately protected from further harassment and retaliation. As Langley testified, the purpose of the Plan is to implement Title VII standards. JA3530. Martinez undoubtedly violated these standards when he imposed *verbal counseling* for conduct that can "clearly be inferred to be a quid pro quo request." JA1163, JA3653. The investigator recommended that this situation be "*documented*," at a minimum, in Davis's personnel file. JA3653 (emphasis added). This recommendation was grossly insufficient, as "interven[ing] swiftly to suspend the supervisor and then to fire him" is a more appropriate response to *quid pro quo* sexual harassment, but Martinez still did not even follow it. *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 607 n.7 (2d Cir. 2006). As a result, Davis was emboldened. He even ████████████████████████████████████████ ████████████████████████████████████████" JA4405.

In contrast to Martinez's disregard of the EDR Plan, the Chief Judge issued a detailed "Letter of Counseling." JA3686–3691. The district court—not Strickland—repeatedly described the Chief Judge's Letter as a "letter of reprimand," which is an accurate interpretation, given the potential consequences of a letter of this nature. *See* JA473 (referring to "Chief Judge Gregory's letter of

reprimand"); JA3134 (describing the "letter of reprimand" as an "admission" by the judiciary). The court did not adopt Defendants' preferred characterization until Ishida self-servingly denied, at trial, that he intended for the letter (which he drafted) to be discipline. Ishida, however, contemporaneously told the Chief Judge during the EDR process that "[t]he investigation report recommends that *disciplinary action* be taken" against Davis and Martinez. JA3683 (emphasis added). And the Chief Judge "decided to adopt" the report's recommendations. JA3690–3691; *see also* JA3691–3692 (Ishida contemporaneously told Strickland that "disciplinary action was taken" on her "report of wrongful conduct").

At least, however, Fourth Circuit officials created a record of Martinez's actions to deter future misconduct. *See Munive v. Fairfax Cty. Sch. Bd.*, 700 F. App'x 288, 289 (4th Cir. 2017) (unpub. per curiam) (discussing "collateral consequences" that may flow from a written reprimand). And later, after seeking reappointment, Martinez was not reappointed as federal defender. *Strickland*, 32 F.4th at 336; *see* JA614. By contrast, Martinez disregarded the evidence of harassment, having prejudged the matter because he "always believed" Davis and was "hostile" towards Strickland, as the district court found. JA2413, JA3685. Because Martinez refused to follow the investigation's recommendations, there is not even a written record of Davis's misconduct. This issue is not theoretical, as

Davis remains employed by the FDO and has been accused of other discriminatory behavior.  *See* Doc. 50, at 6–10 ("MeToo" evidence), JA4374.

"[U]npunished misconduct" is "more harmful or harassing than punished misconduct."  *Schiano*, 445 F.3d at 607 n.7.  If Davis made a *quid pro quo* request *again*, threatened to smack or slap Strickland *again*, or vindictively sabotaged her advancement *again*, there would not even be a formal record of his prior harassment.  If confronted, Davis, presumably, could once again evade consequences by claiming that it was "stupid" and a "dumb joke."  JA3653.  That is not how the EDR Plan is supposed to work.  And Strickland had no recourse to correct Martinez's flippant disregard of the Plan, because Ishida believed that any discipline against Davis was not the "concern" of the Fourth Circuit.  *See* JA3684.

### 4. Strickland was forced to resign.

Defendants contend that Strickland should have pursued her complaint in a final hearing, where she would perversely have the burden to prove sexual harassment and request remedies, rather than the burden being on the employer to "promptly correct" the harassment.  EDR Handbook 92; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).  As discussed above, whether the harasser would be disciplined would not even be considered until after such a hearing, having been placed "in abeyance."  Further, Martinez's views would be sought on the final decision even though he was "biased" and "could cause more damage if

he were involved." Defendants' precise assertion was addressed by Judge Melloy during the prior appeal, when he stated, if the process "totally goes off the rails . . . is the argument, well, do you just have to live with that for a couple of years . . . and hope the Chief Judge of the Judicial Council will remedy that? Is that the answer?" Case No. 21-1346, Oral Arg. 41:20–41:48.

