No. 24-2056

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CARYN DEVINS STRICKLAND,

*Plaintiff-Appellant*,

v.

NANCY L. MORITZ, ET AL.,

*Defendants-Appellees*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA

## PETITION FOR PANEL REHEARING
## AND REHEARING EN BANC

Caryn Strickland
Law Office of Caryn Strickland
PO Box 92
Lynn, NC 28750
828-388-7337

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ ii

INTRODUCTION AND RULE 40 STATEMENT  ................................................1

STATEMENT OF THE CASE ..........................................................................5

      A.     With only four days' notice, Strickland's team of four *pro bono* attorneys moves to withdraw after Defendants raise a privilege challenge based on an insinuation that they later abandon, and which is deemed irrelevant at trial ........................................................5

      B.     On appeal, Professor Gersen offers twice to represent Strickland and proposes terms of representation to which Strickland agrees before declining representation based on personal reasons ................................................................................12

      C.     The Panel holds that the district court abused its discretion by failing to make any findings of fact regarding whether withdrawal was supported by good cause, but remand is "unwarranted." ................................................................................14

ARGUMENT ..............................................................................................14

I.     Strickland is entitled to a hearing on whether her *pro bono* legal team's withdrawal was supported by good cause ....................................14

CONCLUSION ...........................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

APPENDIX

i

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Arndt v. Gov't Emps. Ins. Co.*,
   750 F. Supp. 3d 518 (D. Md. 2024) ................................................... 8

*Cavallo v. Star Enter.*,
   No. 97-1707, 1998 U.S. App. LEXIS 15114 (4th Cir. July 7, 1998) ................ 1

*Champboat Series, LLC v. In2focus Films, Inc.*,
   No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071
   (W.D.N.C. Nov. 16, 2009) ............................................................. 6, 7

*Chapman v. Oakland Living Ctr., Inc.*,
   48 F.4th 222 (4th Cir. 2022) ................................................................. 3

*Doe v. Bd. of Educ.*,
   165 F.3d 260 (4th Cir. 1998) ............................................................. 15

*Doe v. Glanzer*,
   232 F.3d 1258 (9th Cir. 2000) ........................................................... 11

*Hale v. Exec. Office of the President,*
   No. 25-917, (RJL), 2025 U.S. Dist. LEXIS 100078
   (D.D.C. May 27, 2025) ...................................................................... 1

*In re God's Mercy, LLC,*
   285 F. Supp. 3d 904 (E.D. Va. 2018) ................................................ 17

*Jenner v. United States DOJ,*
   Civil Action No. 25-916, (JDB), 2025 U.S. Dist. LEXIS 99015
   (D.D.C. May 23, 2025) .................................................................. 1, 3

*Kay v. Ehrler*,
   499 U.S. 432 (1991) ........................................................................ 15

*Laster v. District of Columbia*,
   460 F. Supp. 2d 111 (D.D.C. 2006) .................................................. 17

*MacNeill Eng'g Co., Inc. v. Trisport, Ltd.*,
   73 F. Supp. 2d 73 (D. Mass. 1999) .................................................... 9

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ............................................................ 8

*Mills v. PPE Casino Resorts Md., LLC*,
    Civil Action No. RDB-15-495, 2017 U.S. Dist. LEXIS 70373
    (D. Md. May 8, 2017) ........................................................................ 9

*Perkins Coie LLP v. United States DOJ*,
    Civil Action No. 25-716, (BAH), 2025 U.S. Dist. LEXIS 84475
     (D.D.C. May 2, 2025) ................................................................... 1, 2

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982) ........................................................................ 16

*Scott v. Cricket Commc'ns, LLC*,
    865 F.3d 189 (4th Cir. 2017) ....................................................... 3, 16

*Shaffer v. Farm Fresh, Inc.*,
    966 F.2d 142 (4th Cir. 1992) ....................................................... 3, 18

*Smith v. Bryant*,
    264 N.C. 208 (1965) ........................................................................ 17

*Spann v. N.C. Dep't of Pub. Safety*,
    No. 1:17 cv 104, 2017 U.S. Dist. LEXIS 200732
    (W.D.N.C. Dec. 6, 2017) ........................................................ 7, 15, 16

*Susman Godfrey LLP v. Exec. Office of the President*,
    Civil Action No. 25-1107 (LLA), 2025 U.S. Dist. LEXIS 123029
    (D.D.C. June 27, 2025) ...................................................................... 1

*United States EEOC v. Consol Energy, Inc.*
    860 F.3d 131 (4th Cir. 2017).............................................................. 4

*United States v. Will*,
    449 U.S. 200 (1980) .......................................................................... 4

**Statutes**

18 U.S.C. § 2511 ................................................................................... 7

N.C. Gen. Stat. § 15A-287 ................................................................... 7

**Other**

ABA Formal Op. 01-422 (2001) ........................................................ 7

ABA Formal Op. 94-383 (1994) ........................................................ 6

Code of Conduct for U.S. Judges........................................................ 6

D.C. Ethics Op. 229 (June 16, 1992) ................................................ 9

Fed. R. Civ. P. 26 ............................................................................ 8

*Irreconcilable*, Merriam-Webster Dictionary...................................... 16

N.C. RPC 171 (1994) ...................................................................... 7

N.C. R. Prof. Cond. 1.16.................................................................. 15

WDNC LCvR 83.1 ...................................................................... 6, 17

## INTRODUCTION AND RULE 40 STATEMENT

Caryn Devins Strickland is entitled to a remand for further proceedings regarding whether good cause existed for the withdrawal of her *pro bono* legal team just nine days before the summary judgment deadline and on the doorstep of trial. Indeed, *pro bono* counsel moved to withdraw only ten days after the district court allowed Chief Judge Gregory's deposition. ECF Nos. 203, 207. *Pro bono* counsel did not take the Chief Judge's deposition, leaving Strickland and her spouse (neither of whom had ever taken a deposition) to depose him by themselves, even though counsel had *not* been granted leave to withdraw by the court when the deposition was taken. *See* ECF No. 255-2.

A litigant has a due process right to the counsel of her choice. *See Cavallo v. Star Enter.*, No. 97-1707, 1998 U.S. App. LEXIS 15114, at *9 (4th Cir. July 7, 1998) (unpub.). Recent decisions have recognized the importance of zealous advocacy, *especially* for disfavored litigants who oppose the "government-imposed orthodoxy," as "central" to "our constitutional order." *Jenner v. United States DOJ*, Civil Action No. 25-916 (JDB), 2025 U.S. Dist. LEXIS 99015, at *8 (D.D.C. May 23, 2025); *Susman Godfrey LLP v. Exec. Office of the President*, Civil Action No. 25-1107 (LLA), 2025 U.S. Dist. LEXIS 123029, at *73 (D.D.C. June 27, 2025); *Hale v. Exec. Office of the President*, No. 25-917 (RJL), 2025 U.S. Dist. LEXIS 100078, at *7 (D.D.C. May 27, 2025); *Perkins Coie LLP v. United States*

1

*DOJ*, Civil Action No. 25-716 (BAH), 2025 U.S. Dist. LEXIS 84475, at *6–8 (D.D.C. May 2, 2025).

Yet, in this case involving novel constitutional claims against judiciary officials in an Article III court—perhaps the most disfavored litigation imaginable—the district court allowed Strickland's team of *pro bono* attorneys, who brought prestige, legitimacy, and resources to her case, to withdraw based on a one-sentence assertion of a "conflict" and "irreconcilable differences," with no specific reason provided, and with no questions asked. ECF No. 207; Entry Order Dated May 23, 2023. The Panel recognized that the district court *abused its discretion* by failing to find any good cause in its one-sentence order granting the team's withdrawal, but reasoned that reversal based on this error was "unwarranted." Slip Op. 50. This conclusion is fundamentally misguided and—in a published decision—undermines the due process right of every litigant in this Circuit to zealous representation by counsel of their choice.

If the Panel's decision is allowed to stand, then any attorney will be able to exit her client's case based on the flimsiest of pretenses, ungrounded in scrutiny of her obligations under the rules of professional conduct, and no matter how severe the prejudice her actions may cause to her clients and the public's interest in the fair litigation of important constitutional claims. It is easy to imagine the mischief the Panel's published ruling will invite by green-lighting attorneys to abandon their

2

clients for all sorts of illegitimate reasons, from routine disagreement over a client's decision to go to trial rather than settle, to "intimidat[ion]," "reluctance," and "fear of angering" government officials. *Jenner*, 2025 U.S. Dist. LEXIS 99015, at *31 & n.12. This Court also must remand or else risk endorsing scorched-earth tactics as a routine method of litigation.

This Court may simply remand for a hearing on whether good cause existed for the withdrawal, the "usual rule" under this Court's precedents when the district court abuses its discretion by failing to make required findings of fact. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017). Indeed, the Panel's decision conflicts with Circuit precedent recognizing that a district court must find that an attorney's departure is "predicated upon a proper application of applicable ethical principles." *Cf. Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 145 (4th Cir. 1992).

Moreover, unguided by party presentation assisted by independent counsel, the Panel made fundamental errors. The Panel even relied on a purported "deliberateness" requirement for constructive discharge—a determinative issue in the case—despite the Supreme Court's "express holding [that] abrogates our prior case law." *Compare* Slip Op. 28–31, *with United States EEOC v. Consol Energy, Inc.*, 860 F.3d 131, 144 (4th Cir. 2017); *Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 235 (4th Cir. 2022).

3

This case involves questions of "exceptional importance"—affecting the due process right of all litigants in this Circuit to the counsel of their choice—and the Panel's decision directly conflicts with prior decisions of this Court.  Fed. R. App. P. 40(b)(1)(A), 40(b)(2)(A) & (D).  Because the Panel's errors will prejudice the rights of all litigants in this Circuit, Strickland waives the conflict of interest regarding this legal question and requests that the Fourth Circuit rehear this case *en banc* if the Panel does not correct its errors and remand for the district court to make findings on whether good cause existed for her legal team's withdrawal.  *Cf. United States v. Roof*, Doc. 177, No. 17-3 (4th Cir. 2021) (Gregory, C.J.). Strickland is not entitled to lesser rights than any other litigant merely because all judges on the Fourth Circuit have a conflict of interest in this case raising errors in the Fourth Circuit's EDR process, including that the investigation was "biased," her confidentiality was "breached," and discipline was held "in abeyance," errors that "could cause a reasonable person to drop her complaint."  Slip Op. 26, 29; *cf. United States v. Will*, 449 U.S. 200, 214 (1980).

4

## STATEMENT OF THE CASE

**A.  With only four days' notice, Strickland's team of four *pro bono* attorneys moves to withdraw after Defendants raise a privilege challenge based on an insinuation that they later abandon, and which is deemed irrelevant at trial.**

On April 19, 2023, during the heat of discovery, the district court denied Defendants' "Emergency Motion for Protective Order" seeking to preclude the deposition of then-Chief Judge Roger Gregory, a named official-capacity defendant.  ECF No. 203.  The deposition was later scheduled for May 16, 2023. *See* ECF No. 255-2.