Strickland already had been on telework, where she was ostracized and subjected to an ongoing hostile work environment, for *nearly seven* months when she resigned. This was "career-ending," and ███████████████████████ ███████████ her. JA3761, JA4402. Meanwhile, Defendants highlight their "efforts to separate" Davis from Strickland, which seemingly recognizes that Davis posed a physical threat to her. *See* Doc. 89, at 12, 48. Taking Defendants' argument to its logical conclusion, they are asserting that Strickland was required to pursue her claim for months—or, likely, years—through mandatory counseling and mediation, final hearing, decision by a presiding officer, and Judicial Council review, all while no disciplinary action was considered that would allow her to work safely in the FDO, and a concededly "biased" and "hostile" party was allowed to exercise influence at all stages. *See* JA3531–3533 (describing "mandatory" stages of Chapter X process). That course does not comply with the EDR Plan, which, consistent with Title VII, requires the employer to take prompt corrective action to prevent and redress sexual harassment.

**B.**   **Martinez's conflict of interest also "infected the entire investigation" because he was the *de facto* decisionmaker.**

Defendants are wrong to contend that Strickland is improperly "broaden[ing]" this Court's decision by presenting evidence obtained through discovery in support of her due process claim. Doc. 89, at 65. It is a basic principle that when "certain key facts about the process afforded to plaintiff are known only because of discovery," the plaintiff is entitled to present those facts. *Doe v. Rector & Visitors of GMU*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016).

For example, Defendants' actions in repeatedly disregarding the investigator's recommendations—including that corrective action be taken against both Martinez and Davis, and that Martinez be disqualified because he "could cause more damage," which was not even disclosed to the Chief Judge—are only known because of discovery. These facts clearly are relevant to her due process claim. The district court even agreed with Strickland that a "severe deviation" from the Plan or a lack of "remedies as a practical matter" will support a due process violation—and that the showing identified by this Court was "one route," but not "exclusive of all other routes"—but the court then, without explanation, failed to apply these principles in its opinion. JA3528.

The lodestar of the due process inquiry is fundamental fairness. Due process requires assessing "the risk of an erroneous deprivation" of a protected interest,

based on what "the particular situation demands." *Mallette*, 91 F.3d at 640

(citations omitted). Here, the "system did not work as designed" because of

"failures to comply" with internal policies. *Furey v. Temple Univ.*, 884 F. Supp.

2d 223, 259 (E.D. Pa. 2012); *Doe*, 149 F. Supp. 3d at 621.

Nonetheless, Strickland also has met the limited showing identified by this

Court at the pleadings stage. Specifically, it is undisputed that (1) Martinez was

not disqualified "from the investigation" and (2) Strickland was "led to believe that

[he] would be the final decisionmaker," such that "her only way forward was to

obtain a favorable decision from one of the key subjects of the investigation."

*Strickland*, 32 F.4th at 355.

### 1. Martinez was the final decisionmaker regarding whether Davis would be disciplined even though he was "counseled" based on the same complaint.

Defendants admit that Martinez was not disqualified despite being a "key

subject[]" of the investigation—and "counseled" based on the same complaint. *Id.*;

JA3777–3778. Further, Martinez was the "final decisionmaker," and Strickland's

"only way forward was to obtain a favorable decision" from him, because he was

allowed to decide whether Davis would be disciplined despite being "biased" and

"hostile" to Strickland. *See Strickland*, 32 F.4th at 355. As discussed above,

"preventing and addressing" harassment was fundamental to whether Strickland

could continue working at the FDO. EDR Handbook 72. But Martinez, by his

own admission, had so "firmly made up his mind" that he believed Davis that Strickland's "opportunity to be heard" on this crucial issue "was not meaningful." *Doe*, 149 F. Supp. 3d at 620.