A week later, Defendants took Strickland's deposition, six days before discovery was scheduled to end.  *See* ECF No. 187.  During the deposition, Defendants' counsel, a trial attorney with the Department of Justice, raised a line of questioning implicating a "sensational insinuation," which blindsided Strickland and her counsel because it had never previously been raised in discovery.  Slip Op. 48; ECF No. 219.  Strickland was represented by three members of her legal team during her deposition, including Professor Jeannie Suk Gersen.  *Pro bono* counsel initially did not object to any of DOJ counsel's questions, but later raised an unspecified assertion of privilege.  ECF No. 208, at 2.  Defendants later moved under seal to strike the privilege assertion and re-open Strickland's deposition. ECF No. 219.

5

Four days after the deposition, Strickland's entire *pro bono* legal team moved to withdraw based on a purported "conflict" and "irreconcilable differences," which their one-sentence motion did not explain. ECF No. 207. Strickland's legal team did not make any further assertions of privilege on her behalf, leaving Strickland and her remaining counsel (her spouse, who was not present at her deposition) to assert privilege after delay. *See* ECF No. 208. In response to the motion to withdraw, Strickland requested that the motion be held in abeyance until the issues raised by Defendants were resolved by the court, particularly given the severe prejudice she would suffer (including the loss of TIME'S UP funding) if her counsel were allowed to withdraw. ECF No. 215.

Strikingly, Defendants took *no position* on the motion, providing no further information and confirming the need for a determination of good cause. ECF No. 214. Indeed, if the assertion at the bottom of page 8–9 of their privilege challenge (ECF No. 219) was accurate, then Defendants' counsel were ethically *required* to "promptly" report misconduct and could not use it "to obtain an advantage" in the litigation. ABA Formal Op. 94-383 (1994). Their silence is telling.

In a one-sentence order, the district court allowed the legal team to withdraw, without making any finding that the withdrawal was supported by good cause as required by the district's Local Rule 83.1(f). Entry Order Dated May 23, 2023. As explained in decisions from the Western District of North Carolina, this

6

local rule is intended to enforce a litigant's rights and an attorney's duties under the rules of professional conduct, including not "to abandon a case without . . . justifiable cause." *Champboat Series, LLC v. In2focus Films, Inc.*, No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009); *see Spann v. N.C. Dep't of Pub. Safety*, No. 1:17 cv 104, 2017 U.S. Dist. LEXIS 200732, at *5 (W.D.N.C. Dec. 6, 2017). The court's perfunctory order allowing counsels' withdrawal was issued on May 23, 2023, just nine days before the summary judgment deadline.

Strickland ultimately was vindicated on the "privilege challenge" raised by Defendants. In their motion to strike privilege assertion, Defendants asserted that their questions (which were unrelated to the merits of her claims) were relevant based on a "potential violation of law or unethical conduct." ECF No. 276, at 3.

The precise insinuation raised by Defendants is not in the public record, in part, because it was never raised in their Answer or at trial. But as the district court's order deciding the privilege challenge notes, it was related to "the topic of recordings." ECF No. 233, at 2. As relevant context, North Carolina is a one-party state, like most jurisdictions, meaning that no permission is needed to record a conversation with another party. N.C. Gen. Stat. § 15A-287(a); *see* 18 U.S.C. § 2511(2)(d). Nor does this conduct violate the rules of professional conduct, as expressly stated in formal opinions from the North Carolina Bar and the American

7

Bar Association.  N.C. RPC 171 (1994), *available at* tinyurl.com/24s6v4xd; ABA

Formal Op. 01-422 (2001), *available at* tinyurl.com/5n87bh73.

Instead of disclosing relevant authorities, Defendants relied on outdated

authority that had been abrogated decades earlier to suggest misconduct.  This

abrogation has been recognized by multiple federal courts of appeal, one of which

even described the precise error Defendants made as a "misapprehension of law."

*See, e.g.*, *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 495 (5th

Cir. 2013).  Defendants also failed to disclose controlling adverse precedent that

contradicted their most sensational insinuation.  *See, e.g.*, *Arndt v. Gov't Emps. Ins.

Co.*, 750 F. Supp. 3d 518, 525 n.1 (D. Md. 2024).  Defendants even altered a

quotation in their brief to create a misleading impression that the cited decision

supported their position.  *Compare* ECF No. 219 (sealed), *with* ECF No. 226, 270-

1 (redacted versions of filings that, if allowed to be filed in unredacted form, would

have exposed Defendants' misleading representations) (Appendix).

Unfortunately, however, the district court was never made aware of

Defendants' misrepresentations of law because of the unorthodox way it handled

Defendants' privilege challenge, which was directly linked to her legal team's

motion to withdraw.  *See* ECF No. 215.  The court granted Defendants' motion to

seal their privilege challenge to prevent disclosure of potentially privileged

information, as required by Fed. R. Civ. P. 26(b)(5)(B).  But the court, without

8

explanation, denied Strickland's motion to seal her response at the same time that it denied most (but not all) of her privilege assertions.  ECF No. 233, 238.

Because of this fundamentally unfair conduct, the district court reviewed only a heavily redacted public version of Strickland's filing and did not see where she explained that Defendants' privilege challenge was premised on basic misapprehensions of law regarding the legality of recordings taken with the consent of one party in North Carolina.  Moreover, the use of recording for whistleblowing-related purposes is protected by the First Amendment and ethical authorities.  *See Mills v. PPE Casino Resorts Md., LLC*, Civil Action No. RDB-15-495, 2017 U.S. Dist. LEXIS 70373, at *13 (D. Md. May 8, 2017); D.C. Ethics Op. 229 (June 16, 1992), *available at* tinyurl.com/ymx75sf8 (recording is not only ethical but may be "a prudent protection for the client").

 In fact, Judge Young, the presiding judge, has described as "sheer folly" a party's similar allegation of misconduct based on "lawful[] record[ings]."  *MacNeill Eng'g Co., Inc. v. Trisport, Ltd*., 73 F. Supp. 2d 73, 75 (D. Mass. 1999).  Like Defendants, if the district court believed litigation misconduct had occurred, it was required to take "appropriate action."  Code of Conduct for U.S. Judges 3(B)(6).  Instead, the court did not review anything but Strickland's redacted filing and denied her due process right to be heard:

9

<u>**PLAINTIFF'S RESPONSE TO DEFENDANTS' "MOTION TO STRIKE PRIVILEGE
ASSERTION AND TO COMPEL DEPOSITION TESTIMONY"**</u>

Defendants' motion ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

ECF No. 226.

Even though the court did not review Strickland's arguments, the court did

recognize that "[i]t is possible" that her answers in the deposition would have been

covered by the attorney-client privilege if her *pro bono* counsel had

contemporaneously objected.  ECF No. 233, at 2.  The court also recognized that

Strickland's Fifth Amendment privilege was not waived and could be asserted in

any further proceedings.  *Id.*  Although the court's ruling implicitly asserts that

Strickland had a reasonable fear of prosecution, which was severely intimidating

particularly because the court did not allow her to be heard, at the very least, the

court's ruling resolved the privilege issue in her favor and showed there was no

basis for her counsel to withdraw.  Indeed, since Defendants had no evidence of

10

any criminal activity, any further questioning on the matter would be irrelevant. *See Doe v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir. 2000).

Because Defendants failed to correct their misleading representations to the court, even after Strickland provided them with her unredacted response containing the relevant authorities, Strickland moved for sanctions. She cited the withdrawal of her *pro bono* team as part of the prejudice she suffered due to Defendants' counsel's unfounded insinuations. ECF No. 270-1, at 20–21. In response to her motion, Defendants backtracked and asserted that they were not "making any allegation," but merely seeking "additional inquiry." ECF No. 294, at 1–2.

Defendants ultimately did not raise this line of questioning at trial, after the district court admonished their counsel not to raise questions about recordings because "I don't see why this is relevant" unless they were willing to represent, as officers of the court, that this conduct "is violative of the law in North Carolina." JA2551. Indeed, Defendants *offered*, and the court *relied on*, recordings taken by Strickland with the consent of one party as evidence at trial. *See* JA3529.

Severely intimidated by Defendants' insinuations and the district court's denial of her right to be heard, Strickland did not testify at trial, instead asserting her Fifth Amendment rights. But the court overruled her Fifth Amendment assertion and forced her to testify. It even described her Fifth Amendment assertion, which it had previously upheld, as "silliness." JA3801.

11

**B.    On appeal, Professor Gersen offers twice to represent Strickland and proposes terms of representation to which Strickland agrees before declining representation based on personal reasons.**

Despite having previously cited a "conflict" and "irreconcilable differences," Professor Gersen offered *twice* to represent Strickland in this appeal. As explained in Strickland's filings before this Court, after the district court's decision issued on August 9, 2024, Strickland believed that Professor Gersen would be representing her for two months, until October 9, 2024. During this time, Professor Gersen told Strickland that she and her spouse, Professor Jacob Gersen, would represent Strickland. Professor Gersen also provided Strickland with legal advice and began assembling a team of research assistants. On October 1, 2024, Professor Gersen sent Strickland a text message stating, "Very excited to represent you again":



However, on October 7, 2024, the district court's courtroom deputy unexpectedly informed the parties that the court had *sua sponte* decided to destroy the trial record, including exhibits, even though the period to file an appeal had not expired. Even Defendants' counsel cited concern about the possibility of an appeal

12

as a reason to preserve the trial record.  Two days later, Professor Gersen informed Strickland that she would no longer represent her on appeal.  She stressed, however, that "I wanted to represent you on the appeal."  Doc. 36, at 7–8.

Strickland maintained contact with Professor Gersen.  On May 18, 2025, at Professor Gersen's request, they spoke by phone.  Professor Gersen offered to present oral argument on Strickland's behalf and proposed terms for the representation.  During the conversation, Strickland discussed privileged matters, including related to the parties' settlement efforts.  At no time did Professor Gersen ask Strickland not to discuss privileged matters or state that they did not have an attorney-client relationship.  Doc. 99; *see* Doc. 106.

The next day, Strickland wrote to Professor Gersen that she was "comfortable signing an engagement letter with the terms that you mentioned."  On May 20, 2025, Professor Gersen responded that she was "preparing an engagement letter for both of our review to see if we can make this work" and would send it "later today."  The next day, however, Professor Gersen wrote to Strickland that "it's hard for me not want to be involved in the appeal," but provided various reasons why "all in all I should not take this on right now."  None of those reasons involved a conflict of interest or irreconcilable difference, but rather "deadlines and commitments" and personal matters.  Doc. 99; *see* Doc. 106.

13

**C.    The Panel holds that the district court abused its discretion by failing to make any findings of fact regarding whether withdrawal was supported by good cause, but remand is "unwarranted."**

The Panel held that "the court abused its discretion in summarily granting withdrawal." Slip Op. 50. The Panel reasoned, however, that the error "was more technical than substantive" and reversal "is unwarranted." *Id.*

## ARGUMENT

**I.    Strickland is entitled to a hearing on whether her *pro bono* legal team's withdrawal was supported by good cause.**

The Panel recognizes that the district court "abused its discretion" because it "plainly did not conduct a good-cause analysis of any kind." Slip Op. 49–50. But in a two-paragraph analysis, the Panel contends that reversal is "unwarranted." *Id.*

The Panel's decision contains legal errors that directly conflict with this Court's precedents.