Defendants argue that Strickland had no "substantive" right to effective corrective action on her sexual harassment complaint. Doc. 89, at 68–69. This argument, if accepted, would completely nullify this Court's recognition of a "substantive right" to be free from harassment under the EDR Plan. *Strickland*, 32 F.4th at 349. It also contradicts the Fifth Amendment's equal protection guarantee, which "confers a right to be free from gender discrimination," including sexual harassment. *Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994). The EDR Plan, like Title VII, was enacted to provide "judicial enforcement" of the constitutional right to be free from invidious discrimination, which would otherwise be "uncertain and ineffective." *Koger v. Ball*, 497 F.2d 702, 704 (4th Cir. 1974).

### 2. Strickland reasonably believed that a hearing officer would not, or could not, enforce remedies against a defender.

Even if Strickland had gone to a final hearing, she reasonably believed that Martinez would have been the *de facto* final decisionmaker. The district court found that Strickland "did believe that Martinez was the final decisionmaker; the evidence and her statements at the time suggest as much, particularly her decision to withdraw her EDR complaint and the comment she submitted on the Exposure

Draft to the Model EDR Working Group." JA3779. The only dispute is whether her belief was objectively reasonable.

Strickland's belief was reasonable. In contending otherwise, Defendants point to language in the EDR Plan. But in upholding the facial validity of the Plan, this Court already recognized that although the "terms of the EDR Plan clearly allow for remedies," the issue here is whether Strickland reasonably believed that those remedies would not be enforced in practice, an "as-applied challenge." *Strickland*, 32 F.4th at 355.

Strickland reasonably believed that, in practice, a hearing officer would not enforce remedies a defender did not agree to implement, because that would infringe on the independence of the defender office. *See* Doc. 49, at 53–56, 154–58. Langley, the former JIO and a "national resource" on the EDR Plan, told Strickland that a defender is not in a "direct employment relationship with the chief judge and the judges on the court," and so she did not know how "the mechanics" of "enforcement" of remedies would work. JA3672–3673.

For over a decade, the Department of Justice's Office of Legal Counsel has recognized that presiding officers in EDR matters are "acting in an administrative capacity" and not "exercising Article III authority." Legal Effect of Federal Judge's Order as Hearing Officer Under Court's Employment Dispute Resolution Plan, 34 Op. O.L.C. 25, 30 (2010), *available at* https://tinyurl.com/2an6krpm.

Likewise, the Judicial Conference has recognized that "[j]udges' decisions in EDR matters must be in conformance with all statutes and regulations that apply to the judiciary."  Report of the Proceedings of the Judicial Conference of the United States 25 (Sept. 2010).  It was reasonable for Langley to question how a presiding officer could enforce remedies against a defender office which, under the Criminal Justice Act, is independent from the court.  Contrary to merely "improving" the Plan and "training," Langley's comments referenced her concern about whether "FPDs are adequately protected by EDR remedies."  *See* Doc. 89, at 63; JA3674.

The district court even recognized that it is "regrettably obscure" whether "the EDR Plan . . . vests in [the presiding officer] the authority to make employment decisions."  JA3797.  And Fourth Circuit officials believed they had no "authority" to order actions regarding Davis, a defender employee.  JA3683.  It is thus doubtful how they would have the authority to order actions regarding Strickland, also a defender employee.

Corroborating the reasonableness of this belief, not only has the Judicial Conference since created a "separate" EDR Plan for FDOs, but it has also even endorsed "an independent federal public defense program" to address "conflicts inherent in the current structure."  Report of the Proceedings of the Judicial Conference of the United States 14 (Sept. 2024), *available at* https://tinyurl.com/5arvrab5.