First, the Panel states, without explanation, that "the error did not ultimately prejudice Strickland at trial." Slip Op. 50. But *of course* Strickland was prejudiced—as the old adage goes, she who represents herself has a fool for a client. In addition to losing a TIME'S UP litigation grant, Strickland was forced to put on a case with her spouse, who also had never tried a case. Strickland did not present any live witnesses, as Defendants repeatedly pointed out. *See, e.g.*, Doc. 89, at 23. Moreover, contrary to the Panel's contention that the participation of

14

Strickland's spouse "would reduce any concerns about prejudice," Slip Op. 50, the Fourth Circuit has recognized, in accordance with Supreme Court precedent, that parties who are represented by close family members are "at a disadvantage," *Kay v. Ehrler*, 499 U.S. 432, 437 (1991), because of "the danger" that a "meritorious claim will be ineffectively prosecuted" by an "inexperienced" and "irrationally emotional" family member "without the assistance of an independent attorney," *Doe v. Bd. of Educ.*, 165 F.3d 260, 263 (4th Cir. 1998). The Panel also describes Strickland's trial advocacy as "questionable" and implies that she does not know how to make a proffer, a basic task for a trial attorney, which is incompatible with a conclusion that she was not prejudiced. Slip Op. 44–45.

Next, the Panel concludes that the "court would have been within its discretion to find good cause" based on (1) *pro bono* counsel's "representation of irreconcilable differences" and (2) Strickland's purported "failure to object to withdrawal." Slip Op. 50.

Regarding "irreconcilable differences," the Panel does not attempt to justify *pro bono* counsels' assertion of a conflict of interest, which was unsupported. *See* ECF No. 207. But unlike a conflict of interest, "irreconcilable differences" are not a mandatory basis for withdrawal. *See* N.C. R. Prof. 1.16(a). Withdrawal on this basis thus *requires* a finding of "good cause," which the Panel already stated the district court failed to make. N.C. R. Prof. Cond. 1.16(b)(9); *see Spann*, 2017 U.S.

15

Dist. LEXIS 200732, at *3, 5.  More fundamentally, by finding that irreconcilable circumstances existed without any factual basis, the Panel usurped the role of the district court: "When a district court fails to make findings of fact 'because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings.'"  *Scott*, 865 F.3d at 194 (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 291 (1982)).

The record strongly suggests that any difference was not "irreconcilable," meaning "impossible to reconcile."  *Irreconcilable,* Merriam-Webster Dictionary, *available at* https://tinyurl.com/mrykpbra.  After withdrawing, Professor Gersen (1) offered to represent Strickland on appeal, (2) provided legal advice and discussed privileged information, (3) proposed terms of representation to which Strickland agreed, and (4) provided personal reasons for declining representation.

Regarding Strickland's purported "failure to object to withdrawal," the Panel states that Strickland "requested that the district court delay deciding the motion for an unspecified period of time."  Slip Op. 48, 50.  That is incorrect and circular. Strickland stated that the resolution of the motion to withdraw depended on "*pending* issues in this litigation raised by Defendants."  ECF No. 215 (emphasis added).  Strickland was referring to Defendants' privilege challenge, which was the only relevant motion *pending* before the court.  *See* ECF Nos. 208, 219.  The court resolved the privilege challenge on June 1, 2023, only one week after granting

16

withdrawal on May 23, 2023. That period is not unspecified, as it is governed by the local rules' briefing schedule, nor would it have been unduly burdensome to require *pro bono* counsel to wait one more week. In any event, the court could not grant withdrawal without Strickland's "written consent" absent a finding of good cause, WDNC LCvR 83.1(f), which this Panel held that it did not make.

The Panel cites a nonprecedential decision from the Southern District of California, where the client knew about the motion to withdraw *for nearly a year* and did not file any response. Slip Op. 51. That is plainly inapposite. The Panel also states that it "would have been clearly unreasonable" to require *pro bono* counsel to continue representation, but counsel has an "obligation to see the work through to completion when he agrees to undertake the representation of his client." *Laster v. District of Columbia*, 460 F. Supp. 2d 111, 113 (D.D.C. 2006). In fact, even a client's failure to pay does not necessarily "mean that an attorney of record can walk out of the case." *Smith v. Bryant*, 264 N.C. 208, 211 (1965).

Finally, the Panel states that Strickland has not identified another civil case where a judgment has been vacated based on the improper withdrawal of counsel. True enough, but that is likely because no other court has allowed counsel to withdraw based on a "single assertion" of "irreconcilable differences and conflict," absent client consent. *In re God's Mercy, LLC*, 285 F. Supp. 3d 904, 908 (E.D. Va. 2018). This Court, however, *has* addressed the analogous issue of improper

17

disqualification of counsel, holding that "in consequence the district court's further

rulings . . . cannot stand." *Shaffer*, 966 F.2d at 144.

## CONCLUSION

This Court should vacate its judgment and remand.

Respectfully submitted,

/s/ Caryn Strickland
Law Office of Caryn Strickland
PO Box 92
Lynn, NC 28750
828-388-7337

*Counsel for Plaintiff-Appellant*

18

## CERTIFICATE OF COMPLIANCE

I certify that this Petition complies with the type-volume limitations of Fed. R. App. P. 40(d)(3) because it contains 3,895 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Caryn Strickland
Caryn Strickland

**CERTIFICATE OF SERVICE**

I certify that on this 29th day of September, 2025, I filed this Petition with the Clerk of Court using the CM/ECF system, which will automatically serve electronic copies on all counsel of record.

/s/ Caryn Strickland
Caryn Strickland

# APPENDIX

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
ASHEVILLE DIVISION
CASE NUMBER 1:20CV66

CARYN DEVINS STRICKLAND,                    )
                                            )
      Plaintiff,                            )
                                            )
v.                                          )
                                            )
UNITED STATES OF AMERICA, et al.,           )
                                            )
      Defendants.                           )

**MOTION TO STRIKE PRIVILEGE ASSERTION**
**AND TO COMPEL DEPOSITION TESTIMONY**

At Plaintiff's recent deposition in this matter, Plaintiff testified that ████████
████████████████████████████████████████████████████████████████████████
████ Plaintiff then proceeded to answer additional questions on that topic. Later in the

deposition, however, Plaintiff's counsel asserted an unspecified privilege over additional questions

on the topic and instructed Plaintiff not to answer them. Pursuant to the Court's recent order

providing additional time for the parties to resolve this privilege issue, Plaintiff is now taking the

position that responses to the entire line of questioning on this subject—including the testimony

she already provided—are protected by ████████████████████████████████████

████████████████████████████████████████████████████

Plaintiff, however, has entirely failed to justify her assertion of ████████████████

████████████████████████████████████████████████ Moreover, Plaintiff waived

those privileges—████████████████████████—by voluntarily testifying about the

████████████████████████████████ Accordingly, the Court should strike Plaintiff's

1

privilege assertion and order her to respond to the questions that she refused to answer at her deposition.

Defendants' counsel asked Plaintiff's counsel for Plaintiff's position on this motion. Plaintiff's position is as follows: "Based on the information currently available to Plaintiff, she opposes Defendants' motion and intends to file a response after reviewing the motion."

## BACKGROUND

Defendants' counsel deposed Plaintiff in this matter on April 25, 2023. During that deposition, Defendants' counsel asked Plaintiff about ███████████████████ █████████████████████, and Plaintiff responded to those questions. Ex. A at 131:18-133:17. Defendants' counsel then asked Plaintiff ████████████████



2

[REDACTED]

*Id*. at 134:4-20.

Later in the deposition, Defendants' counsel asked Plaintiff additional questions on this

topic. *Id*. at 166:24-167:1. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

*Id.* at 167:16-20.

Defendants' counsel then asked additional questions regarding [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

On May 1, 2023, the parties jointly moved for a limited extension of the discovery period

to resolve the outstanding privilege issue.  ECF No. 208.  The parties requested that Plaintiff be

given until May 8, 2023 to determine whether to assert privilege, what privilege to assert, and the

scope of the privilege, and that Defendants have until May 15, 2023, to challenge any privilege

assertion made by Plaintiff with respect to this issue.  *Id*. at 3.  The parties further proposed that if

no privilege assertion is made, or if the Court grants Defendants' challenge to any privilege

assertion made with respect to this issue, that Plaintiff's deposition be re-opened for a time period

not to exceed one hour for the limited purpose of obtaining answers to questions on this topic; or,

3

in the alternative, that Plaintiff be ordered to respond under oath to written questions with respect to this matter.  *Id*.  The Court granted the parties' Motion on May 5, 2023.  ECF No. 209.

On May 8, 2023, Plaintiff's counsel sent a letter to Defendants' counsel regarding the privilege issue.  Ex. B.  The letter asserts ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████

## **LEGAL STANDARD**

Rule 37 of the Federal Rules of Civil Procedure provides that, where a deponent fails to answer a question asked during a deposition, "[a] party seeking discovery may move for an order compelling an answer."  Fed. R. Civ. P. 37(B)(i).  "A motion to compel discovery is addressed to the sound discretion of the district court."  *LaRouche v. Nat'l Broadcasting Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986).

## **ARGUMENT**

**I.    Plaintiff Has Failed to Establish a Basis to Apply** ████████████████████ ████████████████████████████

Plaintiff has failed to meet her burden to establish a basis for the ████████████ ████████████████████████████████████████████████ ████████████  When a party withholds information from discovery on the basis of privilege, the party is required to: (1) "expressly make the claim," and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  "A party's conclusory assertion that a document is

4

privileged is inadequate to meet the burden imposed by Rule 26(b)(5)(A)." *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232 (S.D. W. Va. 2015).

Here, Plaintiff has not provided a privilege log or otherwise described the basis for the privileges she asserts. Instead, her letter merely invokes the privileges without explaining what facts might support the application of those privileges.[1]  Indeed, the entirety of the letter's discussion of the ███████████████████████████████████████████

███████████████████

████████████████████████████████████████████████████████████████
████████████████████████████████

Ex. B.

Plaintiff's counsel's two-sentence listing of these privileges is plainly insufficient to demonstrate their applicability to the discovery at issue. Plaintiff has not even attempted to do what the Federal Rules require—"describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Her "conclusory assertion" that the testimony is privileged "is inadequate to meet the burden imposed by Rule 26(b)(5)(A)." *Johnson*, 309 F.R.D. at 232.

This is particularly true given that there is no apparent basis for the assertion of the ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[1] ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████

5



Accordingly, Plaintiff has entirely failed to justify her assertion of the ████████████. ████████████████████████████████████████. The Court should strike Plaintiff's assertion of those privileges.

## II.     Plaintiff Has Waived Any Potentially Applicable Privilege

To the extent that any privileges ████████████████████████ might apply here, those privileges were waived when Plaintiff voluntarily testified about the ████████████

---

[2] ███████████████████████████████████████████████████████
████████████████████

6

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

Here, Plaintiff—an experienced attorney—voluntarily testified that ████████████████████ ███████████████████████████████████████ and then responded to additional questions on that topic, including questions about ███████████████████ ████████████████████████████████████████████

Ex. A at 134:4-20. Her counsel did not object to those questions and Plaintiff willingly provided testimony in response to them. Plaintiff cannot decide now—*after* she provided the testimony— that her testimony was actually protected by privilege. Accordingly, the Court should strike Plaintiff's assertion of privilege over the testimony that Plaintiff already voluntarily provided. *See id.*

Moreover, Plaintiff's waiver extends not only to the testimony she provided, but to the questions she declined to answer at the deposition. *See id*. at 168:17-169:12. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

7

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████████

Here, too, Plaintiff cannot pick and choose which aspects of the ████████████

█████████ she will disclose and which she will refuse to answer. By voluntarily testifying about

the matter, she has waived any applicable privileges.