## C. Other errors infected the EDR process.

Other errors also tainted the integrity of the EDR process, which were

revealed through discovery:

- *Ex parte* **communications**:  In his "disturbing incident" email, Ishida relayed to the Chief Judge false accusations from Martinez that Strickland was the personal "friend" of the Fair Employment Opportunity Officer and conspiring to exploit his office for employment advantages. Strickland was afforded no notice or an opportunity to respond.

- *Ex parte* **communications**: The investigation's findings were "prematurely shared" with Davis, the accused harasser.  Meanwhile, Strickland was not allowed to see the investigation report even after it was completed.

- **Inadequate and biased investigation**: None of the employees involved in Strickland's EDR proceeding had meaningful sexual harassment training.  Beam, who was "formally appoint[ed]" by Martinez, allowed Martinez and Davis to "coordinate" their interview testimony.  Beam did not interview Strickland's witnesses.  Beam did not properly investigate whether Davis had committed *quid pro quo* sexual harassment, even as she acknowledged his "Mas Dinero" email can "clearly be inferred to be a quid pro quo request."  Beam also told the district's Clerk of Court where Strickland practiced law that she was a "true pain in the you know what."  Beam's report would have been provided to the final hearing officer and thus influenced the decision.  *See Doe*, 831 F.3d at 59.

- **Violations of confidentiality**: Martinez violated Strickland's confidentiality rights under the EDR Plan, including by discussing her harassment complaint with Davis and sharing portions of her confidential mediation supplement with him.  The district court found that "it is obvious" that Martinez's actions were "inappropriate."  JA3777. Martinez's actions contributed to ostracizing Strickland through a hostile environment, as ███████████████████████████████████ her.

18

Doc. 50, at 36–141.  Defendants do not even address these issues in their brief, let alone contest that these violations of Strickland's rights occurred.

## D.    Defendants' "exhaustion" argument fails.

Exhaustion is not required when there is an "unreasonable or indefinite timeframe for administrative action," there is "doubt as to whether the agency was empowered to grant effective relief," or where "the administrative body is shown to be biased or has otherwise predetermined the issue before it."  *McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992).  Put simply, when an administrative process does not "function[] as designed," an employee is not "required to bring [her] case through [the] administrative scheme."  *Nat'l Ass'n of Immigr. Judges v. Owen*, No. 23-2235, 2025 U.S. App. LEXIS 13487, at *2 (4th Cir. June 3, 2025).

Defendants rely on *Dotson v. Griesa*, but that decision supports Strickland's position.  In *Dotson*, an employee was not allowed to pursue relief in federal court because he did not file an EDR complaint.  *Dotson v. Griesa*, 398 F.3d 156, 161 n.2 (2d Cir. 2005).  By contrast, Strickland diligently pursued remedies under the EDR Plan, but a final hearing would not have afforded her relief.  As this Court recognized, this case is like *Semper v. Gomez*, which held that "a federal employee who could not pursue meaningful relief . . . has the right to seek equitable and declaratory relief for alleged constitutional violations."  *Strickland*, 32 F.4th at 376 (quoting *Semper v. Gomez*, 747 F.3d 229, 242 (3d Cir. 2014)).  As Judge Briscoe

19

explained, *Semper* supports the idea that "if the Plan is not followed, then the plaintiff can have relief." Case No. 21-1346, Oral Arg. 33:25–33:38.

Because the undisputed evidence establishes that Strickland's due process rights were violated—a question of law—this Court should reverse the decision below and order further proceedings for an equitable remedy. *See Doe*, 228 F. Supp. 3d at 724, 731, 733 (ruling "as a matter of law" that "significant anomalies" in the process denied a "meaningful opportunity to be heard," and ordering proceedings on "the issue of the appropriate remedy"). Given Defendants' violations of the EDR Plan, if this Court does not reverse, it will set a dangerous and demoralizing precedent for the judiciary's 30,000 employees, who have "no remedies" other than the Plan. *Strickland*, 32 F.4th at 349 n.9.