Accordingly, the Court should strike Plaintiff's privilege assertion and order Plaintiff to

respond to the questions on pages 168-169 of the deposition transcript. The testimony is not

privileged, and it is highly relevant to the litigation because it relates to ███████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

8

██████████████████████████████

██████████████████████████████

██████████████████

## **CONCLUSION**

For the foregoing reasons, the Court should strike Plaintiff's assertion of privilege and permit Defendants to reopen her deposition for the limited purpose of obtaining answers to questions on this topic; or, in the alternative, order Plaintiff to respond under oath to written questions with respect to this matter.

Dated: May 15, 2023                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Principal Deputy Assistant Attorney General

                                       CARLOTTA P. WELLS
                                       Assistant Branch Director

                                       */s/ Joshua Kolsky*
                                       JOSHUA KOLSKY
                                       Senior Trial Counsel
                                       MADELINE MCMAHON
                                       RACHAEL WESTMORELAND
                                       DANIELLE YOUNG
                                       Trial Attorneys, Federal Programs Branch
                                       U.S. Department of Justice, Civil Division
                                       1100 L Street, NW, Room 11526
                                       Washington, DC 20001
                                       Tel.: (202) 305-7664
                                       Email: joshua.kolsky@usdoj.gov

                                       *Counsel for Defendants*

9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

ASHEVILLE DIVISION

CARYN DEVINS STRICKLAND,           )
                                   )
                 *Plaintiff*,      )
                                   )
v.                                 )    Civil No. 1:20-cv-00066-WGY
                                   )
UNITED STATES, *et al.*,           )
                                   )
                 *Defendants*.     )

**PLAINTIFF'S RESPONSE TO DEFENDANTS' "MOTION TO STRIKE PRIVILEGE ASSERTION AND TO COMPEL DEPOSITION TESTIMONY"**

Defendants' motion ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████

             ██████████████████████████████████████

███████████████████████████████████████████

                                              Moreover, Plaintiff's testimony on

this topic is privileged on several grounds.  But this Court does not need to reach the merits of

1

this issue, because Defendants' failure to exercise due diligence in raising it justifies denying

their motion. For these reasons and others discussed below, this Court should deny Defendants'

motion, ████████████████████████████████████████████████████████

████████████████████████████████████████████████ The Court should

also grant Plaintiff a protective order ████████████████████████████

**ARGUMENT**

## I. Defendants' motion should be denied for failure to exercise due diligence during discovery.

This Court should deny Defendants' motion because they failed to exercise due diligence

regarding this subject matter during the preceding eight months of discovery. Courts have

"substantial discretion in managing discovery," including the timing of motions to compel. *Reed*

*v. Beverly Hills Porsche*, No. 6:17-CV-59, 2018 WL 10396251, at *1 (W.D. Va. Jan. 12, 2018),

*objections overruled*, No. 6:17-CV-00059, 2018 WL 10396252 (W.D. Va. Jan. 26, 2018). This

discretion includes denying a motion filed at the "final hour" due to the party's "lack of due

diligence . . . before the discovery deadline." *See Blankenship v. Fox News Network, LLC*, No.

2:19-CV-00236, 2021 WL 2065411, at *4 (S.D.W. Va. May 18, 2021), *aff'd*, No. 2:19-CV-

00236, 2021 WL 3264273 (S.D.W. Va. July 30, 2021). When ongoing discovery may affect

summary judgment motions, there is "even less reason to permit the parties to continue discovery

efforts past the deadline beyond what is absolutely necessary." *Blankenship*, 2021 WL 3264273,

at *7 n.6. That is especially true when the parties had an "adequate opportunity to perform all

the discovery [they] needed" during the discovery period. *Reed*, 2018 WL 10396251, at *1.

Defendants' motion must be considered in the context of amendments to the discovery

deadlines in this case relative to the deadlines for dispositive motions and trial. Originally, the

parties agreed that all non-expert discovery would conclude by March 1, 2023 to prepare for the

June 1, 2023 summary judgment deadline.  *See* ECF No. 132.  The parties later proposed to extend non-expert discovery to May 1, 2023, and the Court allowed the extension on the condition that expert discovery would not interfere with the September 2023 trial date.  *See* ECF No. 187.  The Court has repeatedly stated that it will not delay the September 2023 trial date.  *See* ECF No. 185, at 1 (September 2023 is "the date [the parties] all agree the case will be trial ready"); ECF No. 104, at 13 (it is the Court's practice not to move trial dates).  The Court has also stated that given the trial date of September 2023, the "latest date for filing dispositive motions" is June 1, 2023 because of the Court's practice of considering those motions seriously before trial.  *See* Status Conf. Tr. July 14, 2022, at 10, ECF No. 129; *see also* ECF No. 104 at 13.

When Defendants raised an issue in discovery for the first time during a deposition on April 25, 2023, just six days before discovery closed on May 1, 2023, they acted with a "lack of due diligence . . . before the discovery deadline."  *Blankenship*, 2021 WL 2065411, at *4.  ████

████████████████████████████████████████████████

████████████████████████████████████  which resulted in the parties' joint motion, Plaintiff did not waive any objection based on Defendants' failure to exercise due diligence in pursuing this subject matter during the prior eight months of discovery.  *See* ECF 208, at 1 (requesting brief extension of discovery deadline for the "*sole purpose* of resolving an outstanding privilege issue that arose during Plaintiff's deposition" (emphasis added)).

Significantly, the topic of the testimony at the April 25, 2023 deposition had never previously been raised in any request for production, interrogatory, or other discovery request since discovery opened on August 10, 2022.  *See* ECF No. 132; *see Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, No. C/A 608CV-03980-GRA, 2010 WL 547179, at *4 (D.S.C. Feb. 9, 2010) (party must serve discovery request at least 30 days before completion of discovery

3

deadline).  Moreover, Defendants waited to schedule Plaintiff's deposition until April 25, 2023,

just six days before the extended discovery period expired on May 1, 2023.  After having ample

time for discovery and waiting to schedule Plaintiff's deposition until mere days before

discovery expired, and by failing to raise the issue at all during the previous eight months of

discovery, Defendants failed to act with due diligence.  *Cf. Mellanson v. Variety Wholesalers,*

*Inc.*, No. 2:07CV272, 2008 WL 11512376, at *2 (E.D. Va. Jan. 31, 2008) (denying continuance

for further discovery because "Defendants had ample time for discovery had they been more

aggressive in seeking Plaintiff's compliance with discovery requests").  That is especially so

because there is no reasonable means to resolve Defendants' motion to compel, and reopen

discovery if necessary, before the summary judgment motions deadline of June 1, 2023, which is

two days from now.  *See* ECF No. 208, at 2 (representing that joint motion "will not affect any

other existing deadlines"); *but see id.* at 3 (referencing purpose "of including information from

that deposition" in dispositive motions).

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

4



5

 Thus, this Court should deny their motion based on their failure to act with due diligence during discovery.

**II.　The information sought is not relevant to any claim or defense in this case.**

A motion to compel should be denied where the information sought is "irrelevant."

*Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 245 (E.D.N.C. 2010). █

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

█　████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████

───────────────────

█　██████████████████████████████████████

██████████████████████████████████████████████

████████████████████



8



9





11



12

███████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

█████████████████████████████

Accordingly, this Court should deny Defendants' motion to compel because it seeks information that is irrelevant to any claim or defense, █████████████████████████ ████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████ ███████████████████████Plaintiff requests that the Court also grant Plaintiff a protective order ████████████████████████████████████

**III.    Plaintiff's testimony is privileged on several grounds.**

Defendants' attempts to rebut Plaintiff's assertions of privilege are unpersuasive. ████

████████████████████████████████

██████████████████████████████████

███████████████████████████████

██████████████████████████████████

██████████████████████████████



14



15



16



17



18



19



## IV. Plaintiff did not waive the privilege.

Plaintiff did not waive her assertion of privilege ████████████████████
████████████████████. Defendants do not address the various protections that apply in this situation, including Fed. R. Civ. P. 26(b)(5), Fed. R. Evid. 502(a)–(b), (d), and the Parties' Stipulated Clawback Agreement (ECF No. 184). Specifically, when information produced in discovery is subject to a claim of privilege, Fed. R. Civ. P. 26 provides a procedure for the producing party to assert a claim of privilege after production:

> [T]he party making the claim [of privilege] may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.

Fed. R. Civ. P. 26(b)(5)(B). Moreover, under Fed. R. Evid. 502(b), "inadvertent disclosure of protected communications or information in connection with a federal proceeding or to a federal office or agency does not constitute a waiver if the holder took reasonable steps to prevent disclosure and also promptly took reasonable steps to rectify the error." Committee Note, Fed.

R. Evid. 502(b). In this inquiry, courts consider factors such as the "reasonableness of precautions taken, the time taken to rectify the error, the scope of discovery, the extent of disclosure and the overriding issue of fairness." *Id.*

For example, in *Datel Holdings Ltd. v. Microsoft Corp.*, the district court held that privilege was not waived over documents and related testimony at a deposition where the party initially "did not appreciate the true nature" of the documents during the testimony, but then "interrupted the deposition to put its privilege assertion on the record" after closer review of the documents. No. C-09-05535 EDL, 2011 U.S. Dist. LEXIS 30872, at *14 (N.D. Cal. Mar. 11, 2011). Within a few days, the party identified other documents affected by the privilege error and promptly asserted the protections of Fed. R. Civ. P. 26(b)(5)(B). The district court held that "[t]hese steps constitute a prompt and immediate response to the inadvertent production" and that the inadvertent disclosure did not waive privilege. *Id.* Moreover, the court rejected the notion that the deposition testimony regarding the documents constituted waiver. *Id.* The court explained that cases so holding predated the modern rules, which protect against inadvertent disclosure when a party takes "reasonable steps to rectify the error in disclosure." *Id.* at *15.

Similarly, here, ███████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ Plaintiff and her counsel have been careful to avoid disclosing privileged information in this litigation, and there has never been any indication that they have not followed diligent practices to screen for privileged information. *See United States EEOC v. George Wash. Univ.*, 502 F. Supp. 3d 62, 82 (D.D.C. 2020) (explaining that party's use of "reasonable precautions against disclosure of privileged documents" weighs against finding of waiver). Moreover, Plaintiff took immediate steps to rectify the disclosure,

including by asserting privilege during the deposition and following up promptly with written notifications pursuant to Fed. R. Civ. P. 26(b)(5)(B).  *See* Ex. C (emails dated April 30 and May 1, 2023); ECF No. 219-2 (May 8, 2023 clawback notice).  By contrast, in the cases Defendants cite, there is no indication that the party who waived privilege ever claimed inadvertent disclosure or pursued the procedures available under the rules.  *See* ECF No. 219, at 6–7 (citing *Donaggio v. Arlington Cty.*, 880 F. Supp. 446, 451 n.5 (E.D. Va. 1995), and *Liang v. AWG Remarketing, Inc.*, 2015 U.S. Dist. LEXIS 168139, at *17 (S.D. Ohio Dec. 16, 2015)).  Indeed, Defendants' own conduct in this case provides relevant context regarding the diligence inquiry, as Defendants invoked the parties' clawback agreement to assert attorney client privilege over a document *more than three months* after they first produced it in discovery.  *See* Ex. D.