## II. Defendants Violated Strickland's Equal Protection Rights When They Failed to Take Reasonable Steps to Prevent and Redress *Quid Pro Quo* and Hostile Working Environment Sexual Harassment.

"When a theory of recovery would not result in additional relief, a reviewing court need not address the district court's ruling on the merits of that claim." *Nelson v. Cowles Ford, Inc.*, 77 F. App'x 637, 643 (4th Cir. 2003) (unpub. per curiam) (quoting *Ibrahim v. N.Y. Dep't of Health*, 904 F.2d 161, 169 (2d Cir. 1990) (reversing district court's finding that "there was no Title VII discrimination" as "clearly erroneous" and remanding for determination of equitable relief, without addressing additional claim)). If this Court holds that Strickland's due process

20

rights were violated, it may be unnecessary to address far-reaching questions raised by her equal protection claim. *See Camreta v. Greene*, 563 U.S. 692, 705 (2011).

Strickland's equal protection claim is addressed in detail in her opening brief. *See* Doc. 49, at 69–132. Strickland respectfully requests that this Court review her opening brief—including its recitation of undisputed findings—in determining whether her "factual representations" are "either inaccurate or, at best, misleading." Doc. 89, at 36 n.8. Defendants had ample opportunity to refute any representations they believed were misleading, having used only half the word length allowed by this Court. *See* Doc. 72. Strickland raises the following points to refute specific factual errors and misapprehensions of law in Defendants' brief.

### A. Defendants do not meaningfully dispute that Strickland was subjected to sexual harassment.

Davis's conduct was "classic sexual harassment," as stated by Nancy Dunham, the judiciary's former Fair Employment Opportunity Officer. JA679, JA774. Davis's "Mas Dinero" email can "clearly be inferred to be a quid pro quo request," as the investigation found. JA3653. Defendants' assertion, in a footnote, that "this email was not a sexual quid-quo-pro" contradicts the investigation's findings. Doc. 89, at 32 n.6. Defendants' downplaying of the "Mas Dinero" email as purportedly not resulting in a "tangible employment action" is, likewise, without merit. When a *quid pro quo* threat contributes to a hostile working environment, it

is "quintessential" sexual harassment regardless of whether a tangible employment action results. *Schiano*, 445 F.3d at 607.

Davis also stated that Strickland "***needs to get slapped***" and "***may just need to get smacked a bunch***." She was "physically afraid" of him. He made contrived excuses to be alone with her, with "a possible risk of something happening like a sexual assault." He engaged in professional "sabotage," telling the Chief of the Appellate Unit—the only place where she could work to get away from his supervision—that she had a "fuck off attitude" and had committed "fireable offenses." Unsurprisingly, thereafter, she was not transferred to full-time appeals, even though an open position was available. The district court found that the transfer would have been "feasible" and "prudent," but refused to "speculate as to why" it did not occur. *See* Doc. 49, at 71–76. Davis's conduct was more like "a spurned suitor" than a supervisor, with tangible and damaging consequences for Strickland's career. *Beardsley*, 30 F.3d at 530.

It is disgraceful that Defendants suggest Davis's conduct was "welcome." Shamefully, Defendants even argued in the district court that the culture of widespread alcohol abuse created by FDO supervisors signaled that Strickland "welcomed" the harassment, when in fact, "unwritten rules" like "stay[ing] for drinks, often late into the evening," can be an aspect of how supervisors exert "control" over their subordinates. Johnson, *supra*; *see also* JA3199 (federal judge

22

used request "to get drinks" with a former law clerk to escalate assaultive conduct). This culture is especially "insidious" when the employee wants to "impress" supervisors and obtain a "mentor"—a dynamic reenforced by Davis's abuse of his "mentor" role as a ruse to sexually harass her. Johnson, *supra*; *see* JA3700–3701.