Alternatively, even if this Court were to find waiver over the answers provided at the deposition, *see* ECF No. 219-1, at 5, that would not waive privilege regarding other unanswered questions on the same subject, *see id.* at 6–9.  "[A] voluntary disclosure . . . generally results in a waiver only of the communication or information disclosed; a subject matter waiver (of either privilege or work product) is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."  Committee Note, Fed. R. Evid. 502(a); *cf. JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 329 (N.D.W. Va. 2013) (subject matter waiver will be found when "the party uses the attorney-client privilege as both a sword and a shield").  Here, there is no indication that Plaintiff has provided a "selective and misleading presentation of evidence" to Defendants' disadvantage.  ███████████████

█████████████████████████████████████████████████████████

████████████████  Applying privilege will not prejudice Defendants in any way.

22

**V.**     **This Court should grant a protective order** █████████████████████████
█████████████████████.

Fed. R. Civ. P. 26(c) permits "for good cause" shown the making of any order which

justice requires to protect against "annoyance, embarrassment, oppression, or undue burden or

expense."  The district court has "broad discretion" to decide "when a protective order is

appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S.

20, 36 (1984). ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

Such good cause is present here, where the line of questioning is irrelevant to any claim

or defense in this litigation ██████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

23



24



Accordingly, Plaintiff has shown good cause for a protective order under Fed. R. Civ. P. 26(c).

**CONCLUSION**

The Court should deny Defendants' motion, ███████████████████████

████████████████████████████████████████████████████

███████████████ and grant Plaintiff a protective order.

This the 30th day of May, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

25

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2023, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

**ASHEVILLE DIVISION**

| | | |
|---|---|---|
| **CARYN DEVINS STRICKLAND,** | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| **v.** | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| **UNITED STATES,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

<u>**MOTION FOR SANCTIONS AND DISQUALIFICATION OF DEFENDANTS'
COUNSEL**</u>

Plaintiff Caryn Devins Strickland, by and through undersigned counsel, respectfully moves for appropriate sanctions against Defendants and their counsel. The basis for this motion is that Defendants and their counsel made unfounded allegations against Plaintiff with no plausible basis in law or fact. *See* ECF No. 219. Defendants' unfounded allegations have severely prejudiced Plaintiff and substantially affected her rights in this proceeding, as described in the accompanying memorandum of law.

Prior to filing this motion, Plaintiff's counsel conferred with Defendants' counsel as required by Local Rule 7.1. Defendants oppose this motion.

This the 27th day of September, 2023.

Respectfully Submitted,

<u>*/s/ Cooper Strickland*</u>

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

1

*Counsel for Plaintiff*

2

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of September, 2023, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### ASHEVILLE DIVISION

| | | |
|---|---|---|
| CARYN DEVINS STRICKLAND, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | **Civil No. 1:20-cv-00066-WGY** |
| | ) | |
| UNITED STATES, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS AND DISQUALIFICATION OF DEFENDANTS' COUNSEL

Plaintiff Caryn Devins Strickland, by and through undersigned counsel, respectfully moves for appropriate sanctions against Defendants and their counsel. The basis for this motion is that Defendants and their counsel made unfounded allegations against Plaintiff with no plausible basis in law or fact. *See* ECF No. 219. In making these unfounded allegations, Defendants misrepresented the law to the Court and opposing counsel, failed to disclose controlling adverse authority, and failed to correct their misrepresentations even after they were on clear notice of an ethical duty to do so. At bottom, Defendants violated their ethical duty not to raise "charges of wrongdoing made recklessly or knowing them to be without foundation." Restatement 3d of the Law Governing Lawyers, § 106 ("Restatement"); N.C. R. Prof. Cond. 3.5, cmt. 10 ("T]he prohibition against conduct intended to disrupt a tribunal applies to conduct that does not serve a legitimate goal of advocacy or a requirement of a procedural rule and includes . . . unfounded personal accusations . . . ."). Defendants' unfounded allegations have severely prejudiced Plaintiff and substantially affected her rights in this proceeding, as described below.

1

## BACKGROUND

### A.    Defendants' Unfounded Allegations at Plaintiff's Deposition

On April 25, 2023, Defendants' counsel deposed Plaintiff.  During the deposition, Defendants' counsel raised a line of questioning that was not related to any claim or defense in this litigation and had never previously been raised during discovery.  Defendants' counsel did not directly state the purpose of this line of questioning during the deposition, but the clear implication of the questioning was that Defendants were making accusations against Plaintiff.

On April 28, 2023, Defendants' counsel informed Plaintiff's counsel that they intended to pursue the issue they had raised during Plaintiff's deposition in a motion to be filed on May 1, 2023.  Specifically, Defendants intended to request that the discovery period, which was set to expire on May 1, 2023, be extended for the purpose of allowing Plaintiff to decide whether to assert privileges in response to Defendants' questioning.  If Plaintiff's privilege assertions were overruled, then Defendants would seek to reopen her deposition to answer certain specific questions she did not answer during the deposition pending a privilege determination.

The next day, on the Saturday evening of April 29, 2023—that is, just four days after Defendants' counsel first raised this line of questioning on April 25, 2023—Plaintiff's entire legal team, with the exception of her spouse, moved to withdraw *en masse*.  ECF No. 207.  As the basis for the withdrawal, counsel cited an unspecified "conflict" and "irreconcilable differences."  ECF No. 207.  One of Plaintiff's attorneys had been admitted *pro hac vice* only *four days* prior to moving to withdraw, which underscores that there was no preexisting conflict that could have led to the withdrawal.  *See* Entry Order Dated April 25, 2023.

On Sunday, April 30, 2023, Plaintiff's remaining counsel emailed Defendants' counsel regarding Defendants' proposed motion to extend the discovery period.  Plaintiff's counsel stated

2

that Plaintiff would be willing to join the motion, as Defendants requested, so that Plaintiff could

have an opportunity to assert privilege over the issues implicated by Defendants' questioning.

Plaintiff's counsel cautioned, however, that he did not believe there was any basis for

Defendants' allegations.  Plaintiff's counsel offered to consent to an extension of time so that the

parties could conduct more research on the issue, but Defendants' counsel rejected the offer and

filed the motion to extend discovery on May 1, 2023.  *See* ECF No. 208.

### B.     Defendants' Misrepresentations in their "Motion to Strike Privilege Assertion and to Compel Deposition Testimony"

On May 8, 2023, in accordance with the schedule agreed to by the parties, Plaintiff's

counsel served Defendants' counsel with a letter asserting privileges over Defendants' questions

during the deposition.  Among these privileges, Plaintiff's counsel stated that Plaintiff would be

asserting ███████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  ECF No. 219-2, at 1.

On May 15, 2023, Defendants filed their "Motion to Strike Privilege Assertion and to

Compel Deposition Testimony" ("Motion to Strike").  ECF No. 212.  Because Defendants'

Motion to Strike concerned a claim of privilege that is subject to sealing pursuant to Federal Rule

of Civil Procedure 26(b)(5)(B), Defendants' filing on the public docket was heavily redacted.[1]

---

[1] Because Defendants' allegations implicate privileged matters, this filing describes
Defendants' misrepresentations in general terms without discussing the substance of the
privileged testimony.  Entry Order Dated May 19, 2023 (ordering sealing of filing related to
privilege challenge); *see, e.g.*, *Datel Holdings Ltd. v. Microsoft Corp.*, No. C-09-05535 EDL,
2011 U.S. Dist. LEXIS 30872, at *2 (N.D. Cal. Mar. 11, 2011) (discussing privilege assertions
related to documents submitted for *in camera* review).  Defendants' allegations are addressed in
detail in Plaintiff's "Response to Defendants' 'Motion to Strike Privilege Assertion and to
Compel Deposition,'" which is currently filed in redacted form on the public docket and attached
as Exhibit A.  ECF No. 226.  This Court previously denied Plaintiff's motion to file her
Response under seal without explanation.  *See* ECF No. 238.

*See id.* Rule 26(b)(5)(B) specifically states that when "information produced in discovery is subject to a claim of privilege," a party "may promptly present the information to the court under seal for a determination of the claim." Defendants thus separately filed a consent motion to file the unredacted version of their Motion to Strike. *See* ECF No. 213. This Court granted Defendants' motion to seal on May 19, 2023. *See* Entry Order Dated May 19, 2023. That same day, Defendants filed their unredacted Motion to Strike under seal. *See* ECF No. 219.

In their sealed Motion to Strike, Defendants made three separate misrepresentations to this Court and opposing counsel.

***False Allegation of*** ██████████ First, Defendants implied that if the allegations raised by their questioning of Plaintiff during her deposition were true, then Plaintiff's actions would be ██████████ Specifically, Defendants asserted that Plaintiff's testimony was "highly relevant" to this litigation because ████████████████████ ██████████████████████ ████████████████ ECF No. 219, at 8. Defendants failed to disclose to this Court, however, that there is no plausible basis to argue that the conduct that they alleged is ████ ██████████████████ ████████████████████████ ██████████████████████ ████████████████████ ████████████████████ ████████████████████████ ██████████████████████

4

███████████████████████████████████████████

███████████████████████████████████████

Defendants' questioning also makes clear that ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████     This issue provides a separate basis to conclude that Defendants'

implication of █████ is facially implausible and frivolous.

Defendants' Motion to Strike did not cite the controlling adverse authorities that fatally

undermined their argument that Plaintiff's alleged conduct was █████, let alone attempt to

distinguish those authorities.  ECF No. 219.  Nor did the Motion to Strike acknowledge the

numerous persuasive authorities making clear that the weight of authority is firmly contrary to

Defendants' position.  These adverse authorities render Defendants' argument that Plaintiff

allegedly ████████████████████ frivolous.

*False Allegation of* ████████████████     Second, Defendants implied tha ████████

████████████ and argued that the conduct Plaintiff allegedly engaged in was ███████

████████  ECF No. 219, at 8–9.  This allegation, too, is lacking in any basis.  In making this

allegation, ██████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████

5



Defendants' assertion that Plaintiff's alleged conduct was ███████ while failing to disclose controlling adverse authority, was frivolous and grounded in a misapprehension of the law.

Further, ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████ In failing to disclose the ████████████████ to the Court, Defendants failed to disclose additional adverse controlling authority from the relevant jurisdiction.

*Misrepresentation of Legal Authority.* Third, Defendants misstated legal authority by misrepresenting the source of a quotation cited in their Motion to Strike. *See* ECF No. 226, at 12. The effect of Defendants' misrepresentation was to create a false impression that the cited quotation supported Defendants' argument and to conceal controlling adverse authority.