Davis's conduct was sexual harassment under the EDR Plan. Defendants' failure to take appropriate action, even after Strickland diligently pursued remedies, made a final hearing futile and caused her to resign. Thus, while Davis's sexual harassment did create an intolerable working environment, Strickland's constructive discharge is not merely a "hostile work environment constructive discharge claim." Doc. 89, at 50. Davis's harassment was reenforced by "unofficial supervisory conduct" and "official company acts" when Defendants failed to follow the Plan. *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004).

**B.    The district court failed to acknowledge that courts rely on well-accepted standards from analogous civil rights statutes in the deliberate indifference context.**

Even when a district court has discretion, it "'must be guided by 'meaningful standards' enforced by 'thorough appellate review.'" *Ford Motor Co. v. EEOC*, 458 U.S. 219, 226 (1982) (citation omitted). Even though this case involves a federal employer's response to a supervisor's sexual harassment, the district court did not seek guidance from analogous Title VII precedents regarding whether the employer's response was reasonable. *See* JA3725–3726; *compare Beardsley*, 30

F.3d at 529.  At a minimum, the fact that the EDR Plan explicitly adopts Title VII standards should have provided guidance about what steps to prevent and redress harassment were reasonable.  *See Strickland*, 32 F.4th at 351.

Defendants, likewise, have not provided this Court any intelligible standard for determining what constitutes deliberate indifference, except that it is a "very high standard."  Doc. 89, at 33.  Here, it took nearly *a full year* after Strickland first reported her allegations for corrective action to be taken.  The investigator did not interview *any* witnesses who could substantiate the harassment.  Even so, the investigator found evidence of *quid pro quo* sexual harassment, but Defendants still failed to act.  In the meantime, Strickland was ostracized from her co-workers while on telework for *nearly seven months*.  Defendants did not take "feasible" and "prudent" measures to protect her, like transferring her to *an open full-time* position in appeals, away from Davis's supervision, and transferring her to an open office in a different location.  JA3750–3751.  If Defendants' actions were sufficient, it is unclear what would ever constitute deliberate indifference.

### C.     The MeToo evidence is relevant and admissible.

Defendants repeat contested findings, like the failure to promote Strickland was an "administrative oversight" (unlike her male co-worker, who was awarded a $15,000 raise *one business day* after she resigned even though he was not eligible for a promotion like her).  Doc. 89, at 39.  But the district court did not consider

other allegations of discrimination, for example, that Martinez referred to a zealous female prosecutor as a "fucking bitch." JA2885, JA4397. Defendants' contention that considering this evidence would result in a "mini-trial" has been rejected by this Court. *See Calobrisi v. Booz Allen Hamilton, Inc*., 660 F. App'x 207, 210 (4th Cir. 2016) (unpub.). This is an admission by a party opponent, which undermines Martinez's credibility and exemplifies his sex-discriminatory attitude.

### D. Defendants misconstrue facts.

For the first time on appeal, Defendants erroneously assert that when Beam found that Martinez made statements to the effect that, "at least you weren't touched"—a finding adopted by the Chief Judge—she did not have the audio recording of the conversation, and so her understanding was based on Strickland's "characterization." Doc. 89, at 35 n.7. Strickland contemporaneously provided the recording to Beam. *See* ECF No. 248-15, at 27. And in her mediation supplement, she informed Fourth Circuit officials that "she tape-recorded the conversation" with Martinez because she "no longer trusted" him. ECF No. 248-2, at 29.

### E. Despite Defendants' effort to bury the constitutionality of Title VII's exclusion of judiciary employees, their waiver argument is unconvincing.

Even though this Court upheld the facial validity of EDR Plan—which requires Defendants to enforce Title VII protections—Defendants contend that Strickland should have anticipated that the district court would disregard well-

accepted standards from Title VII guidance and conclude, "[t]hat she is without

redress under the present legal framework cannot be a cause for congratulation on

the part of federal judges or administrators." JA3795. That is wrong.