In support of their argument that reopening Plaintiff's deposition was necessary to determine ████████████████████████████ Defendants included a

6

citing parenthetical to a decision in support of the proposition that Plaintiff's alleged conduct was

███████████████  ECF No. 219, at 8–9.  This decision was the *only* case Defendants cited

for this proposition, and it was thus critical to their argument.  *See id.*  The language that

Defendants quoted, however, that this alleged conduct is ████████████ *does not even*

*appear in the cited decision*.  *Id.*  Rather, that precise quotation *does* appear in a later federal

court decision, which specifically discusses the adverse controlling authority that Defendants

failed to disclose to this Court.  The later federal court decision recognizes the current controlling

████████, but it concludes ████████████████████████████

████████████████████████████

Defendants' misrepresentation of legal authority raises a reasonable question of whether

they were aware of the current ████████ and intentionally failed to disclose it because doing

so would fatally undermine their argument that Plaintiff engaged in ████████████  The

altered quotation also raises a reasonable question of whether Defendants intentionally miscited

precedent to conceal adverse controlling authority and mislead the Court and opposing counsel.

Defendants' misciting of precedent and altering the meaning of a quotation was inconsistent with

their duty of candor and to make arguments that are warranted by existing law.

### C.     The Court's Denial of Leave to File Plaintiff's Response Under Seal and Adverse Ruling Against Plaintiff

When Defendants filed their sealed Motion to Strike, Plaintiff's counsels' motion to

withdraw was still pending.  *See* ECF No. 207.  Thus, Plaintiff's legal team, in addition to this

Court, had access to the sealed filing containing Defendants' misrepresentations of law and

distortions of cited precedent.

On May 15, 2023, after Defendants filed their Motion to Strike, Plaintiff filed a response

to her counsels' motion to withdraw.  Plaintiff explained that "[b]ecause of pending issues in this

litigation raised by Defendants that have not yet been resolved, Plaintiff currently lacks information that is needed to provide an informed response to Counsels' motion." ECF No. 215. Thus, "[g]iven the severe prejudice to Plaintiff that would result from Counsels' withdrawal, Plaintiff respectfully requests that Counsels' motion be held in abeyance to allow Plaintiff to evaluate the ongoing developments that may affect their motion and to provide a more informed position to the Court," with her remaining counsel "represent[ing] her" in the interim. *Id.* By "ongoing developments," Plaintiff was referring to Defendants' Motion to Strike, to which Plaintiff intended to respond under seal, as permitted by Rule 26(b)(5)(B), and demonstrate that their allegations were meritless. Plaintiff "request[ed] the opportunity" to be heard on these issues and "provide a further update to the Court as soon as reasonably possible." *Id.* at 2. That same day, Defendants filed a response to the motion to withdraw stating that they take "no position." ECF No. 214.

On May 22, 2023, having presumably reviewed Defendants' sealed filing containing false allegations, Plaintiff's legal team filed a reply in support of their motion to withdraw, stating that the motion is "ripe for consideration." ECF No. 221. The next day, in a text-only entry order, the Court granted the motion to withdraw on the basis that "[s]ufficient time ha[d] elapsed for the plaintiff to object to the motion to withdraw and only a request for delay ha[d] been received by the Court." Entry Order Dated May 23, 2023. The Court did not allow Plaintiff additional time to be heard on issues that affected her position on the motion to withdraw, as she had requested, or determine whether there was good cause for the withdrawal of Plaintiff's legal team so close to the trial date, given the severe prejudice to Plaintiff that would result from the withdrawal. *See Wallace v. City of Hampton*, No. 2:15-cv-126, 2017 U.S. Dist. LEXIS 228032, at *14 (E.D. Va. July 20, 2017) ("When an attorney voluntarily moves to

8

withdraw, 'it is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause.'" (citation omitted)).  The Court also did not apply the requirement of the local rules that counsel show "good cause for the withdrawal," which cannot be satisfied by naming an "unspecified 'conflict'" or "irreconcilable differences."  *See* WDNC Local Rule 83.1(f) ("Absent the client's consent, withdrawal may be obtained by filing a motion to withdraw, *showing good cause for the withdrawal*." (emphasis added)); *Champboat Series, LLC v. In2focus Films, Inc.*, No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009) (an "unspecified 'conflict'" is insufficient to comply with local rule).  This Court was obligated to make a finding of good cause before granting the motion to withdraw.  *See* Fed. R. Civ. P. 83; *Jackson*, 828 F.2d at 1078 (stating that local rules "have the force and effect of law").

On May 30, 2023, Plaintiff filed her "Response to Defendants' Motion to Strike Privilege Assertion and Compel Deposition Testimony" ("Response").  ECF No. 226.  Plaintiff's Response contained an extensive discussion of the legal errors that Defendants made in their Motion to Strike, including their misrepresentations of cited authority discussed above.  *See id.* In addition to filing her Response, Plaintiff filed a Motion for a Protective Order from this ███████████████████████████████████████████ *Id.* at 23–25; *see* ECF No. 227.

Plaintiff explained █████████████████████████████████

████████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████

9

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

Like Defendants, Plaintiff filed a redacted version of her Response on the public docket. *Id.* And like Defendants, Plaintiff moved, unopposed, to file the unredacted version of her Response under seal, which she was entitled to do under the controlling rule of civil procedure that governs privilege challenges. ECF No. 228; *see* Fed. R. Civ. P. 26(b)(5)(B). Plaintiff's counsel served the unredacted version of her Response on Defendants' counsel by email, contemporaneously with filing her redacted Response. *See* Ex. B.

Unlike Defendants, however, Plaintiff was not allowed to present her arguments under seal to the Court. On June 1, 2023, this Court denied Plaintiff leave to file her Response under seal. ECF No. 238. The Court did not explain its decision or distinguish Rule 26(b)(5)(B), which explicitly provided Plaintiff a right to file her Response under seal, and which Defendants benefited from when they were allowed to file their Motion to Strike under seal. As a result, the Court reviewed only Defendants' Motion to Strike raising unfounded allegations, and not Plaintiff's Response thoroughly rebutting those allegations, before ruling on Defendants' motion.

That same day, on June 1, 2023, the Court granted Defendants' Motion to Strike in part and denied it in part. ECF No. 233. Without reviewing any of Plaintiff's arguments, the Court rejected her privilege claims with the exception of one. ECF No. 233, at 2. The Court allowed Plaintiff's deposition to be "reopened for a period not to exceed two hours," which was twice as much time as the one-hour deposition that Defendants requested. *Id.*; ECF No. 208, at 3. The

10

Court stated that Defendants could ask "appropriate follow-up questions . . . as may be devoted to this particular topic" and serve "requests for production," which Defendants did not request. ECF No. 233, at 2; ECF No. 208, at 2–3.  The Court summarily denied Plaintiff's Motion for a Protective Order, again, without reviewing any of her arguments.  ECF No. 237.

### D.  Defendants' Failure to Correct their Misrepresentations and Disclose Controlling Adverse Authorities Not Disclosed by Opposing Counsel

After the Court denied Plaintiff's motion to file her Response under seal and failed to consider the authorities she cited, Defendants were on clear notice of an ethical duty to correct the misrepresentations they made in their Motion to Strike.  *See* N.C. R. Prof. Cond. 3.3(a)(1) (stating that "[a] lawyer shall not knowingly . . . fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer").  Defendants failed to comply with this ethical duty and instead have continued to pursue Plaintiff's deposition.  *See, e.g.*, ECF No. 265.

Even as Defendants have continued to press this issue with Plaintiff, they did not attempt to raise it as an affirmative defense in their Answer or the parties' joint pretrial statement.  *See* ECF No. 259, at 99 (stating that there are no "requested amendments to the pleadings").  Defendants have therefore not made any substantive attempt to justify the arguments they raised in their Motion to Strike and, to the contrary, have waived any affirmative defenses.  *See id.*

### LEGAL STANDARD

Several judicial norms prohibit Defendants' conduct.  First, a court has inherent authority to sanction "matters involving deceit that, when not disclosed, undermine the integrity of the process."  *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 459 (4th Cir. 1993).  While Rule 11 does not directly apply to a discovery motion, *see* Fed. R. Civ. P. 11(d), that rule provides guidance as to how this Court should evaluate Defendants' misrepresentations, misleading of the Court and opposing counsel, and pursuit of frivolous legal contentions.  *See Precision Specialty*

11

*Metals, Inc. v. United States*, 315 F.3d 1346, 1357 (Fed. Cir. 2003) (in case involving misrepresentations of law, stating that "[w]ithout regard to whether [the attorney's] misconduct violated Rule 11, the sanction imposed upon her would have been sustainable under the inherent power of the court"). "Although 'the central purpose of Rule 11 is to deter baseless filings in district court,' the scope of the rule is not that limited," as "it provides that by presenting legal documents to the court, an attorney is certifying her belief, formed after reasonable inquiry, that the 'claims, defenses and other legal contentions therein are warranted by existing law or a non-frivolous argument' to change the law." *Id.* at 1355 (citation omitted). Thus, when an attorney, "either willfully or through an unacceptable level of negligence," uses "selective quotations and direct misquotation" to "conceal" adverse authority "from the court and opposing counsel," she violates her "fundamental duty to be candid and scrupulously accurate." *Id.* (citation omitted).

Second, Defendants' conduct involves abuse of the discovery process and other litigation misconduct. Quite simply, Defendants' counsel threatened Plaintiff with false and misleading allegations during her deposition, then obtained an order to reopen her deposition based on falsehoods. *See Six v. Generations Fed. Credit Union*, 891 F.3d 508, 519 (4th Cir. 2018) ("'[A] lawyer shall not knowingly . . . make a false statement . . . or fail to correct a false statement' of material fact to the tribunal." (quoting N.C. R. Prof. Cond. 3.3)). And rather than correcting their misrepresentations even when they were on clear notice of a duty to do so, Defendants chose to exploit the unfair advantages they gained through their misconduct. *See id.* at 520 (sanctions where party "intentionally misled" the court "to gain a tactical advantage" (citation omitted)). Courts have broad authority to sanction this type of misconduct, which undermines the fundamental fairness and integrity of the judicial process. *See id.* at 511 (sanctions for "affirmative misrepresentation" and "failures to correct known misrepresentations"); *Shaffer*

*Equip. Co.*, 11 F.3d at 461 (sanctions for failing to correct misrepresentations made by DOJ

witness); *see also Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) (witness

tampering in deposition resulting in dismissal of claims).

Third, "[a] motion to disqualify counsel is the proper method for a party to bring an

alleged breach of ethical duties to the court's attention." *Kitchen v. Aristech Chem.*, 769 F. Supp.

254, 256 (S.D. Ohio 1991). In deciding a motion to disqualify, "the trial court is not to weigh the

circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power

over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is

to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273

n.3 (4th Cir. 1977). "In considering violations of ethical rules of conduct, courts must consider

the overarching question of whether a violation of such rules 'will undermine, or seriously

threaten to undermine, the integrity of judicial proceedings.'" *M.O. v. Fairfax Cty. Sch. Bd.*,

Civil Action No. 1:21-cv-00769 (RDA/JFA), 2022 U.S. Dist. LEXIS 15625, at *6 (E.D. Va. Jan.