A party does not need to take a "formal exception" to a district court's

ruling, but rather "need only state the action that it wants the court to take . . .

along with the grounds for the request." Fed. R. Civ. P. 46. The grounds for

Strickland's claim have been stated from the outset: Defendants " '(a) subject[ed]

[her] to harassment, retaliation, and discrimination,' (b) 'fail[ed] to take immediate

and effective action on her complaints,' and (c) 'fail[ed] to provide her with

meaningful review or remedies.'" *Strickland*, 32 F.4th at 358. The district court's

ruling that "she is without redress under the present legal framework" means not

only that Strickland did not receive the Title VII protections to which she was

entitled in the EDR process, but those protections also are not being enforced in

federal court. This run-around raises profound constitutional questions.

Defendants also misconstrue this Court's prior ruling. In holding that the

district court erred by concluding that Strickland had raised a "pure retaliation"

claim, *Strickland*, 32 F.4th at 358, this Court did not rule that Title VII precedent is

irrelevant to equal protection claims, nor did it disturb the settled principle that

courts should look to civil rights statutes—and, here, the EDR Plan—in

determining whether an employer's response to sexual harassment was reasonable.

## III.    Strickland Did Not "Abandon" A Request For Reinstatement.

More than three years ago, Strickland stated in a sworn declaration that "[i]f the hostile working environment I suffered were to be corrected, I would accept an offer of reinstatement.  Since I filed this action, I have never been offered reinstatement."  Case No. 21-1346, Doc. 90-2, at 4.

If Defendants had ever made a good faith, unconditional offer of reinstatement following this Court's April 2022 decision, they could have hastened the end of this litigation years ago.  *See Ford*, 458 U.S. at 232 ("offering the claimant the job he sought" provides "an opportunity to minimize damages"); *cf. United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 148 (4th Cir. 2017).  This doctrine exists as "powerful[] motivat[ion]" to bring "defendants into 'voluntary compliance,'" because "[t]he victims of job discrimination want jobs, not lawsuits."  *Ford*, 458 U.S. at 228, 230 (citation omitted).

Defendants did not make a good faith offer of reinstatement, even though Strickland expressly stated that she would accept such an offer if made.  Shortly after this Court's decision, the current Federal Defender, John Baker, even engaged in a gratuitous display of public support for Davis, stating in a job advertisement that Davis would serve as the "head[]" of the "search committee" for his own replacement as First Assistant.  ECF No. 125-2, at 18.  Despite high turnover during Baker's tenure, Davis remains employed there.

27

Defendants rejected Strickland's proposal to go to mediation early in the case, exposed the judiciary to unprecedented discovery and trial, and engaged in scorched-earth tactics. *See, e.g.*, Doc. 26. Even so, Strickland has continued to pursue settlement. *See* Doc. 82.

On remand, the district court should be required to decide in the first instance whether reinstatement, the "preferred equitable remedy," is feasible. *Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018). The court also could consider returning the matter to the EDR process to allow Defendants to provide remedies under the Plan, like "placement in a comparable alternative position" within the judiciary. JA3533. During this litigation, Defendants conceded that "more process" is an available remedy; indeed, it is the "typical remedy." JA2419; *Doe v. Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583, 588 (E.D. Va. 2016). Considering Strickland's "significant professional qualifications" and the fact that "she saw her desired career in public service stunted" after making a "good faith claim of sexual harassment," the court would have broad discretion to consider equitable relief. JA3795.

## CONCLUSION

This Court should ensure that equitable relief is available.

Respectfully submitted,

/s/ Caryn Strickland

Caryn Strickland
Law Office of Caryn Strickland
PO Box 92
Lynn, NC 28750
828-388-7337
caryn.strickland@outlook.com

June 12, 2025

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 6,491 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Caryn Strickland
Caryn Strickland

## CERTIFICATE OF SERVICE

I certify that on this 12th day of June, 2025, I filed this brief with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

/s/ Caryn Strickland
Caryn Strickland