27, 2022) (citation omitted). Permitting attorneys who have engaged in misconduct to continue

representation "would suggest a modicum of tolerance for [this] conduct where there is none."

*Barksdale Sch. Portraits, LLC v. Williams*, 339 F.R.D. 341, 346 (D. Mass. 2021).

## ARGUMENT

### I.     Defendants Violated Ethical Standards by Making Allegations Recklessly and Without Foundation.

When a party or her counsel makes allegations against an opposing party, "they darn well

better be in a position to demonstrate it." *Perkins v. Silver Mt. Sports Club & Spa, Ltd. Liab.

Co.*, 557 F.3d 1141, 1148 (10th Cir. 2009) (citation omitted). If the party doesn't "have a

modicum of evidence" or "a sufficient basis, then you better take a hard look at Rule 11." *Id.*

(citation omitted). Moreover, counsel is ethically prohibited from raising "charges of

13

wrongdoing made recklessly or knowing them to be without foundation."  Restatement § 106;

N.C. R. Prof. Cond. 3.5 cmt. 10 ("[G]roundless personal accusations made in documents filed

with the tribunal are also prohibited by this Rule.").  Such conduct "breeds disrespect for the

courts," and prejudices "the administration of justice."  N.C. R. Prof. Cond. 3.5 cmt. 10 (citation

omitted).  By making unfounded allegations against Plaintiff, by misrepresenting legal authority

and misleading the Court and opposing counsel, and by failing to correct their misrepresentations

and disclose controlling adverse authority even when they were on notice of an ethical duty,

Defendants and their counsel violated ethical norms designed to safeguard the integrity of the

judicial process.  *See Six*, 891 F.3d at 511 (upholding sanctions for conduct that "evince[s] lack

of candor to the court and disrespect for the judicial process").

### A.    Failure to Conduct Reasonable Inquiry

In their Motion to Strike, Defendants raised multiple frivolous arguments, including

allegations that should have been dispelled with basic legal research.  After all, attorneys have

"an obligation under Rule of Professional Conduct 1.1 to provide 'competent representation,'

which includes an ability to research the law." *Massey v. Prince George's Cty.,* 918 F. Supp.

905, 908 (D. Md. 1996).  "Similarly, Rule 1.3 requires that 'a lawyer shall act with reasonable

diligence and promptness in representing a client,' which includes pursuing applicable legal

authority in timely fashion." *Id.*  While "a mere failure to cite contrary authority, without regard

to the facts of the particular case, is not necessarily enough to show a violation of Rule 11,"

*Precision Specialty Metals*, 315 F.3d at 1357, an attorney's "ostrich-like tactic of pretending that

potentially dispositive authority against [his] contention does not exist" is "precisely the type of

behavior that would justify imposing Rule 11 sanctions," *Borowski v. DePUY, Inc.*, 850 F.2d

297, 304–05 (7th Cir. 1988); *cf. Massey*, 918 F. Supp. at 908 (criticizing government attorneys

14

for their "bold and risky gambit" of assuming that adverse authority not cited in their brief "is

distinguishable and therefore unnecessary to call to the Court's attention").

Here, Defendants baselessly implied that Plaintiff's alleged conduct was ███████████

███ , even though ████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████ Defendants also failed to disclose that ████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████ Similarly, Defendants' baseless assertion that Plaintiff's alleged conduct was

████████████████████████████████████████████████████████

███ *See supra,* at 5–6; *Carmax Auto Superstores, Inc. v. Sibley,* 194 F. Supp. 3d 392, 403 n.5

(D. Md. 2016) (under Rule 3.3's duty of candor, "failure to disclose that a legal authority cited

has been overruled could have significant professional ramifications for an offending attorney").

It is objectively unreasonable for an attorney, in a signed motion filed with the Court, to make

assertions ████████████████████████████████████████████████████

██████████████████████████████ . It is particularly unreasonable when those

assertions involve sensational allegations against an opposing party.  And that is especially so

when opposing counsel warned Defendants' counsel that their allegations were baseless, but

Defendants pursued them anyway.  *See supra* at 2–3.

### B. Misrepresenting Legal Authority and Misleading the Court and Opposing Counsel

An attorney has a duty to avoid misleading the Court by misciting authority, including

"distorting cited authority by omitting language from quotations"; "misrepresenting facts or law

15

to the court"; and "failing to reference or discuss controlling precedents," all of which make the pleading "frivolous as argued." *Precision Specialty Metals*, 315 F.3d at 1356 (citation omitted). While a party may "distinguish[]" adverse authority "as she s[ee]s fit" or "urge[] the Court" not to follow it, she cannot, consistent with her obligations as an officer of the court, "simply ignore" adverse authority "by deleting it from the material she quoted." *Id.*  Similarly, an attorney has a duty of fairness to opposing parties and counsel.  *See* N.C. R. Prof. Cond. 3.4(d)(1), (3).  As part of this duty, the lawyer "shall not . . . make a frivolous discovery request," or "fail to disclose evidence or information that the lawyer knew, or reasonably should have known, was subject to disclosure under applicable law, rules of procedure or evidence, or court opinions." *Id.*

Defendants' conduct contains troubling indications that the misrepresentations of law that they made in their Motion to Strike may have been intentionally misleading.  As discussed above, Defendants miscited precedent by misattributing a quotation in a citing parenthetical that came from an entirely different federal court decision.  *Supra*, at 6–7.  A later decision in which the cited quotation actually appears specifically discusses adverse controlling authority ███ ███████████████████ that Defendants failed to disclose in their Motion to Strike.  *Id.*  These circumstances raise a reasonable question whether Defendants intentionally altered the quotation they cited to conceal adverse authority from the Court and opposing counsel.

*Precision Specialty Metals* is instructive on how courts should analyze this type of quotation altering.  In that decision, the Federal Circuit upheld a court's reprimand of a Department of Justice attorney for her "concealment and miscitation of relevant precedent and cropping of quotations to alter their meaning." *Precision Specialty Metals*, 315 F.3d at 1356. Specifically, the attorney had misrepresented cited authority to make it appear that her filing of a summary judgment response twelve days late was in compliance with the court's order requiring

16

filing of the document "forthwith." *Id.* at 1348. In cropping quotations and concealing adverse authority, the attorney's filing created the misimpression that the term "forthwith" means "within a reasonable time under the circumstances of the case," even though the Supreme Court has held that "forthwith" is "usually construed, and sometimes defined by rule of court, as within twenty-four hours." *Id.* at 1355 (citations omitted). As the Federal Circuit explained, "[t]he effect of [the attorney's] editing of this material and ignoring the Supreme Court decision that dealt with the issue—a decision that seriously weakened her argument—was to give the Court of International Trade a misleading impression of the state of the law on the point." *Id.* "This distortion of the law was inconsistent with and violated the standards of Rule 11." *Id.* at 1356.

Defendants' cropping of quotations and distortion of the law in their Motion to Strike is strikingly similar to the misrepresentations made in *Precision Specialty Metals*, but it is also far more egregious. In *Precision Specialty Metals*, the attorney's misrepresentations were made for the purpose of attempting to obtain a post-hoc extension of time. Here, by contrast, Defendants' misrepresentations were made with the purpose and effect of branding Plaintiff with false allegations, in violation of their ethical duties. *See* Restatement § 106; N.C. R. Prof. Cond. 3.5, cmt. 10. Moreover, in *Precision Specialty Metals*, the attorney's misrepresentations were detected by the presiding judge and were unsuccessful in influencing the case. *See Precision Specialty Metals*, 315 F.3d at 1349. By contrast, Defendants were largely successful in obtaining the relief they sought—the reopening of Plaintiff's deposition—and even obtained *more* relief than their motion requested. *Supra*, at 10–11.

### C. Failure to Disclose Adverse Controlling Authority Not Disclosed by Opposing Counsel

Under N.C. R. Prof. Cond. 3.3(a)(2), a lawyer shall not knowingly "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse

to the position of the client and not disclosed by opposing counsel." Moreover, "[t]he disclosure duty covers not only court decisions, but also statutes and regulations adverse to a client's position." 2018 N.C. Formal Ethics Op. 2. "The lawyer's knowledge of the adverse authority may be inferred from the circumstances." *Id.* (citing N.C. R. Prof. Cond. 1.0(g)).

Here, the circumstances leading to the Court's partial grant of Defendants' Motion to Strike and denial of Plaintiff's Motion for a Protective Order fall squarely within Rule 3.3(a)(2). After Plaintiff served her unredacted Response on Defendants, which contained the adverse controlling authorities that they failed to disclose in their Motion to Strike, Defendants plainly had actual knowledge of those adverse authorities. *See* Ex. A. Plaintiff was not provided any opportunity to present those adverse authorities for the Court's consideration, however, because the Court denied her unopposed motion to file her unredacted Response under seal before ruling adversely to her interests. *See* ECF No. 238. Regardless of whether the Court erred in doing so, it is undeniable that at this point, the adverse controlling authorities contained in Plaintiff's unredacted Response were "not disclosed by opposing counsel." N.C. R. Prof. Cond. 3.3(a)(2). Thus, Defendants had a duty to disclose these known controlling adverse authorities to the Court.

Defendants cannot reasonably contend that these adverse authorities were not required to be disclosed. "An attorney should advise the court of decisions adverse to his case which opposing counsel has not raised if the decision is one which the court should clearly consider in deciding the case, if the judge might consider himself misled by the attorney's silence, or if a reasonable judge would consider an attorney who advanced a proposition contrary to the undisclosed opinion lacking in candor and fairness to him." ABA Formal Opinion 280 (1949); 2018 N.C. Formal Ethics Op. 2 ("[A] lawyer must not allow the tribunal to be misled by false statements of law and 'must recognize the existence of pertinent legal authorities.'" (citation

omitted)).  Here, the authorities that Defendants failed to disclose make clear that their allegations are baseless.  It was objectively unreasonable not to disclose these authorities because they were ones which the court should clearly consider, and Defendants' continued silence was both misleading and lacking in candor and fairness.

### D.      Failure to Correct False Statements of Law Previously Made to Tribunal

The duty of candor to the Court prohibits an attorney not only from "mak[ing] a false statement of material fact or law to a tribunal," but also from "fail[ing] to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  N.C. R. Prof. Cond. 3.3(a)(1).  Therefore, even if Defendants contend that the initial misrepresentations that they made in their Motion to Strike were not intentional, they still violated the duty of candor.

The Fourth Circuit has held that, when Department of Justice attorneys were aware of misrepresentations made by their own witness and obstructed the opposing party's attempts to uncover and failed themselves to reveal it, the attorneys "overstepped the bounds of zealous advocacy, exposing themselves and their employer to sanctions."  *Shaffer Equip. Co.*, 11 F.3d at 461 (citing Rule 3.3).  The same principle applies here.  Defendants failed to correct the misrepresentations of law that they made in their Motion to Strike even after they were plainly on notice that the Court was unaware of those misrepresentations, having denied Plaintiff leave to file her Response under seal.  *See* ECF No. 238.  Instead of correcting those misrepresentations, Defendants chose to unfairly benefit from the Court's ruling.  *See, e.g.*, ECF No. 245, at 13 n. 4 (reasserting argument that "Plaintiff is ineligible for reinstatement and front pay" because of alleged conduct referenced in Motion to Strike).  Defendants' failure to correct their prior misrepresentations violated Rule 3.3's duty of candor, was objectively unreasonable, and severely prejudiced Plaintiff.

19

II.    **Sanctions for Defendants' Conduct are Warranted.**

A court has broad authority to order appropriate sanctions for misrepresentations in filings, ranging from a reprimand to default judgment against the offending party.  *See, e.g.*, *Precision Specialty Metals*, 315 F.3d at 1355 (reprimand of DOJ attorney); *King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018) ("dismissal with prejudice is an essential tool in the sanction toolbox" for willful misconduct).  Similarly, the Court has broad discretion to order sanctions for discovery abuses and other abuses of the judicial process.  *Six*, 891 F.3d at 519 ("[C]ourts are empowered 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" (citation omitted)); *Shaffer Equip. Co.*, 11 F.3d at 462 ("[W]hen a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action.").  In determining what sanctions to impose, the court should consider factors including "the degree of the wrongdoer's culpability," "the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney," "the prejudice to the judicial process and the administration of justice," "the prejudice to the victim," "the availability of other sanctions," the need for "deter[rence]," and "the public interest."  *Shaffer Equip. Co.*, 11 F.3d at 462–63.

Here, the most significant factor this Court should consider is that Defendants' actions have resulted in severe and irreparable prejudice to Plaintiff and, by the same token, unjustly benefited them.  Courts have recognized that unfounded allegations aimed at an opposing party or her counsel results in prejudice to the administration of justice.  *See, e.g.*, *N.C. State Bar v. Springs*, 273 N.C. App. 407 (2020) (unpub.) (upholding discipline against attorney who, "with no legitimate evidence," "publicly humiliat[ed] and accus[ed] a former legal adversary of a crime").  It is obvious to any reasonable person that raising unfounded allegations against an

20

opposing party could affect the party's rights, including by interfering with the party's relationship with counsel and undermining her ability to present a case. Such conduct "tends to impede opposing counsel's ability to represent his or her client effectively," and may "directly interfere with the truth-finding function." N.C. R. Prof. Cond. 8.4, cmt. 5 (citation omitted).

In this case, the withdrawal of Plaintiff's legal team only four days after Defendants raised these allegations has severely prejudiced Plaintiff, leaving only Plaintiff and her spouse, neither of whom have ever tried a case, to represent her. *See* ECF No. 262, at 15 ("I just want to state the obvious, which is that my, . . . essentially entire legal team that we were relying on to try this case withdrew on the eve of trial and Cooper and I have never done a trial, jury-waived or otherwise."). Counsels' withdrawal also had a direct financial impact: Plaintiff lost the remainder of a litigation grant her lead counsel had obtained and no longer has funds for costly expert witness testimony. *See* Ex. C.; ECF No. 215, at 1–2 (discussing use of litigation grant for expert witness). Further, the withdrawal has prejudiced Plaintiff by "distracting" the court and parties from "the serious business at hand" implicated by the merits of her constitutional claims. N.C. R. Prof. Cond. 8.4, cmt. 5 (citation omitted). Quite simply, Plaintiff's case may wrongly be assumed to be less meritorious, regardless of the strength of the evidence favoring her claims, because of the unfounded allegations and subsequent withdrawal of her legal team.

Additionally, Defendants' unfounded allegations have severely intimidated Plaintiff from testifying or exercising her rights in this litigation. *See* ECF No. 219-2, at 1, ECF No. 226, at 13, 19–20, 23–25; *see also* ECF No. 233, at 2. The fact that Plaintiff's entire legal team moved to withdraw *only four days* after Defendants' counsel raised these allegations shows that it is reasonable for Plaintiff to feel severely intimidated by their conduct.

This Court should further consider that Defendants' conduct involves a pattern of recklessly making unfounded allegations in their filings. *See Six*, 891 F.3d at 521 ("continuing misrepresentations and exaggerations of the record" supported sanctions). After the discovery period closed, and without giving Plaintiff notice in their pleadings or discovery as required by the Federal Rules of Civil Procedure, Defendants baselessly alleged that Plaintiff "disregard[ed] the sanctity of the attorney-client relationship" by engaging in protected activity during the EDR proceeding and in this lawsuit. ECF No. 245, at 13. Defendants claimed that Plaintiff "likely" violated the Federal Records Act, *see* ECF No. 245, at 12, which does not even apply, *see* Guide to Judiciary Policy, Ch. 6, Vol. 10, Appx. 6C, *available at* https://tinyurl.com/2abj6r9e (case files are not "federal records" and are treated the same regardless of "[c]ourt-appointed or public defender status"). Defendants also baselessly implied that Plaintiff violated the "Privacy Act," *see* ECF No. 245, at 12 n.3, which does not apply to the judicial branch, *see* DOJ, Overview of the Privacy Act: 2020 Edition, *available at* https://tinyurl.com/3r6rdvfb ("Federal entities outside of the executive branch are not subject to the Act.").

In making these baseless allegations, Defendants also failed to disclose controlling adverse authority from the judiciary that prevents office confidentiality policies from being misused to retaliate against employees who engage in protected activity. *See* Federal Public Defender – Western District of NC Employment Dispute Resolution Plan, § V(B)(1) ("Confidentiality obligations . . . concerning use or disclosure of confidential information received in the course of official duties, including attorney-client and work-product privileged information, do not prevent nor should they discourage Employees from reporting or disclosing wrongful conduct."); Report of the Federal Judiciary Workplace Conduct Working Group 25 (2018) (explaining that policies were enacted to "clarify" "that confidentiality obligations should

22

never prevent any employee . . . from revealing abuse or reporting misconduct by any person"). Further, Defendants failed to disclose that unlike Plaintiff, who took painstaking care to protect client information, the First Assistant accused of sexual harassment provided a flash drive containing *thousands* of pages of unredacted, privileged FDO client information to the EDR Investigator.  Ex. D.  Defendants' discovery shows that he did so knowingly.  Defendants themselves have acknowledged that this information is "privileged" and not "relevant" to the claims in this proceeding.  *Id.*  Compounding this disclosure, Defendants disclosed this unredacted, privileged FDO client information to the Department of Justice—the authority responsible for prosecuting the FDO's clients—during this litigation.  *Id.*

A reasonable fact finder would find the above information to be material in assessing Defendants' allegation that Plaintiff "disregard[ed] the sanctity of the attorney-client relationship."  ECF No. 245, at 13.  Defendants' failure to disclose this information to the Court renders their allegations misleading and lacking in candor and fairness.  Further, Defendants' failure to raise this issue in their pleadings or during discovery, in violation of procedural rules designed to ensure fair notice, raises concerns that they engaged in "cynical gamesmanship and deliberate obfuscation" to sandbag Plaintiff and prevent her from meaningfully responding to their allegations.  *Six*, 891 F.3d at 521 (citation omitted).  This conduct evinces a pattern of reckless allegations, unfair and misleading representations, and disregard for the integrity of the judicial process.  This Court should not allow any "modicum of tolerance" for this conduct. *Barksdale Sch. Portraits*, 339 F.R.D. at 346.

Finally, this Court should consider that this case represents the first time a federal court has allowed allegations of discriminatory and unfair procedures for resolving workplace discrimination to proceed against federal judiciary officials.  *Strickland v. United States*, 32 F.4th

311, 321 (4th Cir. 2022).  Given the public importance of this case, the public interest requires a proceeding that is fundamentally fair and that does not repeat the same, or even more egregious, deprivations of due process that gave rise to the suit in the first place.  Defendants' conduct has prejudiced the administration of justice by undermining public confidence in this proceeding.

Given the severity of Defendants' conduct, which has functionally derailed this entire proceeding, default judgment would be justifed.  *See Shaffer Equip. Co.*, 11 F.3d at 462 ("[T]he inherent power to dismiss a case for the misconduct of counsel is undoubtedly clear.").  Alternatively, this Court may consider appropriate evidentiary sanctions, including precluding Defendants from receiving "the benefit of any portion of the record . . . which may have been tainted by [the] misconduct."  *Id.* at 463.  Additionally, Defendants should be ordered to compensate Plaintiff for expenses resulting from the loss of litigation funding.  *See* Fed. R. Civ. P. 11(c)(4) (allowing order of expenses "directly resulting from the violation").

### III.    At a Minimum, Defendants' Counsel Must be Disqualified.

"A Department attorney who is found to have engaged in professional misconduct in a particular case *shall not* continue to represent the United States in that case . . . ."  DOJ Manual § 1-4.330 (emphasis added).  This policy is bolstered by precedent requiring disqualification of counsel where necessary to safeguard the integrity of court proceedings.  *See Clarkson*, 567 F.2d at 273 n.3.  Here, Defendants' counsel violated the ethical rule that "[i]n representing a client in a matter before a tribunal, a lawyer may not use means that have no substantial purpose other than to embarrass, delay, or burden a third person," specifically by raising "charges of wrongdoing made recklessly or knowing them to be without foundation."  Restatement § 106.  Disqualification is a remedy proportionate to the severe prejudice caused by this conduct.

Disqualification is also necessary to avoid an appearance of impropriety.  The Judicial Conference has recognized that "[n]o request for representation of a federal public defender . . . shall normally be submitted to the Department of Justice, in view of the Department's prosecutorial role and its consequent apparent disqualification to represent a public defender against whom it prosecutes criminal cases."  *See* Hearing on Federal Judicial Branch, Subcomm. on Courts, Civil Liberties, and Administration of Justice, House Jud. Comm. 758 (Apr. 25, 1985), *available at* https://tinyurl.com/4y2r3r5v.  Here, DOJ's representation is intertwined with FDO client matters, which is confirmed by DOJ's receipt of thousands of pages of privileged FDO client information.  This raises concerns about client confidentiality and loyalty.  *See* N.C. R. Prof. Cond. 1.6(c), 1.7 cmt. 1.  It also implicates Canon 1 of the Codes of Conduct, which requires federal defenders to uphold "the integrity and independence of the office . . . so that the defender office reflects a devotion to serving the public defender's clients."  Indeed, even after Defendants baselessly accused Plaintiff of disregarding the attorney-client relationship, they continued to gratuitously disclose FDO client personal information in their pretrial filings.  *See, e.g.*, ECF No. 259, at 79, 86 (naming FDO client in public filing); *cf.* FDO EDR Plan § V(C)(3)(e) (requiring redaction of "clients' personal identification information").  This conduct casts an "appearance of impropriety" on this proceeding and requires that "all doubts" be resolved "in favor of disqualification."  *Clarkson*, 567 F.2d at 273 n.3.

## CONCLUSION

Given the public importance of this case, the public interest demands appropriate sanctions for the conduct of Defendants and their counsel.

This the 27th day of September, 2023.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Plaintiff*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of September, 2023, I will electronically file the foregoing

with the Clerk of Court using the CM/ECF system, which will then send a notification of such

filing (NEF) to the following:

   Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

   Rachael Westmoreland at Rachael.Westmoreland@usdoj.gov

   Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

   Danielle Young at Danielle.young2@usdoj.gov

*/s/ Cooper Strickland*
Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

27